1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

HUAIZHAO LIU, et al.,           )
                 Plaintiffs,    )
                                )
            vs.                 )    CIVIL CASE NO.
                                )    8:23-cv-02134-MJM
CIPING HUANG, et al.,           )
                 Defendants.    )
_____ )

FRIDAY, JULY 18, 2025
Courtroom 5C
Baltimore, Maryland

TRANSCRIPT OF PROCEEDINGS
VIDEO MOTIONS HEARING
BEFORE THE HONORABLE MATTHEW J. MADDOX

For the Plaintiffs:

Times Wang, Esquire
 Farra & Wang, PLLC
 1300 I Street NW, Suite 400e
 Washington, D.C. 20005

For Defendant Huang:

John P. Rowley, III, Esquire
Adriaen Morse, Jr., Esquire
 SECIL Law, PLLC
 1701 Pennsylvania Avenue, Suite 200
 Washington, D.C. 20006

For Defendant Wei:

David G. Barger, Esquire
Robert Woodson Angle, Esquire
 Greenberg Traurig
 1750 Tyson Boulevard, Suite 1000
 McLean, VA 22102

_____
(Computer-aided Transcription of Stenotype Notes)
Reported by: Amanda L. Longmore, RPR, CRR, FCRR
Federal Official Court Reporter
101 W. Lombard Street, 4th Floor
Baltimore, Maryland  21201
410-962-4474

P R O C E E D I N G S

(10:04 a.m.)

THE COURT:  Good morning.

THE CLERK:  Good morning, Judge.  The matter now pending before the Court is Civil Docket Number MJM-23-2134, Liu versus Huang.  This matter now comes before the Court for the purpose of a virtual motions hearing.  Counsel for the plaintiff, please identify yourself for the record.

MR. WANG:  Good morning, Your Honor.  This is Times Wang for the plaintiffs.

THE COURT:  Good morning.

THE CLERK:  And for the defendants, please.

MR. ROWLEY:  Good morning.  This is John Rowley and Adriaen Morse for the defendant Ciping Huang.

MR. BARGER:  Good morning, Your Honor.  David Barger and Woody Angle on behalf of defendant Mr. Wei.

THE COURT:  Good morning.  And who will be speaking for Defendant Huang?

MR. ROWLEY:  I will, Your Honor.  John Rowley.

THE COURT:  Okay.  And who will be speaking for Mr. Wei?  Will it be you again, Mr. Rowley?

MR. BARGER:  Your Honor, For Mr. Wei, it will be me. We have two motions that are relevant.  One is our motion to dismiss.  The other is Ms. Liu's Rule 35.  So if the Court permits, Mr. Angle was planning to argue the Rule 35 response

since they're two separate motions, but a motion to dismiss I will argue with the Court's permission.

THE COURT:  Okay.  Thank you.

MR. BARGER:  Thank you.

THE COURT:  All right.  As you've just noted, Mr. Barger, there are those two motions.  Each defendant has filed a motion to dismiss.  I'll begin with Ms. Huang's, so I'll hear from Mr. Rowley.

MR. ROWLEY:  If the Court please, we have filed a motion to dismiss alleging that the allegations by the plaintiff in the Second Amended Complaint are not defamatory per se.  Your Honor, we will submit, the Court has already heard some arguments on that issue, we will submit on our arguments and on our motion to dismiss and the supporting brief on that particular issue, Your Honor.

As I indicated in our briefing, we do not believe that the allegations are defamatory.  They're a matter largely of opinion and hyperbolic rhetoric.  But as I say, Your Honor, we will submit on that particular issue.

The issue I would like to address to the Court is the one of limited purpose public figures.  As we have stated in our supporting briefs, Your Honor, we believe that under Rule --

THE COURT:  Before you begin with that issue, Mr. Rowley, just to clarify what you've already said with respect to submitting on the briefs the issue as it relates to

defamatory per se.  You seem to -- and I'm not sure if it was you or both you and your codefendant seem to suggest that the plaintiffs are only asserting a claim for defamation per se and therefore if the statements that are challenged in this case don't qualify as defamatory per se, then there is no defamation claim.  But I understood the claim to not just be asserting defamation per se but also asserting defamation per quod.

Do you want to address that quickly and clarify your position on that for me?

MR. ROWLEY:  I can, Your Honor.  Your Honor, and I do understand that in certain cases per quod is included in an allegation of defamatory defamation per se.  However, in this particular case, as per Paragraph 97 of the Second Amended Complaint, the plaintiffs have alleged only defamation per se. And so our motion to dismiss seeks to dismiss the entire complaint because of those limited allegations made by the plaintiffs in this case.

THE COURT:  Well, I read Paragraph 98 -- you said 97, I think you were citing 98 -- says statements also caused actual harm, which they don't specifically say per quod in that paragraph but it seems to suggest that to the extent that the statements don't qualify as defamation per se, they still make a defamation claim because they're alleging actual harm.  Do you read it differently or --

MR. ROWLEY:  Your Honor, I acknowledge that that may

very well have been their intention, but that's not what they have specifically alleged because of Paragraph 97, which I would submit to the Court limits their claims here, their defamation claims in Count 1 anyway, to defamation per se.

THE COURT:  Okay.  You can proceed with your argument on the public figure issue.

MR. ROWLEY:  Thank you, Your Honor.

Your Honor, under applicable law, a plaintiff is a limited purpose public figure when a public controversy exists, and we do have one in this case as per the lawsuit and the multiple complaints that the plaintiffs have filed over time.

The plaintiffs have voluntarily thrust themselves into that controversy and that they have done so for the purpose of influencing the outcome of this case or shape the public discourse.

Now, Your Honor, the plaintiffs have engaged in a public media campaign and as such they are required as -- that that converts them to limited public figures for purpose of this lawsuit and as such they are required to prove that the defendant Huang made the subject statements with actual malice under the standard enunciated in New York Times versus Sullivan.

They have repeatedly claimed over Twitter that Mr. Wei, the codefendant here, raped plaintiff Liu more than 25 years ago, that both Mr. Wei and my client Ms. Huang engaged in

extramarital affairs.  They've also said that Ms. Huang is a liar, a thug, a bully, and they've called her other names and they've done so publicly.  And this public media campaign, Your Honor, was done deliberately to shape the public perception regarding defendant.  I can't think of any other reason why the plaintiffs would do so.  They are using mass communications channels to achieve their objectives, including improperly, I would submit, influencing potential jurors.

Now, this sustained public media campaign satisfies the criteria for limited purpose public figure status under Maryland law and also under D.C. law.

Now, Your Honor, I would -- I would expect that opposing counsel will say that, well, we're limited to the four corners of the Second Amended Complaint and it's unknown at this stage of the proceeding whether or not the evidence exists to convert the plaintiffs into limited purpose public figures.

And, Your Honor, I would direct the Court to Federal Rules of Evidence Rule 201, judicial notice of adjudicative facts, which says that the Court may judicially notice a fact that is not subject to reasonable dispute because it -- and there are two elements here -- one, is generally known within the trial court's territorial jurisdiction; or two, can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.  And Your Honor, Rule 201 further provides that the Court may take judicial notice at any stage

of the proceeding.

We have cited in our brief and specifically our motion to dismiss Page 3 of Ms. Huang's reply a couple of cases that -- that support the proposition that it is appropriate in certain cases for the Court to consider a limited purpose public figure issue at the motion to dismiss stage, and in those cases that I've cited, the courts have actually dismissed cases.

Your Honor, in this case, we have a number of examples, there are a plethora of examples.  There are dozens and dozens of Tweets that the plaintiffs have made over time about Ms. Huang and Mr. Wei and, as I say, in an attempt to have a media campaign that influences either potential jurors or otherwise public perceptions about what this case is about.

We have not tried to comprehensively capture all of those statements in our counterclaim, Your Honor, but I would direct the Court to Page 9 of Ms. Huang's counterclaim under subheading "H. Liu's defamation campaign against Huang," and there were a number of examples there, Your Honor, of Tweets that defendant -- that plaintiff Liu has published publicly about both Ms. Huang and Ms. Wei [sic].

THE COURT:  But you don't -- I'm sorry to interrupt you, Mr. Rowley.  You don't contend that I can consider any of that.  You've made an argument that I can consider the GoFundMe page, but how can I consider your client's pleading in deciding the sufficiency of your opponent's pleading?

MR. ROWLEY: Your Honor, I'm citing examples from my pleading because these are taken from the public Twitter or X account now. So these are public statements that the plaintiff Liu has made about my client and about codefendant Mr. Wei. I've simply incorporated those into my counterclaim, so I'm not asking the Court to rely on my counterclaim as such but these are examples that I've taken from the public discourse about this matter.

And I would point out, Your Honor, that it's not just plaintiff Liu who has made these statements. Her lawyer, Mr. Wang, has also made public statements. Paragraph 52 of my counterclaim references a Radio Canada statement made by Mr. Wang about the defendants making up lies. You know, there's also, on April 3rd, 2024, a YouTube interview where Mr. Wang again says "I love prosecuting bullies, I love prosecuting liars."

So Your Honor, those are just a couple of examples but there are literally dozens of statements made by the plaintiffs in this case, including at least several made by Mr. Wang that attempts to affect the public discourse about this matter. The Court has the power under the rules to take judicial notice of that and to also conclude at this stage of the proceedings that the plaintiffs are limited purpose public figures for purposes of the standard of proof that they are required to show when this case goes to trial.

And in addition, Your Honor, as I said, I'm submitting our papers with respect to the defamatory per se argument, I would also submit with respect to the arguments we've made on Count 2, false light, and Count 3, intentional infliction of emotional distress.

THE COURT:  Okay.  Thank you, Mr. Rowley.

Mr. Barger, you've also filed a motion on behalf of your client.  Do you wish to be heard on it?

MR. BARGER:  Yes, Your Honor.  Thank you.

So with regard to Mr. Wei, Mr. Wei is pled in Count 1 of the plaintiffs' Second Amended Complaint, so my arguments only relate to the claims against Mr. Wei in Count 1.  I would, to the extent they're applicable, adopt arguments by Mr. Rowley to shorten my argument a little bit.

Your Honor, by way of background that we've identified in our motion and in our reply and to the various other pleadings that exist in the case, as the Court knows, Ms. Liu and her daughter have litigated indeed -- indeed Mr. Rowley's correct, in a publicity campaign since 2019 these claims against Mr. Wei and have really made this more about a publicity campaign than it is about litigation.

And the reason I say that is because these claims, as we'll get into more detail, substantively the claims they make against Mr. Wei have already been litigated fully in the Superior Court in the District of Columbia.  You know, and I

say fully, we're talking about at the summary judgment phase all of the claims against Mr. Wei were dismissed.  That meant that the parties engaged in extensive discovery, full depositions, production of thousands of documents, and after full consideration of the record in 2024 the Superior Court judge again denied Ms. Liu and Ms. -- and Charlotte, her daughter's claims with prejudice.  They did not appeal that decision, and that decision is now res judicata.

That is for the simplest ground here, Your Honor, that they don't get multiple bites at the apple.  Mr. Wei should not have to go through the time and expense of having to defend himself again when they have fully litigated these issues.  It was the same parties and, as I'll discuss, it was the same facts, the same alleged transactions, and it was litigated to final judgment.  Those are generally the three elements that are relevant for res judicata purposes.

Indeed, the reason we know it's the same transaction, even though in this Second Amended Complaint, these are alleged statements made -- asserted they're made in December of 2023 and in July of 2024, and the December '23 alleged statements in Count 1 against Mr. Wei, the plaintiffs attempted to put those into an Amended Complaint in the Superior Court proceedings, and ultimately the Court ruled that they were not timely. They'd had multiple years to amend their complaint and the Court considered that and denied those claims.  And the reason

that's relevant is that the plaintiff by doing that has conceded that the December 2023 statements are really arising out of the same transaction, same series of alleged statements, and then we go back to res judicata, the second element is that the statements have to arise out of same transaction or series of transactions. So this has been fully litigated and the Court, for the reasons we say, should give full effect to that Court's careful consideration of the merits of the case there.

THE COURT: I'm sorry, Mr. Barger, could you go back and sort of go back through what establishes the plaintiffs' concession on that point, that it's part of the same series of transactions?

And while I'm talking --

MR. BARGER: Yes, Your Honor.

THE COURT: -- I'll ask the other parties who are on this Zoom call if you could put yourselves on mute. We are picking up a little bit of background noise and I want to make sure we hear Mr. Barger clearly on this matter. Thank you.

MR. BARGER: Your Honor, to answer your quick question, I'm looking for my -- finding in our reply memorandum, which is Document 75, but off the top of my head, the plaintiffs attempted to amend their complaint in Superior Court by adding the allegations that are the alleged statements from December 2023.

THE COURT: Right.

MR. BARGER:  The Court denied their request to amend that complaint to add those additional allegations.  As I recall, because they were untimely, they waited too long into the proceedings to do that, but by the plaintiffs attempting to add them into the case in the Superior Court, they couldn't do that unless they arose out of the same transaction or series of transactions.  And the statements, even though they're alleged to be made in 2023 as we discussed, substantively they're the same denials that the Court -- the Superior Court ruled upon were not defamatory, were mainly opinion and talking about motivation.

So the substance of those statements, that court, we talked about res judicata, has already ruled that the statements that were the subject of that complaint were not defamatory, they're not actionable.  And so by the plaintiffs attempting to put in the same -- substantively same statements just a few years later and the Court denying it, the plaintiffs by doing that have to concede that they believe those December 2023 statements arose out of the same transactions.  And so that's about --

THE COURT:  I'm not sure that I follow that, Mr. Barger.  I understand your argument.  I don't think that to amend the complaint or to amend the pleading to add claims is taking a position that it's part of the same series of transactions as the other claims previously asserted.  I don't

know -- unless they said that in the complaint, but I presume that they didn't, but -- so I'm not sure that -- why that means that they are -- they would be conceding that a separate set of defamatory statements are part of the same series of transactions as an earlier set.

MR. BARGER:  Your Honor, to answer the Court's question, I don't recall if they specifically conceded that, and I agree simply adding it wouldn't necessarily mean that it's an acknowledgment that they're part of the same series of transactions, but when you're adding them to the complaint for the same purpose, meaning the same count of alleged defamation just later iterations of what they claim is defamatory, given that context, I respectfully submit that it is a concession that they arise out of the same transaction.

But that's -- also that's a technical argument.  I think at the end of the day what really matters is the Court looking at the substance of what's alleged and seeing if what's alleged as to Mr. Wei is substantively the same as what the Superior Court ruled on in dismissing the case with prejudice.  And my general recollection is we talked about this a little bit in our status hearing back in, I think it was April, but we didn't, you know, we didn't dig into the -- in any great detail, so if I may just address a couple of the -- there's only a few, Your Honor, that address Mr. Wei specifically.

And if the Court has the Second Amended Complaint, the

ones that really matter in particular are Paragraphs 90 and 92. I know there's some general allegation in 86 and 87 about Mr. Wei, but when you look at the allegations, they lack any specificity and they lack any quotations as to exactly the words that are used, even though 87 is the one that talks about in December of 2023 at a dinner attended by several members of the Chinese dissident community, purpose of which was to arrange a public debate between Wei and another dissident, and they allege that defendant Wei said to certain attendees, they don't specify who, they don't specify exactly what he said, that plaintiff Liu's allegations against him were false, that she was a liar and she was acting on behalf of the CCP. Those statements of and essentially defending himself against her public allegations are substantively the same as what the Superior Court ruled were not defamatory.

If we look at Paragraph 90, Your Honor, which is alleged to be a translation of a post in Chinese, Ms. Liu alleges in Paragraph 90 -- I'm paraphrasing a little bit -- that Mr. Wei in a Tweet talked about the CCP having a history of deploying rumors as a political tactic. And down at the bottom of the Tweet, it says recently the Court ruled against them and there is no such alleged illegitimate daughter at all.

Now, in Paragraph 90, there's no reference to who he's talking about, but even if one assumes that it is the plaintiffs, Ms. Liu and her daughter, even if that's true, the

statement that the Court ruled against them and there is no such alleged illegitimate daughter at all, as we indicate in our papers, he's commenting on the ruling by the Court dismissing the case with prejudice and the statement that there's no alleged illegitimate daughter at all is actually a correct statement of law, meaning I don't know how one could argue that saying there's no illegitimate daughter is defamatory, but it happens to be accurate as a matter of law as we put in our papers and, as the Court ruled in its order, that as a matter of law we have a presumptive father who they were married at the time, Mr. Zhang is listed on the birth certificate as the father, and it was never challenged by Ms. Liu within the statutory period provided in the various states.

So as a matter of law, Ms. Charlotte is not illegitimate but, again, the allegation that he's saying she's not illegitimate, I don't understand how that could even be defamatory whether it's per se or per quod, you know what I'm saying, oh, she's not illegitimate, it's actually accurate as a matter of law, and secondly it's not defamatory.

Putting aside the third possibility or argument that it would appear to be a matter of opinion as well, and as the Court talked about in the Superior Court case, you really can't sue him for defamation for speculating or talking about the motivations of the plaintiff.

To put it in a little bit of simple context, you know, Ms. Liu has waged this litigation since 2019 and at least some of the -- some of the public items the Court has allowed, as the Court noted, the GoFundMe page, there has been significant public discourse and publicity by Ms. Liu in pursuing this. And so I would respectfully submit that when she makes this a public issue and a publicity issue for my client to deny the allegations, which they -- I think they acknowledge in their Rule 35 motion it's his right to do, to deny the allegations, it seems inappropriate to try to turn those denials into alleged defamatory statements.

But my primary argument, Your Honor, is, as I mentioned, that this case has been fully litigated after extensive discovery and the substance of those statements has already been ruled upon.

If the Court -- and I appreciate the Court's indulgence. If the Court, the last -- the only other alleged defamatory statement against Mr. Wei is Paragraph 92, which is alleged to be a response to a Tweet by some other person and Mr. Wei's alleged response is:

"Would you want a liar for a daughter?  Throw in a fraudster mother."

As we indicated in our papers, and we cite cases to this effect, expressing an opinion that someone's a liar or expressing an opinion that someone's a fraudster is basically

just that, opinion, and it's reflective of comments about the alleged motivations of the plaintiffs in pursuing the litigation.  And as we've mentioned and for the reasons we say in our brief, those are expressions of opinion which are not actionable as defamation and, again, the substance of those same allegations were made by Ms. Liu previously litigating, she had her days in court, her years in court, and she should not be allowed to do this again to Mr. Wei.

Unless the Court has any additional questions, I think -- I'm sure I forgot something as I'm wont to do, but I think I've covered it and I do appreciate the Court's patience.

THE COURT:  I do have a couple of questions for you.

MR. BARGER:  Yes, sir.

THE COURT:  Could you -- is there a place in the D.C. Court's order that you can point to me the Court's description or understanding of the context in which the challenged statements were made?

MR. BARGER:  Your Honor, if you give me a second, I've got the Court's omnibus order and off the top of my head I don't remember.  I would need to go back and review it.  And I hate to put Mr. Angle on the spot.  If he recalls, I would ask if the Court would grant permission, and Woody may not know the answer off the top of his head.  If he doesn't, I don't mean to put him on the spot that way.

THE COURT:  Well, we can come back to it.  You'll get

a chance for rebuttal.

MR. BARGER:  Okay.  I'll take a look.

THE COURT:  Okay.  So my next question then would be where does the D.C. court -- I think you used the term "authorized" in your briefing -- authorized Mr. Wei to say, for example, that the plaintiffs were working on behalf of the CCP and other statements that are alleged to be defamatory in this context?

The person who's dialing into the Zoom from a phone number ending in 0809, if you could please put yourself on mute as I indicated earlier?  All right.  Mr. Barger?

MR. BARGER:  Yes, Your Honor.  Our argument for why we said the Court authorized the statements is because the Court ruled that those are not defamatory.  And so Mr. Wei is fairly entitled to rely upon the Court saying that's not defamatory to the extent he says, again, she's a liar or she may be acting on behalf of the CCP, which the Court specifically indicated was not actionable as it really didn't express any motivation.

If I can focus just a bit on the CCP, because I thought about this and I know that -- and again, I think that's in Paragraph 90 of the Second Amended Complaint, the reference to the CCP, maybe the Court would say, well, that's really a question of fact, but I don't know how that's ever provable or disprovable that somebody may be acting on behalf of the CCP or

that the conduct that they're engaged in, which is a slightly different court, the conduct they're engaged in -- how am I trying to say this -- furthers the purposes of the CCP.

That, to me, strikes me as very much opinion but I struggle to see how either party, either Ms. Liu or my client would ever prove or disprove given the limitations on discovery whether Ms. Liu's an agent of the CCP or simply what she's doing is consistent with their stated clear unequivocal goals of discrediting Mr. Wei.  I believe he's blocked from social media or the Internet in Mainland China as I recollect.

So I know I digressed a little bit, but to answer your question again, Your Honor, the Court didn't specifically say, oh, you now have license to say this any time you want, but I think that is the natural consequence of the Court's order saying these were not defamatory.

THE COURT:  Okay.  And you did actually touch on the next question I was going to ask you about, whether or not a person being an agent of the CCP or working on behalf of the CCP does strike me as just a plain issue of fact.  Whether or not there's practical barriers to actually proving it in a court I think is one question.  I don't think that's the dispositive question.  The question is whether or not as a general matter is this something that's provably true or false.  And I think that it could certainly be interpreted that way, especially if I'm to draw all reasonable inferences in the

plaintiffs' favor on your motion under 12(b)(6), as I'm required to do.

And it doesn't seem like you're disputing that, but I would also make the same -- or present the same proposition with respect to whether or not Mr. Wei is the biological parent of Charlotte and whether or not there was sexual contact between him and plaintiff Liu, whether or not he sexually assaulted plaintiff Liu. These aren't really questions of opinion; these are questions of fact. Wouldn't you agree with that?

MR. BARGER: As a general proposition I would. I want to go back briefly on the CCP. Of course, it is Ms. Liu's burden to prove she's not an agent of the CCP, right? You know, she's going to say, look, this is defamatory to say, you know, working on behalf of the CCP, which I do draw a distinction between that and saying what you're doing furthers their goal. Those are different.

The second one, to me, is opinion and not actionable, claiming you are a member of the CCP, I don't -- you know, I suppose a good portion of the world would not consider that defamatory. I haven't reflected too much on, hey, you work for the CCP, is that defamatory or not. But putting that aside, to address the Court's question --

THE COURT: In the context of a dissident --

MR. BARGER: Right.

THE COURT: -- Chinese dissident community, which obviously association with CCP would tend to disparage a person.

MR. BARGER: It might. It might. But going back to it's certainly her burden to prove that she's not a CCP member, I don't know how -- how she would ever do that.

THE COURT: She would testify -- she would testify that she doesn't have any association with the CCP. Are you saying that that evidence would be insufficient to make a preponderance finding that she's not a member or not an agent of the CCP, if she was to testify --

MR. BARGER: I will reflect upon -- I think the Court could give whatever weight it wants to her statement that I'm not a member, but I go back to, and my client says, look, I thought she was. So I mean, to me, this one is -- it's -- I'm not trying to -- I'm not trying to be cavalier about this. To me it seems silly that we have to engage in multiple years of litigation over the question of whether I am, I'm not an agent of the CCP, well, I think you are an agent of the CCP, you know, why do you think that, because what you're doing is consistent with their goals of discrediting me.

So but I -- I understand we have certain legal principles but to me as a practical matter, it's a shame we have to have to spend so much time litigating over something that regardless of whether she says I am not one is ultimately not disprovable

by either -- either person's belief about whether they are or not because I assume as a practical matter we're never going to get anybody to testify on behalf of the communist government as to whether a person is an agent of the communist government or not.

THE COURT:  I'm sorry I interrupted you before you moved onto the other points.

MR. BARGER:  No, sir, and now I'm forgetting.  It was --

THE COURT:  It had to do with the issue regarding the sexual encounter and the parentage of Charlotte.

MR. BARGER:  Right.  Well, and for the reason we put in our brief and were litigated previously, the argument of Charlotte's parentage has been, again, fully litigated and the Rule 35, which Mr. Angle will address it, has been fully litigated, again, after discovery, and so that's -- there's no claim that I am defamed by denying that I am a parent.  I don't understand how that would be defamatory, and that's not exactly what they've alleged, right?  Their allegation is, you know, you called me a liar.  Well, let me rephrase.  Yeah, you called me a liar, you denied that you raped me.

The parentage certainly isn't -- doesn't prove or disprove any of those particular allegations.  It doesn't prove or disprove whether I'm, you know, an agent of the CCP or furthering their goals.

And so the factual question of biology, this isn't a paternity case.  She tried that route and it was denied and she can't backdoor what has been litigated and denied, but at least that's our respectful position that she cannot do that by claiming that this request to do the testing somehow proves her defamation case.

THE COURT:  All right.

MR. BARGER:  Unless the Court has other questions, I'll try to get an answer to Your Honor while we're working through the rest of the motions and when it's my turn to speak.

THE COURT:  Okay.

MR. BARGER:  Thank you, Judge.

MR. ANGLE:  I have the order language up, Your Honor, if you'd like to hear it, but sorry for interrupting.

THE COURT:  Go ahead.  If you have that, go ahead.

MR. ANGLE:  Sure.  On Page 25 of the Court's summary judgment order, it says, "Furthermore, the Court agrees with" --

THE COURT:  Let me catch up to you.  Let me catch up to where you are.  You said Page 25?

MR. ANGLE:  Yes, sir, and this is the summary judgment order.  Yes, sir.

THE COURT:  I'm there.

MR. ANGLE:  It says, "The Court agrees with defendant that plaintiffs are unable to show nor do they attempt to argue

or dispute in their opposition that defendant's alleged statements are more than his own subjective opinion."

And, well, I don't want to present any argument to double-team the motion, but I'll -- that's the language.

THE COURT:  All right.  Thank you.  Just trying to -- let's see.  You said Page 25.  Is that 25 that's on the bottom of the page or on the ECF header?

MR. ANGLE:  Yes, sir, my apologies.  At the bottom of the page, it's 25 out of 27.  And this is the summary judgment order.  There was a subsequent omnibus order denying motions to reconsider.

THE COURT:  Oh, I see.  I may be in the wrong one, then.  Okay.

MR. BARGER:  If I can, in our case, it's Document 67-6, Page 26 of 28.

THE COURT:  Got it.  Okay.

MR. BARGER:  Toward the top of the page, "Furthermore."

THE COURT:  Right, okay.  I have it highlighted here.

I thought my question had to do with putting the statements in context.  I understand the Court's ruling.  I just don't know where in the opinion the Court discusses or describes the context in which these statements were made.  And maybe it's not in the opinion, maybe it's in the pleading, but that's what I'm trying to get an understanding if I'm going to

do as Mr. Barger has invited me to do, to compare the context alleged in the Second Amended Complaint in our case with the context of the statements challenged in the prior D.C. litigation, I'm just trying to see if the public record establishes that the two contexts are the same.

MR. BARGER:  Your Honor, I will say I believe they do but that -- that takes you nowhere, so I would ask the Court's leave, depending on where we end up today, to give us an opportunity to go back, because it's a very fulsome record in Superior Court and so we would look at the pleadings and the oral argument and the Judge's order and then if we're right, we'll point the Court to where that context is and if we're wrong we will say so.

THE COURT:  Okay.  Thank you, Mr. Barger.  Let me turn to Mr. Wang.

MR. WANG:  Good morning.  Thank you, Your Honor.

I think I'll begin my remarks by just setting the stage for this case.

So, as Your Honor pointed out, we're on a 12(b)(6) motion, so we have to assume all of the following is true:

We have to assume that in the year 2000 Mr. Wei, in fact, raped or sexual assaulted Heather, and that's true but assume that in fact Charlotte is Mr. Wei's biological daughter.  We have to assume it's true that, in fact, Wei and Huang knew that because they got a -- they knew the results of the DNA test

that both Charlotte and Wei submitted to the 23andMe and Wei's associate Robert Suettinger.  But they knew that Charlotte is Wei's biological daughter, and that despite that, they have been calling Heather and Charlotte fraudsters and liars sent by the CCP for making these allegations.

Okay.  So that is the background against which all these statements have to be evaluated.

Also, we have to assume as true that Ms. Liu did not choose to make any of this public.  As we have alleged, the allegation that Mr. Wei fathered a child was revealed by a third party, not Ms. Liu.  And as we have also alleged, and that allegation, Your Honor, is at -- that allegation is at Paragraph 15 of the SAC, that we did not -- that Ms. Liu did not want any of this to become public.

And then in terms of the narrative and what we have to assume is true in terms of how this thing became public, so we allege that Ms. Liu filed a D.C. Superior Court action in 2019, that's at Paragraph 17, and then in response, in response to her filing that action, it was Ms. Huang who began an unrelenting social media campaign against the plaintiffs.  So, again, that -- and that's of course relevant to the limited purpose public figure question.

Now, so let's -- the other thing I want to sort of address as an overarching comment is Mr. Barger has accused us of suing Mr. Wei for a number of statements that we're not suing him

for.  So he's accusing -- we're not -- Mr. Wei did not say I didn't do it.  That's not what we're suing him for.  He didn't say, you know -- he didn't say, well, I think Heather and Charlotte are misguided.  He didn't say I think they might be acting on behalf of the CCP.  He didn't say -- and Ms. Huang didn't say any of these things either.  He didn't say, you know, it's unfortunate because by doing this they're advancing the CCP's interests.  We're not suing him for anything like that.  Neither than say, you know, I don't know why they're making these allegations but, you know, I think they're lying.  That's not what we're suing them for.  What we're suing them for is they said they are fraudsters and liars sent by the CCP in making these allegations.  That's what we're suing them for.

And those statements are factual ones.  They are provably false because they are tied to a very specific event in the year 2000, rape.  The fraudster and liar statements are ultimately about whether that sexual assault, in fact, occurred.  That's -- it's basically the Carroll versus Trump case.  I mean, I can't think of any way to distinguish it from the Carroll versus Trump case in this regard.

You know, as a counterfactual, for example, if Mr. Wei or Ms. Huang had just said, well, you know, I think they're liars, and then you ask them, well, what are they liars about?  And then say, well, I don't know, they're just generally liars, right?  Then I can see an argument, well, okay, it becomes kind

of hard to make out a defamation case about that kind of statement because, you know, what are you a liar about?  But that's not this case.  This case they're saying that they're liars and fraudsters for alleging that Wei raped Charlotte in 2000 and impregnated her and with -- well, impregnated her that Charlotte was the result.  Those are very specific events that can be proved true or false.

On the limited purpose public figure, the only thing, you know, obviously I think there are -- it was a little bit of a Twilight Zone experience for me listening to the argument because it sounded like a summary judgment argument where none of the evidence was -- had even been admitted, but -- so there's just way too much outside the pleadings, it's too factual for a decision at this stage.

But what I will say, Your Honor, is that even if my clients are limited purpose public figures, the fact that the defendants state -- defendants knew that a DNA test had shown Charlotte to be Wei's biological father [sic] and they nevertheless publicly called my clients fraudsters and liars, that is more than enough to plausibly allege malice or at least recklessness.  So even if the -- that's the key fact that plausibly makes out malice and recklessness on their part. They got a DNA test results.  They still made these statements.

But then let me turn to the res judicata argument.

THE COURT:  But before you go there, Mr. Wang --

MR. WANG:  Yes.

THE COURT:  -- if you want to address this question or whether I can or should consider the GoFundMe page.

MR. WANG:  I think we addressed that argument in the -- in our brief, and I don't really have anything to add beyond that.  It's not part of the pleading.  We don't incorporate it in the pleading.  I think -- I don't know that's the kind of thing that can be taken judicial notice of.  There are, you know, too many disputes about the -- you know, what led to the creation of that GoFundMe page.

You know, to the extent Your Honor wants to take -- I mean, we are ready to make -- we don't dispute the existence of it, but I'm not sure that --

THE COURT:  Does it establish that this was a public controversy to which your clients purposefully or voluntarily inserted themselves?

MR. WANG:  I don't think so, Your Honor, certainly not by itself, certainly not when viewing the facts in my clients' favor, which includes that -- you know, or argues that they were backed into this position, you know, by the sequence of events that unfolded after they first made contact with Mr. Wei in 2018.

But I mean, I think that just highlights why, you know, it would be way premature to make a ruling on the public -- limited purpose public figure issue at this stage.  It's --

it's too heavily fact-bound and it depends a lot on the sequence of events and, of course, our sequence of events have to be accepted as truth at this stage.

THE COURT:  But your -- I think that you made the argument even if they were limited purpose public figures you've satisfied the pleading requirements even in that context because you've alleged malice.

MR. WANG:  Absolutely, Your Honor.  Yes.

THE COURT:  All right.  You may continue.

MR. WANG:  In terms of res judicata, the D.C. court's judgment was issued on July 2, 2004 -- 2024.  The Tweet that we're suing Mr. Wei over was issued four days later.  There is -- I mean, just as a matter of pure logic it cannot possibly be res judicata.  You know, time is linear.  And then the --

THE COURT:  You're talking about the July 20, I think it's 2024, statement specifically?

MR. WANG:  Correct, yes.

THE COURT:  You're not referring to the earlier statements.

MR. WANG:  So not -- at least, you know, as a matter of pure logic, the -- yes, the December 2023 statements could have been made prior to the D.C. court's judgment but claims -- and of course we tried and I'll address that shortly.  But as to the July 6th, 2024 Tweets, I mean, there's just no -- there's no conceivable way that those could be barred by res

judicata.

A little -- the -- and part of the reason is that it is black letter defamation law that each statement gives rise to a separate cause of action. So what constitutes a transaction for the purpose of a defamation claim is a particular statement made at a particular place on a particular date.

If I make a statement today that's defamatory, you can sue me and you sue me for that tomorrow, and then a week later I make the same statement, that's a separate cause of action, that's a separate transaction from the perspective of defamation law, so --

THE COURT: Can I expand upon that hypothetical?

MR. WANG: Yes.

THE COURT: Would it be a different situation if you were speaking to the same person the following week, let's say this happened over text message, this might be the easiest way to sort of create a situation that we're all familiar with.

Text exchange started on a particular day and you've made some false defamatory statements in the course of that text message talking to a particular person, and this text exchange continues for a week, and then you make what may be construed as materially the same, substantively the same false and defamatory statements a week later to the same person. Would that -- if there was a final judgment on the first statement but not the second one, and then after you got final judgment

on the first statement you sued on the second one, would that be barred by res judicata?

MR. WANG:  No, not by res judicata.  There might be other doctrines that they haven't argued that would bar it, but certainly not res judicata.

THE COURT:  Well, I would think that they would at least have a strong argument in that context that these two messages were part of the same series of transactions.

MR. WANG:  Perhaps.

THE COURT:  And basically it's the same conversation happening over a singular string of text messages.

MR. WANG:  Absolutely, Your Honor.  A series of transactions is only part of the res judicata analysis.  It has to be the same cause of action, and given that in the defamation context a new cause of action arises each time a defamatory statement is made, it's not the same cause of action.

Now, to the -- depending on how and why the Court ruled that the first statement was not defamatory, for example, if the Court, depending on the reason, there might be other ways to prevent relitigation of the same issue but not res judicata.

THE COURT:  Okay.  But through that -- what I described, is what I described analogous to what we have in this case?

MR. WANG:  Not quite, Your Honor, I don't think,

because certainly the Tweet, I mean, the audience is different, you know, in the D.C. action.  I believe the 2019 statement was made to a small group of people in a D.C. apartment; in the December 2023 statement it was made to a different group of people in a restaurant; and then the 2024 statement was Tweeted to the public.

THE COURT:  And these are separated by several years in addition to those --

MR. WANG:  Yes, absolutely.  Right, absolutely.

So as to the December 2023 statement, my clients did try to include that in the D.C. action but, as we explained in our brief, that helps us from a res judicata perspective, it doesn't hurt us, because -- well, I will just submit the argument is in the brief and I'll submit on that issue.  The --

THE COURT:  I don't quite remember it.  Let me just guess at what the argument might be, is that the Court specifically barred you from asserting that claim.

MR. WANG:  Correct.

THE COURT:  And therefore decided it.  This was the context in which you were asking to amend your pleading and you were denied that request such that that amendment never made its way into the case, so when the Court entered final judgment it couldn't have decided those statements because it wasn't part of the case.  Is that it?

MR. WANG:  Thank you, Your Honor, that is it.  I

appreciate that.

THE COURT:  All right.

MR. WANG:  And then let me just look at my notes here.  Just, Your Honor, the -- now, in Mr. Wei's reply, you know, he talks about comity and he cites to cases from this circuit, Awah and Gannett, but what those two cases are about is not some kind of federal doctrine of comity.  Those two cases are about a federal -- it's about whether a federal district court may decline to exercise jurisdiction under a doctrine called the Colorado River abstention.  And, you know, I would argue that that argument is waived for lack of sufficient presentation, but it also cannot possibly apply because the D.C. action is over.  It's over, so there's no risk of interfering with an ongoing state court proceeding --

THE COURT:  Right.

MR. WANG:  -- which is what abstention doctrines are about.  And, you know, to the extent their argument is, well, you should just, you know, respect a sister court's judgment in a state court, I suppose as a general matter, you know, I don't dispute that, but here there would be no disrespect to the D.C. Superior Court because the records are very different, right?

On that record, they were -- at the time of the debriefing at issue, they were pro se, they didn't even argue against the statements being nonactual opinions.  So the D.C. Superior Court Judge didn't even have argument before it on that issue

much less evidence.  And a different record, you know, naturally leads to a different result and the record here is very different and a different outcome even on the issue of actionability, whether they're opinions is in no way disrespectful to a sister court.

I think that's all I have, Your Honor, unless you have questions for me.

THE COURT:  I don't have any further questions.  Let me turn back to Mr. Rowley.

Mr. Rowley, are you there?  I was just going to give you any opportunity for any rebuttal.

MR. ROWLEY:  Sorry, Your Honor, I was on mute.

THE COURT:  Okay.

MR. ROWLEY:  Your Honor, very, very brief rebuttal.

Your Honor, the plaintiffs have done here exactly what they accused the defendants of doing.  They accused the defendants of making defamatory statements that have damaged their reputation.  They have done exactly the same thing in their public media campaign intended to smear reputations, and perhaps, this is speculation on my part, but perhaps also influence an eventual jury pool.

Your Honor, in doing so, they have cast themselves as limited public purpose people, and I would submit, Your Honor, in this case, now, what -- I would submit that many of the allegations in the Second Amended Complaint are simply not

defamation and not defamatory for the reasons that we've said in our papers.  They're either opinion or hyperbolic rhetoric.

But leaving that issue aside, Your Honor, I would submit to the Court that given the plaintiffs' behavior in this case they will have to prove that the defendants acted with actual malice under the New York Times standard.  And I would submit that the Court has the ability under Rule 201 to take judicial notice of these facts.  The plaintiffs do not contest that they made a series -- more than a series but multiple instances of Twitter statements.

For example, Your Honor, the plaintiff Liu's current Twitter statement, her heading says that she is writer, editor, translator, fighting a legal battle against rapist Wei plus support attorney Times Wang's representation by making contributions to Zelle.

So again, Your Honor, there's no controversy, there's no dispute about them making these multiple statements, and I think that at a minimum, Your Honor, they will have to prove actual malice in this case.

And, Judge, I think you're on mute.

THE COURT:  Thank you.

I did want to give you an opportunity to ask -- or answer the question, it would be substantively similar to what I asked Mr. Barger earlier with respect to statements being subject to a reasonable inference or a reasonable construction to these

statements that are matters of fact, that are demonstratively either false or can be proven either false or true.

You've presented the argument that all of these statements are statements of opinion and I guess that's possible, but in assessing the sufficiency of the plaintiffs' pleading, I'm to draw reasonable inferences in their favor. And I mean, I'm not quite sure how statements, for example, that a person is an agent of the CCP or a person is or is not someone else's biological father or a person is lying about that fact or lying about a prior sexual encounter or lying about a sexual assault, they all strike me as matters that are subject to at least a reasonable interpretation, that it's a statement of fact, that -- not a statement of opinion but a statement of fact that could be proven false. Do you have any response to that?

MR. ROWLEY: Your Honor, some of those statements, no question, come pretty close to the line. I would submit, though, that calling someone a liar is merely an opinion. And calling someone a possible agent of the CCP, as Mr. Barger has said, you know, is that necessarily defamatory, there are several billion people in the world who would say that that is not defamatory, that may even be complimentary. I may disagree with that, I may have an opinion about that, but it is not per se defamatory and --

THE COURT: Doesn't this complaint situate us within an audience that is comprised Chinese dissidents such that

association with the CCP would tend to subject that person to scorn or contempt?

MR. ROWLEY:  It may, Your Honor.  It may, Your Honor. I think certainly we believe that, as Mr. Barger indicated, that even without being able to prove that the plaintiffs or plaintiff Liu is, in fact, an agent of the CCP, we know, for example, that she worked for a newspaper in Hong Kong that is owned by the CCP, and it may very well be that case, Your Honor, that that's a matter of hyperbole and unprovable one way or the other.

In any event, Your Honor, and I'm sorry for not answering your question directly and moving to something else, but just to go back to this limited public person argument, we can -- you know, we can argue about those things and there'll be a time and a place to argue those things if the Court disagrees with our position with respect to whether or not those statements are, in fact, defamatory at this stage of the proceeding.

What I think is not really disputable, Your Honor, is the fact that the plaintiffs have made a series of allegations about both defendants that are of similar -- of similar nature to the ones that they allege in this case.  The Court has the ability, the authority to take judicial notice of those and to declare moving forward that this case at a minimum requires proof of actual malice by the plaintiffs against the defendants

irrespective of which particular defamatory statements remain in the case.

THE COURT:  All right.  Thank you, Mr. Rowley.

MR. ROWLEY:  Thank you, Your Honor.

THE COURT:  Now to Mr. Barger.  I'll turn back to Mr. Barger.

MR. BARGER:  Yes, Your Honor.  Thank you.

Let me, as I sometimes do, I'll start sort of at the back of the argument and work our way forward a little bit.

I know one of the issues the Court just addressed and then Mr. Rowley mentioned and Mr. Wang addressed was actual malice. If the Court looks at Paragraph 99, that's the one where malice is alleged, and my argument assumes that these plaintiffs are limited public figures and I'll address that in a little bit more detail, but I do think that's really undisputable that they're limited public figures.

Defendants made -- 99, "Defendants made these statements," there's no particularity as to which exact statement they're alleging with a level of intentionality, recklessness, malice, and bad faith that warrants punitive damages, that's purely conclusory and it is not sufficient as a matter of black letter law to plead malice that is required for limited purpose figures.

With regard to limited purpose figures, I know Mr. Wang tried to limit the Court's consideration of that issue to

his pleading, but as Mr. Wang noted, he claims the records in the Superior Court case and this are very different, but those are public records.  Those are subject to judicial notice.  And we are going to go back to address the Court's question in a little more detail, but we will also look back at the record and provide the Court with additional information to show you just how extensive the record was in that case and all the issues that were considered and raised by Ms. Liu and her daughter.  And specifically I'll go -- when I go back to the beginning of Mr. Wang's comments about the allegations in his Amended Complaint that the Court must assume are true, all of those are allegations that were made in the first case and they were issues that were known in the first case.

Mr. Wang claims that somehow the Court ought to factor into this that Ms. Liu and her daughter were pro se at the time the Court issued its opinion.  Going back to they claim that the record are very different.  We'll submit to the Court the pleadings that they submitted when they were pro se.  I don't know if they had someone helping them or not.  They were -- they were very good pleadings for someone who was allegedly pro se.

But, Your Honor, they've had at least three lawyers in the course of this litigation since 2019, and the last one that I recollect, Ms. Nguyen, Katerina, who was their lawyer during the discovery phase and the deposition phase, I forget the name

of her firm, but excellent firm, excellent representation, excellent brief writing.

So somehow the suggestion that they didn't get their day in court because they were pro se at a time is simply not accurate and the Court will need, we'd submit, to look at the record that we'll provide to you.  The records are very different but they're very different in our favor, not in favor of Ms. Liu that somehow warrants some consideration that she gets a break here, that she gets a second bite at the apple.

Going back to the Court talked about an example of, you know, is it re-publication and is there -- is there -- in Mr. Wang's argument which there's a separate -- there's a separate -- there's a separate cause of action each time you make the statement that was the allegation.  Well, the way they pled this case is they pled one count against Mr. Wei and added all of the allegations into one count.

THE COURT:  Well, we see that all the time.  That doesn't mean that the one count is a single cause of action. It just means for purposes of --

MR. ROWLEY:  Understood.

THE COURT:  -- organization and presentation, you know, it's a lot easier to do that than to list out 200, or in this case I guess they're alleging that there's about 1200 Tweets involved in the case, are they to put 1200 counts in their complaint?

MR. ROWLEY:  Well, not -- to be clear, not for Mr. Wang, right?

THE COURT:  I understand.  Yes.

MR. BARGER:  No, I understand your point, Your Honor, but my recollection is re-publication in a defamation may give rise to some additional damages.  You know, if I'm re-publishing to the same person over and over in the texting, there may be -- it may not give rise to additional damages but that's an issue for trial.

But the obvious response is, if I'm reTweeting the same thing and the same thing is not defamatory, it doesn't matter that I reTweeted it again.  And we come back to the only things that are alleged against Mr. Wei in this complaint are Paragraphs 87, 90, and then 92, and -- or 86 as well.  And in both 86 and 87, for the reasons I already said, there's no specificity as to who, what, when, where.  They generally allege time of December 2023 and, again, they don't say to whom these statements were made, they don't say what the statements were.  You have to basically give exact words.

And interestingly, they don't allege, especially if you look at Paragraph 90, they don't actually allege that Mr. Wei said she was an agent of the CCP or that they were agents of the CCP.  You know, it talks about in Paragraph 90 they mobilize people to spread rumors.  They don't say -- if we're going to be precise, which we have to be, there's not an

allegation that Mr. Wei said they're fraudsters.  For 92, it's would you want a liar for a daughter and throw in a fraudster mother, and we cited case law that shows that is basically opinion and for the reasons I already stated, the Court has already ruled on the substance of those as not being defamatory.  And I just -- I think it would be -- it would just -- if res judicata means anything, I think it applies here in this lengthy litigation that was fully, fully vetted.

And if I can briefly go back to -- I know you raised the question, Judge, about whether GoFundMe -- or the GoFundMe allegation would be sufficient to put them in the public realm.  I would submit it does, but it really doesn't matter because in light of Mr. Wang raising the record in the Superior Court and the fact that these are public documents capable of judicial notice, we'll supplement the record to show the Court it is indisputable, it will be indisputable that Ms. Liu started her campaign, as I recollect, before Ms. Huang started publicly Tweeting.  Ms. Liu had made this a public issue before that.

Now, I say that only because Mr. Wang, though tries to limit it to his brief because of the public record -- or the prior litigation, I do think the Court can consider that.

And then let me go back just a couple of more points, Your Honor, to respond to Mr. Wang.  At the beginning of his response, he said, you know, look at the Second Amended Complaint, you have to assume the accuracy of the allegation of

rape, assume that Charlotte is his biological daughter, assume that they knew there was a DNA test.  All of those are facts that were alleged the first time.  All of those are facts -- we're talking about roughly in 2000 and then subsequently before the first litigation was actually filed.  So he wants us to assume the accuracy of those but all of those are allegations that were vetted and litigated in the first case.

And let me just go to the side a little bit.  On the DNA, the allegation of there being a DNA test, I know this is a little out of record, I've never seen any results.  And Mr. Wang knows from making subpoena efforts that it doesn't exist, that he doesn't have evidence to prove this allegation. I don't think 23andMe exists anymore, putting aside whether that would ever be admissible and raised to the level of sufficient reliability to even be admissible.  The plaintiff knows that they can make that allegation but they don't really have a basis to make that allegation that they can prove, that that's just simply they know better.

And then the last point, Your Honor, in terms of the Carroll v. Trump, as we pointed out in our reply, those cases are distinguishable for a number of reasons that we address in great detail in the brief.  For example, the New York legislature passed a new statute that allowed the plaintiff there to bring a new cause of action I think based on the statute of limitations.  And secondly, the first case had not

even been litigated and there was no issue of res judicata in that particular case.  They are not -- they are not on the same footing.

I'm just looking at my notes, Your Honor.  I think that's it.  I'm sure I forgot something, but I don't want to belabor the Court's time, so thank you.

THE COURT:  I do want to follow up with an argument that Mr. Wang made with respect to actual malice, and as it relates to your client the allegation is that your client's aware of the 23andMe results that confirm his biological parentage of Charlotte and thereafter continued to accuse the plaintiffs of lying about that, and on top of and in connection with also alleging them to be working on behalf of the CCP and presenting that lie, would that be enough to show actual malice?

MR. BARGER:  Not in my opinion, Your Honor.  Going back to working on behalf of the CCP, I think we've moved the bar a little bit in terms of they're no longer an agent.  It's simply their actions, their actions further the goals of the CCP, which, for the reasons I said, I don't think that's even actionable aside from whether it's actual malice.  And --

THE COURT:  I'm not sure what do you mean by "working on behalf of," but I can understand --

MR. BARGER:  Your Honor, the "on behalf of" is in Paragraph 86 which, again, lacks specificity.  There's no -- if

you look at Paragraphs 90 -- really it's Paragraph 90 is the lengthy Tweet, right?  So they have -- and so they're quoting exactly, which is what you need to do for defamation, there's no allegation that they're working on behalf -- on behalf of.  It's slightly different.  A lot of people specify were mobilized by the CCP.  But I've hit that as best I can, Your Honor.  I understand -- I understand the Court's point.  And now, I apologize, I forgot.  Oh --

THE COURT:  It was about malice.

MR. BARGER:  The DNA test.

THE COURT:  Yes, right.

MR. BARGER:  DNA test.  The DNA, the 23andMe is not a paternity test.  Again, I understand that -- what they want to argue, but putting aside whether it would even be admissible, putting aside whether you even have it, which they don't, neither one of us do, because that was litigated the first time around.  It was, you know, discovery was engaged in the first time around on that issue.  Nothing -- nothing was produced. So I don't understand how they can make the vague allegation that they do when they know it's not provable and it's not -- no one has anything.

But putting aside a DNA test, whether we have similar history, is not a paternity test.  I don't -- to answer the Court's question, I don't think that allegation is enough to rise to the level of sufficiently pleading actual malice.

THE COURT:  All right.  Well, thank you all.  We've been going for about an hour and 15 minutes at this point. We'll take a brief recess before hopefully I'll be in the position to rule on the motions to dismiss and then if necessary move on to the Rule 35 motion.

We'll take a recess for ten -- well, let's just say, it's 11:17, we'll take a recess until 11:30.

MR. BARGER:  Thank you, Judge.

MR. ROWLEY:  Thank you, Your Honor.

(A recess was taken from 11:17 a.m. to 11:31 a.m.)

THE COURT:  All right.  We are back in session.

Let's see here.  So I have two motions to dismiss are pending in this case, one from each of the two defendants, Huang and Wei.

Now, as to defendant Huang, she appears to be proceeding primarily on the argument, the arguments that are being presented here would require the Court to revisit and reconsider at least portions of its prior decision denying her previous motion to dismiss and the reasons stated for that decision in the Court's oral ruling at a hearing made last June.

I reject that argument.  The Court previously ruled on that First Amended Complaint by finding that it stated a plausible claim for defamation under either Maryland or D.C. law, and that ruling will stand.  The only issues this Court

will consider anew in ruling upon the now-pending motions to dismiss are whether or not the newly added allegations support plaintiffs' defamation claim against Huang and whether in the context of all the other allegations they state a plausible defamation claim against Wei, who is the newly added defendant.

So first, I'll note that I'm going to decline to reach the question of whether the plaintiffs are public figures or limited public figures at this stage. First, defendant Huang's public figure arguments may be set aside under Rule 12(g)(2) because these arguments were not raised in the prior motion to dismiss. But obviously Mr. Wei had an opportunity to present the same arguments so I will address them on the merits.

I would decline to reach the issue of whether they are public figures at this stage from the face of the Second Amended Complaint drawing all reasonable inferences in the plaintiffs' favor. They don't -- the pleading does not establish that they are public figures. There's a two-part inquiry that's used to determine "whether a defamation plaintiff is a limited purpose public figure, first was there a particular public controversy that gave rise to the defamation; second, whether the nature and extent of the plaintiff's participation in that particular controversy was sufficient to justify public figure status."

That's the Foretich case from the Fourth Circuit, F-o-r-e-t-i-c-h.  The citation is 37 F.3d 1541.  It's a Fourth

Circuit case from 1994.

Now, that case stated that courts have proceeded upon the initial presumption that the defamation plaintiff is a private individual subject to the defendant's burden of proving that the plaintiff is a public figure to whom New York Times v. Sullivan and the standard announced in that case applies.

The Fourth Circuit has identified five requirements for a defendant to meet in order to establish that a plaintiff is a limited purpose public figure, and I think that two stand prominently to this Court.  Those two are that the plaintiff voluntarily assumed a role of special prominence in a public controversy; and that the plaintiff sought to influence the resolution or outcome of the controversy.

Now, in this context the public controversy means it's -- well, I'll first say what it doesn't mean.  It's not simply a matter of interest to the public.  It must be a real dispute, the outcome of which affects the general public or some segment of the general public in an appreciable way.

On the face of the Second Amended Complaint, accepting all well-pleaded facts as true, the Court cannot conclude that the plaintiffs are public figures.  Specifically, the Second Amended Complaint does not establish that the factual disputes at issue in the allegedly defamatory statements constitutes a public controversy that has foreseeable and substantial ramifications for persons beyond its immediate participants, or

affects the general public or some segment of the general public in an appreciable way.  And the Second Amended Complaint does not establish that either plaintiff in this case "voluntarily assumed the role of special prominence in any public controversy."

To the contrary, the plaintiffs allege in Paragraph 60 of the Second Amended Complaint that they are not public figures and earlier in the complaint in another paragraph cited to the Court, they stated that they never intended essentially for the matter to become a public matter.

The defendants dispute that claim while citing to defendant Huang's answer and counterclaim.  It would be improper for the Court to accept and consider the defendant's pleading in deciding the sufficiency of the plaintiffs' pleading.  In any case, even if the Court were to consider defendant Huang's pleading, the Court cannot resolve factual disputes in the parties' pleadings at the motion to dismiss phase.

A second question was raised as to whether or not I can consider plaintiff Liu's GoFundMe page.  I don't think it would be proper to do so because that webpage is not incorporated into the pleading nor integral to their claims, but even if I could and I did consider that webpage, I don't find that it moves the needle as to whether the plaintiffs are public figures.  That webpage does not establish definitively that the

plaintiffs inserted themselves into a matter that has foreseeable and substantial ramification for persons beyond its immediate participants or that it affects the general public in any way.  So that issue is being set aside.

The parties I expect will brief and gather evidence to support the proposition one way or the other in connection with summary judgment briefing, but it's not a matter for the Court to consider at the motion to dismiss phase.

So turning to the substance of the claims, to state a claim for defamation under D.C. law, a plaintiff must allege and prove four elements:

That the defendant has made a false and defamatory statement concerning the plaintiff; that the defendant published the statement without privilege to a third party; that the defendant had -- the defendant was at fault in publishing the statement that amounted to at least negligence; and either the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm.

The elements are substantially similar under Maryland law. Under Maryland law, a plaintiff must establish that the defendant made a defamatory statement to a third person, that the statement was false, and that the defendant was legally at fault for making the statement.  Again, the negligence standard applies there and that the plaintiff thereby suffered harm.

A defamatory statement is one which tends to expose a person to public scorn, hatred, contempt, or ridicule thereby discouraging others in the community from having a good opinion of or associating with that person.  That's under a Maryland case and I believe the D.C. law is consistent with that proposition.

Here, the plaintiffs allege that from 2019 to the date that the Second Amended Complaint was filed that the defendant Huang carried out a campaign of defamation, libel, and harassment against the plaintiffs principally on Twitter, including statements that the plaintiffs' allegations concerning Mr. Wei having sexually assaulted Heather, the plaintiff Heather, and fathered the plaintiff Charlotte that those statements were false and that the plaintiffs are liars and that the plaintiffs are agents of the Chinese Communist Party and the plaintiffs are engaged in a fraud in connection with their allegations against Mr. Wei, that plaintiff Heather was sexually promiscuous or a sex worker and that the plaintiffs belonged to a criminal gang or conspiracy and that the statements that the plaintiff Heather wrote -- or statements that the plaintiff Heather wrote love letters to Mr. Wei.

The Court has already ruled that at least some of those statements, perhaps most of the statements identified in the Second Amended Complaint and in the First Amended Complaint are

capable of defamatory meaning, that is drawing all reasonable inferences in the plaintiffs' favor that could be interpreted by their audience as being statements of fact that could be true or false and capable of exposing the plaintiffs to public scorn, hatred, contempt, or ridicule thereby discouraging others from associating with them or having a good opinion of them.

In the Second Amended Complaint, the plaintiffs add allegations that the defendant Huang continued making statements of the same nature after the First Amended Complaint was filed, including on May 8th, 2024, when she stated on Twitter that the plaintiff Heather wrote a love letter to Wei and then on May 10th, 2024, defendant Huang Tweeted that a court declared that Zhang Meng was Charlotte's biological father and then on August 22nd, 2024 defendant Huang reTweeted an accusation that the plaintiffs were liars and CCP agents.

The plaintiffs contend that all of these statements are false.  Again, the Court is not revisiting its prior ruling. The question of whether or not the new allegations support or somehow undermine the plaintiffs' claims against Huang is the question that I'm faced with now, and I find that the new allegations do not undermine the claims against Huang.

To the contrary, the statements tend to support or bolster claims against Huang, and for all the reasons the Court detailed in its oral ruling on June 5th, 2024, I find that the

defamation claim will survive the motion to dismiss as it relates to the defendant Huang.

Specifically, for example, the statement that the plaintiffs are CCP agents plausibly tends to expose the plaintiffs to scorn within the community of Chinese dissidents that the plaintiff has claimed that they and the defendants are all a part of. For purpose of deciding the defendants' motions to dismiss, I reject the defendants' arguments that such plaintiffs are -- such statements are benign. The love letter statement and the statement about Charlotte's biological parentage tend to undermine the plaintiffs' credibility in the same community. Drawing reasonable inferences in the plaintiffs' favor and accepting their allegations as true, such statements are capable of defamatory meaning and are plausibly defamatory.

Now, moving on to defendant Wei's motion to dismiss, the Second Amended Complaint does add Wei as a defendant and alleges that he made certain defamatory statements. Defendant Wei has moved to dismiss the defamatory -- or the defamation claim. That motion will be denied for the reasons stated in the order granting leave to amend, which is at ECF Number 61, specifically Pages 5 through 8.

Now, contained within those pages of my prior order, I address substantially the same argument being presented here as to res judicata. And the law as it relates to res judicata is

detailed in that order.  Specifically, to establish res judicata, three elements must be present:

First, the judgment on the merits.  There was a judgment on the merits in a prior suit resolving claims by the same parties or their privities, and the subsequent suit was based on the same cause of action.  The determination of whether the two suits arise out of the same cause of action turns on whether the suits and the claims asserted therein arise out of the same transaction or series of transactions or same core operative facts.

The defendant Wei identifies similarities in the defamatory statements alleged in a prior suit and those alleged in the present suit in the Second Amended Complaint.  However, the defamation alleged in the prior suit occurred in September of 2019 when Wei was alleged to have made statements to other persons at an apartment in Washington D.C.

Mr. Wei obtained summary judgment on that defamation claim asserted in the D.C. case based on findings by the D.C. Superior Court that the plaintiffs failed to produce sufficient evidence that the statements were actionable.  In contrast, in this case in the Second Amended Complaint, the defamatory statements attributed to Mr. Wei occurred in December of 2023 and July of 2024.  The alleged December 2023 defamation occurred at a dinner to a different group of individuals than those alleged in the prior suit.  And, of course, the July 2024

alleged defamation occurred on Twitter.

It does not even appear that the contents of the statements alleged in this case in the Second Amended Complaint are the same as those alleged in the prior suit. In addition to that, given the four-year distance in time between the defamation alleged in the prior suit and that alleged here, the Court cannot find that these claims arise out of the same transaction or series of transactions or same core operative facts, so I do not find that res judicata applies.

Now as to the statements themselves and whether or not they are defamatory, meaning the statements are attributed to Mr. Wei in the Second Amended Complaint, they include statements that he made to several members of the Chinese dissident community that the plaintiff Heather's allegations of rape were false and that she was a liar for making those allegations and that she was acting on behalf of the CCP in doing so, and then it's alleged that at various times in 2023 that defendant Wei told a member of the Chinese dissident community that plaintiff Heather, her claims that Wei was Charlotte's biological father were false and that she was acting on behalf of the CCP.

The defendants argue that denial of rape allegations is not defamatory. He challenges the paternity based on statute of limitations and the fact that they were disposed of with prior litigation and that the CCP statements constitute

rhetorical hyperbole and are essentially statements of opinion or imaginative expression.

But the question is not whether or not as to -- as it relates to denial of rape allegations. The question is not whether or not denial of rape allegations can be defamatory. The question is whether calling the plaintiff Heather a liar and accusing her of working on behalf of the CCP and other similar statements are defamatory.

And as it relates to accusations that she's a liar, they are made in connection with specific statements that she made with respect to having prior sexual encounters with Mr. Wei and having her daughter fathered by Mr. Wei. Drawing reasonable inferences in the plaintiffs' favor, I find that such statements are capable of truth or falsity and that they are plausibly defamatory, at least within the context of the community of Chinese dissidents as alleged in the Second Amended Complaint and noted by me earlier.

All right. Now, other elements of the plaintiffs' defamation claims are clearly satisfied by the Second Amended Complaint. Many of the statements were made on Twitter, an online platform accessible to many. Others were made directly to third parties. The plaintiffs have alleged sufficient facts that the defendants published damaging falsehoods without exercising reasonable care to confirm that the allegations were credible -- let's see -- and the defendants were legally at

fault in making those statements so it would satisfy elements under both D.C. and Maryland law.

And in addition -- one moment -- at least some of the statements are defamatory per se.  But in addition to that, the plaintiffs have alleged that they have lost reputation and standing in their communities, they have suffered extreme anxiety, distress, and humiliation, it degraded their sense of dignity, they suffered financial harm, including lost employment opportunities, as well as out-of-pocket expenses, seeking medical care, and specifically that plaintiff Heather alleges that it's considerably more difficult for her to make a living as a journalist and a writer with her reputation for honesty having been attacked.  So there are actual harms that are alleged in this case such that even if the statements alleged are not defamatory per se, she can still assert a plausible cause of action for defamation based on those statements.

So for all of those reasons the Court finds that the plaintiffs have adequately pleaded claims of defamation against both defendants.

Now, turning to defendant Huang's motion to dismiss the false light and intentional infliction of emotional distress claims, I find that those arguments are subject to being set aside under Rule 12(g)(2) of the Federal Rules of Civil Procedure.  As a general matter, a party that makes a motion

under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion. And defendant Huang did not substantively attack the false light and IIED claims in her prior Rule 12(b)(6) motion, so the Court may set aside the arguments that are made in the new motion attacking those counts.

But alternatively, the arguments may be rejected on the merits. The plaintiffs have adequately pleaded a cause of action for false light against defendant Huang. The tort of false light, invasion of privacy occurs when one gives publicity to a matter concerning another that places the other before the public in a false light if the false light in which the other was placed would be highly offensive to a reasonable person and the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed. An allegation of false light must meet the same legal standards as an allegation of defamation. So I find that the false light claim here would survive a motion to dismiss and it may be sustained for the same reasons as the defamation claim against defendant Huang.

Now, turning to the IIED claim, to state a claim for IIED, a plaintiff must allege extreme and outrageous conduct on part of the defendant which intentionally or recklessly causes a

plaintiff to suffer severe emotional distress, and that's D.C. law.

To bring such a claim in Maryland, the plaintiff must allege that the defendant's conduct was intentional or reckless and that the conduct was extreme and outrageous and that there was a causal connection between the wrongful conduct and the emotional distress and the emotional distress was severe.

Liability has been found where the conduct has been so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community. Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.

Now, here the plaintiffs allege that defendant Huang engaged in a prolonged social media campaign against them spanning years and involving well over a thousand public posts on social media.  Further, the posts that are identified and described in the Second Amended Complaint directly attack the plaintiffs, their character, and their reputation.

The defendant Huang posted these statements repeatedly and to a large number of social media followers.  The activity alleged in the Second Amended Complaint is plausibly intentional, meeting the first element of the IIED claim.

Second, the plaintiffs allege that defendant Huang purposefully, carelessly, dishonestly, and benevolently

launched a protracted public campaign to discredit the plaintiffs as dishonest and obscene con artists and alleged that the plaintiffs are conspiring with the CCP to discredit them as pro-democracy activists.  The plaintiffs further allege that the statements were deliberately insulting and calculated to inflict emotional distress.  The plaintiffs allege that the misconduct goes well beyond the bounds of decency.

Accepting the facts in the Second Amended Complaint as true and drawing all reasonable inferences in the plaintiffs' favor, the Court finds that given the very large volume of public posts that defendant Huang made or allegedly made in this case that that conduct is plausibly extreme and outrageous.

Next, the plaintiffs allege that this conduct by defendant Huang caused the plaintiffs emotional distress that was severe and there was a causal connection between the wrongful conduct and that emotional distress satisfying the remaining elements of the IIED claim.

So for those reasons but also on Rule 12(g)(2) grounds, the motion to dismiss as to the IIED claim will be denied, and I think that handles all issues presented in the two motions to dismiss.  Both of those motions will be denied.

Before moving onto the other motion, I wanted to check with counsel whether there's any need for clarification, and I'll begin with you, Mr. Barger.

MR. BARGER:  Sorry, Your Honor.  Nothing comes to mind.

THE COURT:  Okay.  Thank you.  Mr. Rowley?

MR. BARGER:  I'm assuming we'll see a written order along the lines of what you read so I can -- I can digest it but, otherwise, I can order a transcript but nothing comes to mind.

THE COURT:  Right.  So it would not be an order as detailed as I just gave.  I'll rely upon my oral ruling for which you can request a transcript, of course.

MR. BARGER:  Okay.  That's fine.  Thank you, Judge.

THE COURT:  Mr. Rowley?

MR. ROWLEY:  Nothing further at this time, Judge.  Thank you.

THE COURT:  Mr. Wang?

MR. WANG:  None.  Thank you, Your Honor.

THE COURT:  Okay.  Now, Mr. Wang, you filed a motion to compel a Rule 35 physical examination.  I'll hear you out if you have oral argument on that motion.

MR. WANG:  Thank you, Your Honor.  I think the briefs, I don't really have that much to add beyond the briefs, except that I think several of Mr. Barger's arguments in this hearing bolster why the motion should be granted.  He severely attacked the fact that we haven't been able to get the 23andMe DNA tests but that -- that's true, we haven't been able to.  We

have subpoenaed the former Clinton Administration official for those who did the test, who told our clients he did the test and said that the results showed biological fatherhood and we haven't been able to get them. We've subpoenaed the 23andMe and they haven't produced it either.

And, you know, given that, as Your Honor recognizes, biological fatherhood is a pretty important issue in this case, all that underscores why granting this motion for Mr. Wei to take a DNA test is exceedingly appropriate.

I will add that, you know, Mr. Barger seems to have argued that we are -- that because -- that we are somehow acting in bad faith by alleging that a DNA test was performed given via 23andMe and that given that we haven't been able to obtain it, that, Your Honor, the -- as we said in our Rule 35 motion and in the complaint and it's also in the record at Docket 84-4, we're not just making this up.

You know, a former senior Government official, a high-ranking official in the Clinton Administration, intelligence officer e-mailed, told our client, asked our client, asked the plaintiffs to provide a DNA sample and then -- and they did and then he's very close with Mr. Wei, told our clients that he got a sample from Mr. Wei, did a test and that it showed a positive result.

I don't know, you know, how he can accuse of -- accuse us of bad faith in alleging that the test was, in fact, performed

and that it did show the results that Mr. Suettinger said it showed.

THE COURT:  Thank you, Mr. Wang.  I think it will be Mr. Angle; is that correct?

MR. ANGLE:  Yes, Your Honor.  Thank you very much.

Your Honor, I guess I'll start, you know, and I don't want to regurgitate a lot of what Mr. Barger said because some of the arguments do overlap, and I understand and appreciate the Court's explanation of its ruling on our motion to dismiss.

However, one of the reasons why this motion should be denied is because it should be barred by the collateral estoppel doctrine.  And even though I understand Your Honor's ruling as to res judicata of the cause of action, collateral estoppel, which is a subset of res judicata, still applies to this request under Rule 35 because we have exact same parties, it is the exact same issue.

So I understand while Your Honor's reasoning is that there's a new defamation cause of action, this request is identical.  It is under Rule 35.  It's a request for a paternity test in connection with this defamation claim.  And even though as a subsequent cause of action as you've just determined really the substance and the context and the content of what we're talking about is still substantially identical. It's accusing the plaintiffs of being liars, you know, working on behalf of the CCP.

This is exactly what the Court in D.C. had ruled on, and the D.C. Rule 35 is identical to the federal court rule.  The D.C. courts look to and rely on federal law when interpreting its rules.  And so -- and then the last element of collateral estoppel is, you know, did the parties have a full and fair opportunity to litigate the issue.

Your Honor, this issue has been extensively litigated.  It was, you know, and as Mr. Barger mentioned, the plaintiffs, I believe Mr. Wang is their fourth attorney, third or fourth attorney in this case, and so while all plaintiffs were still represented by counsel at the time in the D.C. case, this issue was briefed in the federal court at the District Court level and then we were remanded before we got a ruling from the federal court, but then it was briefed again in the Superior Court level, the Court ordered supplemental briefing on the issue which we provided.  After the Court ruled in our favor, the plaintiffs filed a motion for reconsideration which was briefed again.

And what the D.C. court found was that, and what this court, what you should find, Your Honor, is that Rule 35 has never been expanded this broadly to award a paternity test in a defamation case.  And I'll go through some of the examples that the plaintiffs have pointed to, but it's really that simple.  This is not a sexual -- even though obviously there's allegations of sexual assault, which, you know, came for the

first time when we were more than a year into the first lawsuit, this is not a case where liability is based on sexual assault.  It just isn't.  It's a defamation case, and Rule 35 has never been used to order a paternity test under those types of circumstances.

You know, the plaintiffs point to the Carroll versus Trump case as basically one of the leading cases that they are showing as look how similar this is this.  This court should not look to Carroll-Trump or use that case as any sort of -- you know, give it any deference whatsoever.  One, it was not a paternity issue in Carroll versus Trump; number two, there was no Rule 35 request for any sort of physical examination in Carroll versus Trump, so already it's completely irrelevant to your analysis of this motion.

THE COURT:  Can I just stop you, Mr. Angle?  I think the reason that they're citing that case is because it stands for the proposition that ultimately plaintiffs in this case are going to have to prove that there was a sexual encounter and that Charlotte is the biological child of Mr. Wei.  That's I think -- I think that's what I understand the proposition that they're citing the case for, and if they have to prove that, if they have a burden of proving that and this examination or the results of this examination will either tend to support them in their factual proposition or discredit them, then that makes it discoverable.

MR. ANGLE:  Thank you, Your Honor.  And I understand -- I understand their argument.  It's wrong for a few reasons.  The major difference in Carroll versus Trump and as Mr. Barger explained was that while the defamation case was going on, the New York Legislature passed a law specifically -- and many people speculated it was specifically to go after Trump, but they passed a law to reopen basically a lookback window and start a fresh one-year statute of limitations period so that past sexual abuse victims could sue for liability with a cause of action based on sexual abuse.  So they passed this law, they gave it a brand-new window, said -- well, I'm not saying so, but which enabled Ms. Carroll to then file a second claim which had a cause of action for liability for sexual assault.

So it was through that mechanism that in that case they were able to litigate sexual assaults, which, once they had the -- so that's how they were able to get around that.  We don't have that here.  We don't have a lookback statute or any sort of cause of action that is actually based on alleged sexual assault.  This is defamation and, you know, this paternity test is actually -- it really -- this speaks to whether or not this is truly in controversy under Rule 35 and obviously it's a controversial issue and it's in, you know, controversy in the court of public opinion, but it really is not truly in controversy within the meaning of Rule 35 in this

case because if it's -- regardless of the outcome of any paternity test, it doesn't actually prove or disprove any of the alleged defamation that is being accused -- you know, Mr. Wei's being accused of.

It will, obviously, if Mr. Wei is determined to be the father, all it will prove is that him and Ms. Liu had sex in 2000.  It certainly does not prove or disprove that a rape -- and if he's not the father, it doesn't disprove that they had sex, it doesn't prove or disprove certainly if there's a rape that occurred, it does not prove one iota either direction, other than obviously if he's the father it would mean they had sex, which, of course, we will allege, you know, present evidence that it was fully consensual if it occurred.  But it's not dispositive of the claim, certainly, and it really doesn't even -- and one other important piece, Your Honor, is defamation --

THE COURT:  Before you move on to the other point, does it have to be dispositive?

MR. ANGLE:  No, Your Honor, it does not have to be dispositive.  Although, in all of the cases where a Rule 35 has been used to get a paternity test, it was a critical issue to the claim at hand.  I mean, it was issues where you have a prisoner who alleged that he impregnated a prison guard.  Well, if he's the father and that proves that any sex occurred, consensual or otherwise, that's a Class E felony on the part of

the prison guard.  Similar situation, you had a patient in a mental hospital where if any sex occurs between the worker at the hospital and the patient, that was a violation of the sexual assault statute in Wisconsin.

Two other cases where it was a doctor who worked for an insemination practice and the doctor was accused of basically fraudulently using his own sperm to impregnate the woman, well, if he's the father, that was, you know, key evidence to -- that established medical malpractice.

This is so far removed from that.  Now, none of those cases are defamation cases.  And here, if he's determined based on this Rule 35 exam in, you know, 2025 or '26 or whenever that occurs, that speaks nothing to Mr. Wei's intent and his knowledge at the time he made these statements.  They can make their argument about this Rule -- you know, 23andMe test, you know, I know Mr. Wang has talked about how they're having a hard time getting it.  They haven't filed a motion to compel under any of their subpoenas.  They haven't actually done anything other than serve the subpoena and say, well, we didn't get anything.  But if that's what they're basing their defamation claim on, then that should be their evidence.  Go to 23andMe, go find those test results, you know, go track those down.  But Mr. Wei has not put his own mental and physical condition into the center of this case and --

THE COURT:  He's denying that the statements are

false and among the statements that he's alleged to have made is that one or both of the plaintiffs were lying in asserting that he was the biological father of the other plaintiff.

MR. ANGLE:  Your Honor, I think it's way different to just -- anytime someone gets alleged to be the father or rape if you deny it then that opens you up to a Rule 35, I don't think that's the law.

You know, typically, Rule 35 -- and I'm not saying it's limited to this, but most typically Rule 35 exists when a plaintiff puts their own mental condition or physical condition into the case and then the defendant can examine them.  That's way different.  Again, I'm not saying it's limited to that, but that's most typically what Rule 35 is there for.  It can't be the law that if you get accused of rape or fathering a child you can deny that and then that opens you up to defamation and being forced into a paternity test.

And, you know, one of the -- you know, Mr. Wei is an individual who was in prison in China for nearly 20 years as a political prisoner.  He's extremely sensitive about his biologic -- and he really doesn't want to have to be forced to submit to a DNA test that he doesn't believe he should have to do.  I mean, and that's really we are compelling him to turn over his biological information that he didn't put himself out there, he didn't approach Ms. Liu and allege that he is the father of this child and that he's got, you know, Ms. Liu's --

Charlotte's his daughter.  It's the other way around.  And basically the plaintiffs are trying to get another bite at the apple, which we've already fully litigated and had a ruling from the D.C. court on and use this as a backdoor mechanism to litigate this issue really for the court of public opinion more than anything else.  And that's not what Rule 35 is designed to be, and the Court should not expand Rule 35 in this context.

There's not been a single case that I can find where a paternity test had been ordered in a defamation case under Rule 35, and I don't believe this court should be the first to do so.

THE COURT:  Do you agree that part of their burden will be to prove, if they're proceeding on with the defamation claim based upon statements by Mr. Wei, the plaintiffs are lying as to Charlotte's biological parentage, they're going to have to prove that that statement was false, correct?

MR. ANGLE:  Well, given how -- somewhat vague the alleged defamation is, I don't know if that's the case, but even still -- the other issue that we haven't talked about yet is that Charlotte has a legal father, Meng Zhang.  Ms. Liu was married at the time of conception, at the time of Charlotte's birth.  He's listed on her birth certificate as the father.  And that is never -- under Maryland -- under either D.C. or Maryland law that issue has been foreclosed, but at least in Maryland the typical process is you have to then rebut the

legally presumed father before you can challenge paternity for someone else.  That has never been done.  There's zero evidence that Meng Zhang is not Charlotte's father and as a matter of law he is her father.

So the statement at the time the alleged defamations were made is correct based on everything we really know.  And as a matter of law, Meng Zhang is the father.  It was determined they were married.  So a paternity test that we have years later does nothing to speak to whether or not Mr. Wei, you know, knew or should have known otherwise when he's making these alleged statements.

And so again, this is an attempt to relitigate and sort of backdoor a way to litigate the sexual assault that, you know, allegation that has come up now without a real mechanism for doing so, and this Court really -- it should -- if it doesn't find that you're precluded from ruling on this under the doctrine of collateral estoppel, I think you should still rule on the same lines and find that it would be too broad of a stretch to interpret Rule 35 in order to force Mr. Wei to submit to a paternity test in this context.

THE COURT:  I do want to back up to your collateral estoppel argument.  I'm not sure that I saw -- I'm not sure that I saw an argument from you that the decision with respect to the request for a Rule 35 physical examination in the prior litigation was critical or necessary to the ultimate final

judgment rendered in that case.

MR. ANGLE:  Thank you, Your Honor.  I did skip over that point.

So the In re: Microsoft case that the plaintiffs cite I think is particularly helpful in understanding.  So there the Fourth Circuit talks about the difference between offensive and defensive collateral estoppel.  And basically an offensive collateral estoppel, that's a plaintiff trying to say that a defendant is precluded from, you know, relitigating or challenging some prior determined issue of fact or law.

In the Microsoft example, the Government, the Department of Justice had investigated Microsoft for antitrust violations and made certain factual findings, and then some private plaintiffs essentially tried to adopt those factual findings to establish liability from the outset against Microsoft.  And the Court emphasized how under offensive collateral estoppel, which that would be, you know, the prior ruling has to be critical and necessary to the underlying judgment.

And so it didn't actually find that the use of collateral estoppel was wrong in that case but it remanded to make sure the court was looking at it under that lens and it emphasized how you really want to -- the Court has broad discretion, but the Court is encouraged not to exercise that discretion to preclude a defendant where it's really going to prejudice the defendant from rechallenging issues in a case.  But here that's

not a concern.

And another piece on that is that on the one hand, you know, defendant -- or plaintiffs are arguing that this paternity test is critical, it's central, this is what the whole case is about, but then on the other hand they say, oh, that was just a discovery ruling, it was an incidental ruling, it doesn't really matter. I don't see how both of those things can be true. And they point to cases where courts talked about discovery rulings. I think this is a little bit different than a discovery ruling where a court finds, hey, you know, in response to a document request, I don't think these documents are relevant, they don't have to be produced. This is way different because we're not just limited to Rule 26 relevance and if something's discoverable. There's a heightened standard under Rule 35 and that's the, you know, is this truly in controversy for the causes of action at issue and is there good cause.

And so this isn't just an ancillary discovery ruling that should be tossed aside. This was a heavily briefed, you know, hotly litigated issue that the party -- actually, we briefed this issue for years and got a ruling from the courts on that I think should be respected.

And so collateral estoppel does apply. Again, if they're arguing this is so critical, how is it not -- how is that ruling on this issue not central or necessary to their cause of

actions in the first case.  I struggle to see how those two things can be consistent.

THE COURT:  All right.  Let me turn back to Mr. Wang.

MR. WANG:  Thank you, Your Honor.  So the reason is that it's not -- it wasn't essential to the D.C. Superior Court's judgment is because the D.C. Superior Court actually did not even analyze, like, the interaction between sexual assault, DNA, you know, and how that affected its judgment on the defamation claim.  I mean, it just -- you know, it just wasn't even relevant to its judgment on the defamation claim.

Now, if it had ruled that I find that no sexual assault occurred and therefore Wei's statements are true and therefore I am rendering judgment in his favor, then I can see Mr. Angle's argument being a bit stronger, but that's just not what happened.

Instead, it just said you don't get a DNA test because I think, you know, you should try to get a DNA test in the D.C. Family Court or just I don't want to order a DNA test here.  That -- I don't think any court has ever -- that that kind of discovery ruling qualifies for collateral estoppel.  I'm also not aware of any authority that says the requirement that the prior ruling be essential only applies in offensive collateral estoppel.  So I don't think that distinction makes a difference here.  In fact, I think this is simply a discovery ruling, and some courts think that collateral estoppel doesn't apply to

discovery rulings at all. I've certainly not found any case where the Court denied a discovery motion in a subsequent litigation based on the denial of a discovery motion in an earlier litigation under the doctrine of collateral estoppel.

THE COURT: All right. Thank you. I'm sorry, was there anything else you wanted to argue?

MR. WANG: Just, you know, I mean, the -- in terms of Carroll versus Trump and the sexual assault tort liability statute, there was also a defamation claim in that case, of course, and just there, whether a sexual assault had, in fact, occurred was obviously highly probative of the truth or falsity of the defamation claim. And, you know, whether there's tort liability that comes with that sexual assault or not is neither here nor there for the purpose of the in-controversy analysis.

And then one thing that I wanted to address, Mr. Angle said that, you know, the DNA test would not go to intent at the time that he made the statements but, you know, there's no support for the proposition that the DNA test has to go to every single element of a claim. I mean, that's just not the standard. And it definitely does go heavily to truth or falsity. So I don't have anything other than that, Your Honor.

THE COURT: Okay. Thank you.

MR. ANGLE: I know it's not my motion -- I know it's not my motion but can I just respond to one point briefly?

THE COURT: All right.

MR. ANGLE: Just in response to Mr. Wang's statement that essentially the D.C. Superior Court didn't, you know, give reasoned analysis of its ruling, I wholeheartedly disagree with that. The Court, you know, this issue was briefed extensively. The Court ordered supplemental briefing on it. And there is in multiple orders, there's two orders on this issue where the Court explains its reasoning in denying this prior motion under Rule 35 and particularly saying that it would be too broad of an expansion of Rule 35, so I just wanted to make that point, but that's it.

THE COURT: Well, while I have you, I might as well ask you for a followup based on one thing that Mr. Wang just said with respect to the offensive versus defensive collateral estoppel.

I didn't understand the distinction -- I didn't understand the distinction between those two to bear on whether or not the issue had to be critical or essential to the final judgment. You seem to be making that argument and I don't think that the -- I just pulled up a copy of the In re: Microsoft case, I don't think it says that. I mean, there is a discussion about offensive collateral estoppel in it, but that discussion is largely subsequent to the Court laying out the main elements of collateral estoppel which include the element that I'm talking about irrespective of whether it's defensive or offensive.

MR. ANGLE: Yes, Your Honor, and I apologize if I

came across as suggesting that, you know, you don't ever have to look at if it's, you know, necessary if it's defensive. That wasn't what I was trying to suggest.

But because the Court has discretion is really the point, the Court has broad discretion when applying collateral estoppel, and the Court, when it's offensive collateral estoppel, is really guided to use that discretion, you know, very lightly and is sort of encouraged -- or I should say discouraged from applying collateral estoppel more so than offensive because the concern is that you're going to prejudice the defendant.  But defensiveness collateral estoppel like we're asserting doesn't have -- there's not that emphasis to, you know, protect against a defendant not being able to challenge facts or prior legal issues to preclude themselves from liability.

So I'm not arguing that the necessity requirement doesn't exist, but the Court has much broader discretion to apply it here where it's defensive collateral estoppel.  And again, here, if their argument on this is so critical that they have to -- they need this in order to prove their case, I don't see how it can not be a necessity if it speaks to the central part of the claim as they're now arguing.

So, Your Honor, you have the discretion to apply it in this case and I think you should do so.

THE COURT:  Okay.  Thank you, Mr. Angle.

MR. ANGLE:  Thank you.

THE COURT:  I'll address that collateral estoppel issue first.

The defendants are asserting that because the plaintiffs' motion for DNA testing filed in previous litigation was denied by the Court in that case, that is the D.C. Superior Court I believe, or one of the courts in D.C., the doctrine of collateral estoppel precludes DNA testing or compelling DNA testing of defendant Wei in this case.

A party invoking collateral estoppel must establish that "the issue sought to be precluded is identical to one previously litigated; second, the issue was actually determined in a prior proceeding; third, the issue's determination was a critical and necessary part of the decision in the prior proceeding; and fourth, the prior judgment is final and valid; and fifth, the party against whom a collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the previous case."

There's several authorities to cite for that proposition. I could cite the Fourth Circuit decision in Collins v. Pond Creek Mining Company from 2006, but there's several other cases that establish those elements.

In invoking this doctrine, "the burden is on the party asserting collateral estoppel to establish its predicates," and the Fourth Circuit case Allen v. Zurich Insurance Company from

1982.

The defendant Wei has failed to show that the issue here whether to compel DNA testing was a critical and necessary part of the decision in the prior proceeding. A ruling on the discovery motion from a previous case does not constitute in itself a final judgment, and the D.C. court's ruling on the DNA issue I cannot find based on the record in front of me was essential to its final judgment. So for those reasons, the plaintiffs' motion to compel a physical examination in this case is not barred by the principle of collateral estoppel.

So the rule that applies to this motion is Rule 35 of the Federal Rules of Civil Procedure. That rule provides that the Court may order a party whose mental or physical condition is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner. Such an order must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it.

Like all discovery rules, Rule 35 is to be accorded broad and liberal treatment in order to effectuate their purpose that civil trials in federal courts no longer need be carried on in the dark. That's a Supreme Court case that stands for that proposition, Hickman v. Taylor 1947.

But given the potentially serious invasion of privacy called for by a mental or physical examination, Rule 35

includes express limitations on compelling an individual to submit to such examinations for discovery purposes.  Rule 35 requires, first, a showing that the party's mental or physical condition is indeed in controversy; and second, a showing by the movant of good cause for ordering independent examination.

Now, first, the Court finds that the issue of defendant Wei's paternity of Charlotte whether Wei and Heather had sexual encounters or a sexual encounter and whether Wei sexually assaulted plaintiff Heather are all matters in controversy, and these matters are collectively a central issue to this defamation action.  Social media posts from the defendants reference be it explicitly or by inference the nature and circumstances of the defendant Wei and the plaintiff Heather's relationship and previous interaction and Charlotte's paternity.  Very many of the challenged statements made about the plaintiffs are about their character, actions, and conduct are framed by the assertion that the plaintiffs are lying that the defendant Wei is not Charlotte's biological father, that the defendant Wei did not sexually assault the plaintiff Heather, and indeed the defendant Wei did not even know the plaintiff Heather.

Plaintiffs will ultimately have to prove that the challenged statements are false, which the defendants clearly dispute.  Defendant casts the challenged statements as mere opinions, rhetoric, and hyperbole, but I have found that the

statements are plausibly capable of truth or falsity and the plaintiffs will ultimately have to prove that and also prove that the statements were false.

The question of Charlotte's paternity in this case is highly probative of several issues in this case, goes directly to Wei's claims that he never met, assaulted, or impregnated one of the plaintiffs and fathered the other. The plaintiffs' position on this controversy is not just a bare assertion. The plaintiffs have presented a 2018 e-mail from I think Mr. Robert Suettinger that substantiate their position on this controversy; i.e., that DNA testing will establish that Wei has a genetic link to the plaintiff Charlotte and may be her biological father.

Second, the Court finds that there is good cause for physical examination of the defendant Wei in regard to the paternity issue. The 2018 e-mail that I just noted references and describes DNA evidence but does not provide it. The plaintiffs have already exhausted other methods by which they could obtained admissible evidence in support of their position on the controversy having subpoenaed the person who sent that e-mail and also subpoenaed 23andMe for this information and done so to no avail.

But even if they had been successful there would remain real questions and doubts as to the admissibility of the information that they had subpoenaed. Here the plaintiffs seek

a minimally invasive DNA test, be it a cheek swab or a blood draw or a hair sample in order to obtain physical and forensic evidence for which they have a great need in discovery. That is to say that the DNA testing that they seek is proportional to their needs under the rules of discovery.

The plaintiffs have adequately shown good cause for a Rule 35 physical examination so their motion shall be granted. What remains to be determined is the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it under Rule 35(a)(2)(B).

The parties will be directed to meet and confer about that issue and to file a proposed order for the Court's consideration within a week's time.

And I do want to confirm with Mr. Wang that there was no -- there's no appointment has been made to date for this examination; is that correct?

MR. WANG: That's correct, Your Honor.

THE COURT: Okay. So the parties can meet and confer about that and get back to me with a proposed order.

Is there anything else to address from your perspective, Mr. Wang, as it relates to either that motion or any other motions?

MR. WANG: Not at this time, Your Honor. Thank you.

THE COURT: All right. Mr. Angle, was there anything that I've missed or any requests for clarification?

MR. ANGLE:  No, sir.  Thank you.

MR. WANG:  Actually, Your Honor --

THE COURT:  Yes, go ahead.

MR. WANG:  -- I do think discovery's currently stayed, so we'll -- maybe you can direct us to meet and confer about the discovery schedule as well.

THE COURT:  Was it stayed just pending the resolution of this motion or was there some other reason why?

MR. WANG:  Pending the resolution of the motion but the deadlines were dates certain, so we'll need to revisit the schedule.

THE COURT:  Okay.  So I guess what I would do there is when you meet and confer with defense about the examination, you could also try to come to an agreement about the schedule of the case that remains.

MR. WANG:  Yes.  Absolutely, Your Honor.

THE COURT:  And you can report to the Court and I'll take that proposal under consideration.

MR. WANG:  Thank you, Your Honor.

THE COURT:  All right.  Mr. Rowley, was there anything additional you wanted to raise with me?

MR. ROWLEY:  No, Your Honor.  Thank you.

THE COURT:  And I'll check back again with Mr. Barger.  Was there anything additional that we should address?

MR. BARGER:  No, sir.  Thank you very much for your time.

THE COURT:  Okay.  I want to thank you all for your time and making yourselves available for this virtual hearing. I'll enter a written order making reference to the oral rulings I made today as soon as I'm able.  Thank you all.  Enjoy your weekend.

MR. ANGLE:  Thank you.

(The proceedings concluded at 12:26 p.m.)

CERTIFICATE OF OFFICIAL REPORTER

I, Amanda L. Longmore, Registered Professional Reporter and Federal Certified Realtime Reporter, in and for the United States District Court for the District of Maryland, do hereby certify, pursuant to 28 U.S.C. § 753, that the foregoing is a true and correct transcript of the stenographically-reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated this 30th day of July 2025
-S-

_____
AMANDA L. LONGMORE, RPR, CRR, FCRR
FEDERAL OFFICIAL COURT REPORTER

Video Motions Hearing 7/18/25

**'23** [1] - 10:20
**'26** [1] - 69:12
**0809** [1] - 18:10
**1** [4] - 5:4; 9:10, 12; 10:21
**10:04** [1] - 2:2
**10th** [1] - 53:13
**11:17** [2] - 47:7, 10
**11:30** [1] - 47:7
**11:31** [1] - 47:10
**12(b)(6** [3] - 20:1; 25:19; 59:5
**12(g)(2** [3] - 48:9; 58:24; 61:19
**1200** [2] - 41:23
**12:26** [1] - 85:9
**15** [2] - 26:13; 47:2
**1541** [1] - 48:25
**17** [1] - 26:18
**1947** [1] - 80:23
**1982** [1] - 80:1
**1994** [1] - 49:1
**2** [2] - 9:4; 30:11
**20** [2] - 30:15; 70:18
**200** [1] - 41:22
**2000** [5] - 25:21; 27:16; 28:5; 44:4; 68:7
**2004** [1] - 30:11
**2006** [1] - 79:21
**201** [3] - 6:18, 24; 36:7
**2018** [3] - 29:22; 82:9, 16
**2019** [7] - 9:19; 16:2; 26:17; 33:2; 40:23; 52:7; 55:15
**2023** [13] - 10:19; 11:2, 24; 12:8, 19; 14:6; 30:21; 33:4, 10; 42:17; 55:22; 56:17
**2024** [13] - 8:14; 10:5, 20; 30:11, 16, 24; 33:5; 53:11, 13, 15, 25; 55:23, 25
**2025** [2] - 69:12; 85:15
**22nd** [1] - 53:15
**23andMe** [10] - 26:1; 44:13; 45:10; 46:12; 62:24; 63:4, 13; 69:15, 22; 82:21
**25** [6] - 5:24;

23:16, 20; 24:6, 9
**26** [2] - 24:15; 74:13
**27** [1] - 24:9
**28** [2] - 24:15; 85:12
**3** [2] - 7:3; 9:4
**30th** [1] - 85:15
**35** [34] - 2:24; 16:9; 22:15; 47:5; 62:18; 63:14; 64:15, 19; 65:2, 20; 66:3, 12; 67:22, 25; 68:20; 69:12; 70:6, 8-9, 13; 71:6, 10; 72:19, 24; 74:15; 77:8; 80:11, 19, 25; 81:2; 83:7
**35(a)(2)(B)** [1] - 83:10
**37** [1] - 48:25
**3rd** [1] - 8:14
**5** [1] - 54:22
**52** [1] - 8:11
**5th** [1] - 53:25
**60** [1] - 50:6
**61** [1] - 54:21
**67-6** [1] - 24:15
**6th** [1] - 30:24
**75** [1] - 11:21
**753** [1] - 85:12
**8** [1] - 54:22
**84-4** [1] - 63:15
**86** [4] - 14:2; 42:14; 45:25
**87** [4] - 14:2, 5; 42:14
**8th** [1] - 53:11
**9** [1] - 7:16
**90** [10] - 14:1, 16, 18, 23; 18:22; 42:14, 21, 23; 46:1
**92** [4] - 14:1; 16:18; 42:14; 43:1
**97** [3] - 4:13, 18; 5:2
**98** [2] - 4:18
**99** [2] - 39:12, 17
**a.m** [3] - 2:2; 47:10
**ability** [2] - 36:7; 38:23
**able** [9] - 38:5; 62:24; 63:4, 13;

67:16; 78:13; 85:6
**above-entitled** [1] - 85:13
**absolutely** [5] - 30:8; 32:12; 33:9; 84:16
**abstention** [2] - 34:10, 16
**abuse** [2] - 67:9
**accept** [1] - 50:13
**accepted** [1] - 30:3
**accepting** [3] - 49:19; 54:13; 61:8
**accessible** [1] - 57:21
**accorded** [1] - 80:19
**account** [1] - 8:3
**accuracy** [3] - 6:23; 43:25; 44:6
**accurate** [3] - 15:8, 19; 41:5
**accurately** [1] - 6:22
**accusation** [1] - 53:16
**accusations** [1] - 57:9
**accuse** [3] - 45:11; 63:24
**accused** [7] - 26:24; 35:16; 68:3; 69:6; 70:14
**accusing** [3] - 27:1; 57:7; 64:24
**achieve** [1] - 6:7
**acknowledge** [2] - 4:25; 16:8
**acknowledgmen t** [1] - 13:9
**acted** [2] - 36:5; 59:15
**acting** [7] - 14:12; 18:17, 25; 27:5; 56:16, 21; 63:11
**action** [25] - 26:17, 19; 31:4, 9; 32:14, 17; 33:2, 11; 34:13; 41:13, 18; 44:24; 55:6; 58:16; 59:10; 64:13, 18, 21; 67:10, 13, 19;

74:16; 81:11
**actionability** [1] - 35:4
**actionable** [7] - 12:15; 17:5; 18:18; 20:18; 45:21; 51:17; 55:20
**actions** [4] - 45:19; 75:1; 81:16
**activists** [1] - 61:4
**activity** [1] - 60:21
**actor** [1] - 59:15
**actual** [12] - 4:20, 23; 5:20; 36:5, 19; 38:25; 39:11; 45:8, 14, 21; 46:25; 58:13
**add** [8] - 12:2, 5, 23; 29:5; 53:8; 54:17; 62:21; 63:10
**added** [3] - 41:15; 48:2, 5
**adding** [3] - 11:23; 13:8, 10
**addition** [5] - 9:1; 33:8; 56:4; 58:3
**additional** [7] - 12:2; 17:9; 40:6; 42:6, 8; 84:21, 24
**address** [18] - 3:20; 4:8; 13:23; 20:23; 22:15; 26:23; 29:2; 30:23; 39:14; 40:4; 44:21; 48:12; 54:24; 76:15; 79:2; 83:20; 84:25
**addressed** [3] - 29:4; 39:10
**adequately** [3] - 58:19; 59:9; 83:6
**adjudicative** [1] - 6:18
**Administration** [2] - 63:1, 18
**admissibility** [1] - 82:24
**admissible** [4] - 44:14; 46:14; 82:19
**admitted** [1] - 28:12
**adopt** [2] - 9:13; 73:14

**Adriaen** [1] - 2:14
**advancing** [1] - 27:7
**affairs** [1] - 6:1
**affect** [1] - 8:20
**affected** [1] - 75:8
**affects** [3] - 49:17; 50:1; 51:3
**agent** [13] - 19:7, 18; 20:13; 21:10, 18-19; 22:4, 24; 37:8, 18; 38:6; 42:22; 45:18
**agents** [4] - 42:22; 52:15; 53:16; 54:4
**ago** [1] - 5:25
**agree** [3] - 13:8; 20:9; 71:12
**agreement** [1] - 84:14
**agrees** [2] - 23:17, 24
**ahead** [3] - 23:15; 84:3
**allegation** [22] - 4:12; 14:2; 15:16; 22:19; 26:10, 12; 41:14; 43:1, 11, 25; 44:9, 12, 16-17; 45:9; 46:4, 19, 24; 59:17, 19; 72:14
**allegations** [36] - 3:10, 17; 4:16; 11:23; 12:2; 14:3, 11, 14; 16:8; 17:6; 22:23; 26:5; 27:10, 13; 35:25; 38:20; 40:10, 12; 41:16; 44:7; 48:2, 4; 52:11, 17; 53:9, 19, 22; 54:13; 56:14, 16, 22; 57:4, 24; 65:25
**allege** [19] - 14:9; 26:17; 28:20; 38:22; 42:17, 20-21; 50:6; 51:10; 52:7; 59:24; 60:4, 14, 24; 61:4, 6, 14; 68:12; 70:24
**alleged** [57] -

4:14; 5:2; 10:14, 18, 20; 11:3, 23; 12:7; 13:11, 17; 14:16, 22; 15:2, 5; 16:11, 17-18, 20; 17:2; 18:7; 22:19; 24:1; 25:2; 26:9, 11; 30:7; 39:13; 42:13; 44:3; 55:12, 14-15, 23, 25; 56:1, 3-4, 6, 17; 57:16, 22; 58:5, 14-15; 60:22; 61:2; 67:19; 68:3, 23; 70:1, 5; 71:18; 72:5, 11
**allegedly** [3] - 40:20; 49:23; 61:11
**alleges** [3] - 14:17; 54:18; 58:11
**alleging** [8] - 3:10; 4:23; 28:4; 39:19; 41:23; 45:13; 63:12, 25
**Allen** [1] - 79:25
**allowed** [3] - 16:3; 17:8; 44:23
**alternatively** [1] - 59:8
**AMANDA** [1] - 85:17
**Amanda** [1] - 85:11
**amend** [7] - 10:24; 11:22; 12:1, 23; 33:20; 54:21
**Amended** [33] - 3:11; 4:13; 6:14; 9:11; 10:18, 22; 13:25; 18:22; 25:2; 35:25; 40:11; 43:24; 47:23; 48:15; 49:19, 22; 50:2, 7; 52:8, 25; 53:8, 10; 54:17; 55:13, 21; 56:3, 12; 57:17, 19; 60:18, 22; 61:8
**amendment** [1] - 33:21
**amounted** [1] - 51:16
**analogous** [1] -

32:23

**analysis** [4] - 32:13; 66:14; 76:14; 77:3

**analyze** [1] - 75:7

**ancillary** [1] - 74:18

**anew** [1] - 48:1

**ANGLE** [17] - 23:13, 16, 21, 24; 24:8; 64:5; 67:1; 68:19; 70:4; 71:17; 73:2; 76:23; 77:1, 25; 79:1; 84:1; 85:8

**Angle** [6] - 2:16; 64:4; 66:15; 76:15; 78:25; 83:24

**angle** [3] - 2:25; 17:21; 22:15

**Angle's** [1] - 75:14

**announced** [1] - 49:6

**annoyances** [1] - 60:13

**answer** [8] - 11:19; 13:6; 17:23; 19:11; 23:9; 36:22; 46:23; 50:12

**answering** [1] - 38:11

**antitrust** [1] - 73:12

**anxiety** [1] - 58:7

**anytime** [1] - 70:5

**anyway** [1] - 5:4

**apartment** [2] - 33:3; 55:16

**apologies** [1] - 24:8

**apologize** [2] - 46:8; 77:25

**appeal** [1] - 10:7

**appear** [2] - 15:22; 56:2

**apple** [3] - 10:10; 41:9; 71:3

**applicable** [2] - 5:8; 9:13

**applies** [7] - 43:7; 49:6; 51:25; 56:9; 64:14; 75:22; 80:11

**apply** [5] - 34:12; 74:23; 75:25; 78:17, 23

**applying** [2] - 78:5, 9

**appointment** [1] - 83:15

**appreciable** [2] - 49:18; 50:2

**appreciate** [4] - 16:16; 17:11; 34:1; 64:8

**approach** [1] - 70:24

**appropriate** [2] - 7:4; 63:9

**April** [2] - 8:14; 13:21

**argue** [11] - 2:25; 3:2; 15:7; 23:25; 34:11, 23; 38:14; 46:14; 56:22; 76:6

**argued** [2] - 32:4; 63:10

**argues** [1] - 29:19

**arguing** [4] - 74:3, 24; 78:16, 22

**argument** [41] - 5:5; 7:23; 9:2, 14; 12:22; 13:15; 15:21; 16:12; 18:12; 22:13; 24:3; 25:11; 27:25; 28:10, 24; 29:4; 30:5; 32:7; 33:14, 16; 34:11, 17, 25; 37:3; 38:13; 39:9, 13; 41:12; 45:7; 47:16, 22; 54:24; 62:19; 67:2; 69:15; 72:22; 75:14; 77:18; 78:19

**arguments** [15] - 3:13; 9:3, 11, 13; 47:16; 48:9, 12; 54:8; 58:23; 59:6, 8; 62:22; 64:8

**arise** [5] - 11:5; 13:14; 55:7; 56:7

**arises** [1] - 32:15

**arising** [1] - 11:2

**arose** [2] - 12:6, 19

**arrange** [1] - 14:8

**artists** [1] - 61:2

**aside** [13] - 15:21; 20:22; 36:3;

44:13; 45:21; 46:14, 22; 48:9; 51:4; 58:24; 59:5; 74:19

**assault** [14] - 27:17; 37:10; 65:25; 66:3; 67:14, 20; 69:4; 72:13; 75:8, 11; 76:8, 10, 13; 81:19

**assaulted** [5] - 20:8; 25:22; 52:12; 81:9; 82:6

**assaults** [1] - 67:16

**assert** [1] - 58:15

**asserted** [5] - 10:19; 12:25; 55:8, 18; 79:17

**asserting** [8] - 4:3, 6-7; 33:17; 70:2; 78:12; 79:4, 24

**assertion** [2] - 81:17; 82:8

**assessing** [1] - 37:5

**associate** [1] - 26:2

**associating** [2] - 52:4; 53:6

**association** [3] - 21:2, 8; 38:1

**assume** [12] - 22:2; 25:20-22, 24; 26:8, 16; 40:11; 43:25; 44:1, 6

**assumed** [2] - 49:11; 50:4

**assumes** [2] - 14:24; 39:13

**assuming** [1] - 62:4

**atrocious** [1] - 60:11

**attack** [2] - 59:4; 60:18

**attacked** [2] - 58:13; 62:24

**attacking** [1] - 59:6

**attempt** [3] - 7:11; 23:25; 72:12

**attempted** [2] - 10:21; 11:22

**attempting** [2] - 12:4, 16

**attempts** [1] - 8:20

**attended** [1] - 14:6

**attendees** [1] - 14:9

**attorney** [3] - 36:14; 65:9

**attributed** [2] - 55:22; 56:11

**audience** [3] - 33:1; 37:25; 53:3

**August** [1] - 53:15

**authorities** [1] - 79:19

**authority** [2] - 38:23; 75:21

**authorized** [3] - 18:5, 13

**avail** [1] - 82:22

**available** [2] - 59:2; 85:4

**Awah** [1] - 34:6

**award** [1] - 65:21

**aware** [2] - 45:10; 75:21

**backdoor** [3] - 23:3; 71:4; 72:13

**backed** [1] - 29:20

**background** [3] - 9:15; 11:17; 26:6

**bad** [3] - 39:20; 63:12, 25

**bar** [2] - 32:4; 45:18

**bare** [1] - 82:8

**BARGER** [34] - 2:15, 22; 3:4; 9:9; 11:14, 19; 12:1; 13:6; 17:13, 18; 18:2, 12; 20:11, 25; 21:4, 12; 22:8, 12; 23:8, 12; 24:14, 17; 25:6; 39:7; 42:4; 45:16, 24; 46:10, 12; 47:8; 62:1, 4, 11; 85:1

**Barger** [21] - 2:15; 3:6; 9:7; 11:9, 18; 12:22; 18:11; 25:1, 14; 26:24; 36:24; 37:18; 38:4; 39:5; 61:25; 63:10; 64:7;

65:8; 67:4; 84:24

**Barger's** [1] - 62:22

**barred** [5] - 30:25; 32:2; 33:17; 64:11; 80:10

**barriers** [1] - 19:20

**based** [14] - 44:24; 55:5, 18; 56:23; 58:16; 66:2; 67:10, 19; 69:11; 71:14; 72:6; 76:3; 77:12; 80:7

**basing** [1] - 69:20

**basis** [1] - 44:17

**battle** [1] - 36:13

**bear** [1] - 77:16

**became** [1] - 26:16

**become** [2] - 26:14; 50:10

**becomes** [1] - 27:25

**began** [1] - 26:19

**begin** [4] - 3:7, 23; 25:17; 61:25

**beginning** [2] - 40:10; 43:23

**behalf** [20] - 2:16; 9:7; 14:12; 18:6, 17, 25; 19:18; 20:15; 22:3; 27:5; 45:13, 17, 23-24; 46:4; 56:16, 21; 57:7; 64:25

**behavior** [1] - 36:4

**belabor** [1] - 45:5

**belief** [1] - 22:1

**belonged** [1] - 52:19

**benevolently** [1] - 60:25

**benign** [1] - 54:9

**best** [1] - 46:6

**better** [1] - 44:18

**between** [10] - 14:8; 20:7, 16; 56:5; 60:6; 61:16; 69:2; 73:6; 75:7; 77:16

**beyond** [6] - 29:6; 49:25; 51:2; 60:10; 61:7; 62:21

**billion** [1] - 37:20

**biologic** [1] - 70:20

**biological** [18] - 20:5; 25:23; 26:3; 28:18; 37:9; 44:1; 45:10; 53:14; 54:10; 56:20; 63:3, 7; 66:19; 70:3, 23; 71:15; 81:18; 82:13

**biology** [1] - 23:1

**birth** [3] - 15:11; 71:22

**bit** [14] - 9:14; 11:17; 13:20; 14:18; 16:1; 18:20; 19:11; 28:9; 39:9, 14; 44:8; 45:18; 74:9; 75:14

**bite** [2] - 41:9; 71:2

**bites** [1] - 10:10

**black** [2] - 31:3; 39:21

**blocked** [1] - 19:9

**blood** [1] - 83:1

**bolster** [2] - 53:23; 62:23

**bottom** [3] - 14:20; 24:6, 8

**bound** [1] - 30:1

**bounds** [2] - 60:10; 61:7

**brand** [1] - 67:11

**brand-new** [1] - 67:11

**break** [1] - 41:9

**brief** [13] - 3:14; 7:2; 17:4; 22:13; 29:5; 33:12, 14; 35:14; 41:2; 43:20; 44:22; 47:3; 51:5

**briefed** [6] - 65:12, 14, 18; 74:19; 77:4

**briefing** [5] - 3:16; 18:5; 51:7; 65:15; 77:5

**briefly** [3] - 20:12; 43:9; 76:24

**briefs** [4] - 3:22, 25; 62:21

**bring** [2] - 44:24; 60:3

**broad** [5] - 72:18; 73:22; 77:8;

78:5; 80:19
**broader** [1] -
78:17
**broadly** [1] -
65:21
**bullies** [1] - 8:15
**bully** [1] - 6:2
**burden** [6] -
20:13; 21:5;
49:4; 66:22;
71:12; 79:23
**calculated** [1] -
61:5
**campaign** [13] -
5:17; 6:3, 9;
7:12, 17; 9:19;
26:20; 35:19;
43:17; 52:9;
60:15; 61:1
**Canada** [1] - 8:12
**cannot** [8] - 6:23;
23:4; 30:13;
34:12; 49:20;
50:16; 56:7;
80:7
**capable** [6] -
43:14; 53:1, 4;
54:14; 57:14;
82:1
**capture** [1] - 7:14
**care** [2] - 57:24;
58:10
**careful** [1] - 11:8
**carelessly** [1] -
60:25
**carried** [2] - 52:9;
80:21
**Carroll** [10] -
27:18, 20;
44:20; 66:6, 9,
11, 13; 67:3, 12;
76:8
**Carroll-Trump** [1]
- 66:9
**case** [100] - 4:4,
13, 17; 5:10, 14;
7:8, 13; 8:19,
25; 9:17; 11:8;
12:5; 13:19;
15:4, 23; 16:13;
23:2, 6; 24:14;
25:2, 18; 27:19;
28:1, 3; 32:24;
33:22, 24;
35:24; 36:4, 19;
38:8, 22, 24;
39:2; 40:2, 7,
12-13; 41:15,
23-24; 43:3;
44:7, 25; 45:2;

47:13; 48:24;
49:1, 6; 50:3,
15; 52:5; 55:18,
21; 56:3; 58:14;
61:12; 63:7;
65:10, 22; 66:2,
7, 9, 16-17, 21;
67:4, 15; 68:1;
69:24; 70:11;
71:8, 18; 73:1,
4, 20, 25; 74:5;
75:1; 76:1, 9;
77:19; 78:20,
24; 79:6, 9, 18,
25; 80:5, 10, 22;
82:4; 84:15
**cases** [17] - 4:11;
7:3, 5-7; 16:23;
34:5, 8; 44:20;
66:7; 68:20;
69:5, 11; 74:8;
79:21
**cast** [1] - 35:22
**casts** [1] - 81:24
**catch** [2] - 23:19
**causal** [2] - 60:6;
61:16
**caused** [3] - 4:19;
51:18; 61:15
**causes** [2] -
59:25; 74:16
**cavalier** [1] -
21:16
**CCP** [45] - 14:12,
19; 18:6, 17, 20,
23, 25; 19:3, 7,
18-19; 20:12,
15, 19, 22; 21:2,
5, 8, 11, 19;
22:24; 26:5;
27:5, 12; 37:8,
18; 38:1, 6, 8;
42:22; 45:13,
17, 20; 46:6;
53:16; 54:4;
56:16, 21, 25;
57:7; 61:3;
64:25
**CCP's** [1] - 27:8
**center** [1] - 69:24
**central** [4] - 74:4,
25; 78:21; 81:10
**certain** [7] - 4:11;
7:4; 14:9; 21:22;
54:18; 73:13;
84:10
**certainly** [12] -
19:24; 21:5;
22:22; 29:17;
32:5; 33:1; 38:4;

68:7, 9, 14; 76:1
**CERTIFICATE** [1]
- 85:10
**certificate** [2] -
15:12; 71:22
**certified** [1] -
80:15
**Certified** [1] -
85:11
**certify** [1] - 85:12
**challenge** [2] -
72:1; 78:14
**challenged** [7] -
4:4; 15:12;
17:16; 25:3;
81:15, 23
**challenges** [1] -
56:23
**challenging** [1] -
73:10
**chance** [1] - 18:1
**channels** [1] - 6:7
**character** [3] -
60:9, 19; 81:16
**Charlotte** [19] -
10:6; 15:15;
20:6; 22:11;
25:23; 26:1, 4;
27:4; 28:4, 6,
18; 44:1; 45:11;
52:13; 66:19;
71:20; 81:7;
82:12
**Charlotte's** [11] -
22:14; 53:14;
54:10; 56:20;
71:1, 15, 21;
72:3; 81:14, 18;
82:4
**check** [2] - 61:23;
84:23
**cheek** [1] - 83:1
**child** [4] - 26:10;
66:19; 70:14, 25
**China** [2] - 19:10;
70:18
**Chinese** [9] -
14:7, 17; 21:1;
37:25; 52:15;
54:5; 56:13, 18;
57:16
**choose** [1] - 26:9
**Ciping** [1] - 2:14
**circuit** [1] - 34:6
**Circuit** [6] - 48:24;
49:1, 7; 73:6;
79:20, 25
**circumstances**
[2] - 66:5; 81:13
**citation** [1] -

48:25
**cite** [4] - 16:23;
73:4; 79:19
**cited** [4] - 7:2, 7;
43:3; 50:8
**cites** [1] - 34:5
**citing** [5] - 4:19;
8:1; 50:11;
66:16, 21
**civil** [1] - 80:21
**Civil** [3] - 2:5;
58:24; 80:12
**civilized** [1] -
60:11
**claim** [37] - 4:3, 6,
23; 13:12;
22:17; 31:5;
33:17; 40:16;
47:24; 48:3, 5;
50:11; 51:10;
54:1, 20; 55:17;
59:19, 21, 23;
60:3, 23; 61:18,
20; 64:20;
67:13; 68:14,
22; 69:21;
71:14; 75:9;
76:9, 12, 19;
78:22
**claimed** [2] - 5:23;
54:6
**claiming** [2] -
20:19; 23:5
**claims** [28] - 5:3;
9:12, 19, 22-23;
10:2, 7, 25;
12:23, 25;
30:22; 40:1, 14;
50:22; 51:9;
53:20, 22, 24;
55:4, 8; 56:7,
19; 57:19;
58:19, 23; 59:4;
82:6
**clarification** [2] -
61:24; 83:25
**clarify** [2] - 3:24;
4:8
**Class** [1] - 68:25
**clear** [2] - 19:8;
42:1
**clearly** [3] - 11:18;
57:19; 81:23
**CLERK** [2] - 2:4,
12
**client** [9] - 5:25;
8:4; 9:8; 16:7;
19:5; 21:14;
45:9; 63:19
**client's** [2] - 7:24;

45:9
**clients** [6] - 28:16,
19; 29:15;
33:10; 63:2, 22
**clients'** [1] - 29:19
**Clinton** [2] - 63:1,
18
**close** [2] - 37:16;
63:21
**codefendant** [3] -
4:2; 5:24; 8:4
**collateral** [28] -
64:11, 13; 65:4;
72:17, 21; 73:7,
16, 19; 74:23;
75:20, 22, 25;
76:4; 77:13, 21,
23; 78:5, 9, 11,
18; 79:2, 8, 10,
16, 24; 80:10
**collectively** [1] -
81:10
**Collins** [1] - 79:20
**Colorado** [1] -
34:10
**Columbia** [1] -
9:25
**comity** [2] - 34:5,
7
**comment** [1] -
26:24
**commenting** [1] -
15:3
**comments** [2] -
17:1; 40:10
**communication**
**s** [1] - 6:6
**communist** [2] -
22:3
**Communist** [1] -
52:15
**communities** [1] -
58:6
**community** [9] -
14:7; 21:1; 52:3;
54:5, 12; 56:14,
19; 57:16; 60:11
**Company** [2] -
79:21, 25
**compare** [1] -
25:1
**compel** [4] -
62:18; 69:17;
80:3, 9
**compelling** [3] -
70:22; 79:8;
81:1
**Complaint** [33] -
3:11; 4:14; 6:14;
9:11; 10:18, 22;

13:25; 18:22;
25:2; 35:25;
40:11; 43:25;
47:23; 48:15;
49:19, 22; 50:2,
7; 52:8, 25;
53:8, 10; 54:17;
55:13, 21; 56:3,
12; 57:17, 20;
60:18, 22; 61:8
**complaint** [13] -
4:16; 10:24;
11:22; 12:2, 14,
23; 13:1, 10;
37:24; 41:25;
42:13; 50:8;
63:15
**complaints** [1] -
5:11
**completely** [1] -
66:13
**complimentary**
[1] - 37:21
**comprehensivel**
**y** [1] - 7:14
**comprised** [1] -
37:25
**con** [1] - 61:2
**concede** [1] -
12:18
**conceded** [2] -
11:2; 13:7
**conceding** [1] -
13:3
**conceivable** [1] -
30:25
**conception** [1] -
71:21
**concern** [2] -
74:1; 78:10
**concerning** [3] -
51:13; 52:12;
59:12
**concession** [2] -
11:11; 13:13
**conclude** [2] -
8:22; 49:20
**concluded** [1] -
85:9
**conclusory** [1] -
39:21
**condition** [5] -
69:24; 70:10;
80:13; 81:4
**conditions** [2] -
80:16; 83:9
**conduct** [11] -
19:1; 59:24;
60:4-6, 8;
61:12, 14, 16;

81:16
**confer** [4] - 83:11, 18; 84:5, 13
**Conference** [1] - 85:14
**confirm** [3] - 45:10; 57:24; 83:14
**conformance** [1] - 85:14
**connection** [7] - 45:12; 51:6; 52:16; 57:10; 60:6; 61:16; 64:20
**consensual** [2] - 68:13, 25
**consequence** [1] - 19:14
**consider** [13] - 7:5, 22-24; 20:20; 29:3; 43:21; 48:1; 50:13, 15, 20, 23; 51:8
**considerably** [1] - 58:11
**consideration** [6] - 10:5; 11:8; 39:25; 41:8; 83:13; 84:18
**considered** [2] - 10:25; 40:8
**consistent** [4] - 19:8; 21:21; 52:5; 75:2
**conspiracy** [1] - 52:19
**conspiring** [1] - 61:3
**constitute** [2] - 56:25; 80:5
**constitutes** [2] - 31:4; 49:23
**construction** [1] - 36:25
**construed** [1] - 31:21
**contact** [2] - 20:6; 29:21
**contained** [1] - 54:23
**contempt** [3] - 38:2; 52:2; 53:5
**contend** [2] - 7:22; 53:17
**content** [1] - 64:22
**contents** [1] - 56:2

**contest** [1] - 36:8
**context** [20] - 13:13; 16:1; 17:16; 18:8; 20:24; 24:21, 23; 25:1, 3, 12; 30:6; 32:7, 15; 33:20; 48:4; 49:14; 57:15; 64:22; 71:7; 72:20
**contexts** [1] - 25:5
**continue** [1] - 30:9
**continued** [2] - 45:11; 53:9
**continues** [1] - 31:21
**contrary** [2] - 50:6; 53:23
**contrast** [1] - 55:20
**contributions** [1] - 36:15
**controversial** [1] - 67:23
**controversy** [22] - 5:9, 13; 29:15; 36:16; 48:20, 22; 49:12-14, 24; 50:5; 67:22, 24-25; 74:16; 76:14; 80:14; 81:4, 9; 82:8, 11, 20
**conversation** [1] - 32:10
**convert** [1] - 6:15
**converts** [1] - 5:18
**copy** [1] - 77:19
**core** [2] - 55:9; 56:8
**corners** [1] - 6:13
**correct** [10] - 9:18; 15:6; 30:17; 33:18; 64:4; 71:16; 72:6; 83:16; 85:13
**counsel** [4] - 2:7; 6:13; 61:24; 65:11
**Count** [6] - 5:4; 9:3, 10, 12; 10:21
**count** [4] - 13:11; 41:15, 18
**counterclaim** [6] -

7:15; 8:5, 12; 50:12
**counterfactual** [1] - 27:21
**counts** [2] - 41:24; 59:7
**couple** [5] - 7:3; 8:17; 13:23; 17:12; 43:22
**course** [10] - 20:12; 26:21; 30:2, 23; 31:19; 40:23; 55:25; 62:10; 68:12; 76:10
**court** [26] - 12:12; 17:7; 18:4; 19:2, 21; 34:9, 14, 19; 35:5; 41:4; 47:25; 53:14; 65:2, 12, 14, 19-20; 66:8; 67:24; 71:4, 10; 73:21; 74:10; 75:19
**COURT** [95] - 2:3, 11, 17, 20; 3:3, 5, 23; 4:18; 5:5; 7:21; 9:6; 11:9, 15, 25; 12:21; 17:12, 14, 25; 18:3; 19:16; 20:24; 21:1, 7; 22:6, 10; 23:7, 11, 15, 19, 23; 24:5, 12, 16, 19; 25:14; 28:25; 29:2, 14; 30:4, 9, 15, 18; 31:12, 14; 32:6, 10, 22; 33:7, 15, 19; 34:2, 15; 35:8, 13; 36:21; 37:24; 39:3, 5; 41:17, 21; 42:3; 45:7, 22; 46:9, 11; 47:1, 11; 62:3, 8, 12, 15, 17; 64:3; 66:15; 68:17; 69:25; 71:12; 72:21; 75:3; 76:5, 22, 25; 77:11; 78:25; 79:2; 83:18, 24; 84:3, 7, 12, 17, 20, 23; 85:3, 17
**Court** [128] - 2:5, 24; 3:9, 12, 20; 5:3; 6:17, 19,

25; 7:5, 16; 8:6, 21; 9:17, 25; 10:5, 22-23, 25; 11:7, 23; 12:1, 5, 9, 17; 13:16, 19, 25; 14:15, 21; 15:1, 3, 9, 23; 16:3, 16-17; 17:9, 22; 18:13-15, 17, 23; 19:12; 21:12; 23:8, 17, 24; 24:22; 25:10, 12; 26:17; 32:18, 20; 33:16, 22; 34:21, 25; 36:4, 7; 38:15, 22; 39:10, 12; 40:2, 6, 11, 14, 16-17; 41:5, 10; 43:4, 13, 15, 21; 47:17, 22; 49:10, 20; 50:9, 13, 15-16; 51:7; 52:23; 53:18, 24; 55:19; 56:7; 58:18; 59:5; 61:10; 65:1, 12, 15-16; 71:7; 72:15; 73:16, 22-23; 75:6, 18; 76:2; 77:2, 4-5, 7, 22; 78:4-6, 17; 79:6; 80:13, 22; 81:6; 82:14; 84:17; 85:12
**court's** [5] - 6:22; 30:10, 22; 34:18; 80:6
**Court's** [22] - 3:2; 11:8; 13:6; 16:16; 17:11, 15, 19; 19:14; 20:23; 23:16; 24:21; 25:7; 39:25; 40:4; 45:6; 46:7, 24; 47:20; 64:9; 75:6; 83:12
**courts** [8] - 7:7; 49:2; 65:3; 74:8, 21; 75:25; 79:7; 80:21
**covered** [1] - 17:11
**create** [1] - 31:17
**creation** [1] - 29:10
**credibility** [1] -

54:11
**credible** [1] - 57:25
**Creek** [1] - 79:21
**criminal** [1] - 52:19
**criteria** [1] - 6:10
**critical** [9] - 68:21; 72:25; 73:17; 74:4, 24; 77:17; 78:19; 79:14; 80:3
**CRR** [1] - 85:17
**current** [1] - 36:11
**D.C** [35] - 6:11; 17:14; 18:4; 25:3; 26:17; 30:10, 22; 33:2, 11; 34:13, 20, 24; 47:24; 51:10; 52:5; 55:16, 18; 58:2; 60:1; 65:1-3, 11, 19; 71:4, 23; 75:5, 17; 77:2; 79:6; 80:6
**damaged** [1] - 35:17
**damages** [3] - 39:20; 42:6, 8
**damaging** [1] - 57:23
**dark** [1] - 80:22
**date** [3] - 31:6; 52:7; 83:15
**Dated** [1] - 85:15
**dates** [1] - 84:10
**daughter** [15] - 9:18; 14:22, 25; 15:2, 5, 7; 16:21; 25:23; 26:3; 40:9, 15; 43:2; 44:1; 57:12; 71:1
**daughter's** [1] - 10:7
**David** [1] - 2:15
**days** [2] - 17:7; 30:12
**deadlines** [1] - 84:10
**debate** [1] - 14:8
**debriefing** [1] - 34:22
**December** [12] - 10:19; 11:2, 24; 12:18; 14:6; 30:21; 33:4, 10; 42:17; 55:22
**decency** [2] -

60:10; 61:7
**decided** [2] - 33:19, 23
**deciding** [3] - 7:24; 50:14; 54:7
**decision** [9] - 10:8; 28:14; 47:18, 20; 72:23; 79:14, 20; 80:4
**declare** [1] - 38:24
**declared** [1] - 53:14
**decline** [3] - 34:9; 48:6, 13
**defamation** [62] - 4:3, 5, 7, 12, 14, 22-23; 5:4; 7:17; 13:11; 15:24; 17:5; 23:6; 28:1; 31:3, 5, 11; 32:15; 36:1; 42:5; 46:3; 47:24; 48:3, 5, 18, 20; 49:3; 51:10; 52:9; 54:1, 19; 55:14, 17, 23; 56:1, 6; 57:19; 58:16, 19; 59:19, 21; 64:18, 20; 65:22; 66:3; 67:4, 20; 68:3, 16; 69:11, 21; 70:15; 71:9, 13, 18; 75:9; 76:9, 12; 81:11
**defamations** [1] - 72:5
**defamatory** [56] - 3:11, 17; 4:1, 5, 12; 9:2; 12:10, 15; 13:4, 12; 14:15; 15:8, 18, 20; 16:11, 17; 18:7, 14, 16; 19:15; 20:14, 21-22; 22:18; 31:7, 19, 23; 32:16, 19; 35:17; 36:1; 37:19, 21, 23; 38:17; 39:1; 42:11; 43:6; 49:23; 51:12, 22; 52:1; 53:1; 54:14, 18-19; 55:12, 21;

56:11, 23; 57:5, 8, 15; 58:4, 15
**defamed** [1] - 22:17
**defend** [1] - 10:11
**defendant** [56] - 2:14, 16; 3:6; 5:20; 6:5; 7:19; 14:9; 23:24; 47:15; 48:5, 8; 49:8; 50:12, 16; 51:12, 15, 22-23; 52:8; 53:9, 13, 15; 54:2, 16-18; 55:11; 56:18; 58:21; 59:3, 10, 21, 25; 60:14, 20, 24; 61:11, 14; 70:11; 73:9, 24-25; 74:3; 78:11, 13; 79:9; 80:2; 81:6, 13, 18-20, 24; 82:15
**Defendant** [1] - 2:18
**defendant's** [4] - 24:1; 49:4; 50:13; 60:4
**defendants** [19] - 2:12; 8:13; 28:17; 35:16; 36:5; 38:21, 25; 47:13; 50:11; 54:6; 56:22; 57:23, 25; 58:20; 79:4; 81:11, 23
**Defendants** [2] - 39:17
**defendants'** [2] - 54:7
**defending** [1] - 14:13
**defense** [2] - 59:2; 84:13
**defensive** [5] - 73:7; 77:13, 24; 78:2, 18
**defensiveness** [1] - 78:11
**deference** [1] - 66:10
**definitely** [1] - 76:20
**definitively** [1] - 50:25
**degraded** [1] - 58:7
**degree** [1] - 60:9

**deliberately** [2] - 6:4; 61:5
**democracy** [1] - 61:4
**demonstratively** [1] - 37:1
**denial** [4] - 56:22; 57:4; 76:3
**denials** [2] - 12:9; 16:10
**denied** [13] - 10:6, 25; 12:1; 22:21; 23:2; 33:21; 54:20; 61:20, 22; 64:11; 76:2; 79:5
**deny** [4] - 16:7, 9; 70:6, 15
**denying** [6] - 12:17; 22:17; 24:10; 47:18; 69:25; 77:7
**Department** [1] - 73:11
**deploying** [1] - 14:19
**deposition** [1] - 40:25
**depositions** [1] - 10:4
**described** [3] - 32:23; 60:18
**describes** [2] - 24:23; 82:17
**description** [1] - 17:15
**designed** [1] - 71:6
**despite** [1] - 26:3
**detail** [5] - 9:23; 13:23; 39:15; 40:5; 44:22
**detailed** [3] - 53:25; 55:1; 62:9
**determination** [2] - 55:6; 79:13
**determine** [1] - 48:18
**determined** [8] - 6:23; 64:22; 68:5; 69:11; 72:7; 73:10; 79:12; 83:8
**dialing** [1] - 18:9
**difference** [3] - 67:3; 73:6; 75:23
**different** [20] - 19:2; 20:17;

31:14; 33:1, 4; 34:21; 35:1-3; 40:2, 17; 41:7; 46:5; 55:24; 70:4, 12; 74:9, 13
**differently** [1] - 4:24
**difficult** [1] - 58:11
**dig** [1] - 13:22
**digest** [1] - 62:5
**dignity** [1] - 58:8
**digressed** [1] - 19:11
**dinner** [2] - 14:6; 55:24
**direct** [3] - 6:17; 7:15; 84:5
**directed** [1] - 83:11
**direction** [1] - 68:10
**directly** [4] - 38:12; 57:21; 60:18; 82:5
**disagree** [2] - 37:21; 77:3
**disagrees** [1] - 38:15
**discouraged** [1] - 78:9
**discouraging** [2] - 52:3; 53:5
**discourse** [4] - 5:15; 8:7, 20; 16:5
**discoverable** [2] - 66:25; 74:14
**discovery** [21] - 10:3; 16:14; 19:6; 22:16; 40:25; 46:17; 74:6, 9-10, 18; 75:20, 24; 76:1-3; 80:5, 19; 81:2; 83:3, 5; 84:6
**discovery's** [1] - 84:4
**discredit** [3] - 61:1, 3; 66:24
**discrediting** [2] - 19:9; 21:21
**discretion** [7] - 73:22; 78:4, 7, 17, 23
**discuss** [1] - 10:13
**discussed** [1] -

12:8
**discusses** [1] - 24:22
**discussion** [2] - 77:20
**dishonest** [1] - 61:2
**dishonestly** [1] - 60:25
**dismiss** [25] - 2:24; 3:1, 7, 10, 14; 4:15; 7:3, 6; 47:4, 12, 19; 48:2, 11; 50:17; 51:8; 54:1, 8, 16, 19; 58:21; 59:20; 61:20, 22; 64:9
**dismissed** [2] - 7:7; 10:2
**dismissing** [2] - 13:19; 15:4
**disparage** [1] - 21:2
**disposed** [1] - 56:24
**dispositive** [4] - 19:22; 68:14, 18, 20
**disprovable** [2] - 18:25; 21:25
**disprove** [7] - 19:6; 22:22, 24; 68:2, 7
**disputable** [1] - 38:19
**dispute** [8] - 6:20; 24:1; 29:12; 34:20; 36:17; 49:16; 50:11; 81:24
**disputes** [3] - 29:9; 49:22; 50:17
**disputing** [1] - 20:3
**disregard** [1] - 59:16
**disrespect** [1] - 34:20
**disrespectful** [1] - 35:5
**dissident** [6] - 14:7; 20:24; 21:1; 56:14, 18
**dissidents** [3] - 37:25; 54:5; 57:16
**distance** [1] - 56:5

**distinction** [4] - 20:16; 75:23; 77:15
**distinguish** [1] - 27:19
**distinguishable** [1] - 44:21
**distress** [9] - 9:5; 58:7, 22; 60:1, 7; 61:6, 15, 17
**district** [1] - 34:9
**District** [4] - 9:25; 65:12; 85:12
**DNA** [30] - 25:25; 28:17, 23; 44:2, 8-9; 46:10, 12, 22; 62:25; 63:9, 12, 20; 70:21; 75:8, 16-18; 76:16, 18; 79:5, 8; 80:3, 6; 82:11, 17; 83:1, 4
**Docket** [2] - 2:5; 63:15
**doctor** [2] - 69:5
**doctrine** [7] - 34:7, 10; 64:12; 72:17; 76:4; 79:7, 23
**doctrines** [2] - 32:4; 34:16
**Document** [2] - 11:21; 24:14
**document** [1] - 74:11
**documents** [3] - 10:4; 43:14; 74:11
**done** [8] - 5:13; 6:3; 35:15, 18; 69:18; 72:2; 82:22
**double** [1] - 24:4
**double-team** [1] - 24:4
**doubts** [1] - 82:24
**down** [2] - 14:20; 69:23
**dozens** [3] - 7:9; 8:18
**draw** [4] - 19:25; 20:15; 37:6; 83:2
**drawing** [5] - 48:15; 53:1; 54:12; 57:12; 61:9
**during** [1] - 40:24
**e-mail** [3] - 82:9,

16, 21
**e-mailed** [1] - 63:19
**easier** [1] - 41:22
**easiest** [1] - 31:16
**ECF** [2] - 24:7; 54:21
**editor** [1] - 36:12
**effect** [2] - 11:7; 16:24
**effectuate** [1] - 80:20
**efforts** [1] - 44:11
**either** [17] - 7:12; 19:5; 22:1; 27:6; 36:2; 37:2; 47:24; 50:3; 51:17; 63:5; 66:23; 68:10; 71:23; 83:21
**element** [5] - 11:4; 60:23; 65:4; 76:19; 77:23
**elements** [10] - 6:21; 10:15; 51:11, 20; 55:2; 57:18; 58:1; 61:17; 77:22; 79:22
**emotional** [8] - 9:5; 58:22; 60:1, 7; 61:6, 15, 17
**emphasis** [1] - 78:12
**emphasized** [2] - 73:16, 21
**employment** [1] - 58:9
**enabled** [1] - 67:12
**encounter** [4] - 22:11; 37:10; 66:18; 81:8
**encounters** [2] - 57:11; 81:8
**encouraged** [2] - 73:23; 78:8
**end** [2] - 13:16; 25:8
**ending** [1] - 18:10
**engage** [1] - 21:17
**engaged** [8] - 5:16, 25; 10:3; 19:1; 46:17; 52:16; 60:15
**enjoy** [1] - 85:6
**enter** [1] - 85:5
**entered** [1] -

Video Motions Hearing 7/18/25

33:22
**entire** [1] - 4:15
**entitled** [2] - 18:15; 85:13
**enunciated** [1] - 5:21
**especially** [2] - 19:25; 42:20
**essential** [4] - 75:5, 22; 77:17; 80:8
**essentially** [5] - 14:13; 50:9; 57:1; 73:14; 77:2
**establish** [13] - 29:14; 48:17; 49:8, 22; 50:3, 25; 51:21; 55:1; 73:15; 79:10, 22, 24; 82:11
**established** [1] - 69:9
**establishes** [2] - 11:10; 25:5
**estoppel** [28] - 64:12, 14; 65:5; 72:17, 22; 73:7, 16, 20; 74:23; 75:20, 23, 25; 76:4; 77:14, 21, 23; 78:6, 9, 11, 18; 79:2, 8, 10, 16, 24; 80:10
**evaluated** [1] - 26:7
**event** [2] - 27:15; 38:11
**events** [4] - 28:6; 29:21; 30:2
**eventual** [1] - 35:21
**evidence** [14] - 6:15; 21:9; 28:12; 35:1; 44:12; 51:5; 55:20; 68:13; 69:8, 21; 72:2; 82:17, 19; 83:3
**Evidence** [1] - 6:18
**exact** [4] - 39:18; 42:19; 64:15
**exactly** [7] - 14:4, 10; 22:18; 35:15, 18; 46:3; 65:1
**exam** [1] - 69:12
**examination** [15] - 62:18; 66:12,

22-23; 72:24; 80:9, 14, 17, 25; 81:5; 82:15; 83:7, 9, 16; 84:13
**examinations** [1] - 81:2
**examine** [1] - 70:11
**examiner** [1] - 80:15
**example** [10] - 18:6; 27:21; 32:19; 36:11; 37:7; 38:7; 41:10; 44:22; 54:3; 73:11
**examples** [7] - 7:8, 18; 8:1, 7, 17; 65:22
**exceedingly** [1] - 63:9
**excellent** [3] - 41:1
**except** [1] - 62:22
**exchange** [2] - 31:18, 20
**exercise** [2] - 34:9; 73:23
**exercising** [1] - 57:24
**exhausted** [1] - 82:18
**exist** [3] - 9:17; 44:12; 78:17
**existence** [1] - 29:12
**exists** [4] - 5:9; 6:15; 44:13; 70:9
**expand** [2] - 31:12; 71:7
**expanded** [1] - 65:21
**expansion** [1] - 77:9
**expect** [2] - 6:12; 51:5
**expense** [1] - 10:11
**expenses** [1] - 58:9
**experience** [1] - 28:10
**explained** [2] - 33:11; 67:4
**explains** [1] - 77:7
**explanation** [1] - 64:9
**explicitly** [1] -

81:12
**expose** [2] - 52:1; 54:4
**exposing** [1] - 53:4
**express** [2] - 18:19; 81:1
**expressing** [2] - 16:24
**expression** [1] - 57:2
**expressions** [1] - 17:4
**extend** [1] - 60:12
**extensive** [3] - 10:3; 16:13; 40:7
**extensively** [2] - 65:7; 77:4
**extent** [6] - 4:21; 9:13; 18:16; 29:11; 34:17; 48:21
**extramarital** [1] - 6:1
**extreme** [5] - 58:6; 59:24; 60:5, 9; 61:12
**extremely** [1] - 70:19
**F-o-r-e-t-i-c-h** [1] - 48:25
**F.3d** [1] - 48:25
**face** [2] - 48:14; 49:19
**faced** [1] - 53:21
**fact** [26] - 6:19; 18:24; 19:19; 20:9; 25:21, 23-24; 27:17; 28:16, 21; 30:1; 37:1, 9, 12-13; 38:6, 17, 20; 43:14; 53:3; 56:24; 62:24; 63:25; 73:10; 75:24; 76:10
**fact-bound** [1] - 30:1
**factor** [1] - 40:14
**facts** [12] - 6:18; 10:14; 29:18; 36:8; 44:2; 49:20; 55:10; 56:9; 57:22; 61:8; 78:14
**factual** [8] - 23:1; 27:14; 28:14; 49:22; 50:16; 66:24; 73:13

**failed** [2] - 55:19; 80:2
**fair** [2] - 65:5; 79:17
**fairly** [1] - 18:15
**faith** [3] - 39:20; 63:12, 25
**false** [30] - 9:4; 14:11; 19:23; 27:15; 28:7; 31:19, 22; 37:2, 14; 51:12, 23; 52:14; 53:4, 18; 56:15, 20; 58:22; 59:4, 10-11, 13, 17-19; 70:1; 71:16; 81:23; 82:3
**falsehoods** [1] - 57:23
**falsity** [5] - 57:14; 59:16; 76:11, 21; 82:1
**familiar** [1] - 31:17
**Family** [1] - 75:18
**far** [1] - 69:10
**father** [22] - 15:10, 12; 28:18; 37:9; 53:15; 56:20; 68:6, 8, 11, 24; 69:8; 70:3, 5, 25; 71:20, 22; 72:1, 3-4, 7; 81:18; 82:13
**fathered** [4] - 26:10; 52:13; 57:12; 82:7
**fatherhood** [2] - 63:3, 7
**fathering** [1] - 70:14
**fault** [3] - 51:15, 24; 58:1
**favor** [12] - 20:1; 29:19; 37:6; 41:7; 48:16; 53:2; 54:13; 57:13; 61:10; 65:16; 75:13
**FCRR** [1] - 85:17
**federal** [8] - 34:7; 65:2, 12, 14; 80:21
**Federal** [4] - 6:17; 58:24; 80:12; 85:11
**FEDERAL** [1] - 85:17

**felony** [1] - 68:25
**few** [3] - 12:17; 13:24; 67:3
**fifth** [1] - 79:16
**fighting** [1] - 36:13
**figure** [12] - 5:6, 9; 6:10; 7:5; 26:22; 28:8; 29:25; 48:9, 19, 23; 49:5, 9
**figures** [17] - 3:21; 5:18; 6:16; 8:23; 28:16; 30:5; 39:14, 16, 23-24; 48:7, 14, 17; 49:21; 50:7, 25
**file** [2] - 67:12; 83:12
**filed** [12] - 3:7, 9; 5:11; 9:7; 26:17; 44:5; 52:8; 53:11; 62:17; 65:17; 69:17; 79:5
**filing** [1] - 26:19
**final** [9] - 10:15; 31:24; 33:22; 72:25; 77:17; 79:15; 80:6, 8
**financial** [1] - 58:8
**findings** [3] - 55:18; 73:13
**fine** [1] - 62:11
**firm** [2] - 41:1
**first** [25] - 29:21; 31:24; 32:1, 19; 40:12; 44:3, 5, 7, 25; 46:16; 48:6, 8, 19; 49:15; 55:3; 60:23; 66:1; 71:10; 75:1; 79:3; 81:3, 6
**First** [3] - 47:23; 52:25; 53:10
**five** [1] - 49:7
**focus** [1] - 18:20
**follow** [2] - 12:21; 45:7
**followers** [1] - 60:21
**following** [2] - 25:20; 31:15
**followup** [1] - 77:12
**footing** [1] - 45:3
**force** [1] - 72:19

**forced** [2] - 70:16, 20
**foreclosed** [1] - 71:24
**foregoing** [1] - 85:12
**forensic** [1] - 83:2
**foreseeable** [2] - 49:24; 51:2
**Foretich** [1] - 48:24
**forget** [1] - 40:25
**forgetting** [1] - 22:8
**forgot** [3] - 17:10; 45:5; 46:8
**format** [1] - 85:14
**former** [2] - 63:1, 17
**forward** [2] - 38:24; 39:9
**four** [4] - 6:13; 30:12; 51:11; 56:5
**four-year** [1] - 56:5
**Fourth** [6] - 48:24; 49:7; 73:6; 79:20, 25
**fourth** [3] - 65:9; 79:15
**framed** [1] - 81:17
**fraud** [1] - 52:16
**fraudster** [4] - 16:22, 25; 27:16; 43:2
**fraudsters** [5] - 26:4; 27:12; 28:4, 19; 43:1
**fraudulently** [1] - 69:7
**fresh** [1] - 67:8
**front** [1] - 80:7
**full** [5] - 10:3, 5; 11:7; 65:5; 79:17
**fully** [11] - 9:24; 10:1, 12; 11:6; 16:13; 22:14; 43:8; 68:13; 71:3
**fulsome** [1] - 25:9
**furthering** [1] - 22:25
**Furthermore** [2] - 23:17; 24:18
**furthers** [2] - 19:3; 20:16
**gang** [1] - 52:19
**Gannett** [1] - 34:6

**gather** [1] - 51:5
**general** [11] - 13:20; 14:2; 19:23; 20:11; 34:19; 49:17; 50:1; 51:3; 58:25
**generally** [4] - 6:21; 10:15; 27:24; 42:16
**genetic** [1] - 82:12
**given** [11] - 13:12; 19:6; 32:14; 36:4; 56:5; 61:10; 63:6, 12-13; 71:17; 80:24
**goal** [1] - 20:17
**goals** [4] - 19:8; 21:21; 22:25; 45:19
**GoFundMe** [7] - 7:23; 16:4; 29:3, 10; 43:10; 50:20
**Government** [2] - 63:17; 73:11
**government** [2] - 22:3
**grant** [1] - 17:22
**granted** [2] - 62:23; 83:7
**granting** [2] - 54:21; 63:8
**great** [3] - 13:22; 44:22; 83:3
**ground** [1] - 10:9
**grounds** [1] - 61:19
**group** [3] - 33:3; 55:24
**guard** [2] - 68:23; 69:1
**guess** [5] - 33:16; 37:4; 41:23; 64:6; 84:12
**guided** [1] - 78:7
**hair** [1] - 83:2
**hand** [3] - 68:22; 74:2, 5
**handles** [1] - 61:21
**harassment** [1] - 52:10
**hard** [2] - 28:1; 69:17
**harm** [6] - 4:20, 23; 51:18, 25; 58:8
**harms** [1] - 58:13

**hate** [1] - 17:21
**hatred** [2] - 52:2; 53:5
**head** [3] - 11:21; 17:19, 23
**header** [1] - 24:7
**heading** [1] - 36:12
**hear** [4] - 3:8; 11:18; 23:14; 62:18
**heard** [2] - 3:13; 9:8
**hearing** [5] - 2:7; 13:21; 47:20; 62:23; 85:4
**Heather** [16] - 25:22; 26:4; 27:3; 52:12, 17, 20-21; 53:12; 56:19; 57:6; 58:10; 81:7, 9, 20
**Heather's** [2] - 56:14; 81:13
**heavily** [3] - 30:1; 74:19; 76:20
**heightened** [1] - 74:14
**held** [1] - 85:13
**helpful** [1] - 73:5
**helping** [1] - 40:19
**helps** [1] - 33:12
**hereby** [1] - 85:12
**Hickman** [1] - 80:23
**high** [1] - 63:18
**high-ranking** [1] - 63:18
**highlighted** [1] - 24:19
**highlights** [1] - 29:23
**highly** [3] - 59:14; 76:11; 82:5
**himself** [3] - 10:12; 14:13; 70:23
**history** [2] - 14:19; 46:23
**hit** [1] - 46:6
**honesty** [1] - 58:13
**Hong** [1] - 38:7
**Honor** [102] - 2:9, 15, 19, 22; 3:12, 15, 18, 22; 4:10, 25; 5:7, 16; 6:4, 12, 17, 24; 7:8,

15, 18; 8:1, 9, 17; 9:1, 9, 15; 10:9; 11:14, 19; 13:6, 24; 14:16; 16:12; 17:18; 18:12; 19:12; 23:9, 13; 25:6, 16, 19; 26:12; 28:15; 29:11, 17; 30:8; 32:12, 25; 33:25; 34:4; 35:6, 12, 14-15, 22-23; 36:3, 11, 16, 18; 37:15; 38:3, 9, 11, 19; 39:4, 7; 40:22; 42:4; 43:23; 44:19; 45:4, 16, 24; 46:7; 47:9; 62:1, 16, 20; 63:6, 14; 64:5; 65:7, 20; 67:1; 68:15, 19; 70:4; 73:2; 75:4; 76:21; 77:25; 78:23; 83:17, 23; 84:2, 16, 19, 22
**Honor's** [2] - 64:12, 17
**hopefully** [1] - 47:3
**hospital** [2] - 69:2
**hotly** [1] - 74:20
**hour** [1] - 47:2
**Huang** [33] - 2:6, 14, 18; 5:20, 25; 6:1; 7:11, 17, 20; 25:24; 26:19; 27:5, 22; 43:17; 47:14; 48:3; 52:9; 53:9, 13, 15, 20, 22, 24; 54:2; 59:3, 10, 22; 60:14, 20, 24; 61:11, 15
**Huang's** [7] - 3:7; 7:3, 16; 48:8; 50:12, 16; 58:21
**humiliation** [1] - 58:7
**hurt** [1] - 33:13
**hyperbole** [3] - 38:9; 57:1; 81:25
**hyperbolic** [2] - 3:18; 36:2
**hypothetical** [1] - 31:12

**i.e** [1] - 82:11
**identical** [4] - 64:19, 23; 65:2; 79:11
**identified** [4] - 9:15; 49:7; 52:24; 60:17
**identifies** [1] - 55:11
**identify** [1] - 2:8
**IIED** [6] - 59:4, 23; 60:23; 61:18, 20
**illegitimate** [7] - 14:22; 15:2, 5, 7, 15, 17, 19
**imaginative** [1] - 57:2
**immediate** [2] - 49:25; 51:3
**important** [2] - 63:7; 68:15
**impregnate** [1] - 69:7
**impregnated** [4] - 28:5; 68:23; 82:6
**improper** [1] - 50:13
**improperly** [1] - 6:7
**in-controversy** [1] - 76:14
**inappropriate** [1] - 16:10
**incidental** [1] - 74:6
**include** [3] - 33:11; 56:12; 77:23
**included** [1] - 4:11
**includes** [2] - 29:19; 81:1
**including** [5] - 6:7; 8:19; 52:11; 53:11; 58:8
**incorporate** [1] - 29:7
**incorporated** [2] - 8:5; 50:21
**indeed** [5] - 9:18; 10:17; 81:4, 20
**independent** [1] - 81:5
**indicate** [1] - 15:2
**indicated** [5] - 3:16; 16:23; 18:11, 18; 38:4
**indignities** [1] - 60:12

**indisputable** [2] - 43:16
**individual** [3] - 49:4; 70:18; 81:1
**individuals** [1] - 55:24
**indulgence** [1] - 16:16
**inference** [2] - 36:25; 81:12
**inferences** [7] - 19:25; 37:6; 48:15; 53:2; 54:12; 57:13; 61:9
**inflict** [1] - 61:6
**infliction** [2] - 9:4; 58:22
**influence** [2] - 35:21; 49:12
**influences** [1] - 7:12
**influencing** [2] - 5:14; 6:8
**information** [4] - 40:6; 70:23; 82:21, 25
**initial** [1] - 49:3
**inquiry** [1] - 48:18
**insemination** [1] - 69:6
**inserted** [2] - 29:16; 51:1
**instances** [1] - 36:9
**instead** [1] - 75:16
**insufficient** [1] - 21:9
**insulting** [1] - 61:5
**insults** [1] - 60:12
**Insurance** [1] - 79:25
**integral** [1] - 50:22
**intelligence** [1] - 63:19
**intended** [2] - 35:19; 50:9
**intent** [2] - 69:13; 76:16
**intention** [1] - 5:1
**intentional** [4] - 9:4; 58:22; 60:4, 23
**intentionality** [1] - 39:19
**intentionally** [1] -

59:25
**interaction** [2] - 75:7; 81:14
**interest** [1] - 49:16
**interestingly** [1] - 42:20
**interests** [1] - 27:8
**interfering** [1] - 34:14
**Internet** [1] - 19:10
**interpret** [1] - 72:19
**interpretation** [1] - 37:12
**interpreted** [2] - 19:24; 53:2
**interpreting** [1] - 65:3
**interrupt** [1] - 7:21
**interrupted** [1] - 22:6
**interrupting** [1] - 23:14
**interview** [1] - 8:14
**intolerable** [1] - 60:11
**invasion** [2] - 59:11; 80:24
**invasive** [1] - 83:1
**investigated** [1] - 73:12
**invited** [1] - 25:1
**invoking** [2] - 79:10, 23
**involved** [1] - 41:24
**involving** [1] - 60:16
**iota** [1] - 68:10
**irrelevant** [1] - 66:13
**irrespective** [3] - 39:1; 51:18; 77:24
**issue** [57] - 3:13, 15, 19-20, 23, 25; 5:6; 7:6; 16:7; 19:19; 22:10; 29:25; 32:21; 33:14; 34:23, 25; 35:3; 36:3; 39:25; 42:9; 43:18; 45:1; 46:18; 48:13; 49:23;

51:4; 63:7; 64:16; 65:6, 11, 16; 66:11; 67:23; 68:21; 71:5, 19, 24; 73:10; 74:16, 20-21, 25; 77:4, 6, 17; 79:3, 11-12, 17; 80:2, 7; 81:6, 10; 82:16; 83:12

**issue's** [1] - 79:13

**issued** [3] - 30:11; 40:16

**issues** [10] - 10:12; 39:10; 40:8, 13; 47:25; 61:21; 68:22; 73:25; 78:14; 82:5

**items** [1] - 16:3

**iterations** [1] - 13:12

**itself** [2] - 29:18; 80:6

**John** [2] - 2:13, 19

**journalist** [1] - 58:12

**Judge** [7] - 2:4; 23:12; 34:25; 43:10; 47:8; 62:11, 13

**judge** [2] - 10:6; 36:20

**judge's** [1] - 25:11

**judgment** [26] - 10:1, 15; 23:17, 22; 24:9; 28:11; 30:11, 22; 31:24; 33:22; 34:18; 51:7; 55:3, 17; 73:1, 18; 75:6, 8, 10, 13; 77:17; 79:15; 80:6, 8

**judicata** [22] - 10:8, 16; 11:4; 12:13; 28:24; 30:10, 14; 31:1; 32:2, 5, 13, 21; 33:12; 43:7; 45:1; 54:25; 55:2; 56:9; 64:13

**Judicial** [1] - 85:14

**judicial** [8] - 6:18, 25; 8:21; 29:8; 36:7; 38:23;

40:3; 43:14

**judicially** [1] - 6:19

**July** [7] - 10:20; 30:11, 15, 24; 55:23, 25; 85:15

**June** [2] - 47:21; 53:25

**jurisdiction** [2] - 6:22; 34:9

**jurors** [2] - 6:8; 7:12

**jury** [1] - 35:21

**Justice** [1] - 73:12

**justify** [1] - 48:23

**Katerina** [1] - 40:24

**key** [2] - 28:21; 69:8

**kind** [5] - 27:25; 28:1; 29:8; 34:7; 75:19

**knowledge** [2] - 59:15; 69:14

**known** [3] - 6:21; 40:13; 72:10

**knows** [3] - 9:17; 44:11, 16

**Kong** [1] - 38:7

**lack** [3] - 14:3; 34:11

**lacks** [1] - 45:25

**language** [2] - 23:13; 24:4

**large** [2] - 60:21; 61:10

**largely** [2] - 3:17; 77:22

**last** [5] - 16:17; 40:23; 44:19; 47:20; 65:4

**launched** [1] - 61:1

**law** [31] - 5:8; 6:11; 15:6, 8, 10, 15, 20; 31:3, 11; 39:22; 43:3; 47:25; 51:10, 17, 20-21; 52:5; 54:25; 58:2; 60:2; 65:3; 67:5, 7, 11; 70:7, 14; 71:24; 72:4, 7; 73:10

**lawsuit** [3] - 5:10, 19; 66:2

**lawyer** [2] - 8:10; 40:24

**lawyers** [1] - 40:22

**laying** [1] - 77:22

**leading** [1] - 66:7

**leads** [1] - 35:2

**least** [14] - 8:19; 16:2; 23:3; 28:20; 30:20; 32:7; 37:11; 40:22; 47:18; 51:16; 52:23; 57:15; 58:3; 71:24

**leave** [2] - 25:8; 54:21

**leaving** [1] - 36:3

**led** [1] - 29:10

**legal** [5] - 21:22; 36:13; 59:18; 71:20; 78:14

**legally** [3] - 51:23; 57:25; 72:1

**Legislature** [1] - 67:5

**legislature** [1] - 44:23

**lengthy** [2] - 43:8; 46:2

**lens** [1] - 73:21

**less** [1] - 35:1

**letter** [4] - 31:3; 39:21; 53:12; 54:9

**letters** [1] - 52:21

**level** [5] - 39:19; 44:14; 46:25; 65:12, 15

**liability** [9] - 60:8, 12; 66:2; 67:9, 13; 73:15; 76:8, 13; 78:15

**liar** [14] - 6:2; 14:12; 16:21, 24; 18:16; 22:20; 27:16; 28:2; 37:17; 43:2; 56:15; 57:6, 9

**liars** [11] - 8:16; 26:4; 27:12, 22-24; 28:4, 19; 52:14; 53:16; 64:24

**libel** [1] - 52:9

**liberal** [1] - 80:20

**license** [1] - 19:13

**licensed** [1] - 80:15

**lie** [1] - 45:14

**lies** [1] - 8:13

**light** [11] - 9:4; 43:13; 58:22;

59:4, 10-11, 13, 17

**lightly** [1] - 78:8

**limit** [2] - 39:25; 43:20

**limitations** [5] - 19:6; 44:25; 56:24; 67:8; 81:1

**limited** [26] - 3:21; 4:16; 5:8, 18; 6:10, 13, 16; 7:5; 8:23; 26:21; 28:8, 16; 29:25; 30:5; 35:23; 38:13; 39:14, 16, 22, 24; 48:8, 19; 49:9; 70:9, 12; 74:13

**limits** [1] - 5:3

**line** [1] - 37:16

**linear** [1] - 30:14

**lines** [2] - 62:5; 72:18

**link** [1] - 82:12

**list** [1] - 41:22

**listed** [2] - 15:11; 71:22

**listening** [1] - 28:10

**literally** [1] - 8:18

**litigate** [5] - 65:6; 67:16; 71:5; 72:13; 79:17

**litigated** [17] - 9:18, 24; 10:12, 14; 11:6; 16:13; 22:13, 16; 23:3; 44:7; 45:1; 46:16; 65:7; 71:3; 74:20; 79:12

**litigating** [2] - 17:6; 21:24

**litigation** [14] - 9:21; 16:2; 17:3; 21:18; 25:4; 40:23; 43:8, 21; 44:5; 56:25; 72:25; 76:3; 79:5

**Liu** [29] - 2:6; 5:24; 7:19; 8:4, 10; 9:17; 10:6; 14:17, 25; 15:13; 16:2, 5; 17:6; 19:5; 20:7; 26:8, 11, 13, 17; 38:6; 40:8, 15; 41:8; 43:16, 18;

68:6; 70:24; 71:20

**Liu's** [8] - 2:24; 7:17; 14:11; 19:7; 20:12; 36:11; 50:20; 70:25

**living** [1] - 58:12

**logic** [2] - 30:13, 21

**LONGMORE** [1] - 85:17

**Longmore** [1] - 85:11

**look** [16] - 14:3, 16; 18:2; 20:14; 21:14; 25:10; 34:3; 40:5; 41:5; 42:21; 43:24; 46:1; 65:3; 66:8; 78:2

**lookback** [2] - 67:7, 18

**looking** [4] - 11:20; 13:16; 45:4; 73:21

**looks** [1] - 39:12

**lost** [2] - 58:5, 8

**love** [5] - 8:15; 52:21; 53:12; 54:9

**lying** [8] - 27:10; 37:9; 45:12; 70:2; 71:15; 81:17

**mail** [3] - 82:9, 16, 21

**mailed** [1] - 63:19

**main** [1] - 77:22

**Mainland** [1] - 19:10

**major** [1] - 67:3

**malice** [16] - 5:20; 28:20, 22; 30:7; 36:6, 19; 38:25; 39:11, 19, 22; 45:8, 15, 21; 46:9, 25

**malpractice** [1] - 69:9

**manner** [2] - 80:16; 83:8

**married** [3] - 15:11; 71:21; 72:8

**Maryland** [11] - 6:11; 47:24; 51:20; 52:4; 58:2; 60:3; 71:23-25; 85:12

**mass** [1] - 6:6

**materially** [1] - 31:22

**matter** [35] - 2:4, 6; 3:17; 8:8, 20; 11:18; 14:1; 15:8, 10, 15, 20, 22; 19:23; 21:23; 22:2; 30:13, 20; 34:19; 38:9; 39:21; 42:11; 43:12; 49:16; 50:10; 51:1, 7, 17; 58:25; 59:12, 16; 72:3, 7; 74:7; 85:13

**matters** [5] - 13:16; 37:1, 11; 81:9

**mean** [20] - 13:8; 17:23; 21:15; 27:19; 29:12, 23; 30:13, 24; 33:1; 37:6; 41:18; 45:22; 49:15; 68:11, 22; 70:22; 75:9; 76:7, 19; 77:20

**meaning** [6] - 13:11; 15:6; 53:1; 54:14; 56:11; 67:25

**means** [4] - 13:2; 41:19; 43:7; 49:14

**meant** [1] - 10:2

**mechanism** [3] - 67:15; 71:4; 72:14

**media** [11] - 5:17; 6:3, 9; 7:12; 19:10; 26:20; 35:19; 60:15, 17, 21; 81:11

**medical** [2] - 58:10; 69:9

**meet** [6] - 49:8; 59:18; 83:11, 18; 84:5, 13

**meeting** [1] - 60:23

**member** [5] - 20:19; 21:5, 10, 14; 56:18

**members** [2] - 14:6; 56:13

**memorandum** [1] - 11:21

**Meng** [4] - 53:14;

71:20; 72:3, 7
**mental** [7] - 69:2, 23; 70:10; 80:13, 25; 81:3
**mentioned** [4] - 16:12; 17:3; 39:11; 65:8
**mere** [2] - 60:12; 81:24
**merely** [1] - 37:17
**merits** [5] - 11:8; 48:12; 55:3; 59:9
**message** [2] - 31:16, 20
**messages** [2] - 32:8, 11
**met** [1] - 82:6
**methods** [1] - 82:18
**Microsoft** [5] - 73:4, 11-12, 15; 77:19
**might** [8] - 21:4; 27:4; 31:16; 32:3, 20; 33:16; 77:11
**mind** [2] - 62:2, 7
**minimally** [1] - 83:1
**minimum** [2] - 36:18; 38:24
**Mining** [1] - 79:21
**minutes** [1] - 47:2
**misconduct** [1] - 61:7
**misguided** [1] - 27:4
**missed** [1] - 83:25
**MJM-23-2134** [1] - 2:5
**mobilize** [1] - 42:24
**mobilized** [1] - 46:6
**moment** [1] - 58:3
**morning** [8] - 2:3, 9, 11, 13, 15, 17; 25:16
**Morse** [1] - 2:14
**most** [3] - 52:24; 70:9, 13
**mother** [2] - 16:22; 43:3
**motion** [54] - 2:23; 3:1, 7, 10, 14; 4:15; 7:2, 6; 9:7, 16; 16:9; 20:1; 24:4; 25:19; 47:5, 19;

48:10; 50:17; 51:8; 54:1, 16, 20; 58:21, 25; 59:1, 3, 5-6, 20; 61:20, 23; 62:17, 19, 23; 63:8, 14; 64:9; 65:17; 66:14; 69:17; 76:2, 23-24; 77:7; 79:5; 80:5, 9, 11; 83:7, 21; 84:8
**motions** [13] - 2:7, 23; 3:1, 6; 23:10; 24:10; 47:4, 12; 48:1; 54:7; 61:21; 83:22
**motivation** [2] - 12:11; 18:19
**motivations** [2] - 15:25; 17:2
**movant** [1] - 81:5
**move** [2] - 47:5; 68:17
**moved** [3] - 22:7; 45:17; 54:19
**moves** [1] - 50:24
**moving** [4] - 38:12, 24; 54:16; 61:23
**MR** [98] - 2:9, 13, 15, 19, 22; 3:4, 9; 4:10, 25; 5:7; 8:1; 9:9; 11:14, 19; 12:1; 13:6; 17:13, 18; 18:2, 12; 20:11, 25; 21:4, 12; 22:8, 12; 23:8, 12-13, 16, 21, 24; 24:8, 14, 17; 25:6, 16; 29:1, 4, 17; 30:8, 10, 17, 20; 31:13; 32:3, 9, 12, 25; 33:9, 18, 25; 34:3, 16; 35:12, 14; 37:15; 38:3; 39:4, 7; 41:20; 42:1, 4; 45:16, 24; 46:10, 12; 47:8; 62:1, 4, 11, 13, 16, 20; 64:5; 67:1; 68:19; 70:4; 71:17; 73:2; 75:4; 76:7, 23; 77:1, 25; 79:1;

83:17, 23; 84:1, 4, 9, 16, 19, 22; 85:1, 8
**multiple** [7] - 5:10; 10:10, 24; 21:17; 36:9, 17; 77:6
**must** [11] - 40:11; 49:16; 51:10, 21; 55:2; 59:1, 18, 24; 60:3; 79:10; 80:15
**mute** [4] - 11:16; 18:10; 35:12; 36:20
**name** [1] - 40:25
**names** [1] - 6:2
**narrative** [1] - 26:15
**natural** [1] - 19:14
**naturally** [1] - 35:2
**nature** [4] - 38:21; 48:21; 53:10; 81:12
**nearly** [1] - 70:18
**necessarily** [2] - 13:8; 37:19
**necessary** [7] - 47:5; 72:25; 73:18; 74:25; 78:2; 79:14; 80:3
**necessity** [2] - 78:16, 21
**need** [8] - 17:20; 41:5; 46:3; 61:24; 78:20; 80:21; 83:3; 84:10
**needle** [1] - 50:24
**needs** [1] - 83:5
**negligence** [2] - 51:16, 24
**never** [10] - 15:12; 22:2; 33:21; 44:10; 50:9; 65:21; 66:4; 71:23; 72:2; 82:6
**nevertheless** [1] - 28:19
**new** [8] - 32:15; 44:23; 53:19, 21; 59:6; 64:18; 67:11
**New** [5] - 5:21; 36:6; 44:22; 49:5; 67:5
**newly** [2] - 48:2, 5

newspaper [1] - 38:7
**next** [3] - 18:3; 19:17; 61:14
**Nguyen** [1] - 40:24
**noise** [1] - 11:17
**nonactual** [1] - 34:24
**none** [3] - 28:11; 62:16; 69:10
**note** [1] - 48:6
**noted** [5] - 3:5; 16:4; 40:1; 57:17; 82:16
**notes** [2] - 34:3; 45:4
**nothing** [7] - 46:18; 62:1, 6, 13; 69:13; 72:9
**notice** [9] - 6:18, 25; 8:21; 29:8; 36:8; 38:23; 40:3; 43:15
**now-pending** [1] - 48:1
**nowhere** [1] - 25:7
**number** [7] - 7:8, 18; 18:9; 26:25; 44:21; 60:21; 66:11
**Number** [2] - 2:5; 54:21
**objection** [1] - 59:2
**objectives** [1] - 6:7
**obscene** [1] - 61:2
**obtain** [2] - 63:13; 83:2
**obtained** [2] - 55:17; 82:19
**obvious** [1] - 42:10
**obviously** [8] - 21:2; 28:9; 48:11; 65:24; 67:23; 68:5, 11; 76:11
**occurred** [10] - 27:18; 55:14, 22, 24; 56:1; 68:10, 13, 24; 75:12; 76:11
**occurs** [3] - 59:11; 69:2, 13
**OF** [1] - 85:10
**offensive** [10] -

59:14; 73:6, 16; 75:22; 77:13, 21, 24; 78:6, 10
**officer** [1] - 63:19
**official** [3] - 63:1, 17
**OFFICIAL** [2] - 85:10, 17
**omitted** [1] - 59:3
**omnibus** [2] - 17:19; 24:10
**once** [1] - 67:16
**one** [43] - 2:23; 3:20; 5:10; 6:21; 14:5, 24; 15:6; 19:21; 20:18; 21:15, 25; 24:12; 31:25; 32:1; 38:9; 39:10, 12; 40:23; 41:15, 18; 46:16, 21; 47:13; 51:6; 52:1; 58:3; 59:11; 64:10; 66:7, 10; 67:8; 68:10, 15; 70:2, 17; 74:2; 76:15, 24; 77:12; 79:7, 11; 82:7
**one-year** [1] - 67:8
**ones** [3] - 14:1; 27:14; 38:22
**ongoing** [1] - 34:14
**online** [1] - 57:21
**opens** [2] - 70:6, 15
**operative** [2] - 55:10; 56:8
**opinion** [26] - 3:18; 12:10; 15:22; 16:24; 17:1, 4; 19:4; 20:9, 18; 24:2, 22, 24; 36:2; 37:4, 13, 17, 22; 40:16; 43:4; 45:16; 52:3; 53:6; 57:1; 67:24; 71:5
**opinions** [3] - 34:24; 35:4; 81:25
**opponent's** [1] - 7:25
**opportunities** [1] - 58:9
**opportunity** [6] -

25:9; 35:11; 36:22; 48:11; 65:6; 79:17
**opposing** [1] - 6:12
**opposition** [1] - 24:1
**oppressions** [1] - 60:13
**oral** [6] - 25:11; 47:20; 53:25; 62:9, 19; 85:5
**order** [28] - 15:9; 17:15, 19; 19:14; 23:13, 17, 22; 24:10; 25:11; 49:8; 54:21, 23; 55:1; 62:4, 6, 8; 66:4; 72:19; 75:18; 78:20; 80:13, 15, 20; 83:2, 12, 19; 85:5
**ordered** [3] - 65:15; 71:9; 77:5
**ordering** [1] - 81:5
**orders** [2] - 77:6
**organization** [1] - 41:21
**otherwise** [4] - 7:13; 62:6; 68:25; 72:10
**ought** [1] - 40:14
**out-of-pocket** [1] - 58:9
**outcome** [5] - 5:14; 35:3; 49:13, 17; 68:1
**outrageous** [4] - 59:24; 60:5, 9; 61:13
**outset** [1] - 73:15
**outside** [1] - 28:13
**overarching** [1] - 26:24
**overlap** [1] - 64:8
**own** [4] - 24:2; 69:7, 23; 70:10
**owned** [1] - 38:8
**p.m** [1] - 85:9
**Page** [6] - 7:3, 16; 23:16, 20; 24:6, 15
**page** [9] - 7:24; 16:4; 24:7, 9, 17; 29:3, 10; 50:20; 85:14

Video Motions Hearing 7/18/25

**Pages** [1] - 54:22
**pages** [1] - 54:23
**papers** [5] - 9:2; 15:3, 9; 16:23; 36:2
**Paragraph** [17] - 4:13, 18; 5:2; 8:11; 14:16, 18, 23; 16:18; 18:22; 26:13, 18; 39:12; 42:21, 23; 45:25; 46:1; 50:6
**paragraph** [2] - 4:21; 50:8
**paragraphs** [1] - 46:1
**Paragraphs** [2] - 14:1; 42:14
**paraphrasing** [1] - 14:18
**parent** [2] - 20:5; 22:17
**parentage** [6] - 22:11, 14, 22; 45:11; 54:11; 71:15
**part** [19] - 11:11; 12:24; 13:4, 9; 28:22; 29:6; 31:2; 32:8, 13; 33:24; 35:20; 48:17; 54:7; 59:24; 68:25; 71:12; 78:21; 79:14; 80:3
**participants** [2] - 49:25; 51:3
**participation** [1] - 48:22
**particular** [14] - 3:15, 19; 4:13; 14:1; 22:23; 31:5, 18, 20; 39:1; 45:2; 48:20, 22
**particularity** [1] - 39:18
**particularly** [2] - 73:5; 77:8
**parties** [10] - 10:3, 13; 11:15; 51:5; 55:5; 57:22; 64:15; 65:5; 83:11, 18
**parties'** [1] - 50:17
**party** [10] - 19:5; 26:11; 51:14;

58:25; 59:2; 74:20; 79:10, 16, 23; 80:13
**Party** [1] - 52:16
**party's** [1] - 81:3
**passed** [4] - 44:23; 67:5, 7, 10
**past** [1] - 67:9
**paternity** [21] - 23:2; 46:13, 23; 56:23; 64:20; 65:21; 66:4, 11; 67:21; 68:2, 21; 70:16; 71:9; 72:1, 8, 20; 74:4; 81:7, 15; 82:4, 16
**patience** [1] - 17:11
**patient** [2] - 69:1, 3
**pending** [5] - 2:5; 47:13; 48:1; 84:7, 9
**people** [7] - 33:3, 5; 35:23; 37:20; 42:24; 46:5; 67:6
**per** [20] - 3:12; 4:1, 3, 5, 7, 11-14, 20, 22; 5:4, 10; 9:2; 15:18; 37:22; 58:4, 15
**perception** [1] - 6:4
**perceptions** [1] - 7:13
**perform** [2] - 80:17; 83:10
**performed** [2] - 63:12, 25
**perhaps** [4] - 32:9; 35:20; 52:24
**period** [2] - 15:13; 67:8
**permission** [2] - 3:2; 17:22
**permits** [1] - 2:25
**person** [21] - 16:19; 18:9; 19:18; 21:3; 22:4; 31:15, 20, 23; 37:7-9; 38:1, 13; 42:7; 51:22; 52:2, 4; 59:15; 80:17; 82:20; 83:9

**person's** [1] - 22:1
**persons** [5] - 49:25; 51:2; 55:16; 80:17; 83:10
**perspective** [3] - 31:10; 33:12; 83:20
**petty** [1] - 60:13
**phase** [5] - 10:1; 40:25; 50:18; 51:8
**phone** [1] - 18:9
**physical** [13] - 62:18; 66:12; 69:23; 70:10; 72:24; 80:9, 13-14, 25; 81:3; 82:15; 83:2, 7
**picking** [1] - 11:17
**piece** [2] - 68:15; 74:2
**place** [5] - 17:14; 31:6; 38:15; 80:16; 83:8
**placed** [2] - 59:14, 17
**places** [1] - 59:12
**plain** [1] - 19:19
**plaintiff** [51] - 2:8; 3:11; 5:8, 24; 7:19; 8:3, 10; 11:1; 14:11; 15:25; 20:7; 36:11; 38:6; 44:15, 23; 48:19; 49:3, 5, 8, 10, 12; 50:3, 20; 51:10, 13, 19, 21, 25; 52:13, 17, 20-21; 53:12; 54:6; 56:14, 19; 57:6; 58:10; 59:24; 60:1, 3; 70:3, 10; 73:8; 81:9, 13, 19, 21; 82:12
**plaintiff's** [1] - 48:21
**plaintiffs** [84] - 2:10; 4:3, 14, 17; 5:11, 16; 6:6, 16; 7:10; 8:18, 23; 10:21; 11:22; 12:4, 15, 17; 14:25; 17:2; 18:6; 23:25;

26:20; 35:15; 36:8; 38:5, 20, 25; 39:13; 45:12; 48:7; 49:21; 50:6, 24; 51:1; 52:7, 10, 14-16, 19; 53:4, 8, 16-17; 54:4, 9; 55:19; 57:22; 58:5, 19; 59:9; 60:14, 19, 24; 61:2-4, 6, 14-15; 63:20; 64:24; 65:8, 10, 17, 23; 66:6, 17; 70:2; 71:2, 14; 73:4, 14; 74:3; 81:16, 22; 82:2, 7, 9, 18, 25; 83:6
**plaintiffs'** [19] - 9:11; 11:10; 20:1; 36:4; 37:5; 48:3, 16; 50:14; 52:11; 53:2, 20; 54:11, 13; 57:13, 18; 61:9; 79:4; 80:9; 82:7
**planning** [1] - 2:25
**platform** [1] - 57:21
**plausible** [3] - 47:24; 48:4; 58:16
**plausibly** [8] - 28:20, 22; 54:4, 14; 57:15; 60:22; 61:12; 82:1
**plead** [1] - 39:22
**pleaded** [3] - 49:20; 58:19; 59:9
**pleading** [17] - 7:24; 8:2; 12:23; 24:24; 29:6; 30:6; 33:20; 37:5; 40:1; 46:25; 48:16; 50:14-16, 22
**pleadings** [6] - 9:16; 25:10; 28:13; 40:18, 20; 50:17
**pled** [3] - 9:10; 41:15
**plethora** [1] - 7:9
**plus** [1] - 36:13
**pocket** [1] - 58:9

**point** [15] - 8:9; 11:11; 17:15; 25:12; 42:4; 44:19; 46:7; 47:2; 66:6; 68:17; 73:3; 74:8; 76:24; 77:9; 78:4
**pointed** [3] - 25:19; 44:20; 65:23
**points** [2] - 22:7; 43:22
**political** [2] - 14:20; 70:19
**Pond** [1] - 79:20
**pool** [1] - 35:21
**portion** [1] - 20:20
**portions** [1] - 47:18
**position** [9] - 4:9; 12:24; 23:4; 29:20; 38:16; 47:4; 82:8, 10, 19
**positive** [1] - 63:23
**possibility** [1] - 15:21
**possible** [3] - 37:4, 18; 60:10
**possibly** [2] - 30:13; 34:12
**post** [1] - 14:17
**posted** [1] - 60:20
**posts** [4] - 60:16; 61:11; 81:11
**potential** [2] - 6:8; 7:12
**potentially** [1] - 80:24
**power** [1] - 8:21
**practical** [3] - 19:20; 21:23; 22:2
**practice** [1] - 69:6
**precise** [1] - 42:25
**preclude** [2] - 73:24; 78:14
**precluded** [3] - 72:16; 73:9; 79:11
**precludes** [1] - 79:8
**predicates** [1] - 79:24
**prejudice** [5] - 10:7; 13:19; 15:4; 73:24;

78:10
**premature** [1] - 29:24
**preponderance** [1] - 21:10
**present** [6] - 20:4; 24:3; 48:11; 55:2, 13; 68:12
**presentation** [2] - 34:12; 41:21
**presented** [5] - 37:3; 47:17; 54:24; 61:21; 82:9
**presenting** [1] - 45:14
**presume** [1] - 13:1
**presumed** [1] - 72:1
**presumption** [1] - 49:3
**presumptive** [1] - 15:10
**pretty** [2] - 37:16; 63:7
**prevent** [1] - 32:21
**previous** [5] - 47:19; 79:5, 18; 80:5; 81:14
**previously** [5] - 12:25; 17:6; 22:13; 47:22; 79:12
**primarily** [1] - 47:16
**primary** [1] - 16:12
**principally** [1] - 52:10
**principle** [1] - 80:10
**principles** [1] - 21:22
**prison** [3] - 68:23; 69:1; 70:18
**prisoner** [2] - 68:23; 70:19
**privacy** [2] - 59:11; 80:24
**private** [2] - 49:3; 73:13
**privilege** [1] - 51:14
**privities** [1] - 55:5
**pro** [6] - 34:23; 40:15, 18, 20; 41:4; 61:4
**pro-democracy**

Video Motions Hearing 7/18/25

[1] - 61:4
**probative** [2] - 76:11; 82:5
**Procedure** [2] - 58:25; 80:12
**proceed** [1] - 5:5
**proceeded** [1] - 49:2
**proceeding** [9] - 6:15; 7:1; 34:14; 38:18; 47:15; 71:13; 79:13, 15; 80:4
**proceedings** [5] - 8:22; 10:22; 12:4; 85:9, 13
**process** [1] - 71:25
**produce** [1] - 55:19
**produced** [3] - 46:18; 63:5; 74:12
**production** [1] - 10:4
**Professional** [1] - 85:11
**prolonged** [1] - 60:15
**prominence** [2] - 49:11; 50:4
**prominently** [1] - 49:10
**promiscuous** [1] - 52:18
**proof** [2] - 8:24; 38:25
**proper** [1] - 50:21
**proportional** [1] - 83:4
**proposal** [1] - 84:18
**proposed** [2] - 83:12, 19
**proposition** [11] - 7:4; 20:4, 11; 51:6; 52:6; 66:17, 20, 24; 76:18; 79:19; 80:23
**prosecuting** [2] - 8:15
**protect** [1] - 78:13
**protracted** [1] - 61:1
**provable** [2] - 18:24; 46:20
**provably** [2] - 19:23; 27:14
**prove** [25] - 5:19;

19:6; 20:13; 21:5; 22:22; 36:5, 18; 38:5; 44:12, 17; 51:11; 66:18, 21; 68:2, 6-7, 9-10; 71:13, 16; 78:20; 81:22; 82:2
**proved** [1] - 28:7
**proven** [2] - 37:2, 14
**proves** [2] - 23:5; 68:24
**provide** [4] - 40:6; 41:6; 63:20; 82:17
**provided** [2] - 15:13; 65:16
**provides** [2] - 6:25; 80:12
**proving** [3] - 19:20; 49:4; 66:22
**public** [79] - 3:21; 5:6, 9, 14, 16, 18; 6:3, 9-10, 16; 7:5, 13; 8:2, 7, 11, 20, 23; 14:8, 14; 16:3, 5, 7; 25:4; 26:9, 14, 16, 22; 28:8, 16; 29:14, 24-25; 30:5; 33:6; 35:19, 23; 38:13; 39:14, 16; 40:3; 43:11, 14, 18, 20; 48:7-9, 14, 17, 19-20, 23; 49:5, 9, 11, 14, 16-18, 21, 24; 50:1, 5, 7, 10, 24; 51:3; 52:2; 53:4; 59:13; 60:16; 61:1, 11; 67:24; 71:5
**publication** [3] - 41:11; 42:5; 51:18
**publicity** [5] - 9:19; 16:5, 7; 59:12
**publicized** [1] - 59:16
**publicly** [4] - 6:3; 7:19; 28:19; 43:17
**published** [3] - 7:19; 51:14;

57:23
**publishing** [2] - 42:7; 51:16
**pulled** [1] - 77:19
**punitive** [1] - 39:20
**pure** [2] - 30:13, 21
**purely** [1] - 39:20
**purpose** [25] - 2:7; 3:21; 5:9, 13, 18; 6:10, 16; 7:5; 8:23; 13:11; 14:7; 26:22; 28:8, 16; 29:25; 30:5; 31:5; 35:23; 39:22, 24; 48:19; 49:9; 54:7; 76:14; 80:20
**purposefully** [2] - 29:15; 60:25
**purposes** [5] - 8:23; 10:16; 19:3; 41:19; 81:2
**pursuant** [1] - 85:12
**pursuing** [2] - 16:5; 17:2
**put** [13] - 10:21; 11:16; 12:16; 15:9; 16:1; 17:21, 24; 18:10; 22:12; 41:24; 43:11; 69:23; 70:23
**puts** [1] - 70:10
**putting** [7] - 15:21; 20:22; 24:20; 44:13; 46:14, 22
**qualifies** [1] - 75:20
**qualify** [2] - 4:5, 22
**questioned** [1] - 6:24
**questions** [8] - 17:9, 12; 20:8; 23:8; 35:7; 82:24
**quick** [1] - 11:19
**quickly** [1] - 4:8
**quite** [3] - 32:25; 33:15; 37:7
**quod** [4] - 4:7, 11, 20; 15:18
**quotations** [1] - 14:4

**quoting** [1] - 46:2
**Radio** [1] - 8:12
**raise** [1] - 84:21
**raised** [5] - 40:8; 43:9; 44:14; 48:10; 50:19
**raising** [2] - 43:13; 59:2
**ramification** [1] - 51:2
**ramifications** [1] - 49:25
**ranking** [1] - 63:18
**rape** [10] - 27:16; 44:1; 56:15, 22; 57:4; 68:7, 9; 70:6, 14
**raped** [4] - 5:24; 22:21; 25:22; 28:4
**rapist** [1] - 36:13
**re** [5] - 41:11; 42:5, 7; 73:4; 77:19
**re-publication** [2] - 41:11; 42:5
**re-publishing** [1] - 42:7
**reach** [2] - 48:6, 13
**read** [3] - 4:18, 24; 62:5
**readily** [1] - 6:23
**ready** [1] - 29:12
**real** [3] - 49:16; 72:14; 82:24
**really** [30] - 9:20; 11:2; 13:16; 14:1; 15:23; 18:18, 23; 20:8; 29:5; 38:19; 39:15; 43:12; 44:16; 46:1; 62:21; 64:22; 65:23; 67:21, 24; 68:14; 70:20, 22; 71:5; 72:6, 15; 73:22, 24; 74:7; 78:4, 7
**realm** [1] - 43:11
**Realtime** [1] - 85:11
**reason** [10] - 6:5; 9:22; 10:17, 25; 22:12; 31:2; 32:20; 66:16; 75:4; 84:8
**reasonable** [13] - 6:20; 19:25;

36:25; 37:6, 12; 48:15; 53:1; 54:12; 57:12, 24; 59:14; 61:9
**reasonably** [1] - 6:24
**reasoned** [1] - 77:3
**reasoning** [2] - 64:17; 77:7
**reasons** [16] - 11:7; 17:3; 36:1; 42:15; 43:4; 44:21; 45:20; 47:19; 53:24; 54:20; 58:18; 59:21; 61:19; 64:10; 67:3; 80:8
**rebut** [1] - 71:25
**rebuttal** [3] - 18:1; 35:11, 14
**recently** [1] - 14:21
**recess** [4] - 47:3, 6-7, 10
**rechallenging** [1] - 73:25
**reckless** [2] - 59:15; 60:4
**recklessly** [1] - 59:25
**recklessness** [3] - 28:21; 39:19
**recognizes** [1] - 63:6
**recollect** [3] - 19:10; 40:24; 43:17
**recollection** [2] - 13:20; 42:5
**reconsider** [2] - 24:11; 47:18
**reconsideration** [1] - 65:17
**record** [17] - 2:8; 10:5; 25:4, 9; 34:22; 35:1; 40:5, 7, 17; 41:6; 43:13, 15, 20; 44:10; 63:15; 80:7
**records** [4] - 34:21; 40:1, 3; 41:6
**reference** [4] - 14:23; 18:22; 81:12; 85:5
**references** [2] - 8:12; 82:16

**referring** [1] - 30:18
**reflect** [1] - 21:12
**reflected** [1] - 20:21
**reflective** [1] - 17:1
**regard** [4] - 9:10; 27:20; 39:24; 82:15
**regarded** [1] - 60:10
**regarding** [2] - 6:5; 22:10
**regardless** [2] - 21:24; 68:1
**Registered** [1] - 85:11
**regulations** [1] - 85:14
**regurgitate** [1] - 64:7
**reject** [2] - 47:22; 54:8
**rejected** [1] - 59:8
**relate** [1] - 9:12
**relates** [7] - 3:25; 45:9; 54:2, 25; 57:4, 9; 83:21
**relationship** [1] - 81:14
**relevance** [1] - 74:13
**relevant** [6] - 2:23; 10:16; 11:1; 26:21; 74:12; 75:10
**reliability** [1] - 44:15
**relitigate** [1] - 72:12
**relitigating** [1] - 73:9
**relitigation** [1] - 32:21
**rely** [4] - 8:6; 18:15; 62:9; 65:3
**remain** [2] - 39:1; 82:23
**remaining** [1] - 61:17
**remains** [2] - 83:8; 84:15
**remanded** [2] - 65:13; 73:20
**remarks** [1] - 25:17
**remember** [2] - 17:20; 33:15

Video Motions Hearing 7/18/25

removed [1] - 69:10
rendered [1] - 73:1
rendering [1] - 75:13
reopen [1] - 67:7
repeatedly [2] - 5:23; 60:20
rephrase [1] - 22:20
reply [5] - 7:3; 9:16; 11:20; 34:4; 44:20
report [1] - 84:17
reported [1] - 85:13
REPORTER [2] - 85:10, 17
Reporter [2] - 85:11
representation [2] - 36:14; 41:1
represented [1] - 65:11
reputation [4] - 35:18; 58:5, 12; 60:19
reputations [1] - 35:19
request [10] - 12:1; 23:5; 33:21; 62:10; 64:15, 18-19; 66:12; 72:24; 74:11
requests [1] - 83:25
require [1] - 47:17
required [5] - 5:17, 19; 8:24; 20:2; 39:22
requirement [2] - 75:21; 78:16
requirements [2] - 30:6; 49:7
requires [2] - 38:24; 81:3
res [22] - 10:8, 16; 11:4; 12:13; 28:24; 30:10, 14, 25; 32:2, 5, 13, 21; 33:12; 43:7; 45:1; 54:25; 55:1; 56:9; 64:13
resolution [3] - 49:13; 84:7, 9
resolve [1] - 50:16
resolving [1] -

55:4
respect [11] - 3:25; 9:2; 20:5; 34:18; 36:24; 38:16; 45:8; 57:11; 72:23; 77:13
respected [1] - 74:22
respectful [1] - 23:4
respectfully [2] - 13:13; 16:6
respond [2] - 43:23; 76:24
response [10] - 2:25; 16:19; 26:18; 37:14; 42:10; 43:24; 74:11; 77:1
rest [1] - 23:10
restaurant [1] - 33:5
result [3] - 28:6; 35:2; 63:23
results [8] - 25:25; 28:23; 44:10; 45:10; 63:3; 64:1; 66:23; 69:22
reTweeted [2] - 42:12; 53:15
reTweeting [1] - 42:10
revealed [1] - 26:10
review [1] - 17:20
revisit [2] - 47:17; 84:10
revisiting [1] - 53:18
rhetoric [3] - 3:18; 36:2; 81:25
rhetorical [1] - 57:1
ridicule [2] - 52:2; 53:5
rise [5] - 31:3; 42:6, 8; 46:25; 48:20
risk [1] - 34:13
River [1] - 34:10
Robert [2] - 26:2; 82:9
role [2] - 49:11; 50:4
roughly [1] - 44:4
route [1] - 23:2
ROWLEY [17] - 2:13, 19; 3:9;

4:10, 25; 5:7; 8:1; 35:12, 14; 37:15; 38:3; 39:4; 41:20; 42:1; 47:9; 62:13; 84:22
Rowley [15] - 2:13, 19, 21; 3:8, 24; 7:22; 9:6, 13; 35:9; 39:3, 11; 62:3, 12; 84:20
Rowley's [1] - 9:18
RPR [1] - 85:17
Rule [45] - 2:24; 3:22; 6:18, 24; 16:9; 22:15; 36:7; 47:5; 48:9; 58:24; 59:5; 61:19; 62:18; 63:14; 64:15, 19; 65:2, 20; 66:3, 12; 67:22, 25; 68:20; 69:12, 15; 70:6, 8-9, 13; 71:6, 9; 72:19, 24; 74:13, 15; 77:8; 80:11, 19, 25; 81:2; 83:6, 10
rule [7] - 47:4; 59:1; 65:2; 72:17; 80:11
ruled [17] - 10:23; 12:9, 13; 13:19; 14:15, 21; 15:1, 9; 16:15; 18:14; 32:18; 43:5; 47:22; 52:23; 65:1, 16; 75:11
Rules [3] - 6:17; 58:24; 80:12
rules [4] - 8:21; 65:4; 80:19; 83:5
ruling [27] - 15:3; 24:21; 29:24; 47:20, 25; 48:1; 53:18, 25; 62:9; 64:9, 13; 65:13; 71:3; 72:16; 73:17; 74:6, 10, 18, 21, 25; 75:20, 22, 24; 77:3; 80:4, 6
rulings [3] - 74:9; 76:1; 85:5
rumors [2] - 14:20; 42:24

SAC [1] - 26:13
sample [3] - 63:20, 22; 83:2
satisfied [2] - 30:6; 57:19
satisfies [1] - 6:9
satisfy [1] - 58:1
satisfying [1] - 61:17
saw [2] - 72:22
schedule [3] - 84:6, 11, 14
scope [2] - 80:16; 83:9
scorn [4] - 38:2; 52:2; 53:5; 54:5
se [19] - 3:12; 4:1, 3, 5, 7, 12, 14, 22; 5:4; 9:2; 15:18; 34:23; 37:23; 40:15, 18, 21; 41:4; 58:4, 15
second [13] - 11:4; 17:18; 20:18; 31:25; 32:1; 41:9; 48:21; 50:19; 60:24; 67:12; 79:12; 81:4; 82:14
Second [28] - 3:11; 4:13; 6:14; 9:11; 10:18; 13:25; 18:22; 25:2; 35:25; 43:24; 48:14; 49:19, 21; 50:2, 7; 52:8, 25; 53:8; 54:17; 55:13, 21; 56:3, 12; 57:16, 19; 60:18, 22; 61:8
secondly [2] - 15:20; 44:25
see [13] - 19:5; 24:6, 12; 25:4; 27:25; 41:17; 47:12; 57:25; 62:4; 74:7; 75:1, 13; 78:20
seeing [1] - 13:17
seek [2] - 82:25; 83:4
seeking [1] - 58:10
seeks [1] - 4:15
seem [4] - 4:1; 20:3; 77:18
segment [2] -

49:17; 50:1
senior [1] - 63:17
sense [1] - 58:7
sensitive [1] - 70:19
sent [3] - 26:4; 27:12; 82:20
separate [8] - 3:1; 13:3; 31:4; 9-10; 41:12
separated [1] - 33:7
September [1] - 55:14
sequence [3] - 29:20; 30:2
series [14] - 11:3, 5, 11; 12:6, 24; 13:4, 9; 32:8, 12; 36:9; 38:20; 55:9; 56:8
serious [1] - 80:24
serve [1] - 69:19
session [1] - 47:11
set [6] - 13:3, 5; 48:9; 51:4; 58:23; 59:5
setting [1] - 25:17
several [9] - 8:19; 14:6; 33:7; 37:20; 56:13; 62:22; 79:19, 21; 82:5
severe [3] - 60:1, 7; 61:15
severely [1] - 62:23
sex [6] - 52:18; 68:6, 9, 12, 24; 69:2
sexual [25] - 20:6; 22:11; 25:22; 27:17; 37:10; 57:11; 65:24; 66:2, 18; 67:9, 13, 16, 20; 69:4; 72:13; 75:7, 11; 76:8, 10, 13; 81:7
sexually [5] - 20:7; 52:12, 18; 81:8, 19
shall [1] - 83:7
shame [1] - 21:23
shape [2] - 5:14; 6:4
shorten [1] - 9:14
shortly [1] - 30:23

show [7] - 8:24; 23:25; 40:6; 43:15; 45:14; 64:1; 80:2
showed [3] - 63:3, 23; 64:2
showing [3] - 66:8; 81:3
shown [2] - 28:17; 83:6
shows [1] - 43:3
sic [1] - 28:18
sic] [1] - 7:20
side [1] - 44:8
significant [1] - 16:4
silly [1] - 21:17
similar [8] - 36:23; 38:21; 46:22; 51:20; 57:8; 66:8; 69:1
similarities [1] - 55:11
simple [2] - 16:1; 65:23
simplest [1] - 10:9
simply [9] - 8:5; 13:8; 19:7; 35:25; 41:4; 44:18; 45:19; 49:15; 75:24
single [3] - 41:18; 71:8; 76:19
singular [1] - 32:11
sister [2] - 34:18; 35:5
situate [1] - 37:24
situation [3] - 31:14, 17; 69:1
skip [1] - 73:2
slightly [2] - 19:1; 46:5
small [1] - 33:3
smear [1] - 35:19
social [6] - 19:9; 26:20; 60:15, 17, 21; 81:11
someone [7] - 37:8, 17-18; 40:19; 70:5; 72:2
something's [1] - 74:14
sometimes [1] - 39:8
somewhat [1] - 71:17
soon [1] - 85:6

Video Motions Hearing 7/18/25

sorry [8] - 7:21; 11:9; 22:6; 23:14; 35:12; 38:11; 62:1; 76:5
sort [9] - 11:10; 26:23; 31:17; 39:8; 66:9, 12; 67:19; 72:12; 78:8
sought [2] - 49:12; 79:11
sounded [1] - 28:11
sources [1] - 6:23
spanning [1] - 60:16
speaking [3] - 2:17, 20; 31:15
speaks [3] - 67:21; 69:13; 78:21
special [4] - 49:11; 50:4; 51:18
specific [3] - 27:15; 28:6; 57:10
specifically [17] - 4:20; 5:2; 7:2; 13:7, 24; 18:18; 19:12; 30:16; 33:17; 40:9; 49:21; 54:3, 22; 55:1; 58:10; 67:5
specificity [3] - 14:4; 42:16; 45:25
specify [4] - 14:10; 46:5; 80:16
speculated [1] - 67:6
speculating [1] - 15:24
speculation [1] - 35:20
spend [1] - 21:24
sperm [1] - 69:7
spot [2] - 17:21, 24
spread [1] - 42:24
stage [11] - 6:14, 25; 7:6; 8:22; 25:17; 28:14; 29:25; 30:3; 38:17; 48:8, 14
stand [2] - 47:25; 49:9

standard [7] - 5:21; 8:24; 36:6; 49:6; 51:24; 74:14; 76:20
standards [1] - 59:18
standing [1] - 58:6
stands [2] - 66:16; 80:22
start [3] - 39:8; 64:6; 67:8
started [3] - 31:18; 43:16
state [6] - 28:17; 34:14, 19; 48:4; 51:9; 59:23
statement [40] - 8:12; 15:1, 4, 6; 16:18; 21:13; 28:2; 30:16; 31:3, 5, 7, 9, 24; 32:1, 16, 19; 33:2, 4-5, 10; 36:12; 37:12; 39:18; 41:14; 51:13, 16-17, 22-24; 52:1; 54:3, 10; 71:16; 72:5; 77:1
statements [102] - 4:4, 19, 22; 5:20; 7:15; 8:3, 10-11, 18; 10:19; 11:2, 5, 23; 12:7, 12, 14, 16, 19; 13:4; 14:13; 16:11, 14; 17:17; 18:7, 13; 24:2, 21, 23; 25:3; 26:7, 25; 27:14, 16; 28:23; 30:19, 21; 31:19, 23; 33:23; 34:24; 35:17; 36:10, 17, 24; 37:1, 3-4, 7, 15; 38:17; 39:1, 17; 42:18; 49:23; 52:11, 14, 20-21, 24; 53:3, 10, 17, 23; 54:9, 14, 18; 55:12, 15, 20, 22; 56:3, 10-11, 13, 25; 57:1, 8, 10, 14, 20; 58:1, 4, 14, 17; 60:20; 61:5; 69:14, 25; 70:1;

71:14; 72:11; 75:12; 76:17; 81:15, 23-24; 82:1, 3
states [1] - 15:14
States [2] - 85:12, 14
status [3] - 6:10; 13:21; 48:23
statute [7] - 44:23, 25; 56:23; 67:8, 18; 69:4; 76:9
statutory [1] - 15:13
stayed [2] - 84:5, 7
stenographicall y [1] - 85:13
stenographicall y-reported [1] - 85:13
still [8] - 4:22; 28:23; 58:15; 64:14, 23; 65:10; 71:19; 72:17
stop [1] - 66:15
stretch [1] - 72:19
strike [2] - 19:19; 37:11
strikes [1] - 19:4
string [1] - 32:11
strong [1] - 32:7
stronger [1] - 75:14
struggle [2] - 19:5; 75:1
subheading [1] - 7:17
subject [9] - 5:20; 6:20; 12:14; 36:24; 37:11; 38:1; 40:3; 49:4; 58:23
subjective [1] - 24:2
submit [22] - 3:12, 19; 5:3; 6:8; 9:3; 13:13; 16:6; 33:13; 35:23; 36:3, 6; 37:16; 40:17; 41:5; 43:12; 70:21; 72:20; 80:14; 81:2
submitted [2] - 26:1; 40:18
submitting [2] - 3:25; 9:1

subpoena [2] - 44:11; 69:19
subpoenaed [5] - 63:1, 4; 82:20, 25
subpoenas [1] - 69:18
subsequent [5] - 24:10; 55:5; 64:21; 76:2; 77:22
subsequently [1] - 44:4
subset [1] - 64:14
substance [7] - 12:12; 13:17; 16:14; 17:5; 43:5; 51:9; 64:22
substantial [2] - 49:24; 51:2
substantially [3] - 51:20; 54:24; 64:23
substantiate [1] - 82:10
substantively [8] - 9:23; 12:8, 16; 13:18; 14:14; 31:22; 36:23; 59:4
successful [1] - 82:23
sue [4] - 15:24; 31:7; 67:9
sued [1] - 32:1
Suettinger [3] - 26:2; 64:1; 82:10
suffer [1] - 60:1
suffered [3] - 51:25; 58:6, 8
sufficiency [3] - 7:25; 37:5; 50:14
sufficient [7] - 34:12; 39:21; 43:11; 44:15; 48:22; 55:19; 57:22
sufficiently [1] - 46:25
suggest [3] - 4:2, 21; 78:3
suggesting [1] - 78:1
suggestion [1] - 41:3
suing [8] - 26:24; 27:2, 8, 11, 13;

30:12
suit [8] - 55:4, 12-14, 25; 56:4, 6
suitably [1] - 80:15
suits [2] - 55:7
Sullivan [2] - 5:22; 49:6
summary [7] - 10:1; 23:16, 21; 24:9; 28:11; 51:7; 55:17
Superior [21] - 9:25; 10:5, 22; 11:22; 12:5, 9; 13:18; 14:15; 15:23; 25:10; 26:17; 34:21, 24; 40:2; 43:13; 55:19; 65:14; 75:5; 77:2; 79:6
supplement [1] - 43:15
supplemental [2] - 65:15; 77:5
support [9] - 7:4; 36:14; 48:2; 51:6; 53:19, 23; 66:23; 76:18; 82:19
supporting [2] - 3:14, 22
suppose [2] - 20:20; 34:19
Supreme [1] - 80:22
survive [2] - 54:1; 59:20
sustained [2] - 6:9; 59:20
swab [1] - 83:1
tactic [1] - 14:20
talks [4] - 14:5; 34:5; 42:23; 73:6
Taylor [1] - 80:23
team [1] - 24:4
technical [1] - 13:15
ten [1] - 47:6
tend [5] - 21:2; 38:1; 53:23; 54:11; 66:23
tends [2] - 52:1; 54:4
term [1] - 18:4
terms [6] - 26:15; 30:10; 44:19; 45:18; 76:7

territorial [1] - 6:22
test [36] - 25:25; 28:17, 23; 44:2, 9; 46:10, 12-13, 22-23; 63:2, 9, 12, 22, 25; 64:20; 65:21; 66:4; 67:21; 68:2, 21; 69:15, 22; 70:16, 21; 71:9; 72:8, 20; 74:4; 75:16-18; 76:16, 18; 83:1
testify [4] - 21:7, 11; 22:3
testing [7] - 23:5; 79:5, 8-9; 80:3; 82:11; 83:4
tests [1] - 62:25
text [5] - 31:16, 18-20; 32:11
texting [1] - 42:7
THE [96] - 2:3, 11-12, 17, 20; 3:3, 5, 23; 4:18; 5:5; 7:21; 9:6; 11:9, 15, 25; 12:21; 17:12, 14, 25; 18:3; 19:16; 20:24; 21:1, 7; 22:6, 10; 23:7, 11, 15, 19, 23; 24:5, 12, 16, 19; 25:14; 28:25; 29:2, 14; 30:4, 9, 15, 18; 31:12, 14; 32:6, 10, 22; 33:7, 15, 19; 34:2, 15; 35:8, 13; 36:21; 37:24; 39:3, 5; 41:17, 21; 42:3; 45:7, 22; 46:9, 11; 47:1, 11; 62:3, 8, 12, 15, 17; 64:3; 66:15; 68:17; 69:25; 71:12; 72:21; 75:3; 76:5, 22, 25; 77:11; 78:25; 79:2; 83:18, 24; 84:3, 7, 12, 17, 20, 23; 85:3
themselves [6] - 5:12; 29:16; 35:22; 51:1; 56:10; 78:14
there'll [1] - 38:14

**thereafter** [1] - 45:11
**thereby** [3] - 51:25; 52:2; 53:5
**therefore** [4] - 4:4; 33:19; 75:12
**therein** [1] - 55:8
**they've** [5] - 6:1-3; 22:19; 40:22
**third** [7] - 15:21; 26:11; 51:14, 22; 57:22; 65:9; 79:13
**thousand** [1] - 60:16
**thousands** [1] - 10:4
**threats** [1] - 60:13
**three** [3] - 10:15; 40:22; 55:2
**throw** [2] - 16:21; 43:2
**thrust** [1] - 5:12
**thug** [1] - 6:2
**tied** [1] - 27:15
**timely** [1] - 10:23
**today** [3] - 25:8; 31:7; 85:6
**tomorrow** [1] - 31:8
**top** [5] - 11:21; 17:19, 23; 24:17; 45:12
**tort** [3] - 59:10; 76:8, 12
**tossed** [1] - 74:19
**touch** [1] - 19:16
**toward** [1] - 24:17
**track** [1] - 69:22
**transaction** [9] - 10:17; 11:3, 5; 12:6; 13:14; 31:4, 10; 55:9; 56:8
**transactions** [12] - 10:14; 11:6, 12; 12:7, 19, 25; 13:5, 10; 32:8, 13; 55:9; 56:8
**transcript** [4] - 62:6, 10; 85:13
**translation** [1] - 14:17
**translator** [1] - 36:13
**treatment** [1] - 80:20
**trial** [3] - 6:21;

8:25; 42:9
**trials** [1] - 80:21
**tried** [5] - 7:14; 23:2; 30:23; 39:25; 73:14
**tries** [1] - 43:19
**trivialities** [1] - 60:13
**true** [18] - 14:25; 19:23; 25:20, 22, 24; 26:8, 16; 28:7; 37:2; 40:11; 49:20; 53:4; 54:13; 61:9; 62:25; 74:8; 75:12; 85:13
**truly** [3] - 67:22, 25; 74:15
**Trump** [10] - 27:18, 20; 44:20; 66:6, 9, 11, 13; 67:3, 7; 76:8
**truth** [5] - 30:3; 57:14; 76:11, 20; 82:1
**try** [5] - 16:10; 23:9; 33:10; 75:17; 84:14
**trying** [9] - 19:3; 21:16; 24:5, 25; 25:4; 71:2; 73:8; 78:3
**turn** [8] - 16:10; 23:10; 25:15; 28:24; 35:9; 39:5; 70:22; 75:3
**turning** [3] - 51:9; 58:21; 59:23
**turns** [1] - 55:7
**Tweet** [6] - 14:19, 21; 16:19; 30:11; 33:1; 46:2
**Tweeted** [2] - 33:5; 53:13
**Tweeting** [1] - 43:18
**Tweets** [4] - 7:10, 18; 30:24; 41:24
**twilight** [1] - 28:10
**Twitter** [8] - 5:23; 8:2; 36:10, 12; 52:10; 53:12; 56:1; 57:20
**two** [21] - 2:23; 3:1, 6; 6:21;

25:5; 32:7; 34:6; 47:12; 48:17; 49:9; 55:7; 61:21; 66:11; 69:5; 75:1; 77:6, 16
**two-part** [1] - 48:17
**types** [1] - 66:4
**typical** [1] - 71:25
**typically** [3] - 70:8, 13
**U.S.C** [1] - 85:12
**ultimate** [1] - 72:25
**ultimately** [6] - 10:23; 21:25; 27:17; 66:17; 81:22; 82:2
**unable** [1] - 23:25
**under** [38] - 3:22; 5:8, 21; 6:10; 7:16; 8:21; 20:1; 34:9; 36:6; 47:24; 48:9; 51:10, 20-21; 52:4; 58:2, 24; 59:1; 64:15, 19; 66:4; 67:22; 69:18; 71:9, 23; 72:16; 73:16, 21; 74:15; 76:4; 77:7; 83:5, 10; 84:18
**underlying** [1] - 73:18
**undermine** [3] - 53:20, 22; 54:11
**underscores** [1] - 63:8
**understood** [2] - 4:6; 41:20
**undisputable** [1] - 39:15
**unequivocal** [1] - 19:8
**unfolded** [1] - 29:21
**unfortunate** [1] - 27:7
**United** [2] - 85:11, 14
**unknown** [1] - 6:14
**unless** [5] - 12:6; 13:1; 17:9; 23:8; 35:6
**unprovable** [1] - 38:9
**unrelenting** [1] -

26:20
**untimely** [1] - 12:3
**up** [13] - 8:13; 11:17; 23:13, 19; 25:8; 45:7; 63:16; 70:6, 15; 72:14, 21; 77:19
**utterly** [1] - 60:11
**vague** [2] - 46:19; 71:17
**valid** [1] - 79:15
**various** [3] - 9:16; 15:13; 56:17
**versus** [10] - 2:6; 5:21; 27:18, 20; 66:6, 11, 13; 67:3; 76:8; 77:13
**vetted** [2] - 43:8; 44:7
**via** [1] - 63:12
**victims** [1] - 67:9
**viewing** [1] - 29:18
**violation** [1] - 69:3
**violations** [1] - 73:12
**virtual** [2] - 2:7; 85:4
**volume** [1] - 61:10
**voluntarily** [4] - 5:12; 29:15; 49:11; 50:4
**waged** [1] - 16:2
**waited** [1] - 12:3
**waived** [1] - 34:11
**WANG** [30] - 2:9; 25:16; 29:1, 4, 17; 30:8, 10, 17, 20; 31:13; 32:3, 9, 12, 25; 33:9, 18, 25; 34:3, 16; 62:16, 20; 75:4; 76:7; 83:17, 23; 84:2, 4, 9, 16, 19
**Wang** [26] - 2:10; 8:11, 13, 15, 19; 25:15; 28:25; 39:11, 24; 40:1, 14; 42:2; 43:13, 19, 23; 44:11; 45:8; 62:15, 17; 64:3; 65:9; 69:16; 75:3; 77:12; 83:14, 21
**Wang's** [4] -

36:14; 40:10; 41:12; 77:1
**wants** [3] - 21:13; 29:11; 44:5
**warrants** [2] - 39:20; 41:8
**Washington** [1] - 55:16
**ways** [1] - 32:20
**webpage** [3] - 50:21, 23, 25
**week** [4] - 31:8, 15, 21, 23
**week's** [1] - 83:13
**weekend** [1] - 85:7
**Wei** [81] - 2:16, 21-22; 5:23, 25; 7:11, 20; 8:4; 9:10, 12, 19, 24; 10:2, 10, 21; 13:18, 24; 14:3, 8-9, 18; 16:18; 17:8; 18:5, 14; 19:9; 20:5; 25:21, 24; 26:1, 10, 25; 27:1, 21; 28:4; 29:22; 30:12; 36:13; 41:15; 42:13, 21; 43:1; 47:14; 48:5, 11; 52:12, 17, 22; 53:12; 54:17, 19; 55:11, 15, 17, 22; 56:12, 18-19; 57:11; 63:8, 21-22; 66:19; 68:5; 69:23; 70:17; 71:14; 72:9, 19; 79:9; 80:2; 81:7, 13, 18-20; 82:11, 15
**Wei's** [12] - 16:19; 25:23; 26:1, 3; 28:18; 34:4; 54:16; 68:4; 69:13; 75:12; 81:7; 82:6
**weight** [1] - 21:13
**well-pleaded** [1] - 49:20
**whatsoever** [1] - 66:10
**whole** [1] - 74:5
**wholeheartedly** [1] - 77:3
**window** [2] - 67:8, 11

**Wisconsin** [1] - 69:4
**wish** [1] - 9:8
**woman** [1] - 69:7
**Woody** [2] - 2:16; 17:22
**words** [2] - 14:5; 42:19
**worker** [2] - 52:18; 69:2
**world** [2] - 20:20; 37:20
**writer** [2] - 36:12; 58:12
**writing** [1] - 41:2
**written** [2] - 62:4; 85:5
**wrongful** [2] - 60:6; 61:16
**wrote** [3] - 52:20; 53:12
**year** [5] - 25:21; 27:16; 56:5; 66:1; 67:8
**years** [10] - 5:24; 10:24; 12:17; 17:7; 21:17; 33:7; 60:16; 70:18; 72:8; 74:21
**York** [5] - 5:21; 36:6; 44:22; 49:5; 67:5
**yourself** [2] - 2:8; 18:10
**yourselves** [2] - 11:16; 85:4
**YouTube** [1] - 8:14
**Zelle** [1] - 36:15
**zero** [1] - 72:2
**Zhang** [5] - 15:11; 53:14; 71:20; 72:3, 7
**zone** [1] - 28:10
**Zoom** [2] - 11:16; 18:9
**Zurich** [1] - 79:25
**§** [1] - 85:12