# Exhibit 1

CASE NO: 25-1914

IN THE

# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

### *IN RE* JINGSHENG WEI, Petitioner.

AMENDED PETITION FOR WRIT OF MANDAMUS

GREENBERG TRAURIG, LLP
David G. Barger
1750 Tysons Blvd.
Suite 1000
McLean, VA 22102
Tel:  (703) 749-1300
Email:  bargerd@gtlaw.com

## STATEMENT REGARDING ORAL ARGUMENT

Petitioner requests expedited briefing in a separate motion. To facilitate the rapid resolution of this petition, he will not request oral argument but will present himself to the Court for oral argument if the Court determines oral argument is necessary.

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT.................................................................................1

STATEMENT OF THE ISSUES PRESENTED.....................................................3

STATEMENT OF RELIEF SOUGHT....................................................................3

STATEMENT OF FACTS .......................................................................................3

    I.    WEI'S HISTORY AS AN OPPRESSED CHINESE CIVIL RIGHTS ADVOCATE .........................................................................3

    II.    WEI PREVAILS IN LITIGATION AGAINST THE SAME PLAINTIFFS IN THE DISTRICT OF COLUMBIA ..........................5

    III.    PLAINTIFFS TAKE A SECOND BITE AT THE APPLE ..................7

STATEMENT OF REASONS WHY THE WRIT SHOULD ISSUE .....................11

    I.    WEI HAS NO OTHER ADEQUATE MEANS TO SEEK REVIEW AND PREVENT AN UNWARRANTED INVASION OF HIS PRIVACY ....................................................................12

    II.    THE WRIT IS APPROPRIATE UNDER THE CIRCUMSTANCES......................................................................13

    III.    THE RIGHT TO ISSUANCE IS CLEAR AND INDISPUTABLE.......................................................................13

        A.    The District Court Failed to Recognize the Rule 35 Imposes a Higher Standard than Rule 26's Discoverability Standard.................................................15

        B.    Genetic Paternity is Not in Controversy Where the Only Claim Against Wei is for Defamation for Calling Plaintiffs False and Fraudulent in Connection With Their Allegations of Rape and Breach of Contract ...........................16

        C.    Plaintiffs Cannot Establish Good Cause in Light of the Legal Presumption Mr. Zhang is Defendant Zhang's Father.................................................................................22

        D.    The Court Abused its Discretion By Ignoring Wei's Reasonable and Credible Concerns the CCP Seeks to Invade His Privacy to Harass Him for His Civil Rights Work .......................................................................................25

CONCLUSION ........................................................................................................29

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Bowen v. Parking Auth. of City of Camden*,
   214 F.R.D. 188 (D.N.J. 2003)..................................................................16

*Cheney v. U.S. Dist. Ct. for D.C.*,
   542 U.S. 367 (2004)................................................................................11

*Curtis v. Express, Inc.*,
   868 F.Supp. 467 (N.D.N.Y. 1994).........................................................24

*Doe v. Sidar*,
   93 F.4th 241 (4th Cir. 2024) ..................................................................12

*Dunford v. Rolly Marine Serv. Co.*,
   233 F.R.D. 635 (S.D. Fla. 2005).............................................................20

*Fraternal Ord. of Police, Lodge No. 5 v. City of Philadelphia*,
   812 F.2d 105 (3d Cir. 1987) ..................................................................14

*Gavin v. Hilton Worldwide, Inc.*,
   291 F.R.D. 161 (N.D. Cal. 2013)............................................................21

*In re Grand Jury Subpoenas, Apr., 1978, at Baltimore*,
   581 F.2d 1103 (4th Cir. 1978) ...............................................................12

*Hardy v. Riser*,
   309 F. Supp. 1234 (N. D. Miss. 1970)...................................................24

*Hickman v. Taylor*
   329 U.S. 495 (1947)...............................................................................15

*Marroni v. Matey*,
   82 F.R.D. 371 (E.D. Pa. 1979)..........................................................21, 22

*Minnesota Life Ins. Co. v. Jones*,
   771 F.3d 387 (7th Cir. 2014) (Posner, J.) .........................................22, 23

*Nathai v. Florida Detroit Diesel-Allison, Inc.*,
   268 F.R.D. 398 (M.D. Fla. 2010) ..........................................................16

*In re Pruett*,
133 F.3d 275 (4th Cir. 1997) ...............................................................12

*Schlagenhauf v. Holder*,
379 U.S. 104 (1964)...........................................10, 13, 14, 16, 18

*Storms v. Lowe's Home Centers, Inc.*,
211 F.R.D. 296 (W.D. Va. 2002)...................................................21

*In re The City of New York*,
607 F.3d 923 (2d Cir. 2010) ...............................................................12

*U. S. Bd. of Parole v. Merhige*,
487 F.2d 25 (4th Cir. 1973) ...............................................................12

*United States v. Westinghouse Elec. Corp.*,
638 F.2d 570 (3d Cir. 1980) ...............................................................14

*Winstead v. Lafayette Cty. Bd. of Cty. Comm'rs,*
315 F.R.D. 612 (N.D. Fla. 2016).................................................21, 25

*Winters v. Travia*,
495 F.2d 839 (2d Cir. 1974) ...............................................................13

*Young v. United States*,
311 F.R.D. 117 (D.N.J. 2015)...........................................................19, 20

**State Cases**

*Neuman v. Neuman*,
377 A.2d 393 (D.C. 1977) ...............................................................24

**State Statutes**

Md. Code, Fam. Law § 5–3A–06(a).........................................................23

**Rules**

Fed. R. Civ. P. 26 ...............................................................................14, 15

Fed. R. Civ. P. 35 ...............................................................................*passim*

Fed. R. Civ. P. 35(a)...........................................................................13, 22, 24

iv

Fed. R. Civ. P. 35(a)(1) ........................................................................16

Fed. R. Civ. P. 35(a)(2)(A) ..................................................................25

Fed. R. Evid. 201(b) ..............................................................................5

**Other Authorities**

Foreign Abuse of U.S. Courts: Hearing Before the H. Comm. On the
Judiciary, 119th Cong. (July 22, 2025), *available at*
https://judiciary.house.gov/committee-activity/hearings/foreign-
abuse-us-courts-0 (last visited August 7, 2025) ................................25

Foreign Abuse of U.S. Courts: Hearing Before the H. Comm. On the
Judiciary, 119th Cong. (July 22, 2025), Testimony by Emily de La
Bruyere Co-founder, Horizon Advisory Senior Fellow, Foundation
for Defense of Democracies *available at* chrome-
extension://efaidnbmnnnibpcajpcglclefindmkaj/https://judiciary.ho
use.gov/      sites/evo-subsites/republicans-
judiciary.house.gov/files/evo-media-document/de-la-bruyere-
testimony.pdf (last visited August 7, 2025).......................................27

Foreign Abuse of U.S. Courts: Hearing Before the H. Comm. On the
Judiciary, 119th Cong. (July 22, 2025), Testimony of Julian G. Ku,
House Committee on the Judiciary, Subcommittee on Courts,
Intellectual Property, Artificial Intelligent, and the Internet: Why
the U.S. Should Harden Its Defenses Against China's Asymmetric
Lawfare .............................................................................................26

https://judiciary.house.gov/sites/evo-subsites/republicans-
judiciary.house.gov/files/ evo-media-document/ku-testimony.pdf
(last visited August 7, 2025).............................................................26

Jill I. Goldenziel, Law as a Battlefield: The U.S., China, and the
Global Escalation of Lawfare, 106 CORNELL L. REV. 1085
(2021) ...............................................................................................26

Julian Ku, China's Successful Foray Into Asymmetric Lawfare,
LAWFARE (Sept. 29, 2021), *available at*
https://www.lawfaremedia.org/article/chinassuccessful-foray-
asymmetric-lawfare (last visited August 7, 2025).............................26

National Public Radio (Feb. 23, 2024), *available at* https://www.npr.org/2024/02/23/1233355132/chinese-hacking-scheme-focused-on-harassing-dissidents-leaked-documents-shows (last visited August 7, 2025) ..............................................................25

RADIO FREE ASIA (Mar. 19, 2025) *available at* https://www.rfa.org/english/special-reports/china-lawfare-transnational-repression/ (last visited August 7, 2025) ......................................25

**PRELIMINARY STATEMENT**

This petition raises significant questions regarding a court's ability to violate bodily autonomy and privacy by ordering genetic testing pursuant to Federal Rule of Civil Procedure 35 for, at best, evidence potentially tangentially relevant to a claim against a different defendant in a defamation action. Here, the District Court's Rule 35 Order constitutes an oppressive use of Rule 35 and warrants the extraordinary remedy of a writ. Not only has the lower court plainly erred in assessing each aspect of Rule 35, it ignored the potential danger that Rule 35 is being used as a retaliatory measure to silence political, pro-democracy speech.

Respondents-Plaintiffs Huaizhao Liu and Charlotte Zhang ("Plaintiffs") bring a single claim for defamation against Petitioner Jingsheng Wei. Whether Wei is or is not the genetic parent of Liu's daughter, Zhang, is not directly probative of liability for defamation in any way. Nonetheless, the District Court ordered Wei to undergo a genetic paternity test to determine whether he is the biological parent of Zhang. In so doing, the lower court committed four legal errors.

First, the Rule 35 Order failed to recognize the heightened standard and burden on a moving party for seeking a Rule 35 examination and applied a lower, relevance analysis.

Second, it concluded biological paternity was "in controversy" based on the claims Plaintiffs raised against a different defendant, Respondent-Defendant Ciping

1

Huang. Moreover, the claims against Huang still do not warrant the use of a Rule 35 examination.

Third, in analyzing whether Plaintiffs demonstrated "good cause" for the genetic testing, the District Court simply accepted Plaintiffs' conclusory allegations that they could not obtain any other evidence regarding paternity. Under any circumstances, mere allegations are insufficient to show good cause. Here it is particularly problematic because the lower court accepted those allegations over a legal presumption that Wei is not the father and where there was no evidence to challenge that legal presumption.

Fourth, the lower court abused its discretion by ignoring the danger that this case risks in weaponization of Rule 35. It is widely accepted that the Chinese Communist Party ("CCP") routinely uses the U.S. legal system to harass dissidents in a practice known as "lawfare." Wei is a well-known pro-democracy Chinese dissident who languished in a Chinese prison for almost 20 years. Since coming to the United States, he has been subject to never-ending harassment by the CCP and its supporters in order to discredit his work. Wei believes this includes a five-year court battle in the District of Columbia Superior Court ("DC Superior Court") against the same Plaintiffs, Liu and Zhang, over nearly identical issues, including that Wei allegedly raped Liu and fathered Zhang. Wei denounced this DC litigation as baseless and a CCP effort delegitimize his civil rights advocacy. The DC Superior

2

Court entered summary judgment in Wei's favor in July 2024, including on a defamation claim for substantially similar statements that are at issue here. It also denied an identical Rule 35 request. On the heels of defeat, Plaintiffs sued Wei for defamation based on a social media post about his victory in DC Superior Court. Plaintiffs' refusal to accept the DC Superior Court's final judgment reinforced his belief that Plaintiffs are using litigation to support the CCP's agenda. This context is central to a Rule 35 analysis. It is for these very reasons that Wei now pursues a petition for a writ of mandamus.

## STATEMENT OF THE ISSUES PRESENTED

Whether the District Court erred in ordering a party to undergo a genetic paternity test when the issue of biological paternity is not in controversy as to that party, the moving parties did not offer evidence they had exhausted other sources of discovery, and where there is a danger that Rule 35 is being used to harass?

## STATEMENT OF RELIEF SOUGHT

Wei seeks a writ directing the District Court to quash its July 21, 2025 Order granting Plaintiffs' Rule 35 motion for a DNA paternity test of Wei.

## STATEMENT OF FACTS

**I.    WEI'S HISTORY AS AN OPPRESSED CHINESE CIVIL RIGHTS ADVOCATE**

Wei was a political prisoner incarcerated in China for nearly 20 years for advocating for democracy. Hr'g T. (July 18, 2025), attached hereto as **Ex. A**, 70:17-

19; Dkt. 63, Second Am. Compl. ("SAC"), attached hereto as **Ex. B**, at n.4. Since his release, Wei has remained a prominent pro-democracy activist in support of a free China and has been highly critical of the CCP's human rights violations. Dkt. 67-1, Wei's Mot. to Dismiss SAC at 16, Dkt 67, with all original exhibits, attached hereto as **Ex. C**.[1]

In 2018, Liu first contacted Wei, informing him that she had fathered her child 18 years prior, and demanding money because she had raised Zhang while a single mother. *See* **Ex. A**, Hr'g T. 29:20-22; **Ex. B**, SAC ¶ 65; **Ex. C,** Dkt. 67-4, Mot. to Dismiss, Ex. C at 8. Wei communicated with Lui, asking for more information, but Liu remained evasive and her demands became threats. Ultimately, Lui sued Wei in the D.C. Superior Court, Civil Action No. 2019-CA-005052-B. **Ex. B**, SAC ¶ 17. Wei eventually learned Liu was married when she conceived and had Zhang, Liu's husband, Meng Zhang, is listed as Zhang's father on the birth certificate, and her husband had raised Zhang. **Ex. A**, Hr'g T. 71:19-72:8; **Ex. B**, SAC ¶¶ 65, 71; **Ex. C,** Dkt 67-6, Mot. to Dismiss, Ex. E, *Liu et al. v. Wei, No. 2019 CA 005052 B*, July 2,

---

[1] The Court considered the Rule 35 motion and Wei's motion to dismiss concurrently and heard oral argument on both motions at the same time because the motion to dismiss had the potential to moot the Rule 35 motion. Thus, the facts in Wei's motion to dismiss and made during oral argument on that motion were before the court for the purpose of the Rule 35 motion as well, but not repeated in the Rule 35 motion to avoid duplication.

4

2024 Omnibus Order ("July 2 Omnibus Order") at 5.[2] Realizing Liu had made numerous misrepresentations, he refused to engage with Liu, prompting her to file the prior lawsuit against him in 2019 for breach of contract and defamation, and later amended to include a claim to establish parentage and petition for child support. **Ex. A**, Hr'g T. 9:18-21; **Ex. B**, SAC ¶ 17; **Ex. C**, Dkt 67-6, July 2 Omnibus Order at 1, 26.

## II.   WEI PREVAILS IN LITIGATION AGAINST THE SAME PLAINTIFFS IN THE DISTRICT OF COLUMBIA

Lui, with the assistance of counsel,[3] filed a Complaint for breach of contract seeking $500,000 in damages based on the allegation that Wei breached his promise to provide financial support and money for college for her daughter, Zhang. *See* **Ex.C**, Dkt. 67-1, Mot. to Dismiss at 2-3. Liu, with the assistance of counsel, amended her complaint on October 29, 2019, to include a claim for defamation, and did not raise any allegations of rape or sexual assault. **Ex. C**, Dkt. 67-2, Mot. to Dismiss, Ex. A, *Liu et al. v. Wei, No. 2019 CA 005052 B*, Amended Complaint

---

[2] The court may take judicial notice of the D.C. Superior Court's January 11, 2024 Order and July 2, 2024 Omnibus Order in *Liu et al. v. Wei, No. 2019 CA 005052 B*. Fed. R. Evid. 201(b). Wei requested that the District Court take judicial notice of the same and incorporated these orders into his Response in Opposition to the Motion for a Rule 35 examination. *See* Dkt. 93, Def.'s Opp'n to Mot. to Compel Rule 35 Exam, attached hereto as **Ex. D**, at n.1.

[3] Lui made a point of arguing she had been pro se in the D.C. Superior Court. However, she was represented by multiple attorneys throughout the litigation, each of which withdrew from the case prior to final adjudication. **Ex. B**, SAC ¶ 17.

(October 29, 2019). In 2020, for the first time, Liu began to claim publicly and in the litigation that Wei sexually assaulted her. **Ex. A**, Hr'g T. 67:24-66:3; **Ex.C**, Dkt. 67-1, Mot. to Dismiss at 3-4. Four years later, she sought leave to amend the complaint a second time and only vaguely mentioned allegations of rape. *See* **Ex. C**, Dkt. 67-6, July 2 Omnibus Order at 13-18.

During the DC litigation, Plaintiffs moved to compel a DNA paternity test of Wei based on DC's analogue to Rule 35. **Ex. D**, Dkt. 93, Def.'s Opp'n to Rule 35 Mot. at 2-4. Unlike here, that litigation involved an allegation of defamation based on the statement that Charlotte was not his "biological daughter." **Ex. C**, Dkt. 67-6, July 2 Omnibus Order at 2, 6. Liu sought a genetic paternity test under the D.C. Superior Court's Rule 35 analogue, arguing, inter alia, paternity would be relevant to the allegedly defamatory statements Wei made calling Plaintiffs "fakes." **Ex. C**, Dkt. 67-5, Mot. to Dismiss, Ex. D, *Liu et al. v. Wei, No. 2019 CA 005052 B*, January 11, 2024 Order ("Jan. 11 Order") at 22. The court denied the motion.

The case culminated in an Omnibus Order issued July 2, 2024, which denied a motion for reconsideration on the motion for a genetic paternity test and granted Wei's motion for summary judgment, entered an order for summary judgment in Wei's favor, and closed the action. **Ex. C**, Dkt. 67-6, July 2 Omnibus Order at 1, 26.

## III.   PLAINTIFFS TAKE A SECOND BITE AT THE APPLE

While the DC litigation had been progressing, Liu brought the instant action in 2021 against Defendant Ciping Huang alleging defamation related to alleged social media statements. **Ex. E**, Dkt. 1, Complaint. In December 2024, before the ink was dry on the judgment in Wei's favor in the DC Superior Court, Liu amended her Complaint in this action to include a single claim of defamation against Wei. **Ex. B**, SAC ¶¶ 86-99. The claim is based on generic statements made in 2023 and a single social media posts and response to a comment to the same. *Id*. Plaintiffs make vague allegations that Wei has defamed Lui by telling "fellow members of the Chinese dissident community" that Lui's allegations that he raped Lui and fathered Charlotte Zhang are false, that Lui is a liar, and that Lui's actions advance the CCP's interests. Plaintiffs do not specify when these statements were made or to whom, other than he has made "numerous statements along these lines . . . at various times in 2023." SAC ¶ 86. The Complaint then recounts a "specific occasion in December 2023," in which Wei allegedly told attendees "that Plaintiff Liu's allegations against him were false, that she was a liar for making those allegations, and that she was acting on behalf of the CCP in doing so." SAC ¶ 87. On July 6, 2024, four days after judgment was entered in the DC Superior Court, Wei allegedly tweeted (translated by Google Translate from Mandarin):

> They say if you spread a rumor, no matter how much effort you put in,
> it will be hard to completely clean it up. The CCP has, throughout its

7

history, often deployed rumors [as a political tactic]. In the 1940s, they created rumors about Chiang Kaishek, and the book "The Pipe Dream of Nanking" played no small part. In recent years, people I've never met before claimed to know me. It's not just about tarnishing my reputation; they're requesting documents from [my] foundation, and it's clear that they are targeting the entire democracy movement. They even mobilized a large number of people to spread these rumors, and their sophistication has clearly increased. Recently, the court ruled against them, and there is no such alleged illegitimate daughter at all.

**Ex. B**, SAC ¶ 90. In response to a comment urging Wei to do a DNA test, Wei responded "Would you want a liar for a daughter? Throw in a fraudster mother." *Id*. ¶¶ 91-92. This tweet and response are the basis for the resent action against Wei. There is no direct statement challenging biological paternity at issue.[4]

Wei moved to dismiss the Complaint arguing both preclusion and failure to state a claim. **Ex. C**, Dkt. 67, Mot. to Dismiss. While this motion was being briefed, Plaintiffs moved for a Rule 35 Order to compel Wei to submit to a DNA paternity test (Dkt. 84), and Wei opposed the motion (**Ex. D**, Dkt. No. 93). The Court held a hearing on both the pending motions to dismiss by Wei and Co-defendant Huang, and the Motion for a Rule 35 examination. Because the motions to dismiss rested largely on the preclusive effect of the DC litigation, the District Court heard

---

[4] After the District Court entered an order granting the Rule 35 Motion, Wei served his answer and counterclaims. One counterclaim is for a declaratory judgment of parentage, which, under the controlling law (California), is a legal issue and will not turn on genetics. Should Lui attempt to raise this counterclaim (which was not before the District Court at the time it issued the Rule 35 Order in question), this argument will resoundingly fail.

arguments and was presented with fact relating to the DC Superior Court action immediately prior to hearing the Rule 35 motion. *See generally*, **Ex. A**, Hr'g Tr.

With regard to the Rule 35 Motion, the District Court first held that the DC Superior Court's order denying an identical request for a medical examination was not preclusive. *Id.* 79:2-80:10. The court began its Rule 35 analysis by stating "Like all discovery rules, Rule 35 is to be accorded broad and liberal treatment in order to effectuate their purpose that civil trials in federal courts no longer need be carried on in the dark. That's a Supreme Court case that stands for that proposition, *Hickman v. Taylor* 1947." *Id.* 80:19-23. It proceeded to reach the following conclusions:

> Now, first, the Court finds that the issue of defendant Wei's paternity of Charlotte whether Wei and Heather had sexual encounters or a sexual encounter and whether Wei sexually assaulted plaintiff Heather are all matters in controversy, and these matters are collectively a central issue to this defamation action. Social media posts from the defendants reference be it explicitly or by inference the nature and circumstances of the defendant Wei and the plaintiff Heather's relationship and previous interaction and Charlotte's paternity. Very many of the challenged statements made about the plaintiffs are about their character, actions, and conduct are framed by the assertion that the plaintiffs are lying that the defendant Wei is not Charlotte's biological father, that the defendant Wei did not sexually assault the plaintiff Heather, and indeed the defendant Wei did not even know the plaintiff Heather.
>
> Plaintiffs will ultimately have to prove that the challenged statements are false, which the defendants clearly dispute. Defendant casts the challenged statements as mere opinions, rhetoric, and hyperbole, but I have found that the statements are plausibly capable of truth or falsity and the plaintiffs will ultimately have to prove that and also prove that the statements were false.

9

The question of Charlotte's paternity in this case is highly probative of several issues in this case, goes directly to Wei's claims that he never met, assaulted, or impregnated one of the plaintiffs and fathered the other. The plaintiffs' position on this controversy is not just a bare assertion.

The plaintiffs have presented a 2018 e-mail from I think Mr. Robert Suettinger that substantiate their position on this controversy; i.e., that DNA testing will establish that Wei has a genetic link to the plaintiff Charlotte and may be her biological father.

Second, the Court finds that there is good cause for physical examination of the defendant Wei in regard to the paternity issue. The 2018 e-mail that I just noted references and describes DNA evidence but does not provide it. The plaintiffs have already exhausted other methods by which they could obtained admissible evidence in support of their position on the controversy having subpoenaed the person who sent that e-mail and also subpoenaed 23andMe for this information and done so to no avail

But even if they had been successful there would remain real questions and doubts as to the admissibility of the information that they had subpoenaed. Here the plaintiffs seek a minimally invasive DNA test, be it a cheek swab or a blood draw or a hair sample in order to obtain physical and forensic evidence for which they have a great need in discovery.

That is to say that the DNA testing that they seek is proportional to their needs under the rules of discovery.

The plaintiffs have adequately shown good cause for a Rule 35 physical examination so their motion shall be granted.

*Id*. 81:6-83:7.

On July 21, 2025, the Court entered a written Order memorializing its ruling and directing the parties to submit by July 25, 2025, a proposed order addressing the time, place, manner, and scope of the DNA test, as well as a proposed amended

10

scheduling order (collectively with the oral rulings the "Rule 35 Order"). **Ex. F**, Dkt. 96, July 21, 2025 Order.

On July 25, 2025, Wei moved for an order staying enforcement of the Rule 35 Order pending the outcome of this Petition for Writ of Mandamus or, in the alternative, extending the deadline for enforcement until September 15, 2024,[5] in order to have sufficient time to seek relief from this Court. **Ex. G**, Dkt. 98, Mot. to Stay. The District Court has not ruled on this motion at the time of filing this writ.

**STATEMENT OF REASONS WHY THE WRIT SHOULD ISSUE**

A writ of mandamus "is appropriately issued . . . when there is 'usurpation of judicial power' or a clear abuse of discretion[.]" *Schlagenhauf v. Holder*, 379 U.S. 104, 110 (1964). To demonstrate the usurpation of power or clear abuse of discretion, the petitioner must meet the following conditions: (1) "the party seeking issuance of the writ must have no other adequate means to attain the relief [it] desires"; (2) "the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances"; and (3) the petitioner must demonstrate that the "right to issuance of the writ is clear and indisputable." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380-81 (2004) (brackets, citations, and internal quotation marks omitted).

---

[5] The parties have since agreed that the earlies the paternity test would take place is the end of September, but no date has been selected.

11

Wei satisfies all three conditions. First, Wei has no other adequate means to attain the relief he desires, because a discovery order may not be appealed as of right, nor may it be the subject of an interlocutory appeal. Second, the writ is appropriate under the circumstances because the Rule 35 Order is irreversible; once he has been subsect to a medical examination and his privacy invaded, no court order on admissibility of the derivative evidence can change that. Third, the right to a writ is clear and indisputable because the Rule 35 Order greatly exceeded the permissible scope of Rule 35 in ordering testing. Indeed, the Order applies the incorrect legal standard in multiple respects, is based on an incorrect understanding of the facts, accepts Plaintiffs' conclusory allegations in lieu of facts, and conflates Wei with Co-Defendant Huang. Moreover, the Rule 35 Order gave no consideration of serious privacy interests at stake for Wei, his history of persecution and harassment, and his concern of CCP involvement. As such, a writ should issue here.

## I.    WEI HAS NO OTHER ADEQUATE MEANS TO SEEK REVIEW AND PREVENT AN UNWARRANTED INVASION OF HIS PRIVACY

"Controversies over the allowance of discovery are by their very nature short-lived because reversal on appeal cannot undo the disclosures." *In re Pruett*, 133 F.3d 275, 278 (4th Cir. 1997). Wei cannot challenge a Rule 35 discovery order under the collateral order doctrine. *Doe v. Sidar*, 93 F.4th 241, 246 (4th Cir. 2024) ("We thus hold that the category of orders at issue—those denying a request for a physical or mental examination—falls outside the collateral order doctrine."). Nor may he

12

challenge the order though an interlocutory appeal. *In re The City of New York*, 607 F.3d 923, 933 (2d Cir. 2010) ("First, it is clear that the City cannot challenge the District Court's [Rule 35] order by means of an interlocutory appeal."). But this Court may issue a writ to vacate an order of the district court which "authorized the oppressive use of Rule 35 of the Federal Rules of Civil Procedure." *U. S. Bd. of Parole v. Merhige*, 487 F.2d 25, 30 (4th Cir. 1973). As such, a petition for writ of mandamus is the only means to seek review.

## II.    THE WRIT IS APPROPRIATE UNDER THE CIRCUMSTANCES

A writ of mandamus is appropriate where, the court finds that "unless we act promptly to rectify the district court's error, petitioner's right will be irretrievably lost." *In re Grand Jury Subpoenas, Apr., 1978, at Baltimore*, 581 F.2d 1103, 1107 (4th Cir. 1978) (citing cases). There is no undoing a medical examination. As discussed *infra*, it is the act of being forced to provide his genetic information to a person that he believes is acting on behalf of the foreign regime that imprisoned and harassed him for his entire adult life is a gross invasion of privacy that will be irretrievably lost if Wei must proceed. Given these circumstances, a writ is appropriate.

## III.    THE RIGHT TO ISSUANCE IS CLEAR AND INDISPUTABLE

Federal Rule of Civil Procedure 35(a) provides:

(1) The court where the action is pending may order a party whose mental or physical condition--including blood group--is in controversy to submit to a physical or mental examination by a suitably licensed or

13

certified examiner. The court has the same authority to order a party to produce for examination a person who is in its custody or under its legal control.

**(2) *Motion and Notice; Contents of the Order.*** The order:

> **(A)** may be made only on motion for good cause and on notice to all parties and the person to be examined . . . ;

Fed. R. Civ. P. 35(a). Therefore, a Rule 35 examination requires that the movant meet both an "in controversy" and "good cause" requirement. *Schlagenhauf*, 379 U.S. at 118. Neither requirement are "mere formalities." *Winters v. Travia*, 495 F.2d 839, 841 (2d Cir. 1974) (granting petition for writ of mandamus where court ordered a rule 35 medical examination of a plaintiff). Nor can either element be met

> [M]et by mere conclusory allegations of the pleadings—nor by mere relevance to the case—but require an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination. Obviously, what may be good cause for one type of examination may not be so for another. The ability of the movant to obtain the desired information by other means is also relevant.

*Schlagenhauf*, 379 U.S. at 118.

Here, the Rule 35 Order contains errors at every step of the analysis. First, the Rule 35 Order appears to have applied a lower, Rule 26-like relevance standard to determine discoverability. Second, it incorrectly determined that genetic paternity was "in controversy" based seemingly on Plaintiffs' claims against a different defendant. Third, the Rule 35 Order missed the mark on good cause by allowing the

14

conclusory allegations of the Plaintiff to overcome the legal presumption of parentage here, despite having not exhausted other means to obtain information about Zhang's genetic parent. Fourth and finally, the District Court abused its discretion by wholly ignoring the serious danger the use of a Rule 35 Order poses in this context. Wei reasonably believes Liu is using this litigation to harass him in support of CCP aims to discredit his pro-democracy work. This warrants a writ to prevent the abuse of the legal system.

## A. The District Court Failed to Recognize the Rule 35 Imposes a Higher Standard than Rule 26's Discoverability Standard

The burden on the moving party to satisfy Rule 35 is higher than for discovery under Rule 26. *Fraternal Ord. of Police, Lodge No. 5 v. City of Philadelphia,* 812 F.2d 105, 113 (3d Cir. 1987) (noting that Rule 35 requires a "higher burden for discovery of medical information than for discovery generally);*United States v. Westinghouse Elec. Corp.*, 638 F.2d 570, 577 (3d Cir. 1980) ("[T]he Federal Rules of Civil Procedure impose a higher burden for discovery of reports of the physical and mental condition of a party or other person than for discovery generally."). Rule 35 is not to be treated as any other rule of discovery; relevance and burden are not the only factors in issuing an order mandating medical examination.

Nonetheless, the Rule 35 Order begins its analysis by stating: "Like all discovery rules, Rule 35 is to be accorded broad and liberal treatment in order to effectuate their purpose that civil trials in federal courts no longer need be carried on

15

in the dark. That's a Supreme Court case that stands for that proposition, *Hickman v. Taylor*[, 329 U.S. 495] (1947)." **Ex. A**, Hr'g T. 80:19-23. But *Hickman* is not a Rule 35 case, nor does it consider the discoverability of private medical information or compelling medical testing. *Hickman* involves the discovery of books and records and the use of written discovery. *See generally* 329 U.S. at 497-99. Nothing about the opinion considered the distinctive nature of Rule 35. And even if the intent of *Hickman* was to announce a uniform standard for Rule 26 and Rule 35, the Supreme Court's subsequent decision in *Schlagenhauf* certainly disposes of any such interpretation.

Although the Rule 35 Order purported to consider the twin issues of "in controversy" and "good cause" its analysis was flawed from the start. The Court committed a legal error by reducing the burden on Plaintiffs and functionally treating the invasion of Wei's privacy as one as the same as the burden of producing phone records or bank statements. As discussed with regard to the elements of Rule 35, it is apparent that this lesser burden infected the analysis at each step.

**B.    Genetic Paternity is Not in Controversy Where the Only Claim Against Wei is for Defamation for Calling Plaintiffs False and Fraudulent in Connection With Their Allegations of Rape and Breach of Contract**

Plaintiffs' Motion is under Rule 35(a)(1), which provides that the court may "order a party whose mental or physical condition… is in controversy" to submit to a physical or mental examination. Fed. R. Civ. P. 35(a)(1). The in controversy

16

prevents limits "sweeping examinations of a party who **has not affirmatively put into issue his own mental or physical condition**," and "to hold otherwise would mean that such examinations could be ordered routinely." *Schlagenhauf*, 379 U.S. at 121-122 (emphasis added). Nor is "mere relevance" sufficient. *Id*. at 118. For example, a psychological evaluation is certainly relevant to a claim for emotional distress, but a party's psychological condition is **not** considered "in controversy" for the same reason. *Nathai v. Florida Detroit Diesel-Allison, Inc*., 268 F.R.D. 398, 400 (M.D. Fla. 2010) ("a plaintiff does not put his or her mental condition in controversy simply by seeking damages based on emotional distress."); *Bowen v. Parking Auth. of City of Camden*, 214 F.R.D. 188, 194-95 (D.N.J. 2003) (denying motion for Rule 35 psychological evaluation even when plaintiff has made a claim for emotional distress and disclosed testimony from his treating physician regarding the plaintiff's medical and psychological condition).

**Biological paternity is not "in controversy" with respect to the claims against Wei.** Plaintiffs' claim largely rests on Wei's post-summary judgment victory tweet, in which he allegedly states:

> They say if you spread a rumor, no matter how much effort you put in, it will be hard to completely clean it up. The CCP has, throughout its history, often deployed rumors [as a political tactic]. In the 1940s, they created rumors about Chiang Kaishek, and the book "The Pipe Dream of Nanking" played no small part. In recent years, people I've never met before claimed to know me. It's not just about tarnishing my reputation; they're requesting documents from [my] foundation, and it's clear that they are targeting the entire democracy movement. They

17

even mobilized a large number of people to spread these rumors, and their sophistication has clearly increased. Recently, the court ruled against them, and there is no such alleged illegitimate daughter at all.

**Ex. B**, Dkt. 63, SAC ¶ 90. In response to a comment on the post urging Wei to do a DNA test, Wei responded "Would you want a liar for a daughter? Throw in a fraudster mother." *Id*. ¶¶ 91-92. Wei's statement is not a denial of genetic paternity. It is suggestive of ties between Plaintiffs and the CCP and accuses Liu of being a fraud and Zhang being a liar in context with the litigation in DC Superior Court, in which Liu and Zhang accused Wei of rape and breach of contract for allegedly promising to financially support Zhang. But the statement has nothing to with denying genetic paternity.

Likewise, the 2023 statements, which Wei seeks to preclude under the doctrine of claims preclusion because the DC Superior court entered judgment in his favor on a defamation claim in July 2, 2024, are not related to genetic paternity. Those statements rest on claiming Liu's allegations in the DC litigation were false, that she was a liar for making those allegations, and that she was acting on behalf of the CCP. Again, the claims in the DC litigation were that he raped Lui and made promises to support Zhang. These claims were resolved in Wei's favor, and genetic paternity is not relevant to these claims.

Stated another way, the result of the paternity test-whether positive or negative, does not render any single aspect of Wei's alleged statements false. The

18

CCP can still be targeting Wei. The CCP could still have mobilized people to spread rumors (here, about being a rapist, which is the subject of Wei's counterclaim). Biological paternity has no bearing on the fact of Wei's victory in DC Superior Court relating to parentage, which is a legal concept, not a genetic one.

At most, a positive paternity test would show Wei and Liu had sexual intercourse. This does not prove consent or rape. Indeed, Lui will surely argue a negative test does not disprove rape. Nor would the results of a paternity test have any bearing on Lui or Zhang's support of the CCP or whether Wei agreed to financially support Zhang. And if "mere relevance" is not enough to support the use of Rule 35, *see Schlagenhauf*, 379 U.S. at 118, a potential for tangential relevance certainly does not make genetic paternity "in controversy." Caselaw regarding emotional distress is directly salient here—under *Nathai* and *Bowen* a party's psychological condition could certainly be said to be relevant to a claim for emotional distress. But both courts were clear that relevance is not enough for in controversy.

Despite the limited nature of the defamation claim against Wei,[6] the District

---

[6] After District Court issued the Rule 35 Order, Wei filed his Answer and Counterclaims. The counterclaims were not before the court at the time of ruling, so cannot bear on the "in controversy requirement." Wei's counterclaims bring claims for defamation and false light for calling him a rapist, abuse of process, and a declaratory judgment action for legal parentage based strictly on the fact that Mr. Zhang is the presumptive legal parent and did not challenge paternity within the

Court accepted Plaintiffs' insistence that parentage was relevant. Nowhere does the Rule 35 Order consider Wei's alleged tweet or the 2023 conversation in isolation. *See generally* Ex. A. Rather, it held:

> **Social media posts** from the defendants reference be it explicitly or by inference the nature and circumstances of the defendant Wei and the plaintiff Heather's relationship and previous interaction and Charlotte's paternity. Very many of the challenged statements made about the plaintiffs are about their character, actions, and conduct are framed by the assertion that the plaintiffs are lying that the defendant Wei is not Charlotte's biological father, that the defendant Wei did not sexually assault the plaintiff Heather, and indeed the defendant Wei did not even know the plaintiff Heather.

**Ex. A**, H'rg T. 81:11-21. The allegation of social media posts—plural—relate to Huang. Wei only had one post at issue. The District Court analyzed the matter of controversy as Wei and Huang were co-extensive. In so doing, it functionally concluded that if an issue is "in controversy" as to one party, it is "in controversy" as to all parties. But undersigned counsel has found not authority in any federal court to support this conclusion.

While there is no caselaw directly on point, cases regarding the inability to seek a Rule 35 examination of a related non-party are instructive. In *Young v. United States*, 311 F.R.D. 117, 119–20 (D.N.J. 2015), two parents brough a claim on behalf of their minor child for medical malpractice. *Id*. at 119. The defendants raised a

---

specific mandatory time limit, so he is the legal parent. None of these claims place genetic paternity at issue.

20

causation defense based on the child's genetics. *Id*. The defendant's expert geneticist explained that the child had a genetic abnormality, and that the genetic abnormality would explain the child's physical and mental injuries if the parents did *not* have the same abnormality. *Id*. at 120. Thus, genetic testing of the parents, who had brought the suit on behalf of their child over the cause of that child's injuries had the potential to be dispositive. *Id*. But because the parents were not the named party, the court denied the motion for a Rule 35 genetic test. *Id*. at 121.

Likewise, in *Dunford v. Rolly Marine Serv. Co*., the court held "authority has been provided for the proposition that a Rule 35 examination can ever be applied to a non-party witness, even if that witness is an officer of a party." 233 F.R.D. 635, 637 (S.D. Fla. 2005). There, the plaintiff sought a deposition of an officer of the defendant corporation and relevant fact witness. Defendant sought a protective order arguing her medical condition rendered not competent to testify, and plaintiff sought a Rule 35 medical examination to challenge the protective order. *Id*. at 636-37. Although the officer's cognitive health was central to obtaining relevant testimony, the Court would not issue a Rule 35 Order.

But Wei is a party. Plaintiffs will hang their hat on this fact no doubt. But for the purpose of the "in controversy" requirement, that is not enough. In relying on the claims against Huang to create the controversy, Wei is no different than a non-party witness. It is plain that the District Court could not have ordered a genetic test of

21

Wei before December 2, 2024, which is when he was first added as a defendant. To allow the Rule 35 discovery now, based on the claims against *Huang*, creates an absurd incentive to plead more parties into an action simply to open the door on invasive Rule 35 discovery.

### C. Plaintiffs Cannot Establish Good Cause in Light of the Legal Presumption Mr. Zhang is Defendant Zhang's Father

"Good cause" is not the same as "in controversy." "Although some courts seem to have collapsed the two Rule 35 requirements, they are distinct and implicate different concerns" *Winstead v. Lafayette Cty. Bd. of Cty. Comm'rs*, 315 F.R.D. 612, 616 (N.D. Fla. 2016) (citing *Gavin v. Hilton Worldwide, Inc.*, 291 F.R.D. 161, 165, 165 n. 3 (N.D. Cal. 2013)). Therefore, it is inappropriate to revisit whether the genetic paternity test is relevant to any claim. Rather, it should consider different factors such as "the possibility of obtaining the desired information by other means." *Id.* at 616 (citing *Marroni v. Matey*, 82 F.R.D. 371, 372 (E.D. Pa. 1979); *Storms v. Lowe's Home Centers, Inc.*, 211 F.R.D. 296, 298 (W.D. Va. 2002) (finding that even if Rule 35 applied to vocational assessments, no good cause existed in part because "Plaintiff has provided Lowe's with a copy of all medical records, a copy of the report from his vocational expert, his tax records, and all other discoverable material requested[.]")).To that end, the party seeking a Rule 35 examination must make a showing that "the information they seek cannot be obtained by other discovery techniques. Until other methods are attempted . . . the "discriminating application"

22

of Rule 35 demanded by the Court requires [denial of] the motion." *Marroni*, 82 F.R.D. at 372.

Here, a basic place would be to start by demonstrating that Zhang's legal presumptive father, Mr. Zhang, is not her biological father. In *Minnesota Life Ins. Co. v. Jones*, 771 F.3d 387, 388 (7th Cir. 2014) (Posner, J.), the Seventh Circuit affirmed the district court's order denying a Rule 35 genetic paternity test in an action to determine the beneficiaries (surviving children) of a deceased man's estate. Specifically at issue was whether plaintiff was the child of the deceased and, therefore, whether he was entitled to life insurance proceeds. In grappling with the issue of paternity, Judge Posner held:

> Rule 35(a) of the Federal Rules of Civil Procedure authorizes a district court to order, upon a showing of good cause, a physical examination of a litigant whose physical condition is at issue in the litigation. A DNA test for paternity is quick, noninvasive, painless—and conclusive. Given the conflicting evidence of [decedent] Lenord's parentage of [contested son] Quincy, ordering Quincy to submit to a DNA test would seem a no-brainer.
>
> Not so fast. The Illinois Parentage Act creates a presumption that a man is the natural father of a child if, so far as bears on this case, he and the child's biological mother have signed an acknowledgment of paternity or, equivalently, of parentage. Both Lenord and Quincy's mother had signed the 1996 acknowledgment of Lenord's paternity.
>
> . . .
>
> [T]he presumption could well be deemed conclusive in a case such as this.

23

*Minnesota Life Ins. Co.*, 771 F.3d at 389-390. There, the court ultimately ruled that an allegation that someone is not a genetic parent should not be enough to override the laws of parentage. *Id.* ("In effect [the sister] is arguing that all you need in order to require a DNA test of a relative (or anyone else) who is ahead of you in line for an inheritance is an affidavit that the relative is *not* ahead of you, because he or she is a phony heir and you're a genuine one."). As such denial of the Rule 35 motion was appropriate. *Id*.

The same reasoning should apply here. Mr. Zhang is the legal parent of Zhang. It is not disputed that Liu and Mr. Zhang were married at the time of conception and birth, and Mr. Zhang is listed on Zhang's birth certificate. *See* **Ex. C**, Dkt. 67-5, Jan. 11 Order at 3. Mr. Zhang has never contested parentage. **Ex. D**, Dkt. 93, Def.'s Opp'n to Rule 35 Mot at 10. Thus, Mr. Zhang is presumed to be Zhang's father absent conclusive evidence to the contrary. *Id.* (citing Md. Code, Fam. Law § 5–3A–06(a)). So that means that Plaintiffs have sought an order to test Wei for paternity even though, under the law, Mr. Zhang is here parent. Disproving the genetic paternity of the legal parent—if even possible—is a necessary precursor to dragging a different man into court and demanding his DNA before he has even answered the Second Amended Complaint. *Id.*

Liu's mere allegation that Wei submitted to a 23andMe test that she no longer has a copy of is not enough. The District Court incorrectly opined, "[t]he plaintiffs

24

have already exhausted other methods by which they could obtained admissible evidence in support of their position on the controversy having subpoenaed the person who sent that e-mail and also subpoenaed 23andMe for this information and done so to no avail." **Ex. A**, Hr'g T. 82:17-22. Not so. Liu has **never** sought to compel production of those documents. *Id.* at 69:17-23. This is why mere allegations are insufficient. If Plaintiffs are to demand a DNA test on the basis that this is the only option, the Court must put them to their proof.

The law presumes that Mr. Zhang is the father of Zhang. Full stop. Plaintiffs have access to information that could potentially rebut that presumption by either testing of Zhang or enforcing her subpoena against 23andMe, yet Plaintiffs have done nothing. As such, granting the Rule 35 motion was a clear and obvious error.

> **D.    The Court Abused its Discretion By Ignoring Wei's Reasonable and Credible Concerns the CCP Seeks to Invade His Privacy to Harass Him for His Civil Rights Work**

When considering a motion for physical examination under Rule 35(a), the Court has such broad discretion that "even upon a showing that the condition is in controversy and that good cause exists for the examination, the trial judge may still refuse to issue the order." *Neuman v. Neuman*, 377 A.2d 393, 398 (D.C. 1977) (collecting cases); *Hardy v. Riser*, 309 F. Supp. 1234, 1241 (N. D. Miss. 1970) ("Even when the 'good cause' and 'in controversy' requirements are met, it is still in the sound discretion of the trial court whether to order the examination"); *Curtis v.*

*Express, Inc.*, 868 F.Supp. 467, 468 (N.D.N.Y. 1994) ("Even if good cause is shown [under Rule 35(a)(2)(A)], it is still within the court's discretion to determine whether to order an examination."). In using its discretion, the court may consider the unique context of a case and specifically, whether there is a "distinct danger of Rule 35 being used as a sort of retaliatory measure." *Winstead*, 315 F.R.D. at 617.

That "distinct danger" is not only present here, it has been expressly investigated by the United States Congress and recounted in numerous reputable media outlets. It is a well-documented phenomenon that the CCP uses a variety of methods, from social media to the U.S. court system to target and harass Chinese dissidents. *See, e.g.* Foreign Abuse of U.S. Courts: Hearing Before the H. Comm. On the Judiciary, 119th Cong. (July 22, 2025), *available at* https://judiciary.house.gov/committee-activity/hearings/foreign-abuse-us-courts-0 (last visited August 7, 2025) (summary states "The hearing . . . , will explore how the [CCP] currently utilizes U.S. courts to silence critics . . . ."); Tsai, M., "He escaped China. Harassment followed him to a New York courtroom", RADIO FREE ASIA (Mar. 19, 2025) *available at* https://www.rfa.org/english/special-reports/china-lawfare-transnational-repression/ (last visited August 7, 2025; A. Martinez, "Chinese hacking scheme focused on harassing dissidents, leaked documents show" National Public Radio (Feb. 23, 2024), *available at*

26

https://www.npr.org/2024/02/23/1233355132/chinese-hacking-scheme-focused-on-harassing-dissidents-leaked-documents-shows (last visited August 7, 2025).

The CCP is known to engage in "lawfare," or the "systematic employment of judicial proceedings and legal frameworks to accomplish strategic military or political goals. This strategy encompasses the manipulation of legal processes to undermine, discredit, or impose substantial procedural and financial obligations upon adversaries through judicial mechanisms and related legal instruments." Foreign Abuse of U.S. Courts: Hearing Before the H. Comm. On the Judiciary, 119th Cong. (July 22, 2025), Testimony of Julian G. Ku, House Committee on the Judiciary, Subcommittee on Courts, Intellectual Property, Artificial Intelligent, and the Internet: Why the U.S. Should Harden Its Defenses Against China's Asymmetric Lawfare, *available at* chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://judiciary.house.gov/sites/evo-subsites/republicans-judiciary.house.gov/files/evo-media-document/ku-testimony.pdf (last visited August 7, 2025); *accord* Jill I. Goldenziel, Law as a Battlefield: The U.S., China, and the Global Escalation of Lawfare, 106 CORNELL L. REV. 1085, 1097 (2021); Julian Ku, China's Successful Foray Into Asymmetric Lawfare, LAWFARE (Sept. 29, 2021), *available at* https://www.lawfaremedia.org/article/chinassuccessful-foray-asymmetric-lawfare (last visited August 7, 2025).

According to a scholar at the Foundation for Defense of Democracies,

27

> [I]nside the United States, the Chinese Communist Party uses the American legal system to advance Beijing's agenda, punish its opponents, and neutralize US defenses – benefiting from the reality that China's centralized, opaque system allows it to out-resource competitors in courts and Congress, coopt key stakeholders, and manipulate information. This is a threat to US security and prosperity. Chinese abuse of the US legal system takes offensive and defensive forms. It includes bids to shape US policy as well as to impose costs on adversaries in US courts. It features evasions of US law as well as influence campaigns meant to ensure that such evasions remain possible. Across the board, Beijing's manipulation benefits from the reality that Chinese entities have the same access to US courts, law firms, and lobbyists as any others. And Beijing's campaign is fueled by a deliberate Chinese government program that provides the resources and direction necessary to turn the US system against itself.

Foreign Abuse of U.S. Courts: Hearing Before the H. Comm. On the Judiciary, 119th Cong. (July 22, 2025), Testimony by Emily de La Bruyere Co-founder, Horizon Advisory Senior Fellow, Foundation for Defense of Democracies *available at* chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://judiciary.house.gov/sites/evo-subsites/republicans-judiciary.house.gov/files/evo-media-document/de-la-bruyere-testimony.pdf (last visited August 7, 2025).

Wei is precisely the type of dissident that the CCP targets. Even after leaving China, he has been subject to a deluge of harassment in an effort to discredit his advocacy. He genuinely believes Lui is part of this effort. The fact that she fought him in D.C. Superior Court for five years, lost, and then sued him months later for

28

tweeting about his legal victory adds fuel to this credible fire.[7] This context, or lack thereof, is central to the need of a writ to rescind the Rule 35 Order. Wei has long believed that Liu's allegations of rape are part of a broader effort by the CCP to harass and silence him. So, even if there were good cause and even if the issue were in controversy, the District Court should have denied the Rule 35 motion based on the intense psychological burden on Wei. In this, Wei disagrees with Judge Posner – a forced medical test where the potential relevance to the case is minimal, but the emotional burden is significant, is not actually "noninvasive." It is for these very reasons that Wei pursues a petition for a writ of mandamus from this Court.

## CONCLUSION

This case is not a situation where Wei takes issue with the manner in which the District Court has balanced factors for relevancy and burdensomeness. This case presents important legal issues at every aspect of a Rule 35 analysis, all of which amounts to an "oppressive use" of Rule 35. As such, the Court should issue a writ directing that the District Court withdraw its Order and deny Plaintiffs' motion for a Rule 35 paternity test of Wei.

---

[7] Wei has counterclaimed against Lui for, among other things, abuse of process based on bringing the underlying litigation.

29

Dated this 21st day of August, 2025

Respectfully submitted,

/s/ *David Barger*
David G. Barger (MD Bar# 14716)
Greenberg Traurig LLP
1750 Tysons Blvd.
Suite 1000
McLean, VA 22102
Tel:  (703) 749-1300
Email:  bargerd@gtlaw.com

## CERTIFICATE OF SERVICE

I certify that on August 21, 2025, Petitioner's Amended Petition of Writ of

Mandamus was served by email (with written consent) on the following persons at

the email addresses shown:

Times Wang
Farra & Wang PLLC
twang@farrawang.com

*Attorney for Respondents Huaizhao Liu and Charlotte Zhang*


John P. Rowley III (admitted *pro hac vice*)
Adriaen M. Morse Jr. (Md Bar No.18106)
SECIL Law PLLC
jrowley@secillaw.com
amorse@secillaw.com

*Counsel for Respondent Ciping Huang*


/s/ *David Barger*
David G. Barger

31

# Exhibit A

1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

HUAIZHAO LIU, et al.,        )
                Plaintiffs,  )
                             )
            vs.              )    CIVIL CASE NO.
                             )    8:23-cv-02134-MJM
CIPING HUANG, et al.,        )
                Defendants.  )
_____    )

FRIDAY, JULY 18, 2025
Courtroom 5C
Baltimore, Maryland

TRANSCRIPT OF PROCEEDINGS
VIDEO MOTIONS HEARING
BEFORE THE HONORABLE MATTHEW J. MADDOX

For the Plaintiffs:

Times Wang, Esquire
Farra & Wang, PLLC
1300 I Street NW, Suite 400e
Washington, D.C. 20005

For Defendant Huang:

John P. Rowley, III, Esquire
Adriaen Morse, Jr., Esquire
SECIL Law, PLLC
1701 Pennsylvania Avenue, Suite 200
Washington, D.C. 20006

For Defendant Wei:

David G. Barger, Esquire
Robert Woodson Angle, Esquire
Greenberg Traurig
1750 Tyson Boulevard, Suite 1000
McLean, VA 22102

_____
(Computer-aided Transcription of Stenotype Notes)
Reported by: Amanda L. Longmore, RPR, CRR, FCRR
Federal Official Court Reporter
101 W. Lombard Street, 4th Floor
Baltimore, Maryland  21201
410-962-4474

**Video Motions Hearing 7/18/25**

PROCEEDINGS

(10:04 a.m.)

THE COURT:  Good morning.

THE CLERK:  Good morning, Judge.  The matter now pending before the Court is Civil Docket Number MJM-23-2134, Liu versus Huang.  This matter now comes before the Court for the purpose of a virtual motions hearing.  Counsel for the plaintiff, please identify yourself for the record.

MR. WANG:  Good morning, Your Honor.  This is Times Wang for the plaintiffs.

THE COURT:  Good morning.

THE CLERK:  And for the defendants, please.

MR. ROWLEY:  Good morning.  This is John Rowley and Adriaen Morse for the defendant Ciping Huang.

MR. BARGER:  Good morning, Your Honor.  David Barger and Woody Angle on behalf of defendant Mr. Wei.

THE COURT:  Good morning.  And who will be speaking for Defendant Huang?

MR. ROWLEY:  I will, Your Honor.  John Rowley.

THE COURT:  Okay.  And who will be speaking for Mr. Wei?  Will it be you again, Mr. Rowley?

MR. BARGER:  Your Honor, For Mr. Wei, it will be me.  We have two motions that are relevant.  One is our motion to dismiss.  The other is Ms. Liu's Rule 35.  So if the Court permits, Mr. Angle was planning to argue the Rule 35 response

**Video Motions Hearing 7/18/25**

since they're two separate motions, but a motion to dismiss I will argue with the Court's permission.

THE COURT:  Okay.  Thank you.

MR. BARGER:  Thank you.

THE COURT:  All right.  As you've just noted, Mr. Barger, there are those two motions.  Each defendant has filed a motion to dismiss.  I'll begin with Ms. Huang's, so I'll hear from Mr. Rowley.

MR. ROWLEY:  If the Court please, we have filed a motion to dismiss alleging that the allegations by the plaintiff in the Second Amended Complaint are not defamatory *per se*.  Your Honor, we will submit, the Court has already heard some arguments on that issue, we will submit on our arguments and on our motion to dismiss and the supporting brief on that particular issue, Your Honor.

As I indicated in our briefing, we do not believe that the allegations are defamatory.  They're a matter largely of opinion and hyperbolic rhetoric.  But as I say, Your Honor, we will submit on that particular issue.

The issue I would like to address to the Court is the one of limited purpose public figures.  As we have stated in our supporting briefs, Your Honor, we believe that under Rule --

THE COURT:  Before you begin with that issue, Mr. Rowley, just to clarify what you've already said with respect to submitting on the briefs the issue as it relates to

**Video Motions Hearing 7/18/25**

defamatory *per se*.  You seem to -- and I'm not sure if it was you or both you and your codefendant seem to suggest that the plaintiffs are only asserting a claim for defamation *per se* and therefore if the statements that are challenged in this case don't qualify as defamatory *per se*, then there is no defamation claim.  But I understood the claim to not just be asserting defamation *per se* but also asserting defamation *per quod*.

Do you want to address that quickly and clarify your position on that for me?

MR. ROWLEY:  I can, Your Honor.  Your Honor, and I do understand that in certain cases per quod is included in an allegation of defamatory defamation *per se*.  However, in this particular case, as per Paragraph 97 of the Second Amended Complaint, the plaintiffs have alleged only defamation *per se*.  And so our motion to dismiss seeks to dismiss the entire complaint because of those limited allegations made by the plaintiffs in this case.

THE COURT:  Well, I read Paragraph 98 -- you said 97, I think you were citing 98 -- says statements also caused actual harm, which they don't specifically say *per quod* in that paragraph but it seems to suggest that to the extent that the statements don't qualify as defamation *per se*, they still make a defamation claim because they're alleging actual harm.  Do you read it differently or --

MR. ROWLEY:  Your Honor, I acknowledge that that may

**Video Motions Hearing 7/18/25**

very well have been their intention, but that's not what they have specifically alleged because of Paragraph 97, which I would submit to the Court limits their claims here, their defamation claims in Count 1 anyway, to defamation *per se*.

THE COURT:  Okay.  You can proceed with your argument on the public figure issue.

MR. ROWLEY:  Thank you, Your Honor.

Your Honor, under applicable law, a plaintiff is a limited purpose public figure when a public controversy exists, and we do have one in this case as per the lawsuit and the multiple complaints that the plaintiffs have filed over time.

The plaintiffs have voluntarily thrust themselves into that controversy and that they have done so for the purpose of influencing the outcome of this case or shape the public discourse.

Now, Your Honor, the plaintiffs have engaged in a public media campaign and as such they are required as -- that that converts them to limited public figures for purpose of this lawsuit and as such they are required to prove that the defendant Huang made the subject statements with actual malice under the standard enunciated in *New York Times versus Sullivan*.

They have repeatedly claimed over Twitter that Mr. Wei, the codefendant here, raped plaintiff Liu more than 25 years ago, that both Mr. Wei and my client Ms. Huang engaged in

Video Motions Hearing 7/18/25

extramarital affairs. They've also said that Ms. Huang is a liar, a thug, a bully, and they've called her other names and they've done so publicly. And this public media campaign, Your Honor, was done deliberately to shape the public perception regarding defendant. I can't think of any other reason why the plaintiffs would do so. They are using mass communications channels to achieve their objectives, including improperly, I would submit, influencing potential jurors.

Now, this sustained public media campaign satisfies the criteria for limited purpose public figure status under Maryland law and also under D.C. law.

Now, Your Honor, I would -- I would expect that opposing counsel will say that, well, we're limited to the four corners of the Second Amended Complaint and it's unknown at this stage of the proceeding whether or not the evidence exists to convert the plaintiffs into limited purpose public figures.

And, Your Honor, I would direct the Court to Federal Rules of Evidence Rule 201, judicial notice of adjudicative facts, which says that the Court may judicially notice a fact that is not subject to reasonable dispute because it -- and there are two elements here -- one, is generally known within the trial court's territorial jurisdiction; or two, can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. And Your Honor, Rule 201 further provides that the Court may take judicial notice at any stage

Video Motions Hearing 7/18/25

of the proceeding.

We have cited in our brief and specifically our motion to dismiss Page 3 of Ms. Huang's reply a couple of cases that -- that support the proposition that it is appropriate in certain cases for the Court to consider a limited purpose public figure issue at the motion to dismiss stage, and in those cases that I've cited, the courts have actually dismissed cases.

Your Honor, in this case, we have a number of examples, there are a plethora of examples. There are dozens and dozens of Tweets that the plaintiffs have made over time about Ms. Huang and Mr. Wei and, as I say, in an attempt to have a media campaign that influences either potential jurors or otherwise public perceptions about what this case is about.

We have not tried to comprehensively capture all of those statements in our counterclaim, Your Honor, but I would direct the Court to Page 9 of Ms. Huang's counterclaim under subheading "H. Liu's defamation campaign against Huang," and there were a number of examples there, Your Honor, of Tweets that defendant -- that plaintiff Liu has published publicly about both Ms. Huang and Ms. Wei [sic].

THE COURT: But you don't -- I'm sorry to interrupt you, Mr. Rowley. You don't contend that I can consider any of that. You've made an argument that I can consider the GoFundMe page, but how can I consider your client's pleading in deciding the sufficiency of your opponent's pleading?

Video Motions Hearing 7/18/25

MR. ROWLEY: Your Honor, I'm citing examples from my pleading because these are taken from the public Twitter or X account now. So these are public statements that the plaintiff Liu has made about my client and about codefendant Mr. Wei. I've simply incorporated those into my counterclaim, so I'm not asking the Court to rely on my counterclaim as such but these are examples that I've taken from the public discourse about this matter.

And I would point out, Your Honor, that it's not just plaintiff Liu who has made these statements. Her lawyer, Mr. Wang, has also made public statements. Paragraph 52 of my counterclaim references a Radio Canada statement made by Mr. Wang about the defendants making up lies. You know, there's also, on April 3rd, 2024, a YouTube interview where Mr. Wang again says "I love prosecuting bullies, I love prosecuting liars."

So Your Honor, those are just a couple of examples but there are literally dozens of statements made by the plaintiffs in this case, including at least several made by Mr. Wang that attempts to affect the public discourse about this matter. The Court has the power under the rules to take judicial notice of that and to also conclude at this stage of the proceedings that the plaintiffs are limited purpose public figures for purposes of the standard of proof that they are required to show when this case goes to trial.

Video Motions Hearing 7/18/25

And in addition, Your Honor, as I said, I'm submitting our papers with respect to the defamatory *per se* argument, I would also submit with respect to the arguments we've made on Count 2, false light, and Count 3, intentional infliction of emotional distress.

THE COURT: Okay. Thank you, Mr. Rowley.

Mr. Barger, you've also filed a motion on behalf of your client. Do you wish to be heard on it?

MR. BARGER: Yes, Your Honor. Thank you.

So with regard to Mr. Wei, Mr. Wei is pled in Count 1 of the plaintiffs' Second Amended Complaint, so my arguments only relate to the claims against Mr. Wei in Count 1. I would, to the extent they're applicable, adopt arguments by Mr. Rowley to shorten my argument a little bit.

Your Honor, by way of background that we've identified in our motion and in our reply and to the various other pleadings that exist in the case, as the Court knows, Ms. Liu and her daughter have litigated indeed -- indeed Mr. Rowley's correct, in a publicity campaign since 2019 these claims against Mr. Wei and have really made this more about a publicity campaign than it is about litigation.

And the reason I say that is because these claims, as we'll get into more detail, substantively the claims they make against Mr. Wei have already been litigated fully in the Superior Court in the District of Columbia. You know, and I

**Video Motions Hearing 7/18/25**

12

say fully, we're talking about at the summary judgment phase all of the claims against Mr. Wei were dismissed. That meant that the parties engaged in extensive discovery, full depositions, production of thousands of documents, and after full consideration of the record in 2024 the Superior Court judge again denied Ms. Liu and Ms. -- and Charlotte, her daughter's claims with prejudice. They did not appeal that decision, and that decision is now *res judicata*.

That is for the simplest ground here, Your Honor, that they don't get multiple bites at the apple. Mr. Wei should not have to go through the time and expense of having to defend himself again when they have fully litigated these issues. It was the same parties and, as I'll discuss, it was the same facts, the same alleged transactions, and it was litigated to final judgment. Those are generally the three elements that are relevant for *res judicata* purposes.

Indeed, the reason we know it's the same transaction, even though in this Second Amended Complaint, these are alleged statements made -- asserted they're made in December of 2023 and in July of 2024, and the December '23 alleged statements in Count 1 against Mr. Wei, the plaintiffs attempted to put those into an Amended Complaint in the Superior Court proceedings, and ultimately the Court ruled that they were not timely. They'd had multiple years to amend their complaint and the Court considered that and denied those claims. And the reason

**Video Motions Hearing 7/18/25**

MR. BARGER: The Court denied their request to amend that complaint to add those additional allegations. As I recall, because they were untimely, they waited too long into the proceedings to do that, but by the plaintiffs attempting to add them into the case in the Superior Court, they couldn't do that unless they arose out of the same transaction or series of transactions. And the statements, even though they're alleged to be made in 2023 as we discussed, substantively they're the same denials that the Court -- the Superior Court ruled upon were not defamatory, were mainly opinion and talking about motivation.

So the substance of those statements, that court, we talked about *res judicata*, has already ruled that the statements that were the subject of that complaint were not defamatory, they're not actionable. And so by the plaintiffs attempting to put in the same -- substantively same statements just a few years later and the Court denying it, the plaintiffs by doing that have to concede that they believe those December 2023 statements arose out of the same transactions. And so that's about --

THE COURT: I'm not sure that I follow that, Mr. Barger. I understand your argument. I don't think that to amend the complaint or to amend the pleading to add claims is taking a position that it's part of the same series of transactions as the other claims previously asserted. I don't

11

**Video Motions Hearing 7/18/25**

that's relevant is that the plaintiff by doing that has conceded that the December 2023 statements are really arising out of the same transaction, same series of alleged statements, and then we go back to *res judicata*, the second element is that the statements have to arise out of same transaction or series of transactions. So this has been fully litigated and the Court, for the reasons we say, should give full effect to that Court's careful consideration of the merits of the case there.

THE COURT: I'm sorry, Mr. Barger, could you go back and sort of go back through what establishes the plaintiffs' concession on that point, that it's part of the same series of transactions?

And while I'm talking --

MR. BARGER: Yes, Your Honor.

THE COURT: -- I'll ask the other parties who are on this Zoom call if you could put yourselves on mute. We are picking up a little bit of background noise and I want to make sure we hear Mr. Barger clearly on this matter. Thank you.

MR. BARGER: Your Honor, to answer your quick question, I'm looking for my -- finding in our reply memorandum, which is Document 75, but off the top of my head, the plaintiffs attempted to amend their complaint in Superior Court by adding the allegations that are the alleged statements from December 2023.

THE COURT: Right.

13

**Video Motions Hearing 7/18/25**

know -- unless they said that in the complaint, but I presume that they didn't, but -- so I'm not sure that -- why that means that they are -- they would be conceding that a separate set of defamatory statements are part of the same series of transactions as an earlier set.

MR. BARGER: Your Honor, to answer the Court's question, I don't recall if they specifically conceded that, and I agree simply adding it wouldn't necessarily mean that it's an acknowledgment that they're part of the same series of transactions, but when you're adding them to the complaint for the same purpose, meaning the same count of alleged defamation just later iterations of what they claim is defamatory, given that context, I respectfully submit that it is a concession that they arise out of the same transaction.

But that's -- also that's a technical argument. I think at the end of the day what really matters is the Court looking at the substance of what's alleged and seeing if what's alleged as to Mr. Wei is substantively the same as what the Superior Court ruled on in dismissing the case with prejudice. And my general recollection is we talked about this a little bit in our status hearing back in, I think it was April, but we didn't, you know, we didn't dig into the -- in any great detail, so if I may just address a couple of the -- there's only a few, Your Honor, that address Mr. Wei specifically.

And if the Court has the Second Amended Complaint, the

16

Video Motions Hearing 7/18/25

ones that really matter in particular are Paragraphs 90 and 92. I know there's some general allegation in 86 and 87 about Mr. Wei, but when you look at the allegations, they lack any specificity and they lack any quotations as to exactly the words that are used, even though 87 is the one that talks about in December of 2023 at a dinner attended by several members of the Chinese dissident community, purpose of which was to arrange a public debate between Wei and another dissident, and they allege that defendant Wei said to certain attendees, they don't specify who, they don't specify exactly what he said, that plaintiff Liu's allegations against him were false, that she was a liar and she was acting on behalf of the CCP. Those statements of and essentially defending himself against her public allegations are substantively the same as what the Superior Court ruled were not defamatory.

If we look at Paragraph 90, Your Honor, which is alleged to be a translation of a post in Chinese, Ms. Liu alleges in Paragraph 90 -- I'm paraphrasing a little bit -- that Mr. Wei in a Tweet talked about the CCP having a history of deploying rumors as a political tactic. And down at the bottom of the Tweet, it says recently the Court ruled against them and there is no such alleged illegitimate daughter at all.

Now, in Paragraph 90, there's no reference to who he's talking about, but even if one assumes that it is the plaintiffs, Ms. Liu and her daughter, even if that's true, the

15

Video Motions Hearing 7/18/25

statement that the Court ruled against them and there is no such alleged illegitimate daughter at all, as we indicate in our papers, he's commenting on the ruling by the Court dismissing the case with prejudice and the statement that there's no alleged illegitimate daughter at all is actually a correct statement of law, meaning I don't know how one could argue that saying there's no illegitimate daughter is defamatory, but it happens to be accurate as a matter of law as we put in our papers and, as the Court ruled in its order, that as a matter of law we have a presumptive father who they were married at the time, Mr. Zhang is listed on the birth certificate as the father, and it was never challenged by Ms. Liu within the statutory period provided in the various states.

So as a matter of law, Ms. Charlotte is not illegitimate but, again, the allegation that he's saying she's not illegitimate, I don't understand how that could even be defamatory whether it's *per se* or *per quod*, you know what I'm saying, oh, she's not illegitimate, it's actually accurate as a matter of law, and secondly it's not defamatory.

Putting aside the third possibility or argument that it would appear to be a matter of opinion as well, and as the Court talked about in the Superior Court case, you really can't sue him for defamation for speculating or talking about the motivations of the plaintiff.

17

Video Motions Hearing 7/18/25

To put it in a little bit of simple context, you know, Ms. Liu has waged this litigation since 2019 and at least some of the -- some of the public items the Court has allowed, as the Court noted, the GoFundMe page, there has been significant public discourse and publicity by Ms. Liu in pursuing this. And so I would respectfully submit that when she makes this a public issue and a publicity issue for my client to deny the allegations, which they -- I think they acknowledge in their Rule 35 motion it's his right to do, to deny the allegations, it seems inappropriate to try to turn those denials into alleged defamatory statements.

But my primary argument, Your Honor, is, as I mentioned, that this case has been fully litigated after extensive discovery and the substance of those statements has already been ruled upon.

If the Court -- and I appreciate the Court's indulgence. If the Court, the last -- the only other alleged defamatory statement against Mr. Wei is Paragraph 92, which is alleged to be a response to a Tweet by some other person and Mr. Wei's alleged response is:

"Would you want a liar for a daughter? Throw in a fraudster mother."

As we indicated in our papers, and we cite cases to this effect, expressing an opinion that someone's a liar or expressing an opinion that someone's a fraudster is basically just that, opinion, and it's reflective of comments about the alleged motivations of the plaintiffs in pursuing the litigation. And as we've mentioned and for the reasons we say in our brief, those are expressions of opinion which are not actionable as defamation and, again, the substance of those same allegations were made by Ms. Liu previously litigating, she had her days in court, her years in court, and she should not be allowed to do this again to Mr. Wei.

Unless the Court has any additional questions, I think -- I'm sure I forgot something as I'm wont to do, but I think I've covered it and I do appreciate the Court's patience.

THE COURT: I do have a couple of questions for you.

MR. BARGER: Yes, sir.

THE COURT: Could you -- is there a place in the D.C. Court's order that you can point to me the Court's description or understanding of the context in which the challenged statements were made?

MR. BARGER: Your Honor, if you give me a second, I've got the Court's omnibus order and off the top of my head I don't remember. I would need to go back and review it. And I hate to put Mr. Angle on the spot. If he recalls, I would ask if the Court would grant permission, and Woody may not know the answer off the top of his head. If he doesn't, I don't mean to put him on the spot that way.

THE COURT: Well, we can come back to it. You'll get

**Video Motions Hearing 7/18/25**

a chance for rebuttal.

MR. BARGER: Okay. I'll take a look.

THE COURT: Okay. So my next question then would be where does the D.C. court -- I think you used the term "authorized" in your briefing -- authorized Mr. Wei to say, for example, that the plaintiffs were working on behalf of the CCP and other statements that are alleged to be defamatory in this context?

The person who's dialing into the Zoom from a phone number ending in 0809, if you could please put yourself on mute as I indicated earlier? All right. Mr. Barger?

MR. BARGER: Yes, Your Honor. Our argument for why we said the Court authorized the statements is because the Court ruled that those are not defamatory. And so Mr. Wei is fairly entitled to rely upon the Court saying that's not defamatory to the extent he says, again, she's a liar or she may be acting on behalf of the CCP, which the Court specifically indicated was not actionable as it really didn't express any motivation.

If I can focus just a bit on the CCP, because I thought about this and I know that -- and again, I think that's in Paragraph 90 of the Second Amended Complaint, the reference to the CCP, maybe the Court would say, well, that's really a question of fact, but I don't know how that's ever provable or disprovable that somebody may be acting on behalf of the CCP or

---

**Video Motions Hearing 7/18/25**

that the conduct that they're engaged in, which is a slightly different court, the conduct they're engaged in -- how am I trying to say this -- furthers the purposes of the CCP.

That, to me, strikes me as very much opinion but I struggle to see how either party, either Ms. Liu or my client would ever prove or disprove given the limitations on discovery whether Ms. Liu's an agent of the CCP or simply what she's doing is consistent with their stated clear unequivocal goals of discrediting Mr. Wei. I believe he's blocked from social media or the Internet in Mainland China as I recollect.

So I know I digressed a little bit, but to answer your question again, Your Honor, the Court didn't specifically say, oh, you now have license to say this any time you want, but I think that is the natural consequence of the Court's order saying these were not defamatory.

THE COURT: Okay. And you did actually touch on the next question I was going to ask you about, whether or not a person being an agent of the CCP or working on behalf of the CCP does strike me as just a plain issue of fact. Whether or not there's practical barriers to actually proving it in a court I think is one question. I don't think that's the dispositive question. The question is whether or not as a general matter is this something that's provably true or false. And I think that it could certainly be interpreted that way, especially if I'm to draw all reasonable inferences in the

---

**Video Motions Hearing 7/18/25**

plaintiffs' favor on your motion under 12(b)(6), as I'm required to do.

And it doesn't seem like you're disputing that, but I would also make the same -- or present the same proposition with respect to whether or not Mr. Wei is the biological parent of Charlotte and whether or not there was sexual contact between him and plaintiff Liu, whether or not he sexually assaulted plaintiff Liu. These aren't really questions of opinion; these are questions of fact. Wouldn't you agree with that?

MR. BARGER: As a general proposition I would. I want to go back briefly on the CCP. Of course, it is Ms. Liu's burden to prove she's not an agent of the CCP, right? You know, she's going to say, look, this is defamatory to say, you know, working on behalf of the CCP, which I do draw a distinction between that and saying what you're doing furthers their goal. Those are different.

The second one, to me, is opinion and not actionable, claiming you are a member of the CCP, I don't -- you know, I suppose a good portion of the world would not consider that defamatory. I haven't reflected too much on, hey, you work for the CCP, is that defamatory or not. But putting that aside, to address the Court's question --

THE COURT: In the context of a dissident --

MR. BARGER: Right.

---

**Video Motions Hearing 7/18/25**

THE COURT: -- Chinese dissident community, which obviously association with CCP would tend to disparage a person.

MR. BARGER: It might. It might. But going back to it's certainly her burden to prove that she's not a CCP member, I don't know how -- how she would ever do that.

THE COURT: She would testify -- she would testify that she doesn't have any association with the CCP. Are you saying that that evidence would be insufficient to make a preponderance finding that she's not a member or not an agent of the CCP, if she was to testify --

MR. BARGER: I will reflect upon -- I think the Court could give whatever weight it wants to her statement that I'm not a member, but I go back to, and my client says, look, I thought she was. So I mean, to me, this one is -- it's -- I'm not trying to -- I'm not trying to be cavalier about this. To me it seems silly that we have to engage in multiple years of litigation over the question of whether I am, I'm not an agent of the CCP, well, I think you are an agent of the CCP, you know, why do you think that, because what you're doing is consistent with their goals of discrediting me.

So but I -- I understand we have certain legal principles but to me as a practical matter, it's a shame we have to have to spend so much time litigating over something that regardless of whether she says I am not one is ultimately not disprovable

---

22

**Video Motions Hearing 7/18/25**

by either -- either person's belief about whether they are or not because I assume as a practical matter we're never going to get anybody to testify on behalf of the communist government as to whether a person is an agent of the communist government or not.

THE COURT: I'm sorry I interrupted you before you moved onto the other points.

MR. BARGER: No, sir, and now I'm forgetting. It was --

THE COURT: It had to do with the issue regarding the sexual encounter and the parentage of Charlotte.

MR. BARGER: Right. Well, and for the reason we put in our brief and were litigated previously, the argument of Charlotte's parentage has been, again, fully litigated and the Rule 35, which Mr. Angle will address it, has been fully litigated, again, after discovery, and so that's -- there's no claim that I am defamed by denying that I am a parent. I don't understand how that would be defamatory, and that's not exactly what they've alleged, right? Their allegation is, you know, you called me a liar. Well, let me rephrase. Yeah, you called me a liar, you denied that you raped me.

The parentage certainly isn't -- doesn't prove or disprove any of those particular allegations. It doesn't prove or disprove whether I'm, you know, an agent of the CCP or furthering their goals.

23

**Video Motions Hearing 7/18/25**

And so the factual question of biology, this isn't a paternity case. She tried that route and it was denied and she can't backdoor what has been litigated and denied, but at least that's our respectful position that she cannot do that by claiming that this request to do the testing somehow proves her defamation case.

THE COURT: All right.

MR. BARGER: Unless the Court has other questions, I'll try to get an answer to Your Honor while we're working through the rest of the motions and when it's my turn to speak.

THE COURT: Okay.

MR. BARGER: Thank you, Judge.

MR. ANGLE: I have the order language up, Your Honor, if you'd like to hear it, but sorry for interrupting.

THE COURT: Go ahead. If you have that, go ahead.

MR. ANGLE: Sure. On Page 25 of the Court's summary judgment order, it says, "Furthermore, the Court agrees with" --

THE COURT: Let me catch up to you. Let me catch up to where you are. You said Page 25?

MR. ANGLE: Yes, sir, and this is the summary judgment order. Yes, sir.

THE COURT: I'm there.

MR. ANGLE: It says, "The Court agrees with defendant that plaintiffs are unable to show nor do they attempt to argue

24

**Video Motions Hearing 7/18/25**

or dispute in their opposition that defendant's alleged statements are more than his own subjective opinion."

And, well, I don't want to present any argument to double-team the motion, but I'll -- that's the language.

THE COURT: All right. Thank you. Just trying to -- let's see. You said Page 25. Is that 25 that's on the bottom of the page or on the ECF header?

MR. ANGLE: Yes, sir, my apologies. At the bottom of the page, it's 25 out of 27. And this is the summary judgment order. There was a subsequent omnibus order denying motions to reconsider.

THE COURT: Oh, I see. I may be in the wrong one, then. Okay.

MR. BARGER: If I can, in our case, it's Document 67-6, Page 26 of 28.

THE COURT: Got it. Okay.

MR. BARGER: Toward the top of the page, "Furthermore."

THE COURT: Right, okay. I have it highlighted here.

I thought my question had to do with putting the statements in context. I understand the Court's ruling. I just don't know where in the opinion the Court discusses or describes the context in which these statements were made. And maybe it's not in the opinion, maybe it's in the pleading, but that's what I'm trying to get an understanding if I'm going to

25

**Video Motions Hearing 7/18/25**

do as Mr. Barger has invited me to do, to compare the context alleged in the Second Amended Complaint in our case with the context of the statements challenged in the prior D.C. litigation, I'm just trying to see if the public record establishes that the two contexts are the same.

MR. BARGER: Your Honor, I will say I believe they do but that -- that takes you nowhere, so I would ask the Court's leave, depending on where we end up today, to give us an opportunity to go back, because it's a very fulsome record in Superior Court and so we would look at the pleadings and the oral argument and the Judge's order and then if we're right, we'll point the Court to where that context is and if we're wrong we will say so.

THE COURT: Okay. Thank you, Mr. Barger. Let me turn to Mr. Wang.

MR. WANG: Good morning. Thank you, Your Honor.

I think I'll begin my remarks by just setting the stage for this case.

So, as Your Honor pointed out, we're on a 12(b)(6) motion, so we have to assume all of the following is true:

We have to assume that in the year 2000 Mr. Wei, in fact, raped or sexual assaulted Heather, and that's true but assume that in fact Charlotte is Mr. Wei's biological daughter. We have to assume it's true that, in fact, Wei and Huang knew that because they got a -- they knew the results of the DNA test

26

**Video Motions Hearing 7/18/25**

that both Charlotte and Wei submitted to the 23andMe and Wei's associate Robert Suettinger. But they knew that Charlotte is Wei's biological daughter, and that despite that, they have been calling Heather and Charlotte fraudsters and liars sent by the CCP for making these allegations.

Okay. So that is the background against which all these statements have to be evaluated.

Also, we have to assume as true that Ms. Liu did not choose to make any of this public. As we have alleged, the allegation that Mr. Wei fathered a child was revealed by a third party, not Ms. Liu. And as we have also alleged, and that allegation, Your Honor, is at -- that allegation is at Paragraph 15 of the SAC, that we did not -- that Ms. Liu did not want any of this to become public.

And then in terms of the narrative and what we have to assume is true in terms of how this thing became public, so we allege that Ms. Liu filed a D.C. Superior Court action in 2019, that's at Paragraph 17, and then in response, in response to her filing that action, it was Ms. Huang who began an unrelenting social media campaign against the plaintiffs. So, again, that -- and that's of course relevant to the limited purpose public figure question.

Now, so let's -- the other thing I want to sort of address as an overarching comment is Mr. Barger has accused us of suing Mr. Wei for a number of statements that we're not suing him

---

28

**Video Motions Hearing 7/18/25**

of hard to make out a defamation case about that kind of statement because, you know, what are you a liar about? But that's not this case. This case they're saying that they're liars and fraudsters for alleging that Wei raped Charlotte in 2000 and impregnated her and with -- well, impregnated her that Charlotte was the result. Those are very specific events that can be proved true or false.

On the limited purpose public figure, the only thing, you know, obviously I think there are -- it was a little bit of a *Twilight Zone* experience for me listening to the argument because it sounded like a summary judgment argument where none of the evidence was -- had even been admitted, but -- so there's just way too much outside the pleadings, it's too factual for a decision at this stage.

But what I will say, Your Honor, is that even if my clients are limited purpose public figures, the fact that the defendants state -- defendants knew that a DNA test had shown Charlotte to be Wei's biological father [sic] and they nevertheless publicly called my clients fraudsters and liars, that is more than enough to plausibly allege malice or at least recklessness. So even if the -- that's the key fact that plausibly makes out malice and recklessness on their part. They got a DNA test results. They still made these statements.

But then let me turn to the *res judicata* argument.

THE COURT: But before you go there, Mr. Wang --

---

27

**Video Motions Hearing 7/18/25**

for. So he's accusing -- we're not -- Mr. Wei did not say I didn't do it. That's not what we're suing him for. He didn't say, you know -- he didn't say, well, I think Heather and Charlotte are misguided. He didn't say I think they might be acting on behalf of the CCP. He didn't say -- and Ms. Huang didn't say any of these things either. He didn't say, you know, it's unfortunate because by doing this they're advancing the CCP's interests. We're not suing him for anything like that. Neither than say, you know, I don't know why they're making these allegations but, you know, I think they're lying. That's not what we're suing them for. What we're suing them for is they said they are fraudsters and liars sent by the CCP in making these allegations. That's what we're suing them for.

And those statements are factual ones. They are provably false because they are tied to a very specific event in the year 2000, rape. The fraudster and liar statements are ultimately about whether that sexual assault, in fact, occurred. That's -- it's basically the *Carroll versus Trump* case. I mean, I can't think of any way to distinguish it from the *Carroll versus Trump* case in this regard.

You know, as a counterfactual, for example, if Mr. Wei or Ms. Huang had just said, well, you know, I think they're liars, and then you ask them, well, what are they liars about? And then say, well, I don't know, they're just generally liars, right? Then I can see an argument, well, okay, it becomes kind

---

29

**Video Motions Hearing 7/18/25**

MR. WANG: Yes.

THE COURT: -- if you want to address this question or whether I can or should consider the GoFundMe page.

MR. WANG: I think we addressed that argument in the -- in our brief, and I don't really have anything to add beyond that. It's not part of the pleading. We don't incorporate it in the pleading. I think -- I don't know that's the kind of thing that can be taken judicial notice of. There are, you know, too many disputes about the -- you know, what led to the creation of that GoFundMe page.

You know, to the extent Your Honor wants to take -- I mean, we are ready to make -- we don't dispute the existence of it, but I'm not sure that --

THE COURT: Does it establish that this was a public controversy to which your clients purposefully or voluntarily inserted themselves?

MR. WANG: I don't think so, Your Honor, certainly not by itself, certainly not when viewing the facts in my clients' favor, which includes that -- you know, or argues that they were backed into this position, you know, by the sequence of events that unfolded after they first made contact with Mr. Wei in 2018.

But I mean, I think that just highlights why, you know, it would be way premature to make a ruling on the public -- limited purpose public figure issue at this stage. It's --

**Video Motions Hearing 7/18/25**

it's too heavily fact-bound and it depends a lot on the sequence of events and, of course, our sequence of events have to be accepted as truth at this stage.

THE COURT: But your -- I think that you made the argument even if they were limited purpose public figures you've satisfied the pleading requirements even in that context because you've alleged malice.

MR. WANG: Absolutely, Your Honor. Yes.

THE COURT: All right. You may continue.

MR. WANG: In terms of *res judicata*, the D.C. court's judgment was issued on July 2, 2004 -- 2024. The Tweet that we're suing Mr. Wei over was issued four days later. There is -- I mean, just as a matter of pure logic it cannot possibly be *res judicata*. You know, time is linear. And then the --

THE COURT: You're talking about the July 20, I think it's 2024, statement specifically?

MR. WANG: Correct, yes.

THE COURT: You're not referring to the earlier statements.

MR. WANG: So not -- at least, you know, as a matter of pure logic, the -- yes, the December 2023 statements could have been made prior to the D.C. court's judgment but claims -- and of course we tried and I'll address that shortly. But as to the July 6th, 2024 Tweets, I mean, there's just no -- there's no conceivable way that those could be barred by *res*

---

**Video Motions Hearing 7/18/25**

*judicata*.

A little -- the -- and part of the reason is that it is black letter defamation law that each statement gives rise to a separate cause of action. So what constitutes a transaction for the purpose of a defamation claim is a particular statement made at a particular place on a particular date.

If I make a statement today that's defamatory, you can sue me and you sue me for that tomorrow, and then a week later I make the same statement, that's a separate cause of action, that's a separate transaction from the perspective of defamation law, so --

THE COURT: Can I expand upon that hypothetical?

MR. WANG: Yes.

THE COURT: Would it be a different situation if you were speaking to the same person the following week, let's say this happened over text message, this might be the easiest way to sort of create a situation that we're all familiar with.

Text exchange started on a particular day and you've made some false defamatory statements in the course of that text message talking to a particular person, and this text exchange continues for a week, and then you make what may be construed as materially the same, substantively the same false and defamatory statements a week later to the same person. Would that -- if there was a final judgment on the first statement but not the second one, and then after you got final judgment

---

**Video Motions Hearing 7/18/25**

on the first statement you sued on the second one, would that be barred by *res judicata*?

MR. WANG: No, not by *res judicata*. There might be other doctrines that they haven't argued that would bar it, but certainly not *res judicata*.

THE COURT: Well, I would think that they would at least have a strong argument in that context that these two messages were part of the same series of transactions.

MR. WANG: Perhaps.

THE COURT: And basically it's the same conversation happening over a singular string of text messages.

MR. WANG: Absolutely, Your Honor. A series of transactions is only part of the *res judicata* analysis. It has to be the same cause of action, and given that in the defamation context a new cause of action arises each time a defamatory statement is made, it's not the same cause of action.

Now, to the -- depending on how and why the Court ruled that the first statement was not defamatory, for example, if the Court, depending on the reason, there might be other ways to prevent relitigation of the same issue but not *res judicata*.

THE COURT: Okay. But through that -- what I described, is what I described analogous to what we have in this case?

MR. WANG: Not quite, Your Honor, I don't think,

---

**Video Motions Hearing 7/18/25**

because certainly the Tweet, I mean, the audience is different, you know, in the D.C. action. I believe the 2019 statement was made to a small group of people in a D.C. apartment; in the December 2023 statement it was made to a different group of people in a restaurant; and then the 2024 statement was Tweeted to the public.

THE COURT: And these are separated by several years in addition to those --

MR. WANG: Yes, absolutely. Right, absolutely.

So as to the December 2023 statement, my clients did try to include that in the D.C. action but, as we explained in our brief, that helps us from a *res judicata* perspective, it doesn't hurt us, because -- well, I will just submit the argument is in the brief and I'll submit on that issue. The --

THE COURT: I don't quite remember it. Let me just guess at what the argument might be, is that the Court specifically barred you from asserting that claim.

MR. WANG: Correct.

THE COURT: And therefore decided it. This was the context in which you were asking to amend your pleading and you were denied that request such that that amendment never made its way into the case, so when the Court entered final judgment it couldn't have decided those statements because it wasn't part of the case. Is that it?

MR. WANG: Thank you, Your Honor, that is it. I

36

**Video Motions Hearing 7/18/25**

appreciate that.

THE COURT: All right.

MR. WANG: And then let me just look at my notes here. Just, Your Honor, the -- now, in Mr. Wei's reply, you know, he talks about comity and he cites to cases from this circuit, *Awah* and *Gannett*, but what those two cases are about is not some kind of federal doctrine of comity. Those two cases are about a federal -- it's about whether a federal district court may decline to exercise jurisdiction under a doctrine called the *Colorado River abstention*. And, you know, I would argue that that argument is waived for lack of sufficient presentation, but it also cannot possibly apply because the D.C. action is over. It's over, so there's no risk of interfering with an ongoing state court proceeding --

THE COURT: Right.

MR. WANG: -- which is what abstention doctrines are about. And, you know, to the extent their argument is, well, you should just, you know, respect a sister court's judgment in a state court, I suppose as a general matter, you know, I don't dispute that, but here there would be no disrespect to the D.C. Superior Court because the records are very different, right? On that record, they were -- at the time of the debriefing at issue, they were *pro se*, they didn't even argue against the statements being nonactual opinions. So the D.C. Superior Court Judge didn't even have argument before it on that issue

35

**Video Motions Hearing 7/18/25**

much less evidence. And a different record, you know, naturally leads to a different result and the record here is very different and a different outcome even on the issue of actionability, whether they're opinions is in no way disrespectful to a sister court.

I think that's all I have, Your Honor, unless you have questions for me.

THE COURT: I don't have any further questions. Let me turn back to Mr. Rowley.

Mr. Rowley, are you there? I was just going to give you any opportunity for any rebuttal.

MR. ROWLEY: Sorry, Your Honor, I was on mute.

THE COURT: Okay.

MR. ROWLEY: Your Honor, very, very brief rebuttal.

Your Honor, the plaintiffs have done here exactly what they accused the defendants of doing. They accused the defendants of making defamatory statements that have damaged their reputation. They have done exactly the same thing in their public media campaign intended to smear reputations, and perhaps, this is speculation on my part, but perhaps also influence an eventual jury pool.

Your Honor, in doing so, they have cast themselves as limited public purpose people, and I would submit, Your Honor, in this case, now, what -- I would submit that many of the allegations in the Second Amended Complaint are simply not

defamation and not defamatory for the reasons that we've said in our papers. They're either opinion or hyperbolic rhetoric.

But leaving that issue aside, Your Honor, I would submit to the Court that given the plaintiffs' behavior in this case they will have to prove that the defendants acted with actual malice under the *New York Times* standard. And I would submit that the Court has the ability under Rule 201 to take judicial notice of these facts. The plaintiffs do not contest that they made a series -- more than a series but multiple instances of Twitter statements.

For example, Your Honor, the plaintiff Liu's current Twitter statement, her heading says that she is writer, editor, translator, fighting a legal battle against rapist Wei plus support attorney Times Wang's representation by making contributions to Zelle.

So again, Your Honor, there's no controversy, there's no dispute about them making these multiple statements, and I think that at a minimum, Your Honor, they will have to prove actual malice in this case.

And, Judge, I think you're on mute.

THE COURT: Thank you.

I did want to give you an opportunity to ask -- or answer the question, it would be substantively similar to what I asked Mr. Barger earlier with respect to statements being subject to a reasonable inference or a reasonable construction to these

37

**Video Motions Hearing 7/18/25**

statements that are matters of fact, that are demonstratively either false or can be proven either false or true.

You've presented the argument that all of these statements are statements of opinion and I guess that's possible, but in assessing the sufficiency of the plaintiffs' pleading, I'm to draw reasonable inferences in their favor. And I mean, I'm not quite sure how statements, for example, that a person is an agent of the CCP or a person is or is not someone else's biological father or a person is lying about that fact or lying about a prior sexual encounter or lying about a sexual assault, they all strike me as matters that are subject to at least a reasonable interpretation, that it's a statement of fact, that -- not a statement of opinion but a statement of fact that could be proven false. Do you have any response to that?

MR. ROWLEY: Your Honor, some of those statements, no question, come pretty close to the line. I would submit, though, that calling someone a liar is merely an opinion. And calling someone a possible agent of the CCP, as Mr. Barger has said, you know, is that necessarily defamatory, there are several billion people in the world who would say that that is not defamatory, that may even be complimentary. I may disagree with that, I may have an opinion about that, but it is not *per se* defamatory and --

THE COURT: Doesn't this complaint situate us within an audience that is comprised Chinese dissidents such that

**Video Motions Hearing 7/18/25**

association with the CCP would tend to subject that person to scorn or contempt?

MR. ROWLEY: It may, Your Honor. It may, Your Honor. I think certainly we believe that, as Mr. Barger indicated, that even without being able to prove that the plaintiffs or plaintiff Liu is, in fact, an agent of the CCP, we know, for example, that she worked for a newspaper in Hong Kong that is owned by the CCP, and it may very well be that case, Your Honor, that that's a matter of hyperbole and unprovable one way or the other.

In any event, Your Honor, and I'm sorry for not answering your question directly and moving to something else, but just to go back to this limited public person argument, we can -- you know, we can argue about those things and there'll be a time and a place to argue those things if the Court disagrees with our position with respect to whether or not those statements are, in fact, defamatory at this stage of the proceeding.

What I think is not really disputable, Your Honor, is the fact that the plaintiffs have made a series of allegations about both defendants that are of similar -- of similar nature to the ones that they allege in this case. The Court has the ability, the authority to take judicial notice of those and to declare moving forward that this case at a minimum requires proof of actual malice by the plaintiffs against the defendants

---

**Video Motions Hearing 7/18/25**

39

irrespective of which particular defamatory statements remain in the case.

THE COURT: All right. Thank you, Mr. Rowley.

MR. ROWLEY: Thank you, Your Honor.

THE COURT: Now to Mr. Barger. I'll turn back to Mr. Barger.

MR. BARGER: Yes, Your Honor. Thank you.

Let me, as I sometimes do, I'll start sort of at the back of the argument and work our way forward a little bit.

I know one of the issues the Court just addressed and then Mr. Rowley mentioned and Mr. Wang addressed was actual malice. If the Court looks at Paragraph 99, that's the one where malice is alleged, and my argument assumes that these plaintiffs are limited public figures and I'll address that in a little bit more detail, but I do think that's really undisputable that they're limited public figures.

Defendants made -- 99, "Defendants made these statements," there's no particularity as to which exact statement they're alleging with a level of intentionality, recklessness, malice, and bad faith that warrants punitive damages, that's purely conclusory and it is not sufficient as a matter of black letter law to plead malice that is required for limited purpose figures.

With regard to limited purpose figures, I know Mr. Wang tried to limit the Court's consideration of that issue to

---

**Video Motions Hearing 7/18/25**

40

his pleading, but as Mr. Wang noted, he claims the records in the Superior Court case and this are very different, but those are public records. Those are subject to judicial notice. And we are going to go back to address the Court's question in a little more detail, but we will also look back at the record and provide the Court with additional information to show you just how extensive the record was in that case and all the issues that were considered and raised by Ms. Liu and her daughter. And specifically I'll go -- when I go back to the beginning of Mr. Wang's comments about the allegations in his Amended Complaint that the Court must assume are true, all of those are allegations that were made in the first case and they were issues that were known in the first case.

Mr. Wang claims that somehow the Court ought to factor into this that Ms. Liu and her daughter were *pro se* at the time the Court issued its opinion. Going back to they claim that the record are very different. We'll submit to the Court the pleadings that they submitted when they were *pro se*. I don't know if they had someone helping them or not. They were -- they were very good pleadings for someone who was allegedly *pro se*.

But, Your Honor, they've had at least three lawyers in the course of this litigation since 2019, and the last one that I recollect, Ms. Nguyen, Katerina, who was their lawyer during the discovery phase and the deposition phase, I forget the name

---

**Video Motions Hearing 7/18/25**

41

of her firm, but excellent firm, excellent representation, excellent brief writing.

So somehow the suggestion that they didn't get their day in court because they were *pro se* at a time is simply not accurate and the Court will need, we'd submit, to look at the record that we'll provide to you. The records are very different but they're very different in our favor, not in favor of Ms. Liu that somehow warrants some consideration that she gets a break here, that she gets a second bite at the apple.

Going back to the Court talked about an example of, you know, is it re-publication and is there -- is there -- in Mr. Wang's argument which there's a separate -- there's a separate -- there's a separate cause of action each time you make the statement that was the allegation. Well, the way they pled this case is they pled one count against Mr. Wei and added all of the allegations into one count.

THE COURT: Well, we see that all the time. That doesn't mean that the one count is a single cause of action. It just means for purposes of --

MR. ROWLEY: Understood.

THE COURT: -- organization and presentation, you know, it's a lot easier to do that than to list out 200, or in this case I guess they're alleging that there's about 1200 Tweets involved in the case, are they to put 1200 counts in their complaint?

44

Video Motions Hearing 7/18/25

rape, assume that Charlotte is his biological daughter, assume that they knew there was a DNA test. All of those are facts that were alleged the first time. All of those are facts -- we're talking about roughly in 2000 and then subsequently before the first litigation was actually filed. So he wants us to assume the accuracy of those but all of those are allegations that were vetted and litigated in the first case.

And let me just go to the side a little bit. On the DNA, the allegation of there being a DNA test, I know this is a little out of record, I've never seen any results. And Mr. Wang knows from making subpoena efforts that it doesn't exist, that he doesn't have evidence to prove this allegation. I don't think 23andMe exists anymore, putting aside whether that would ever be admissible and raised to the level of sufficient reliability to even be admissible. The plaintiff knows that they can make that allegation but they don't really have a basis to make that allegation that they can prove, that that's just simply they know better.

And then the last point, Your Honor, in terms of the *Carroll v. Trump*, as we pointed out in our reply, those cases are distinguishable for a number of reasons that we address in great detail in the brief. For example, the New York legislature passed a new statute that allowed the plaintiff there to bring a new cause of action I think based on the statute of limitations. And secondly, the first case had not

---

**Video Motions Hearing 7/18/25**

MR. ROWLEY: Well, not -- to be clear, not for Mr. Wang, right?

THE COURT: I understand. Yes.

MR. BARGER: No, I understand your point, Your Honor, but my recollection is re-publication in a defamation may give rise to some additional damages. You know, if I'm re-publishing to the same person over and over in the texting, there may be -- it may not give rise to additional damages but that's an issue for trial.

But the obvious response is, if I'm reTweeting the same thing and the same thing is not defamatory, it doesn't matter that I reTweeted it again. And we come back to the only things that are alleged against Mr. Wei in this complaint are Paragraphs 87, 90, and then 92, and -- or 86 as well. And in both 86 and 87, for the reasons I already said, there's no specificity as to who, what, when, where. They generally allege time of December 2023 and, again, they don't say to whom these statements were made, they don't say what the statements were. You have to basically give exact words.

And interestingly, they don't allege, especially if you look at Paragraph 90, they don't actually allege that Mr. Wei said she was an agent of the CCP or that they were agents of the CCP. You know, it talks about in Paragraph 90 they mobilize people to spread rumors. They don't say -- if we're going to be precise, which we have to be, there's not an

---

45

Video Motions Hearing 7/18/25

even been litigated and there was no issue of *res judicata* in that particular case. They are not -- they are not on the same footing.

I'm just looking at my notes, Your Honor. I think that's it. I'm sure I forgot something, but I don't want to belabor the Court's time, so thank you.

THE COURT: I do want to follow up with an argument that Mr. Wang made with respect to actual malice, and as it relates to your client the allegation is that your client's aware of the 23andMe results that confirm his biological parentage of Charlotte and thereafter continued to accuse the plaintiffs of lying about that, and on top of and in connection with also alleging them to be working on behalf of the CCP and presenting that lie, would that be enough to show actual malice?

MR. BARGER: Not in my opinion, Your Honor. Going back to working on behalf of the CCP, I think we've moved the bar a little bit in terms of they're no longer an agent. It's simply their actions, their actions further the goals of the CCP, which, for the reasons I said, I don't think that's even actionable aside from whether it's actual malice. And --

THE COURT: I'm not sure what do you mean by "working on behalf of," but I can understand --

MR. BARGER: Your Honor, the "on behalf of" is in Paragraph 86 which, again, lacks specificity. There's no -- if

---

43

Video Motions Hearing 7/18/25

allegation that Mr. Wei said they're fraudsters. For 92, it's would you want a liar for a daughter and throw in a fraudster mother, and we cited case law that shows that is basically opinion and for the reasons I already stated, the Court has already ruled on the substance of those as not being defamatory. And I just -- I think it would be -- it would just -- if *res judicata* means anything, I think it applies here in this lengthy litigation that was fully, fully vetted.

And if I can briefly go back to -- I know you raised the question, Judge, about whether GoFundMe -- or the GoFundMe allegation would be sufficient to put them in the public realm. I would submit it does, but it really doesn't matter because in light of Mr. Wang raising the record in the Superior Court and the fact that these are public documents capable of judicial notice, we'll supplement the record to show the Court it is indisputable, it will be indisputable that Ms. Liu started her campaign, as I recollect, before Ms. Huang started publicly Tweeting. Ms. Liu had made this a public issue before that.

Now, I say that only because Mr. Wang, though tries to limit it to his brief because of the public record -- or the prior litigation, I do think the Court can consider that.

And then let me go back just a couple of more points, Your Honor, to respond to Mr. Wang. At the beginning of his response, he said, you know, look at the Second Amended Complaint, you have to assume the accuracy of the allegation of

---

## Video Motions Hearing 7/18/25

you look at Paragraphs 90 -- really it's Paragraph 90 is the lengthy Tweet, right? So they have -- and so they're quoting exactly, which is what you need to do for defamation, there's no allegation that they're working on behalf -- on behalf of. It's slightly different. A lot of people specify were mobilized by the CCP. But I've hit that as best I can, Your Honor. I understand -- I understand the Court's point. And now, I apologize, I forgot. Oh --

THE COURT: It was about malice.

MR. BARGER: The DNA test.

THE COURT: Yes, right.

MR. BARGER: DNA test. The DNA, the 23andMe is not a paternity test. Again, I understand that -- what they want to argue, but putting aside whether it would even be admissible, putting aside whether you even have it, which they don't, neither one of us do, because that was litigated the first time around. It was, you know, discovery was engaged in the first time around on that issue. Nothing -- nothing was produced. So I don't understand how they can make the vague allegation that they do when they know it's not provable and it's not -- no one has anything.

But putting aside a DNA test, whether we have similar history, is not a paternity test. I don't -- to answer the Court's question, I don't think that allegation is enough to rise to the level of sufficiently pleading actual malice.

## Video Motions Hearing 7/18/25

THE COURT: All right. Well, thank you all. We've been going for about an hour and 15 minutes at this point. We'll take a brief recess before hopefully I'll be in the position to rule on the motions to dismiss and then if necessary move on to the Rule 35 motion.

We'll take a recess for ten -- well, let's just say, it's 11:17, we'll take a recess until 11:30.

MR. BARGER: Thank you, Judge.

MR. ROWLEY: Thank you, Your Honor.

(A recess was taken from 11:17 a.m. to 11:31 a.m.)

THE COURT: All right. We are back in session.

Let's see here. So I have two motions to dismiss are pending in this case, one from each of the two defendants, Huang and Wei.

Now, as to defendant Huang, she appears to be proceeding primarily on the argument, the arguments that are being presented here would require the Court to revisit and reconsider at least portions of its prior decision denying her previous motion to dismiss and the reasons stated for that decision in the Court's oral ruling at a hearing made last June.

I reject that argument. The Court previously ruled on that First Amended Complaint by finding that it stated a plausible claim for defamation under either Maryland or D.C. law, and that ruling will stand. The only issues this Court

## Video Motions Hearing 7/18/25

will consider anew in ruling upon the now-pending motions to dismiss are whether or not the newly added allegations support plaintiffs' defamation claim against Huang and whether in the context of all the other allegations they state a plausible defamation claim against Wei, who is the newly added defendant.

So first, I'll note that I'm going to decline to reach the question of whether the plaintiffs are public figures or limited public figures at this stage. First, defendant Huang's public figure arguments may be set aside under Rule 12(g)(2) because these arguments were not raised in the prior motion to dismiss. But obviously Mr. Wei had an opportunity to present the same arguments so I will address them on the merits.

I would decline to reach the issue of whether they are public figures at this stage from the face of the Second Amended Complaint drawing all reasonable inferences in the plaintiffs' favor. They don't -- the pleading does not establish that they are public figures. There's a two-part inquiry that's used to determine "whether a defamation plaintiff is a limited purpose public figure, first was there a particular public controversy that gave rise to the defamation; second, whether the nature and extent of the plaintiff's participation in that particular controversy was sufficient to justify public figure status."

That's the *Foretich* case from the Fourth Circuit, F-o-r-e-t-i-c-h. The citation is 37 F.3d 1541. It's a Fourth

## Video Motions Hearing 7/18/25

Circuit case from 1994.

Now, that case stated that courts have proceeded upon the initial presumption that the defamation plaintiff is a private individual subject to the defendant's burden of proving that the plaintiff is a public figure to whom *New York Times v. Sullivan* and the standard announced in that case applies.

The Fourth Circuit has identified five requirements for a defendant to meet in order to establish that a plaintiff is a limited purpose public figure, and I think that two stand prominently to this Court. Those two are that the plaintiff voluntarily assumed a role of special prominence in a public controversy; and that the plaintiff sought to influence the resolution or outcome of the controversy.

Now, in this context the public controversy means it's -- well, I'll first say what it doesn't mean. It's not simply a matter of interest to the public. It must be a real dispute, the outcome of which affects the general public or some segment of the general public in an appreciable way.

On the face of the Second Amended Complaint, accepting all well-pleaded facts as true, the Court cannot conclude that the plaintiffs are public figures. Specifically, the Second Amended Complaint does not establish that the factual disputes at issue in the allegedly defamatory statements constitutes a public controversy that has foreseeable and substantial ramifications for persons beyond its immediate participants, or

**Video Motions Hearing 7/18/25**

affects the general public or some segment of the general public in an appreciable way. And the Second Amended Complaint does not establish that either plaintiff in this case "voluntarily assumed the role of special prominence in any public controversy."

To the contrary, the plaintiffs allege in Paragraph 60 of the Second Amended Complaint that they are not public figures and earlier in the complaint in another paragraph cited to the Court, they stated that they never intended essentially for the matter to become a public matter.

The defendants dispute that claim while citing to defendant Huang's answer and counterclaim. It would be improper for the Court to accept and consider the defendant's pleading in deciding the sufficiency of the plaintiffs' pleading. In any case, even if the Court were to consider defendant Huang's pleading, the Court cannot resolve factual disputes in the parties' pleadings at the motion to dismiss phase.

A second question was raised as to whether or not I can consider plaintiff Liu's GoFundMe page. I don't think it would be proper to do so because that webpage is not incorporated into the pleading nor integral to their claims, but even if I could and I did consider that webpage, I don't find that it moves the needle as to whether the plaintiffs are public figures. That webpage does not establish definitively that the

---

**Video Motions Hearing 7/18/25**

plaintiffs inserted themselves into a matter that has foreseeable and substantial ramification for persons beyond its immediate participants or that it affects the general public in any way. So that issue is being set aside.

The parties I expect will brief and gather evidence to support the proposition one way or the other in connection with summary judgment briefing, but it's not a matter for the Court to consider at the motion to dismiss phase.

So turning to the substance of the claims, to state a claim for defamation under D.C. law, a plaintiff must allege and prove four elements:

That the defendant has made a false and defamatory statement concerning the plaintiff; that the defendant published the statement without privilege to a third party; that the defendant had -- the defendant was at fault in publishing the statement that amounted to at least negligence; and either the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm.

The elements are substantially similar under Maryland law. Under Maryland law, a plaintiff must establish that the defendant made a defamatory statement to a third person, that the statement was false, and that the defendant was legally at fault for making the statement. Again, the negligence standard applies there and that the plaintiff thereby suffered harm.

---

**Video Motions Hearing 7/18/25**

A defamatory statement is one which tends to expose a person to public scorn, hatred, contempt, or ridicule thereby discouraging others in the community from having a good opinion of or associating with that person. That's under a Maryland case and I believe the D.C. law is consistent with that proposition.

Here, the plaintiffs allege that from 2019 to the date that the Second Amended Complaint was filed that the defendant Huang carried out a campaign of defamation, libel, and harassment against the plaintiffs principally on Twitter, including statements that the plaintiffs' allegations concerning Mr. Wei having sexually assaulted Heather, the plaintiff Heather, and fathered the plaintiff Charlotte that those statements were false and that the plaintiffs are liars and that the plaintiffs are agents of the Chinese Communist Party and the plaintiffs are engaged in a fraud in connection with their allegations against Mr. Wei, that plaintiff Heather was sexually promiscuous or a sex worker and that the plaintiffs belonged to a criminal gang or conspiracy and that the statements that the plaintiff Heather wrote -- or statements that the plaintiff Heather wrote love letters to Mr. Wei.

The Court has already ruled that at least some of those statements, perhaps most of the statements identified in the Second Amended Complaint and in the First Amended Complaint are

---

**Video Motions Hearing 7/18/25**

capable of defamatory meaning, that is drawing all reasonable inferences in the plaintiffs' favor that could be interpreted by their audience as being statements of fact that could be true or false and capable of exposing the plaintiffs to public scorn, hatred, contempt, or ridicule thereby discouraging others from associating with them or having a good opinion of them.

In the Second Amended Complaint, the plaintiffs add allegations that the defendant Huang continued making statements of the same nature after the First Amended Complaint was filed, including on May 8th, 2024, when she stated on Twitter that the plaintiff Heather wrote a love letter to Wei and then on May 10th, 2024, defendant Huang Tweeted that a court declared that Zhang Meng was Charlotte's biological father and then on August 22nd, 2024 defendant Huang reTweeted an accusation that the plaintiffs were liars and CCP agents.

The plaintiffs contend that all of these statements are false. Again, the Court is not revisiting its prior ruling. The question of whether or not the new allegations support or somehow undermine the plaintiffs' claims against Huang is the question that I'm faced with now, and I find that the new allegations do not undermine the claims against Huang.

To the contrary, the statements tend to support or bolster claims against Huang, and for all the reasons the Court detailed in its oral ruling on June 5th, 2024, I find that the

## Video Motions Hearing 7/18/25

defamation claim will survive the motion to dismiss as it relates to the defendant Huang.

Specifically, for example, the statement that the plaintiffs are CCP agents plausibly tends to expose the plaintiffs to scorn within the community of Chinese dissidents that the plaintiff has claimed that they and the defendants are all a part of. For purpose of deciding the defendants' motions to dismiss, I reject the defendants' arguments that such plaintiffs are -- such statements are benign. The love letter statement and the statement about Charlotte's biological parentage tend to undermine the plaintiffs' credibility in the same community. Drawing reasonable inferences in the plaintiffs' favor and accepting their allegations as true, such statements are capable of defamatory meaning and are plausibly defamatory.

Now, moving on to defendant Wei's motion to dismiss, the Second Amended Complaint does add Wei as a defendant and alleges that he made certain defamatory statements. Defendant Wei has moved to dismiss the defamatory -- or the defamation claim. That motion will be denied for the reasons stated in the order granting leave to amend, which is at ECF Number 61, specifically Pages 5 through 8.

Now, contained within those pages of my prior order, I address substantially the same argument being presented here as to *res judicata*. And the law as it relates to *res judicata* is

---

## Video Motions Hearing 7/18/25

detailed in that order. Specifically, to establish *res judicata*, three elements must be present:

First, the judgment on the merits. There was a judgment on the merits in a prior suit resolving claims by the same parties or their privities, and the subsequent suit was based on the same cause of action. The determination of whether the two suits arise out of the same cause of action turns on whether the suits and the claims asserted therein arise out of the same transaction or series of transactions or same core operative facts.

The defendant Wei identifies similarities in the defamatory statements alleged in a prior suit and those alleged in the present suit in the Second Amended Complaint. However, the defamation alleged in the prior suit occurred in September of 2019 when Wei was alleged to have made statements to other persons at an apartment in Washington D.C.

Mr. Wei obtained summary judgment on that defamation claim asserted in the D.C. case based on findings by the D.C. Superior Court that the plaintiffs failed to produce sufficient evidence that the statements were actionable. In contrast, in this case in the Second Amended Complaint, the defamatory statements attributed to Mr. Wei occurred in December of 2023 and July of 2024. The alleged December 2023 defamation occurred at a dinner to a different group of individuals than those alleged in the prior suit. And, of course, the July 2024

---

## Video Motions Hearing 7/18/25

alleged defamation occurred on Twitter.

It does not even appear that the contents of the statements alleged in this case in the Second Amended Complaint are the same as those alleged in the prior suit. In addition to that, given the four-year distance in time between the defamation alleged in the prior suit and that alleged here, the Court cannot find that these claims arise out of the same transaction or series of transactions or same core operative facts, so I do not find that *res judicata* applies.

Now as to the statements themselves and whether or not they are defamatory, meaning the statements are attributed to Mr. Wei in the Second Amended Complaint, they include statements that he made to several members of the Chinese dissident community that the plaintiff Heather's allegations of rape were false and that she was a liar for making those allegations and that she was acting on behalf of the CCP in doing so, and then it's alleged that at various times in 2023 that defendant Wei told a member of the Chinese dissident community that plaintiff Heather, her claims that Wei was Charlotte's biological father were false and that she was acting on behalf of the CCP.

The defendants argue that denial of rape allegations is not defamatory. He challenges the paternity based on statute of limitations and the fact that they were disposed of with prior litigation and that the CCP statements constitute

---

## Video Motions Hearing 7/18/25

rhetorical hyperbole and are essentially statements of opinion or imaginative expression.

But the question is not whether or not as to -- as it relates to denial of rape allegations. The question is not whether or not denial of rape allegations can be defamatory. The question is whether calling the plaintiff Heather a liar and accusing her of working on behalf of the CCP and other similar statements are defamatory.

And as it relates to accusations that she's a liar, they are made in connection with specific statements that she made with respect to having prior sexual encounters with Mr. Wei and having her daughter fathered by Mr. Wei. Drawing reasonable inferences in the plaintiffs' favor, I find that such statements are capable of truth or falsity and that they are plausibly defamatory, at least within the context of the community of Chinese dissidents as alleged in the Second Amended Complaint and noted by me earlier.

All right. Now, other elements of the plaintiffs' defamation claims are clearly satisfied by the Second Amended Complaint. Many of the statements were made on Twitter, an online platform accessible to many. Others were made directly to third parties. The plaintiffs have alleged sufficient facts that the defendants published damaging falsehoods without exercising reasonable care to confirm that the allegations were credible -- let's see -- and the defendants were legally at

60

Video Motions Hearing 7/18/25

fault in making those statements so it would satisfy elements under both D.C. and Maryland law.

And in addition -- one moment -- at least some of the statements are defamatory *per se*.  But in addition to that, the plaintiffs have alleged that they have lost reputation and standing in their communities, they have suffered extreme anxiety, distress, and humiliation, it degraded their sense of dignity, they suffered financial harm, including lost employment opportunities, as well as out-of-pocket expenses, seeking medical care, and specifically that plaintiff Heather alleges that it's considerably more difficult for her to make a living as a journalist and a writer with her reputation for honesty having been attacked.  So there are actual harms that are alleged in this case such that even if the statements alleged are not defamatory *per se*, she can still assert a plausible cause of action for defamation based on those statements.

So for all of those reasons the Court finds that the plaintiffs have adequately pleaded claims of defamation against both defendants.

Now, turning to defendant Huang's motion to dismiss the false light and intentional infliction of emotional distress claims, I find that those arguments are subject to being set aside under Rule 12(g)(2) of the Federal Rules of Civil Procedure.  As a general matter, a party that makes a motion

59

Video Motions Hearing 7/18/25

under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.  And defendant Huang did not substantively attack the false light and IIED claims in her prior Rule 12(b)(6) motion, so the Court may set aside the arguments that are made in the new motion attacking those counts.

But alternatively, the arguments may be rejected on the merits.  The plaintiffs have adequately pleaded a cause of action for false light against defendant Huang.  The tort of false light, invasion of privacy occurs when one gives publicity to a matter concerning another that places the other before the public in a false light if the false light in which the other was placed would be highly offensive to a reasonable person and the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.  An allegation of false light must meet the same legal standards as an allegation of defamation.  So I find that the false light claim here would survive a motion to dismiss and it may be sustained for the same reasons as the defamation claim against defendant Huang.

Now, turning to the IIED claim, to state a claim for IIED, a plaintiff must allege extreme and outrageous conduct on part of the defendant which intentionally or recklessly causes a

Video Motions Hearing 7/18/25

plaintiff to suffer severe emotional distress, and that's D.C. law.

To bring such a claim in Maryland, the plaintiff must allege that the defendant's conduct was intentional or reckless and that the conduct was extreme and outrageous and that there was a causal connection between the wrongful conduct and the emotional distress and the emotional distress was severe.

Liability has been found where the conduct has been so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community.  Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.

Now, here the plaintiffs allege that defendant Huang engaged in a prolonged social media campaign against them spanning years and involving well over a thousand public posts on social media.  Further, the posts that are identified and described in the Second Amended Complaint directly attack the plaintiffs, their character, and their reputation.

The defendant Huang posted these statements repeatedly and to a large number of social media followers.  The activity alleged in the Second Amended Complaint is plausibly intentional, meeting the first element of the IIED claim.

Second, the plaintiffs allege that defendant Huang purposefully, carelessly, dishonestly, and benevolently

61

Video Motions Hearing 7/18/25

launched a protracted public campaign to discredit the plaintiffs as dishonest and obscene con artists and alleged that the plaintiffs are conspiring with the CCP to discredit them as pro-democracy activists.  The plaintiffs further allege that the statements were deliberately insulting and calculated to inflict emotional distress.  The plaintiffs allege that the misconduct goes well beyond the bounds of decency.

Accepting the facts in the Second Amended Complaint as true and drawing all reasonable inferences in the plaintiffs' favor, the Court finds that given the very large volume of public posts that defendant Huang made or allegedly made in this case that that conduct is plausibly extreme and outrageous.

Next, the plaintiffs allege that this conduct by defendant Huang caused the plaintiffs emotional distress that was severe and there was a causal connection between the wrongful conduct and that emotional distress satisfying the remaining elements of the IIED claim.

So for those reasons but also on Rule 12(g)(2) grounds, the motion to dismiss as to the IIED claim will be denied, and I think that handles all issues presented in the two motions to dismiss.  Both of those motions will be denied.

Before moving onto the other motion, I wanted to check with counsel whether there's any need for clarification, and I'll begin with you, Mr. Barger.

62

Video Motions Hearing 7/18/25

MR. BARGER:  Sorry, Your Honor.  Nothing comes to mind.

THE COURT:  Okay.  Thank you.  Mr. Rowley?

MR. BARGER:  I'm assuming we'll see a written order along the lines of what you read so I can -- I can digest it but, otherwise, I can order a transcript but nothing comes to mind.

THE COURT:  Right.  So it would not be an order as detailed as I just gave.  I'll rely upon my oral ruling for which you can request a transcript, of course.

MR. BARGER:  Okay.  That's fine.  Thank you, Judge.

THE COURT:  Mr. Rowley?

MR. ROWLEY:  Nothing further at this time, Judge. Thank you.

THE COURT:  Mr. Wang?

MR. WANG:  None.  Thank you, Your Honor.

THE COURT:  Okay.  Now, Mr. Wang, you filed a motion to compel a Rule 35 physical examination.  I'll hear you out if you have oral argument on that motion.

MR. WANG:  Thank you, Your Honor.  I think the briefs, I don't really have that much to add beyond the briefs, except that I think several of Mr. Barger's arguments in this hearing bolster why the motion should be granted.  He severely attacked the fact that we haven't been able to get the 23andMe DNA tests but that -- that's true, we haven't been able to.  We

63

Video Motions Hearing 7/18/25

have subpoenaed the former Clinton Administration official for those who did the test, who told our clients he did the test and said that the results showed biological fatherhood and we haven't been able to get them.  We've subpoenaed the 23andMe and they haven't produced it either.

And, you know, given that, as Your Honor recognizes, biological fatherhood is a pretty important issue in this case, all that underscores why granting this motion for Mr. Wei to take a DNA test is exceedingly appropriate.

I will add that, you know, Mr. Barger seems to have argued that we are -- that because -- that we are somehow acting in bad faith by alleging that a DNA test was performed given via 23andMe and that given that we haven't been able to obtain it, that, Your Honor, the -- as we said in our Rule 35 motion and in the complaint and it's also in the record at Docket 84-4, we're not just making this up.

You know, a former senior Government official, a high-ranking official in the Clinton Administration, intelligence officer e-mailed, told our client, asked our client, asked the plaintiffs to provide a DNA sample and then -- and they did and then he's very close with Mr. Wei, told our clients that he got a sample from Mr. Wei, did a test and that it showed a positive result.

I don't know, you know, how he can accuse of -- accuse us of bad faith in alleging that the test was, in fact, performed

64

Video Motions Hearing 7/18/25

and that it did show the results that Mr. Suettinger said it showed.

THE COURT:  Thank you, Mr. Wang.  I think it will be Mr. Angle; is that correct?

MR. ANGLE:  Yes, Your Honor.  Thank you very much.

Your Honor, I guess I'll start, you know, and I don't want to regurgitate a lot of what Mr. Barger said because some of the arguments do overlap, and I understand and appreciate the Court's explanation of its ruling on our motion to dismiss.

However, one of the reasons why this motion should be denied is because it should be barred by the collateral estoppel doctrine.  And even though I understand Your Honor's ruling as to *res judicata* of the cause of action, collateral estoppel, which is a subset of *res judicata*, still applies to this request under Rule 35 because we have exact same parties, it is the exact same issue.

So I understand while Your Honor's reasoning is that there's a new defamation cause of action, this request is identical.  It is under Rule 35.  It's a request for a paternity test in connection with this defamation claim.  And even though as a subsequent cause of action as you've just determined really the substance and the context and the content of what we're talking about is still substantially identical. It's accusing the plaintiffs of being liars, you know, working on behalf of the CCP.

65

Video Motions Hearing 7/18/25

This is exactly what the Court in D.C. had ruled on, and the D.C. Rule 35 is identical to the federal court rule.  The D.C. courts look to and rely on federal law when interpreting its rules.  And so -- and then the last element of collateral estoppel is, you know, did the parties have a full and fair opportunity to litigate the issue.

Your Honor, this issue has been extensively litigated.  It was, you know, and as Mr. Barger mentioned, the plaintiffs, I believe Mr. Wang is their fourth attorney, third or fourth attorney in this case, and so while all plaintiffs were still represented by counsel at the time in the D.C. case, this issue was briefed in the federal court at the District Court level and then we were remanded before we got a ruling from the federal court, but then it was briefed again in the Superior Court level, the Court ordered supplemental briefing on the issue which we provided.  After the Court ruled in our favor, the plaintiffs filed a motion for reconsideration which was briefed again.

And what the D.C. court found was that, and what this court, what you should find, Your Honor, is that Rule 35 has never been expanded this broadly to award a paternity test in a defamation case.  And I'll go through some of the examples that the plaintiffs have pointed to, but it's really that simple. This is not a sexual -- even though obviously there's allegations of sexual assault, which, you know, came for the

Video Motions Hearing 7/18/25

**66**

first time when we were more than a year into the first lawsuit, this is not a case where liability is based on sexual assault. It just isn't. It's a defamation case, and Rule 35 has never been used to order a paternity test under those types of circumstances.

You know, the plaintiffs point to the *Carroll versus Trump* case as basically one of the leading cases that they are showing as look how similar this is this. This court should not look to *Carroll-Trump* or use that case as any sort of -- you know, give it any deference whatsoever. One, it was not a paternity issue in *Carroll versus Trump*; number two, there was no Rule 35 request for any sort of physical examination in *Carroll versus Trump*, so already it's completely irrelevant to your analysis of this motion.

THE COURT: Can I just stop you, Mr. Angle? I think the reason that they're citing that case is because it stands for the proposition that ultimately plaintiffs in this case are going to have to prove that there was a sexual encounter and that Charlotte is the biological child of Mr. Wei. That's I think -- I think that's what I understand the proposition that they're citing the case for, and if they have to prove that, if they have a burden of proving that and this examination or the results of this examination will either tend to support them in their factual proposition or discredit them, then that makes it discoverable.

**67**

Video Motions Hearing 7/18/25

MR. ANGLE: Thank you, Your Honor. And I understand -- I understand their argument. It's wrong for a few reasons. The major difference in *Carroll versus Trump* and as Mr. Barger explained was that while the defamation case was going on, the New York Legislature passed a law specifically -- and many people speculated it was specifically to go after Trump, but they passed a law to reopen basically a lookback window and start a fresh one-year statute of limitations period so that past sexual abuse victims could sue for liability with a cause of action based on sexual abuse. So they passed this law, they gave it a brand-new window, said -- well, I'm not saying so, but which enabled Ms. Carroll to then file a second claim which had a cause of action for liability for sexual assault.

So it was through that mechanism that in that case they were able to litigate sexual assaults, which, once they had the -- so that's how they were able to get around that. We don't have that here. We don't have a lookback statute or any sort of cause of action that is actually based on alleged sexual assault. This is defamation and, you know, this paternity test is actually -- it really -- this speaks to whether or not this is truly in controversy under Rule 35 and obviously it's a controversial issue and it's in, you know, controversy in the court of public opinion, but it really is not truly in controversy within the meaning of Rule 35 in this

**68**

Video Motions Hearing 7/18/25

case because if it's -- regardless of the outcome of any paternity test, it doesn't actually prove or disprove any of the alleged defamation that is being accused -- you know, Mr. Wei's being accused of.

It will, obviously, if Mr. Wei is determined to be the father, all it will prove is that him and Ms. Liu had sex in 2000. It certainly does not prove or disprove that a rape -- and if he's not the father, it doesn't disprove that they had sex, it doesn't prove or disprove certainly if there's a rape that occurred, it does not prove one iota either direction, other than obviously if he's the father it would mean they had sex, which, of course, we will allege, you know, present evidence that it was fully consensual if it occurred. But it's not dispositive of the claim, certainly, and it really doesn't even -- and one other important piece, Your Honor, is defamation --

THE COURT: Before you move on to the other point, does it have to be dispositive?

MR. ANGLE: No, Your Honor, it does not have to be dispositive. Although, in all of the cases where a Rule 35 has been used to get a paternity test, it was a critical issue to the claim at hand. I mean, it was issues where you have a prisoner who alleged that he impregnated a prison guard. Well, if he's the father and that proves that any sex occurred, consensual or otherwise, that's a Class E felony on the part of

**69**

Video Motions Hearing 7/18/25

the prison guard. Similar situation, you had a patient in a mental hospital where if any sex occurs between the worker at the hospital and the patient, that was a violation of the sexual assault statute in Wisconsin.

Two other cases where it was a doctor who worked for an insemination practice and the doctor was accused of basically fraudulently using his own sperm to impregnate the woman, well, if he's the father, that was, you know, key evidence to -- that established medical malpractice.

This is so far removed from that. Now, none of those cases are defamation cases. And here, if he's determined based on this Rule 35 exam in, you know, 2025 or '26 or whenever that occurs, that speaks nothing to Mr. Wei's intent and his knowledge at the time he made these statements. They can make their argument about this Rule -- you know, 23andMe test, you know, I know Mr. Wang has talked about how they're having a hard time getting it. They haven't filed a motion to compel under any of their subpoenas. They haven't actually done anything other than serve the subpoena and say, well, we didn't get anything. But if that's what they're basing their defamation claim on, then that should be their evidence. Go to 23andMe, go find those test results, you know, go track those down. But Mr. Wei has not put his own mental and physical condition into the center of this case and --

THE COURT: He's denying that the statements are

**Video Motions Hearing 7/18/25**

false and among the statements that he's alleged to have made is that one or both of the plaintiffs were lying in asserting that he was the biological father of the other plaintiff.

MR. ANGLE: Your Honor, I think it's way different to just -- anytime someone gets alleged to be the father or rape if you deny it then that opens you up to a Rule 35, I don't think that's the law.

You know, typically, Rule 35 -- and I'm not saying it's limited to this, but most typically Rule 35 exists when a plaintiff puts their own mental condition or physical condition into the case and then the defendant can examine them. That's way different. Again, I'm not saying it's limited to that, but that's most typically what Rule 35 is there for. It can't be the law that if you get accused of rape or fathering a child you can deny that and then that opens you up to defamation and being forced into a paternity test.

And, you know, one of the -- you know, Mr. Wei is an individual who was in prison in China for nearly 20 years as a political prisoner. He's extremely sensitive about his biologic -- and he really doesn't want to have to be forced to submit to a DNA test that he doesn't believe he should have to do. I mean, and that's really we are compelling him to turn over his biological information that he didn't put himself out there, he didn't approach Ms. Liu and allege that he is the father of this child and that he's got, you know, Ms. Liu's --

**Video Motions Hearing 7/18/25**

Charlotte's his daughter. It's the other way around. And basically the plaintiffs are trying to get another bite at the apple, which we've already fully litigated and had a ruling from the D.C. court on and use this as a backdoor mechanism to litigate this issue really for the court of public opinion more than anything else. And that's not what Rule 35 is designed to be, and the Court should not expand Rule 35 in this context.

There's not been a single case that I can find where a paternity test had been ordered in a defamation case under Rule 35, and I don't believe this court should be the first to do so.

THE COURT: Do you agree that part of their burden will be to prove, if they're proceeding on with the defamation claim based upon statements by Mr. Wei, the plaintiffs are lying as to Charlotte's biological parentage, they're going to have to prove that that statement was false, correct?

MR. ANGLE: Well, given how -- somewhat vague the alleged defamation is, I don't know if that's the case, but even still -- the other issue that we haven't talked about yet is that Charlotte has a legal father, Meng Zhang. Ms. Liu was married at the time of conception, at the time of Charlotte's birth. He's listed on her birth certificate as the father. And that is never -- under Maryland -- under either D.C. or Maryland law that issue has been foreclosed, but at least in Maryland the typical process is you have to then rebut the

**Video Motions Hearing 7/18/25**

legally presumed father before you can challenge paternity for someone else. That has never been done. There's zero evidence that Meng Zhang is not Charlotte's father and as a matter of law he is her father.

So the statement at the time the alleged defamations were made is correct based on everything we really know. And as a matter of law, Meng Zhang is the father. It was determined they were married. So a paternity test that we have years later does nothing to speak to whether or not Mr. Wei, you know, knew or should have known otherwise when he's making these alleged statements.

And so again, this is an attempt to relitigate and sort of backdoor a way to litigate the sexual assault that, you know, allegation that has come up now without a real mechanism for doing so, and this Court really -- it should -- if it doesn't find that you're precluded from ruling on this under the doctrine of collateral estoppel, I think you should still rule on the same lines and find that it would be too broad of a stretch to interpret Rule 35 in order to force Mr. Wei to submit to a paternity test in this context.

THE COURT: I do want to back up to your collateral estoppel argument. I'm not sure that I saw -- I'm not sure that I saw an argument from you that the decision with respect to the request for a Rule 35 physical examination in the prior litigation was critical or necessary to the ultimate final

**Video Motions Hearing 7/18/25**

judgment rendered in that case.

MR. ANGLE: Thank you, Your Honor. I did skip over that point.

So the *In re: Microsoft* case that the plaintiffs cite I think is particularly helpful in understanding. So there the Fourth Circuit talks about the difference between offensive and defensive collateral estoppel. And basically an offensive collateral estoppel, that's a plaintiff trying to say that a defendant is precluded from, you know, relitigating or challenging some prior determined issue of fact or law.

In the Microsoft example, the Government, the Department of Justice had investigated Microsoft for antitrust violations and made certain factual findings, and then some private plaintiffs essentially tried to adopt those factual findings to establish liability from the outset against Microsoft. And the Court emphasized how under offensive collateral estoppel, which that would be, you know, the prior ruling has to be critical and necessary to the underlying judgment.

And so it didn't actually find that the use of collateral estoppel was wrong in that case but it remanded to make sure the court was looking at it under that lens and it emphasized how you really want to -- the Court has broad discretion, but the Court is encouraged not to exercise that discretion to preclude a defendant where it's really going to prejudice the defendant from rechallenging issues in a case. But here that's

76

Video Motions Hearing 7/18/25

not a concern.

And another piece on that is that on the one hand, you know, defendant -- or plaintiffs are arguing that this paternity test is critical, it's central, this is what the whole case is about, but then on the other hand they say, oh, that was just a discovery ruling, it was an incidental ruling, it doesn't really matter. I don't see how both of those things can be true. And they point to cases where courts talked about discovery rulings. I think this is a little bit different than a discovery ruling where a court finds, hey, you know, in response to a document request, I don't think these documents are relevant, they don't have to be produced. This is way different because we're not just limited to Rule 26 relevance and if something's discoverable. There's a heightened standard under Rule 35 and that's the, you know, is this truly in controversy for the causes of action at issue and is there good cause.

And so this isn't just an ancillary discovery ruling that should be tossed aside. This was a heavily briefed, you know, hotly litigated issue that the party -- actually, we briefed this issue for years and got a ruling from the courts on that I think should be respected.

And so collateral estoppel does apply. Again, if they're arguing this is so critical, how is it not -- how is that ruling on this issue not central or necessary to their cause of

discovery rulings at all. I've certainly not found any case where the Court denied a discovery motion in a subsequent litigation based on the denial of a discovery motion in an earlier litigation under the doctrine of collateral estoppel.

THE COURT: All right. Thank you. I'm sorry, was there anything else you wanted to argue?

MR. WANG: Just, you know, I mean, the -- in terms of *Carroll versus Trump* and the sexual assault tort liability statute, there was also a defamation claim in that case, of course, and just there, whether a sexual assault had, in fact, occurred was obviously highly probative of the truth or falsity of the defamation claim. And, you know, whether there's tort liability that comes with that sexual assault or not is neither here nor there for the purpose of the in-controversy analysis.

And then one thing that I wanted to address, Mr. Angle said that, you know, the DNA test would not go to intent at the time that he made the statements but, you know, there's no support for the proposition that the DNA test has to go to every single element of a claim. I mean, that's just not the standard. And it definitely does go heavily to truth or falsity. So I don't have anything other than that, Your Honor.

THE COURT: Okay. Thank you.

MR. ANGLE: I know it's not my motion -- I know it's not my motion but can I just respond to one point briefly?

THE COURT: All right.

75

Video Motions Hearing 7/18/25

actions in the first case. I struggle to see how those two things can be consistent.

THE COURT: All right. Let me turn back to Mr. Wang.

MR. WANG: Thank you, Your Honor. So the reason is that it's not -- it wasn't essential to the D.C. Superior Court's judgment is because the D.C. Superior Court actually did not even analyze, like, the interaction between sexual assault, DNA, you know, and how that affected its judgment on the defamation claim. I mean, it just -- you know, it just wasn't even relevant to its judgment on the defamation claim.

Now, if it had ruled that I find that no sexual assault occurred and therefore Wei's statements are true and therefore I am rendering judgment in his favor, then I can see Mr. Angle's argument being a bit stronger, but that's just not what happened.

Instead, it just said you don't get a DNA test because I think, you know, you should try to get a DNA test in the D.C. Family Court or just I don't want to order a DNA test here. That -- I don't think any court has ever -- that that kind of discovery ruling qualifies for collateral estoppel. I'm also not aware of any authority that says the requirement that the prior ruling be essential only applies in offensive collateral estoppel. So I don't think that distinction makes a difference here. In fact, I think this is simply a discovery ruling, and some courts think that collateral estoppel doesn't apply to

77

Video Motions Hearing 7/18/25

MR. ANGLE: Just in response to Mr. Wang's statement that essentially the D.C. Superior Court didn't, you know, give reasoned analysis of its ruling, I wholeheartedly disagree with that. The Court, you know, this issue was briefed extensively. The Court ordered supplemental briefing on it. And there is in multiple orders, there's two orders on this issue where the Court explains its reasoning in denying this prior motion under Rule 35 and particularly saying that it would be too broad of an expansion of Rule 35, so I just wanted to make that point, but that's it.

THE COURT: Well, while I have you, I might as well ask you for a followup based on one thing that Mr. Wang just said with respect to the offensive versus defensive collateral estoppel.

I didn't understand the distinction -- I didn't understand the distinction between those two to bear on whether or not the issue had to be critical or essential to the final judgment. You seem to be making that argument and I don't think that the -- I just pulled up a copy of the *In re: Microsoft case*, I don't think it says that. I mean, there is a discussion about offensive collateral estoppel in it, but that discussion is largely subsequent to the Court laying out the main elements of collateral estoppel which include the element that I'm talking about irrespective of whether it's defensive or offensive.

MR. ANGLE: Yes, Your Honor, and I apologize if I

**Video Motions Hearing 7/18/25** — 78

came across as suggesting that, you know, you don't ever have to look at if it's, you know, necessary if it's defensive. That wasn't what I was trying to suggest.

But because the Court has discretion is really the point, the Court has broad discretion when applying collateral estoppel, and the Court, when it's offensive collateral estoppel, is really guided to use that discretion, you know, very lightly and is sort of encouraged -- or I should say discouraged from applying collateral estoppel more so than offensive because the concern is that you're going to prejudice the defendant. But defensiveness collateral estoppel like we're asserting doesn't have -- there's not that emphasis to, you know, protect against a defendant not being able to challenge facts or prior legal issues to preclude themselves from liability.

So I'm not arguing that the necessity requirement doesn't exist, but the Court has much broader discretion to apply it here where it's defensive collateral estoppel. And again, here, if their argument on this is so critical that they have to -- they need this in order to prove their case, I don't see how it can not be a necessity if it speaks to the central part of the claim as they're now arguing.

So, Your Honor, you have the discretion to apply it in this case and I think you should do so.

THE COURT: Okay. Thank you, Mr. Angle.

**Video Motions Hearing 7/18/25** — 79

MR. ANGLE: Thank you.

THE COURT: I'll address that collateral estoppel issue first.

The defendants are asserting that because the plaintiffs' motion for DNA testing filed in previous litigation was denied by the Court in that case, that is the D.C. Superior Court I believe, or one of the courts in D.C., the doctrine of collateral estoppel precludes DNA testing or compelling DNA testing of defendant Wei in this case.

A party invoking collateral estoppel must establish that "the issue sought to be precluded is identical to one previously litigated; second, the issue was actually determined in a prior proceeding; third, the issue's determination was a critical and necessary part of the decision in the prior proceeding; and fourth, the prior judgment is final and valid; and fifth, the party against whom a collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the previous case."

There's several authorities to cite for that proposition. I could cite the Fourth Circuit decision in *Collins v. Pond Creek Mining Company* from 2006, but there's several other cases that establish those elements.

In invoking this doctrine, "the burden is on the party asserting collateral estoppel to establish its predicates," and the Fourth Circuit case *Allen v. Zurich Insurance Company* from

**Video Motions Hearing 7/18/25** — 80

1982.

The defendant Wei has failed to show that the issue here whether to compel DNA testing was a critical and necessary part of the decision in the prior proceeding. A ruling on the discovery motion from a previous case does not constitute in itself a final judgment, and the D.C. court's ruling on the DNA issue I cannot find based on the record in front of me was essential to its final judgment. So for those reasons, the plaintiffs' motion to compel a physical examination in this case is not barred by the principle of collateral estoppel.

So the rule that applies to this motion is Rule 35 of the Federal Rules of Civil Procedure. That rule provides that the Court may order a party whose mental or physical condition is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner. Such an order must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it.

Like all discovery rules, Rule 35 is to be accorded broad and liberal treatment in order to effectuate their purpose that civil trials in federal courts no longer need be carried on in the dark. That's a Supreme Court case that stands for that proposition, *Hickman v. Taylor* 1947.

But given the potentially serious invasion of privacy called for by a mental or physical examination, Rule 35

**Video Motions Hearing 7/18/25** — 81

includes express limitations on compelling an individual to submit to such examinations for discovery purposes. Rule 35 requires, first, a showing that the party's mental or physical condition is indeed in controversy; and second, a showing by the movant of good cause for ordering independent examination.

Now, first, the Court finds that the issue of defendant Wei's paternity of Charlotte whether Wei and Heather had sexual encounters or a sexual encounter and whether Wei sexually assaulted plaintiff Heather are all matters in controversy, and these matters are collectively a central issue to this defamation action. Social media posts from the defendants reference be it explicitly or by inference the nature and circumstances of the defendant Wei and the plaintiff Heather's relationship and previous interaction and Charlotte's paternity. Very many of the challenged statements made about the plaintiffs are about their character, actions, and conduct are framed by the assertion that the plaintiffs are lying that the defendant Wei is not Charlotte's biological father, that the defendant Wei did not sexually assault the plaintiff Heather, and indeed the defendant Wei did not even know the plaintiff Heather.

Plaintiffs will ultimately have to prove that the challenged statements are false, which the defendants clearly dispute. Defendant casts the challenged statements as mere opinions, rhetoric, and hyperbole, but I have found that the

84

**Video Motions Hearing 7/18/25**

MR. ANGLE: No, sir. Thank you.

MR. WANG: Actually, Your Honor --

THE COURT: Yes, go ahead.

MR. WANG: -- I do think discovery's currently stayed, so we'll -- maybe you can direct us to meet and confer about the discovery schedule as well.

THE COURT: Was it stayed just pending the resolution of this motion or was there some other reason why?

MR. WANG: Pending the resolution of the motion but the deadlines were dates certain, so we'll need to revisit the schedule.

THE COURT: Okay. So I guess what I would do there is when you meet and confer with defense about the examination, you could also try to come to an agreement about the schedule of the case that remains.

MR. WANG: Yes. Absolutely, Your Honor.

THE COURT: And you can report to the Court and I'll take that proposal under consideration.

MR. WANG: Thank you, Your Honor.

THE COURT: All right. Mr. Rowley, was there anything additional you wanted to raise with me?

MR. ROWLEY: No, Your Honor. Thank you.

THE COURT: And I'll check back again with Mr. Barger. Was there anything additional that we should address?

---

83

**Video Motions Hearing 7/18/25**

a minimally invasive DNA test, be it a cheek swab or a blood draw or a hair sample in order to obtain physical and forensic evidence for which they have a great need in discovery. That is to say that the DNA testing that they seek is proportional to their needs under the rules of discovery.

The plaintiffs have adequately shown good cause for a Rule 35 physical examination so their motion shall be granted. What remains to be determined is the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it under Rule 35(a)(2)(B).

The parties will be directed to meet and confer about that issue and to file a proposed order for the Court's consideration within a week's time.

And I do want to confirm with Mr. Wang that there was no -- there's no appointment has been made to date for this examination; is that correct?

MR. WANG: That's correct, Your Honor.

THE COURT: Okay. So the parties can meet and confer about that and get back to me with a proposed order.

Is there anything else to address from your perspective, Mr. Wang, as it relates to either that motion or any other motions?

MR. WANG: Not at this time, Your Honor. Thank you.

THE COURT: All right. Mr. Angle, was there anything that I've missed or any requests for clarification?

---

**Video Motions Hearing 7/18/25**

statements are plausibly capable of truth or falsity and the plaintiffs will ultimately have to prove that and also prove that the statements were false.

The question of Charlotte's paternity in this case is highly probative of several issues in this case, goes directly to Wei's claims that he never met, assaulted, or impregnated one of the plaintiffs and fathered the other. The plaintiffs' position on this controversy is not just a bare assertion. The plaintiffs have presented a 2018 e-mail from I think Mr. Robert Suettinger that substantiate their position on this controversy; i.e., that DNA testing will establish that Wei has a genetic link to the plaintiff Charlotte and may be her biological father.

Second, the Court finds that there is good cause for physical examination of the defendant Wei in regard to the paternity issue. The 2018 e-mail that I just noted references and describes DNA evidence but does not provide it. The plaintiffs have already exhausted other methods by which they could obtained admissible evidence in support of their position on the controversy having subpoenaed the person who sent that e-mail and also subpoenaed 23andMe for this information and done so to no avail.

But even if they had been successful there would remain real questions and doubts as to the admissibility of the information that they had subpoenaed. Here the plaintiffs seek

---

85

**Video Motions Hearing 7/18/25**

MR. BARGER: No, sir. Thank you very much for your time.

THE COURT: Okay. I want to thank you all for your time and making yourselves available for this virtual hearing. I'll enter a written order making reference to the oral rulings I made today as soon as I'm able. Thank you all. Enjoy your weekend.

MR. ANGLE: Thank you.

(The proceedings concluded at 12:26 p.m.)

CERTIFICATE OF OFFICIAL REPORTER

I, Amanda L. Longmore, Registered Professional Reporter and Federal Certified Realtime Reporter, in and for the United States District Court for the District of Maryland, do hereby certify, pursuant to 28 U.S.C. § 753, that the foregoing is a true and correct transcript of the stenographically-reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated this 30th day of July 2025
-S-

_____

AMANDA L. LONGMORE, RPR, CRR, FCRR
FEDERAL OFFICIAL COURT REPORTER

---

# Exhibit B

Case 8:23-cv-02134-MJM Document 163    Filed 08/26/24    Page 64 of 273

**HUNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND**

|  |  |
|---|---|
| HUAIZHAO LIU and CHARLOTTE ZHANG,<br><br>Plaintiffs,<br><br>v.<br><br>CIPING HUANG<br><br>and<br><br>JINGSHENG WEI,<br>13423 Queens Lane, Fort Washington, MD,<br>Prince George's County<br><br>Defendants. | No. 23-cv-2134-MJM<br><br>Judge Matthew J. Maddox<br><br>**SECOND AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Huaizhao "Heather" Liu[1] and Charlotte Zhang, by and through counsel at Farra & Wang PLLC, based on their personal knowledge as to themselves and their own acts, and on information and belief as to all other matters, allege as follows:

**NATURE OF THE ACTION**

1.  Plaintiffs seek monetary and injunctive relief against Defendants for, among other things, defaming and libeling them, and for intentionally inflicting on them enormous emotional distress, by asserting, among other things, that they are attempting to conduct a conspiracy to blackmail and/or destroy Defendant Jingsheng Wei ("Wei") at the behest of the Chinese Communist Party, and in coordination with a fraudulent gang, by seeking to establish the parentage of Plaintiff Zhang. Defendant Ciping Huang ("Huang") has conducted a public and

---

[1] In Chinese, family names come before given ones. Throughout this complaint, however, Plaintiffs list given names first, except when translating direct quotes, or when referencing institutional names like the Wei Jingsheng Foundation.

1

ongoing campaign impugning the character and honesty of both Plaintiffs Liu and Zhang on social media, specifically on the social media platform Twitter.

## PARTIES

### A.    Plaintiffs

2.    Huaizhao "Heather" Liu is an individual residing in the District of Columbia. She is a journalist, writer, and translator by profession.

3.    Charlotte Zhang is an individual, who, when this action was filed, resided in the District of Columbia. She is currently a student in university.

### B.    Defendants

#### 1.    Ciping Huang

4.    Ciping Huang is an individual residing in Maryland and is the Executive Director of the Wei Jingsheng Foundation. Ciping Huang is the titled owner of 13423 Queens Lane, Fort Washington, MD with a mailing address of 709 58th Avenue, Fairmont Heights, MD.

#### 2.    Wei Jingsheng

5.    Wei Jingsheng is an individual residing in Maryland. His address is 13423 Queens Lane, Fort Washington, MD.

## JURISDICTION AND VENUE

6.    This Court has subject matter jurisdiction over this Complaint pursuant to 28 U.S.C. § 1332 as there is complete diversity between the parties and the Complaint seeks damages exceeding $75,000.

7.    Venue is proper because Defendants are residents of this district. It is also proper because a substantial portion of the events giving rise to this lawsuit occurred in this district.

**FACTS**

**A.    In March 2000, Wei raped Plaintiff Liu.**

8.    In March 2000, Plaintiff Liu was employed in Los Angeles, CA as a reporter for the Sing Tao Daily News.

9.    As part of her assignment, Plaintiff Liu was dispatched to meet with and interview Defendant Wei. Defendant Wei was at the time, and remains, a well-known and prominent Chinese dissident. Plaintiff Liu completed her interview and accepted Defendant Wei's invitation to attend a welcome banquet being held in his honor by the local Chinese community leaders. Due to her impending deadline, Plaintiff Liu, after engaging in numerous conversations with other attendees, left the event and returned to her office in Alhambra.

10.    In the hour before her deadline to file her story containing the interview of Defendant Wei, Plaintiff Liu received an unexpected phone call from Defendant Wei. Defendant Wei asked Plaintiff Liu to bring a copy of the article. As the hotel was on the route of her commute home, Plaintiff Liu obliged Defendant Wei's request to deliver a copy of the article to his hotel.

11.    Plaintiff Liu drove to the hotel where she interviewed Defendant Wei to deliver the hard copy of the article. When she arrived, Defendant Wei invited her into his hotel room. Without warning or consent, Defendant Wei forcefully engaged in sexual intercourse with Plaintiff Liu.

12.    Plaintiff Liu, in shock and embarrassed by the incident, managed to extricate herself from the circumstances and returned home. At the time, Plaintiff Liu was married to Meng "Max" Zhang ("M. Zhang"). Within days of the incident, Plaintiff Liu informed M. Zhang that she had been accosted by Defendant Wei in Defendant Wei's hotel room.

3

13.     Plaintiff Liu soon found herself to be pregnant. Plaintiff Liu gave birth to her daughter, Charlotte, in December of 2000. The pregnancy that resulted from the encounter with Defendant Wei was a central cause of the end of Plaintiff Liu and M. Zhang's marriage, which was finalized several years later.

14.     As Plaintiff Liu was raising her daughter alone, she left the United States and relocated to Hong Kong. While living in Hong Kong, Plaintiff Liu disclosed to a colleague, Yunchao Wen ("Wen") that her daughter was fathered by Defendant Wei. In the 2012-2013 timeframe, Wen contacted Defendant Wei and informed him of his parentage of Charlotte. According to Wen, Defendant Wei reacted to the news that he parented a child with indifference.

15.     Plaintiff Liu was devastated by Defendant Wei's reaction to learning he fathered a child with Plaintiff Liu. This compounded the trauma of being an assault survivor and Plaintiff Liu was diagnosed with clinical depression and engaged psychiatric treatment in Hong Kong. In 2018, accounts of Defendant Wei's parentage of Charlotte began to circulate online in social media. Plaintiff Liu did not authorize or consent to the social media exposure regarding Charlotte's parentage.

16.     Soon thereafter Plaintiff Liu received requests from an associate of Defendant Wei, a Robert Suettinger, asking Plaintiff Liu to provide DNA samples for the purposes of establishing paternity. This request was represented as a request directly from, and on behalf of, Defendant Wei. A commercial DNA kit was mailed directly to Plaintiff Liu with instructions as to how to collect the required samples and return the same to Suettinger. Plaintiff Liu was later informed in an email from Suettinger that Defendant Wei's paternity of Plaintiff Zhang was affirmatively established.

4

17.    After paternity was established, communications continued with Defendant Wei through his associates, wherein Defendant Wei made numerous commitments and promises that formed the basis of another lawsuit in the District of Columbia Superior Court, in Civil Action No. 2019-CA-005052-B. In July 2024, while Plaintiffs were proceeding *pro se*, that court granted summary judgment in Defendant Wei's favor.

**B.    Beginning in 2019, Defendant Huang launches a campaign of defamation, libel, and harassment against Plaintiffs, principally on Twitter.**

18.    Shortly after the aforementioned civil action was filed, Defendant Huang began an unrelenting social media campaign against Plaintiffs.

19.    Defendant Huang is a close confidant of Defendant Wei and serves as the Executive Director of the Wei Jingsheng Foundation. She maintains an active and public presence on the social media platform Twitter and posts using the handle "@huang_ciping."[2]

20.    On September 13, 2019, Defendant Huang posted several tweets in which she asserted that Plaintiff Liu was attempting to "blackmail" Defendant Wei. In another tweet on the same date, Defendant Huang accused Plaintiff Liu of attempting to "destroy Lao Wei's[3] reputation" and further accusing Plaintiff Liu of seeking to undermine Defendant Wei's democracy movement. Defendant Huang went on to insinuate, via assertions posed in the form of a question, that Plaintiff Liu had a "malicious motive." Also on September 13, 2019, Defendant Huang posted a tweet which advances to the notion that the CCP, the ruling authority in China, is in possession of Defendant Wei's DNA and, accordingly, is able to make clones of Defendant Wei.[4] The only available interpretation, within the context of Defendant Huang's

---

[2] The vast majority of the posts regarding Plaintiffs on Defendant's Twitter account are in her native language, Mandarin Chinese, and both the native language post and an accompanying translation are provided.

[3] "Lao Wei" literally means "Old Wei," and is a term of endearment and respect.

[4] Wei was held as a political prisoner of the Chinese government for many years.

5

expansive postings on the topic of Plaintiffs Liu and Zhang, is that Defendant Huang is asserting the unfounded and false notion that Plaintiffs are acting in concert with the CCP against Defendant Wei. *See* Exhibit A.

21.     These statements by Defendant Huang are false as Plaintiffs are not blackmailing Defendant Wei in any manner. Further, Plaintiff Liu is a fellow supporter of the Chinese democracy movement and, at the time she met Defendant Wei in March 2000, Plaintiff Liu considered herself a great admirer of his work and efforts on behalf of Chinese democracy.

22.     On subsequent occasions, in various posts, Defendant Huang persisted in pressing the false narrative that Plaintiffs are working in some capacity as operatives of the CCP against Defendant Wei and his pro-democracy efforts. *See* Exhibits B & D.

23.     Again, Defendant Huang's statements, assertions, and implications are false as Plaintiffs are not now, and never have been, agents or operatives of the CCP. Other than seeking redress in the court system, Plaintiffs have not contacted any organizations, institutions, or government officials regarding Defendant Wei and the issue of their daughter's paternity.

24.     Defendant Huang, beginning in 2019 and continuing to the present time, repeatedly posted tweets in which she accused Plaintiff Liu of conducting a "team operation" against Defendant Wei "using high technology and even fraud." *See* Exhibit C.

25.     These statements by Defendant Huang are false as Plaintiff Liu is not conducting an operation, as a team or otherwise, against Defendant Wei. While Plaintiff Liu has availed herself of the court system to seek certain redress and remedies, she is not engaged with vague technologies nor is she committing a fraud.

26.     In other posts on Twitter, on July 15, 2020, and on March 28, 2021, and as part of the larger ongoing campaign against Plaintiffs, Defendant Huang referred directly to Plaintiff Liu

6

as a "slutty girl." Defendant Huang also attacked Plaintiffs together, such as on May 2, 2021, when Defendant Huang referred to Plaintiffs as "shameless bitches." *See* Exhibit D.

27.     Since 2019 and continuing to the present time, Defendant Huang has conducted an ongoing dialogue with numerous other Twitter users regarding the paternity and obligations of Defendant Wei to Plaintiff Liu's daughter.

28.     On July 12, 2020, Defendant Huang, in response to another Twitter user, again impugned the veracity of Plaintiff Liu's daughter Charlotte and characterized the use of the legal system to seek redress of her cause as "shameless and extortion!" *See* Exhibit D.

29.     Plaintiff Zhang categorically denies she is engaged in any sort of illegal or immoral behaviors such as extortion.

30.     Throughout her voluminous online conversations and commentary regarding Plaintiffs, Defendant Huang has also consistently used the term *pengci* (碰瓷) to describe Plaintiffs' conduct. *Pengci* translates to "touching porcelain," and is a Chinese idiom referring to a scam whereby merchants place expensive, fragile items where they can easily be knocked over, allowing the merchant to collect monies for the damaged item. The term has come to represent fraudulent activity for purposes of ill-gotten gains. Defendant Huang has repeatedly referred to Plaintiffs explicitly and repeatedly as engaging in *pengci*, or the as "the porcelain scam mother-daughter duo/gang," in a clear cultural assertion of fraud.

31.     On July 15, 2020 in a post on Twitter, again discussing Plaintiff Liu and the paternity of Plaintiff Zhang, Defendant Huang referred to Plaintiff Liu as "a prostitute." Plaintiff Liu is a journalist, writer, and translator by trade. She has never solicited sex for money and categorically denies she is a sex worker. *See* Exhibit D.

7

32.     Defendant Huang has steadily published voluminous tweets into 2024, referencing Plaintiffs Liu and Zhang, continually accusing them of fraud, of acting as agents of the CCP, of conspiring with the CCP to damage Defendant Wei, seriously impugning their character and reputation as well as their mental and emotional well-being.

33.     In May 2021, in a post highlighting a disturbing video, involving a child being coaxed into confrontation with soldiers in the recent escalations of the Israeli-Palestinian conflict, Defendant Huang compared Plaintiffs to perpetrators of violence against children in a war theater. *See* Exhibit E.

34.     Defendant Huang, in addition to the specific aforementioned statements, has, since at least September 2019, conducted an aggressive disinformation campaign against Plaintiff Liu. Defendant Huang has repeatedly insinuated that Plaintiff Liu and her ex-husband concocted a conspiracy theory to defraud Defendant Wei; that Plaintiff Liu is an agent of the CCP and is acting on its behalf to undermine Defendant Wei's democracy movement. Furthermore, Defendant Huang has posted to her Twitter account quotations that purport to be excerpts of love letters from Plaintiff Liu to Defendant Wei, letters that Plaintiff Liu never wrote. Moreover, Defendant Huang has manipulated and misrepresented certain actual statements of Plaintiff Liu, taken from communications and court hearings to which Defendant Huang was not a party, and used said communications, devoid of proper context, in a manner intended to reflect poorly upon Plaintiffs Liu and Zhang.

35.     Plaintiffs have incurred substantial mental and emotional anguish and reputational harm at the hands, or, more appropriately, at the fingertips of Defendant Huang due to her relentless social media crusade against Plaintiffs.

8

**C.**   **Defendant Huang's defamatory and libelous statements about Plaintiffs can be organized into seven broad categories.**

36.   Defendant Huang's defamatory statements ("Statements") can be grouped as follows.

**1.**   **Statements that Plaintiffs are liars in relation to their allegations against Wei ("Liar Statements").**

37.   Liar Statements are statements along the lines that Plaintiffs made their allegations against Defendant Wei knowing such allegations to be false. As of this writing, Defendant Huang has published hundreds of statements accusing Plaintiffs of lying in connection with their allegations against Defendant Wei. As one recent example, on July 23, 2023, Defendant Huang published a tweet asserting that Plaintiffs were a "mother-daughter duo running around nakedly telling lies" about Defendant Wei.

38.   The Liar Statements are themselves false because Plaintiffs' allegations against Defendant Wei are true.

**2.**   **Statements that Plaintiffs are agents of the CCP ("CCP Agent Statements").**

39.   CCP Agent Statements are statements along the lines that Plaintiffs made their allegations on behalf of the CCP, or that Plaintiffs are conspiring with the CCP, or that Plaintiffs are otherwise acting in concert with the CCP. As of this writing, Defendant Huang has published several dozen statements, if not more, implying a link between Plaintiffs and the CCP in connection with their allegations against Defendant Wei. As one recent example, on July 9, 2023, Defendant Huang published a tweet rhetorically asking, "who knows how many people on [Plaintiff Liu's] team were sent by the CCP?"

40.   The CCP Agent Statements are false because Plaintiffs are staunch opponents of the CCP, and are not acting in concert with the CCP.

9

**3.    Statements that Plaintiffs received a payment from Wei for a paternity test that Plaintiffs then reneged on ("Payment/Reneged Paternity Test Statements").**

41.    Payment/Reneged Paternity Test Statements are statements along the lines that Plaintiffs accepted a $5,000 payment from Defendant Wei for the purposes of performing a paternity test, which Plaintiffs reneged on. As of this writing, Defendant Huang has published several dozen tweets accusing Plaintiffs of so doing. As one recent example, on July 22, 2023, Defendant Huang published a tweet in which she asserted that Plaintiff Liu "refused to perform a paternity test even after taking $5,000" from Defendant Wei.

42.    The Payment/Reneged Paternity Test Statements are false because Plaintiffs never received any money from Defendant Wei for the purposes of performing a paternity test, or for any other purpose.

43.    They are also false because Plaintiffs *did* submit DNA for a paternity test, as discussed above in paragraphs 15-16, and have never reneged on submitting to a paternity test.

44.    They are also false because, in his answer to a complaint in a different action, Defendant Wei admitted "that he has not paid anything to" Plaintiffs.

45.    They are also false because, at a recent deposition in that action, Defendant Wei was unable to produce evidence that Defendant Wei gave or sent any money to Plaintiff Liu.

**4.    Statements that Plaintiffs are fraudsters ("Fraudster Statements").**

46.    Fraudster Statements are statements along the lines that Plaintiffs are engaged in a fraud in connection with their allegations against Defendant Wei, and include statements referring to Plaintiffs as engaging in *pengci*, as discussed above. As of this writing, Defendant Huang has published several hundred tweets using this term in connection with Plaintiffs. As one recent example, on July 7, 2023, Defendant Huang published a tweet in which she referred to Plaintiffs as *pengci munü*, which translates into "the porcelain scamming mother-daughter duo."

10

47.     The Fraudster Statements are false because Plaintiffs are not engaged in a fraud in connection with their allegations against Defendant Wei or otherwise.

**5.      Statements that Plaintiff Liu is a slut ("Slut Statements").**

48.     Slut Statements are statements along the lines that Plaintiff Liu is a slut, is sexually promiscuous, or is a sex worker. They include statements published by Defendant Huang on Twitter referring to Plaintiff Liu as a *langdangnü*, which translates into "slut" or "loose woman," stating that Plaintiff Liu is a woman who liked to "shake her ass" who should just "open a brothel," and comparing Plaintiff Liu with various women in various sexually suggestive ways.

49.     The Slut Statements are false because Plaintiff Liu is not sexually promiscuous and is not a sex worker.

**6.      Statements that Plaintiffs are members of a criminal conspiracy against Wei ("Criminal Gang/Conspiracy Statements").**

50.     Criminal Gang/Conspiracy Statements are statements along the lines that Plaintiffs belong to a criminal gang or conspiracy in connection with their allegations against Defendant Wei. As of this writing, Defendant Huang has published several dozen tweets, if not more, so stating or implying. As one recent example, on July 22, 2023, Defendant Huang published a tweet in which she implied that Plaintiff Liu and her sympathizers were members of a "criminal gang with ulterior motives."

51.     The Criminal Gang Statements are false because Plaintiffs do not belong to a criminal gang or conspiracy, in connection with their allegations against Defendant Wei or otherwise.

### 7. Statements that Plaintiff Liu wrote love letters to Wei ("Love Letter Statements").

52. Love Letter Statements are statements along the lines that Plaintiff Liu wrote love letters to Defendant Wei. As of this writing, Defendant Huang has published more than a dozen tweets so stating. As one recent example, on June 18, 2023, Defendant Huang published a tweet in which she claimed to quote from "a love letter that Liu Huaizhao wrote to Wei."

53. The Love Letter statements are false because Plaintiff Liu never wrote a love letter to Defendant Wei. In fact, since he sexually assaulted her 2000, other than a single oral communication, Plaintiff Liu has not communicated directly with Defendant Wei at all, in writing or otherwise, further rendering the Love Letter Statements false.

### D. The Statements were defamatory *per se*.

54. All the Statements tended to, in and of themselves, and without reference to facts outside the Statements, expose Plaintiffs to public hatred, contempt, and ridicule among the intended audience. As such, all the Statements were defamatory *per se*, and no proof of damages, injury, or harm is required.

### E. The Statements caused Plaintiffs reputational, emotional, and financial harm.

55. In all events, the Statements *did* cause damage, injury, and harm to Plaintiffs.

56. Being described as agents of a foreign totalitarian government, and as sexually promiscuous liars, fraudsters, and cheats, caused Plaintiffs to lose reputation and standing in their community.

57. It also caused them extreme anxiety, distress, humiliation, anguish, and degraded their sense of dignity.

12

58.     It also caused them financial harm, including lost employment opportunities, as well as out-of-pocket expenses in dealing with and responding to the Statements, including seeking mental health care.

59.     For Plaintiff Liu especially, it is considerably more difficult to make a living as a journalist and writer when her reputation for honesty is attacked in the way that Defendant Huang has attacked it.

**F.      Defendant published the Statements with reckless disregard of the truth, if not knowledge of falsity, and with the intent to harm Plaintiffs.**

60.     Further, although Plaintiffs are not public figures, and thus need not show actual malice, Defendant Huang acted with actual malice, in that Defendant Huang published the Statements with reckless disregard for their truth, if not knowledge of falsity. For example, Defendant Huang knew or at least strongly suspected that the results of the paternity test established that Defendant Wei was, in fact, Plaintiff Zhang's biological father. Despite that, she published the Statements.

61.     Indeed, since her campaign began, Defendant Huang has published ***over 1,200 derogatory tweets, retweets, and quote tweets relating to Plaintiffs***. Such an enormous volume of tweets, constituting nearly 10% of Defendant Huang's entire Twitter output, speaks to Defendant Huang's intentionality, recklessness, malice, and bad faith.

**G.      Defendant Huang has only deepened her liability since the initial complaint.**

62.     The initial complaint was filed on June 8, 2021. Since then, Defendant Huang has deepened her liability, by publishing more than 1,000 tweets, retweets, or quote tweets relating to Plaintiffs, many if not most of which are actionably defamatory.

13

63.     For example, just a few days after the initial complaint was filed, Defendant Huang published a tweet containing, among other things, actionable Payment/Reneged Paternity Test Statements, as well as CCP Agent Statements, as follows:

@realproofread 谢谢忠告！最近较忙，未能及时回应，请原谅。
刘怀昭碰瓷母女之所言所行根本就不是认亲，否则她们拿了那 5000 美金就该来做亲子鉴定确认，为什么不做，连通知都没有？
从目前其言行看，其主要目的就是来爆料，以便打击和摧毁魏京生及魏京生基金会？这对她们有什么好处？为什么要这样做？

@realproofread Thank you for the advice! I have been quite busy recently and have not been able to respond in time, please forgive me.

What the *pengci* [fraudster] mother-daughter duo of Liu Huaizhao [and Plaintiff Zhang] are doing has nothing to do with establishing a family connection; otherwise, they should have taken that 5,000 US dollars to do a paternity test to confirm it. Why didn't they do [the test], without even notifying [Wei]?

From their current words and deeds, their main purpose seems to be to make explosive allegations so as to attack and destroy Wei Jingsheng and the Wei Jingsheng Foundation? How do they benefit from this? Why would they do this?

64.     As another example, on July 17, 2021, Defendant Huang published a tweet containing, among other things, actionable Fraudster Statements and Love Letter Statements, as follows:

@Rabbitlilit 刘怀昭一边给不记得她的老魏写情书,声称有过一夜情甚至描述有关细节;一边到公众地带裸奔,大喊被强奸好骗捐.到底是已经五十多岁的法律事务所顾问刘怀昭不懂强奸,靠曾金燕的启蒙才意识到"被强奸",还是她当时就告诉丈夫张猛,张喜欢绿帽,不让报案?希望张猛澄清.也希望张猛解释一下是否做过亲子鉴定,啥结果?

@Rabbitlili On one hand, Liu Huaizhao writes love letters to Old Wei, who doesn't remember her, claiming they had a one-night stand and even describing the related details; on the other hand, she publicly exposes herself and loudly claims she was raped so as to cheat people into making donations. Is it that Liu Huaizhao, a legal affairs consultant in her fifties, didn't understand [what constitutes] rape, and it was only through Zeng Jinyan's[5] enlightenment that [Liu] realized she was "raped"; or

---

[5] Zeng is a well-known feminist Chinese writer.

14

did she tell her husband Zhang Meng at the time, [but that] Zhang liked to be cuckolded [and so] didn't let her report [the rape]? [I] hope Zhang Meng can clarify. Also, [I] hope Zhang Meng explains whether a paternity test has been done and what were the results?

65.     As another example, on April 3, 2022, Defendant Huang published a tweet containing, among other things, actionable Liar Statements, Fraudster Statements, Payment/Reneged Paternity Test Statements, and Criminal Gang/Conspiracy Statements, as follows:

> @rickywan123 @sylvial13544257 @WEI_JINGSHENG 谢谢您为老魏辩护.刘怀招集团碰瓷诽谤案,老魏听从他律师建议不谈.但这案子很清楚.法庭记录有.刘怀昭声称与老魏一夜情生女,一直单身,孩子没爹.而老魏不记得见过她.但给了她5000美元来美做亲子鉴定.她们没做反告他.后发现她从头撒谎,不仅结婚多年且孩子有父亲张猛.于是她改称强奸.
> 什么人会支持这团伙?

> Thank you for defending Old Wei. In the defamation case involving Liu Huaizhao's *penci* [fraudster] group, Old Wei has chosen to follow his lawyer's advice and not to talk about it. But the case is very clear. There are court records. Liu Huaizhao claimed to have had a one-night stand with Old Wei and to have had a daughter [as a result]. She claimed that she was a single parent and that the child did not have a father. Meanwhile, Old Wei does not remember ever meeting her. Nevertheless, he gave her $5,000 to come to the United States for a paternity test. Not only did [Plaintiffs] renege, they sued him. Later, it was revealed that [Plaintiff Liu] had been lying from the outset. Not only had she been married for many years, but the child had a father named Zhang Meng. So she changed the claim to rape.
> Who would support this criminal gang?

66.     As another example, on July 22, 2023, Defendant Huang published a tweet containing, among other things, actionable Payment/Reneged Paternity Test Statements and CCP Agent Statements, as follows:

> @NewCenturyBaopu 这也是我们好奇的.夏业良极力劝老魏认"亲生女儿".老魏一再告诉他自己的态度.不仅仅老魏不记得其人其事,而且老魏给了5000美元路费来做亲子鉴定,她们不来做.夏业良应该了解此过程,却还是口口声声称之为老魏的"亲生女儿"...

15

我们曾以为夏业良反共,与他一起共事.但刘怀昭事件成了我们进一步了解的试金石...

@NewCenturyBaopu This is also what we are curious about. Xia Yeliang strongly persuaded Wei to recognize [Plaintiff Zhang] as his "biological daughter." Old Wei repeatedly explained his perspective that, not only does Old Wei not remember the person and the incident, but that Old Wei also gave 5,000 US dollars [to Plaintiffs] for travel expenses to do a paternity test, and yet they did not come to do it. Xia Yeliang should know about these events, yet he still insists on calling [Plaintiff Zhang] Old Wei's "biological daughter"...

We once thought that Xia Yeliang was anti-Communist and collaborated with him. But the Liu Huaizhao incident has become a touchstone for us to understand more [about Xia]...

67.　As another example, on July 23, 2023, Defendant Huang published a tweet containing, among other things, actionable Liar Statements:

所以赌城婆婆@xiaoweirose 说了真话,就被刘怀昭黑了.我记得她说如她是当事人,会尽力避免把自己儿子拉扯进来.我非常欣赏她这句话,觉得这才是个有责任,有担当的母亲.而不像有的母女一起裸奔撒谎,被天下人耻笑...
这也正是了解刘怀昭的旁人告诫老魏的:有其母必有其女.谁见过一姑娘说没见过的男人要强奸她? https://t.co/1Y3Rrfeyqb

So @xiaoweirose said something true and was blocked by Liu Huaizhao. I remember what she said was that, if she were at the center of the controversy, she would do everything in her power to avoid dragging her child into it. I greatly appreciate that sentiment, as that's what a responsible mother would do—unlike some mother-daughters running around nakedly telling lies, bringing ridicule on themselves by everyone. This is also what people around Liu Huaizhao warned Wei about; like mother like daughter. Who ever heard of a girl saying that a man they don't know wanted to rape them?

68.　The foregoing is just a small sample of the actionable misconduct that Defendant Huang has engaged in since the initial complaint. It demonstrates that Defendant Huang has continued to unrelentingly publish the Statements, despite having been sued over them, and further illustrates Defendant Huang's intentionality, recklessness, malice, and bad faith.

16

**H.      Defendant Huang's campaign against Plaintiffs has included multiple violations of court orders, as well as unauthorized dissemination of Plaintiffs' private information.**

69.      Separate and apart from Defendant Huang's making of defamatory statements about Plaintiffs, Defendant Huang also invaded their privacy by publishing false statements, representations, and imputations about them that cast them in a false and offensive light. Worse, she did so in violation of court-ordered confidentiality.

70.      In particular, Defendant Huang obtained certain information about Plaintiffs in her capacity as Defendant Wei's interpreter during a confidential mediation, including Plaintiff Zhang's birth certificate, details about Plaintiff Liu's prior marriage, and details about Plaintiffs' lives in China. Defendant then published false and misleading versions of such information, to create false and offensive imputations about Plaintiffs.

71.      For example, to create the false impression that Plaintiffs were and are liars for asserting that Defendant Wei is Plaintiff Zhang's biological father, Defendant Huang has repeatedly published Plaintiff Zhang's birth certificate, which lists Plaintiff Zhang's father as M. Zhang. Along similar lines, Defendant Huang published tweets stating that Plaintiffs and M. Zhang went to Beijing and lived there together for ten years, again implying that M. Zhang was Plaintiff Zhang's biological father, as well as that Plaintiff Liu was a liar for stating that Plaintiff Liu was a single parent. (In truth, and as Defendant Huang well knew, as part of the fallout of being sexually assaulted by Defendant Wei, Plaintiff Liu filed for divorce three months after Plaintiff Zhang's birth. However, the divorce was not finalized until years later, mainly because Plaintiff Liu was not able to find M. Zhang.)

72.      Defendant Huang's knowledge of the details of Plaintiffs' lives in the above regard comes largely if not exclusively from a confidential mediation, and not only did she

17

manage to misstate those details and thereby cast Plaintiffs in a false light, she did so in violation of court-ordered confidentiality.

### I.     Defendant Huang's Twitter activity relating to Plaintiffs has been extremely intense and continues through the present.

73.     Defendant Huang began tweeting about Plaintiffs around September 2019. Since then, her Twitter activity relating to Plaintiffs, including tweets, retweets, quote tweets, and tweet replies, has averaged more than *25 postings per month*, or nearly *one posting per day*.

74.     Below is a chart of just *some* of Defendant Huang's Twitter activity relating to Plaintiffs since 2019. As can be seen, Defendant Huang frequently makes more than *a hundred tweets about Plaintiffs in a single month*.



**Figure 1: Subset of Defendant's Twitter activity relating to Plaintiffs since 2019.[6]**

75.     From Plaintiffs' perspective, having to deal with such an enormous volume and intensity of disparaging and defamatory Twitter activity, from a well-known user with over

---

[6] This chart is in fact *underinclusive* of Defendant Huang's Twitter activity relating to Plaintiffs in part because it omits Twitter activity in late 2023 and 2024.

12,000 followers, has resulted in considerably more mental and emotional suffering than if the offending activity were of a one-off or more limited nature.

76.    Additionally, the above chart supports the conclusion that Defendant Huang's misconduct is of a continuing nature, including for the purpose of analyzing any potential limitations issues.

77.    Finally, the volume and intensity of Defendant Huang's Twitter activity about Plaintiffs, combined with the utter falsity (to say nothing of the utter nastiness) of the content of that activity, supports the conclusion that Defendant Huang acted with at least reckless disregard for the truth.

**J.    Defendant Huang's conduct since the first amended complaint.**

78.    Since the first amended complaint, Defendant Huang has tweeted or re-tweeted about Plaintiffs Liu and Huang hundreds of times, repeating many of the defamatory statements described above.

79.    For example, on May 8, 2024, Defendant Huang repeated the Love Letter Statement, tweeting in Chinese: "刘怀昭还给根本记不得她的魏京生写情书，抱怨第二天早上离开时，魏对她不太热情。。。好像有那么回事似的。没见过的人，该如何热情？"

80.    Translated to English, Defendant Huang's tweet reads: "Liu Huaizhao also wrote a love letter to Wei Jingsheng, who didn't even remember her, complaining that Wei was not very enthusiastic towards her when she left the next morning. It seems to be true. How can you be enthusiastic towards someone you have never met?"

81.    As another example, on August 22, 2024, Defendant Huang retweeted a tweet that accused Plaintiffs of being liars and CCP agents.

19

82.     In addition, Defendant Huang has also repeatedly tweeted statements to the effect that the court in the breach of contract case discussed in paragraph 17 above ruled that that M. Zhang is Charlotte Zhang's biological father ("Biological Father Ruling Statements"), as can be seen in the screenshot below of a tweet made on May 10, 2024 (which also includes instances of defamatory Fraudster Statements, Criminal Gang/Conspiracy Statements, and CCP Agent Statements):



83.     That is false because the court in that case did not so rule. Indeed, no court has ever determined who Plaintiff Zhang's biological father is.

20

84.     It is also defamatory *per se* because it implies that Plaintiffs are liars and fraudsters in asserting that Defendant Wei is Plaintiff Zhang's biological father, which exposes Plaintiffs to public hatred, contempt, and ridicule among the intended audience.

**K.      Defendant Wei's defamatory statements.**

85.     Although not as prolific as Defendant Huang, Defendant Wei has also made Liar Statements, CCP Agent Statements, and Fraudster Statements.

86.     In particular, Defendant Wei has said to fellow members of the Chinese dissident community that Plaintiff Liu's allegations that he raped her and that Plaintiff Zhang is his biological daughter are false, that she is a liar, and that in making the allegations she is acting on behalf of the CCP. According to one member of this community, Defendant Wei made numerous statements along these lines to him at various times in 2023.

87.     One specific occasion occurred in December 2023. At a dinner attended by several members of the Chinese dissident community, the purpose of which was to arrange a public debate between Defendant Wei and another dissident over tactics and strategies for advancing democracy in China, Defendant Wei said to certain attendees that Plaintiff Liu's allegations against him were false, that she was a liar for making those allegations, and that she was acting on behalf of the CCP in doing so.

88.     On that occasion, Defendant Wei also requested that one member of the dissident community who sometimes engaged Plaintiff Liu for translation work stop giving her such work.

89.     Another occasion occurred on July 6, 2024. On that day, Defendant Wei tweeted the following:

21



90.     In English, Defendant Wei's first tweet says:

They say if you spread a rumor, no matter how much effort you put in, it will be hard to completely clean it up. The CCP has, throughout its history, often deployed rumors [as a political tactic]. In the 1940s, they created rumors about Chiang Kai-shek, and the book "The Pipe Dream of Nanking" played no small part. In recent years, people I've never met before claimed to know me. It's not just about tarnishing my reputation; they're requesting documents from [my] foundation, and it's clear that they are targeting the entire democracy movement. They even mobilized a large number of people to spread these rumors, and their sophistication has clearly increased. Recently, the court ruled against them, and there is no such alleged illegitimate daughter at all.

22

91.     In response, a user with the Twitter handle @ZhuLisa wrote: "If there is really a daughter, that's not a bad thing. It's a simple matter—just do a DAN [*sic*] test. If there's no match, the other side will have to pay you reputational damages."

92.     Defendant Wei's response to that user was: "Would you want a liar for a daughter? Throw in a fraudster mother."

93.     Defendant Wei's statements were unquestionably about Plaintiffs Liu and Zhang. And they are false and defamatory for the reasons described in paragraphs 37-40 and 46-47 above.

## COUNT I
## DEFAMATION/LIBEL
### (AGAINST ALL DEFENDANTS)

94.     Plaintiffs reallege and incorporate by reference all allegations above.

95.     Over several years, and continuing through the present, Defendant Huang has published false and defamatory written statements, constituting libel, in the form of: (1) the Liar Statements; (2) the CCP Agent Statements; (3) the Payment/Reneged Paternity Test Statements; (4) the Fraudster Statements; (5) the Slut Statements; (6) the Criminal Gang/Conspiracy Statements; (7) the Love Letter Statements; and (8) the Biological Father Ruling Statements.

96.     In December 2023 and July 2024, Defendant Wei also made false and defamatory oral and written statements, namely the Liar Statements, the CCP Agent Statements, and the Fraudster Statements.

97.     These statements tended to, in and of themselves, and without reference to facts outside the statements, expose Plaintiffs to public hatred, contempt, and ridicule among the intended audience, and are defamatory *per se*.

98.     These statements also caused actual harm by reducing Plaintiffs' reputation and standing among the intended audience and community, and by causing Plaintiffs to experience

23

fear, embarrassment, humiliation, anxiety, emotional anguish, and financial harm, resulting in economic and non-economic damages exceeding $75,000.

99.     Defendants made these statements with a level of intentionality, recklessness, malice, and bad faith that warrants punitive damages.

<div align="center">

**COUNT II**
**FALSE LIGHT**
**(AGAINST DEFENDANT HUANG)**

</div>

100.     Plaintiffs reallege and incorporate by reference all allegations above.

101.     On numerous occasions, Defendant published Plaintiff Zhang's birth certificate on Twitter, as well as statements relating to the nature and duration of Plaintiff Liu's marriage to M. Zhang. Defendant's purpose in doing so was to falsely portray Plaintiffs as liars and fraudsters in claiming that Wei was Plaintiff Zhang's father and in claiming that Plaintiff Liu was a single mother. In so doing, Defendant knew or recklessly disregarded that, although the birth certificate listed Plaintiff Zhang's father as someone else, Plaintiff Zhang's biological father is in fact Wei. Defendant also knew or recklessly disregarded that, although Plaintiff Liu remained legally married to M. Zhang for several years after Plaintiff Zhang's birth, Plaintiff Liu had in fact filed for divorce three months after that birth; that M. Zhang was not present in Plaintiff Zhang's life; and that Plaintiff Liu was in fact a single mother.

102.     Defendant's conduct in this regard caused harm by reducing Plaintiffs' reputation and standing among the intended audience and community, and by causing Plaintiffs to experience fear, embarrassment, humiliation, anxiety, emotional anguish, and financial harm, resulting in economic and non-economic damages exceeding $75,000.

103.     Defendant engaged in this conduct with a level of intentionality, recklessness, malice, and bad faith that warrants punitive damages.

<div align="center">24</div>

## COUNT III
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (AGAINST DEFENDANT HUANG)

104.    Plaintiffs reallege and incorporate by reference all allegations above.

105.    Over several years, and continuing through the present, Defendant Huang has intentionally, recklessly, in bad faith, and maliciously engaged in a lengthy public campaign to falsely portray Plaintiffs as lying, cheating, and lascivious fraudsters, working in cahoots with a foreign totalitarian government to undermine a pro-democracy activist.

106.    Moreover, Defendant Huang did so through a variety of statements, including all the defamatory statements described above, as well as statements that may not be actionably defamatory, but were deliberately insulting and thus calculated to inflict severe emotional distress on Plaintiffs. As one example, Defendant Huang made numerous statements to the effect that Plaintiff Zhang is "an ugly Southeast Asian woman" or that she has "a large mouth." As another example, Defendant Huang made numerous statements denigrating various aspects of Plaintiff Liu's career. As yet another example, Defendant Huang repeatedly invoked Plaintiff Liu's ex-husband in extremely demeaning ways, such as by suggesting that he may have enjoyed being cuckolded by Defendant Wei. While not necessarily actionable in defamation, they are actionable as part of Defendant Huang's overall effort to intentionally inflict severe emotional distress on Plaintiffs.

107.    Defendant Huang's misconduct in this regard was far outside all possible bounds of decency, and is utterly intolerable in a civilized community.

108.    Defendant Huang's misconduct caused Plaintiffs to suffer severe emotional distress, for which Plaintiffs seek damages exceeding $75,000.

109.    Defendant Huang's misconduct was carried out with a level of intentionality, recklessness, malice, and bad faith that warrants punitive damages.

25

## REQUESTED RELIEF

Plaintiffs request that judgment be entered against Defendant and the following relief be granted:

A.    Compensatory damages in an amount to be determined at trial;

B.    Punitive damages;

C.    An injunction prohibiting Defendants from engaging in the above-described misconduct;

D.    An injunction requiring Defendants to remove all social media postings relating to Plaintiffs; and

E.    Any other relief the Court deems appropriate.

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury.

Date:   December 2, 2024                    Respectfully submitted,

*/s/ Times Wang*
**FARRA & WANG PLLC**
Times Wang (Bar No. 30858)
1300 I Street NW, Suite 400E
Washington, DC 20005
twang@farrawang.com
(202) 505-6227

# Exhibit C

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

HUAIZHAO LIU and CHARLOTTE ZHANG,

Plaintiffs,

v.

CIPING HUANG,

Defendant.

Case No. 23-cv-2134-DLB

Judge Matthew J. Maddox

### DEFENDANT WEI'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

Defendant Jingsheng Wei ("Wei"), by and through undersigned counsel, respectfully moves this Court to dismiss Plaintiffs' Second Amended Complaint ("SAC") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. As set forth more fully in the accompanying memorandum, Plaintiffs' claims fail as a matter of law for multiple independent reasons.

First, the doctrine of *res judicata* bars Plaintiffs' claims because they arise from the same nucleus of operative facts as prior litigation resolved in Wei's favor. The prior court entered a final judgment that expressly rejected substantially similar defamation allegations, and Plaintiffs cannot now relitigate those issues under a different guise. Allowing this case to proceed would conflict with the prior judgment of the D.C. Superior Court, which explicitly authorized Wei's ability to make the statements Plaintiffs now challenge. Dismissal is warranted to avoid inconsistent rulings and to uphold principles of judicial efficiency and comity.

Second, the statements Plaintiffs allege are defamatory are not actionable under Maryland law. These statements—including Wei's denial of rape allegations, denial of paternity, and theories regarding Plaintiffs' motivations—are protected expressions of opinion, rhetorical hyperbole, and Wei's lawful right to defend himself against serious accusations.

Third, Plaintiffs, as limited-purpose public figures who have publicly accused Wei of egregious conduct, must meet the heightened standard of pleading actual malice to state a defamation claim. Plaintiffs have failed to plausibly allege that Wei acted with actual malice, as the Second Amended Complaint lacks any factual support for such a claim.

For these reasons, and those set forth more fully in the accompanying memorandum, Wei respectfully requests that this Court dismiss the Second Amended Complaint in its entirety, with prejudice, and grant such other relief as the Court deems just and proper.For these reasons, and those set forth more fully in the accompanying memorandum, Wei respectfully requests that this Court dismiss the Second Amended Complaint as to Wei, with prejudice, and grant such other relief as the Court deems just and proper.

January 16, 2025

Respectfully submitted,

/s/ *David Barger*
David G. Barger (MD Bar# 14716)
Robert W. Angle (*pro hac vice* forthcoming)
Greenberg Traurig LLP
1750 Tysons Blvd.
Suite 1000
McLean, VA 22102
Tel:  (703) 749-1300
Email:  bargerd@gtlaw.com
        anglew@gtlaw.com

*Counsel for Defendant Wei*

2

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of January 2025, I caused a copy of the foregoing to be filed electronically with the Clerk of Court using the CM/ECF system, which then sent a notice of filing to all counsel of record.

/s/ *David Barger*
David G. Barge

3

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

HUAIZHAO LIU and CHARLOTTE
ZHANG,

    Plaintiffs,

        v.

CIPING HUANG,

    Defendant.

Case No. 23-cv-2134-DLB

Judge Matthew J. Maddox

**DEFENDANT WEI'S MEMORANDUM IN SUPPORT OF ITS MOTION TO
DISMISS SECOND AMENDED COMPLAINT**

Defendant Jingsheng Wei ("Wei"), by and through undersigned counsel, respectfully

moves this Court to dismiss Plaintiffs' Second Amended Complaint ("SAC") pursuant to Rule

12(b)(6) of the Federal Rules of Civil Procedure. Plaintiffs' claims against Wei fail as a matter of

law and should be dismissed with prejudice for the reasons set forth below.

**INTRODUCTION**

This lawsuit is yet another attempt by Plaintiffs to misuse the legal system in their years-

long public campaign to malign Wei. Plaintiffs have filed claims nearly identical to those

dismissed with prejudice by the D.C. Superior Court, hoping to rehash disputes that have already

been fully and conclusively resolved in Wei's favor. Plaintiffs allege defamation based on

statements Wei allegedly made while defending himself against their relentless accusations of rape

and disputed paternity. However, none of these allegations rise to the level of actionable

defamation, and the claims fail as a matter of law.

First, Plaintiffs' claims are barred by the doctrine of *res judicata* because they arise from

the same nucleus of operative facts as prior litigation where the court expressly authorized Wei to

make the very statements Plaintiffs now challenge. Second, the statements Plaintiffs rely on—

Wei's denial of their heinous allegations and his subjective opinions regarding their motives—are non-actionable as they constitute protected speech, rhetorical hyperbole, or statements of opinion. Third, Plaintiffs, as limited-purpose public figures who thrust themselves into the public spotlight with sensational allegations, fail to plausibly allege actual malice, as required by law.

This case exemplifies Plaintiffs' ongoing misuse of litigation to harass Wei and to perpetuate a public narrative designed to harm his reputation and diminish his pro-democracy, anti-communist China advocacy. The Court should reject Plaintiffs' transparent attempt to relitigate settled disputes, dismiss all claims against Wei with prejudice, and put an end to this meritless campaign.

<div align="center">

**BACKGROUND**
</div>

**A. Prior Litigation Against Wei.**

Wei has been forced to defend against Plaintiffs' public campaign to harass and disparage him for nearly six years. On July 31, 2019 Plaintiffs initiated an action against Wei by filing the Complaint in the Superior Court of the District of Columbia in a case styled *Liu et al. v. Wei,* Case No. 2019-CA-5052-B. Plaintiffs filed an amended complaint on October 29, 2019, which was removed to the United States District Court for the District of Columbia on November 6, 2019 on diversity grounds.[1] *See Liu et al. v. Wei,* 1:19-cv-03344, Dkt. 1 (case numbers 2019-CA-5052-B and 1:19-cv-03344 shall be referred to collectively as the "First Wei Action"). *See* **Exhibit A**, First Wei Action Amended Complaint.

In the First Wei Action, Plaintiffs alleged, as they do here, that Wei and Plaintiff Huaizhao Liu ("Liu") had a sexual encounter in California approximately 25 years ago, and that he was

---

[1] The publicly available filings reflect that Wei removed the case from Superior Court to Federal Court based on Plaintiffs' allegations in that they lived in the District of Columbia, though it was later revealed that Charlotte, a U.S. citizen, was domiciled abroad attending university when the action was filed, which defeated diversity and caused the matter to be remanded back to the Superior Court.

<div align="center">2</div>

allegedly the paternal parent of Plaintiff Charlotte Zhang ("Charlotte"). *See* SAC ¶¶ 8-17. In the First Wei Action, Plaintiffs claimed, as they wish to do here, that Wei committed defamation when he allegedly made critical comments about Plaintiffs relating to his opinion of Plaintiffs' motivations in pursuing him for money. *See* **Ex. A**.

**B. Plaintiffs Initiate a Public Campaign Accusing Wei of Rape.**

Nearly a year into the First Wei Action, on or about on July 15, 2020, during the height of the "me too" movement, an article was widely published across China in which Liu alleged <u>for the first time</u> that Wei raped her during the alleged encounter in 2000. Two days later, Liu commenced a second action against Wei by filing the Petition for Parentage and Child Support ("Second Wei Action"), *Liu v. Wei,* Case No. 1:20-cv-02625, in the D.C. Superior Court, seeking to establish Wei's parentage over Charlotte and seeking to impose child support obligations on Wei. *See* **Exhibit B**, Petition for Parentage. The Second Wei Action was also removed to federal court and consolidated with the First Wei Action on or about September 17, 2020.

On or about August 3, 2020, Liu started a "GoFundMe" campaign at: https://www.gofundme.com/f/help-a-metoo-victim-and-daughter-win-their-case?utm_source=twitter&utm_medium=social&utm_campaign=p_cp+share-sheet.[2] *See* **Exhibit C**, GoFundMe Page. Liu's GoFundMe page states, in part: "What I've experienced isn't what any

---

[2] The Court may take judicial notice of the existence and content of Liu's GoFundMe Page pursuant to Federal Rule of Evidence 201 as facts that are "not subject to reasonable dispute because" they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). *See Prepared Food Photos, Inc. v. New Kiani's Pizza & Subs, Inc.*, 2024 U.S. Dist. LEXIS 40688, at *9 n.6 (D. Md. Mar. 8, 2024) (citing *Jeandron v. Bd. of Regents of Univ. Sys. of Maryland*, 510 F. App'x 223, 227 (4th Cir. 2013) ("A court may take judicial notice of information publicly announced on a party's web site, so long as the web site's authenticity is not in dispute and 'it is capable of accurate and ready determination.'") (quoting Fed. R. Evid. 201(b) (additional citation omitted); *Rodgers v. Eagle All.*, 586 F. Supp. 3d 398, 409 n.1 (D. Md. 2022) (taking judicial notice of information on a party's website and explaining that "[t]he Court may take judicial notice of adjudicative facts under Federal Rule of Evidence 201" which, "[b]roadly speaking . . . includes 'factual information found on the world wide web'")).

3

woman should ever go through. First there was the violence of non-consensual sex forced on me, followed by lies and denial. Then, rare moments of hope, followed by setbacks tinged with revenge from a father who won't acknowledge his child's existence. This child is my daughter. For 20 years I've hidden the nightmare involving her origin by my silence, even though my daughter's father is a public figure." *Id.*

While the cases remained in federal court, the Plaintiffs and Wei engaged in discovery, including written discovery and depositions, and completed the discovery process in full. On October 3, 2022, the case was remanded to the D.C. Superior Court. After remand, the parties litigated a demand from Plaintiffs under D.C. Sup. Ct. R. 35 for the court to compel Wei to submit a DNA sample for the purpose of conducting a paternity test over Charlotte in connection with Plaintiffs claims, including their defamation claim. On January 11, 2024, the D.C. Superior Court denied Plaintiffs' demand for a DNA sample, finding that Plaintiffs' request was improper under Rule 35 and noting that <u>Charlotte has a conclusively presumed father as a matter of law: Meng Zhang</u>. **Exhibit D**, January 11, 2024 Order.

## C. Wei Prevails in Full on Summary Judgment.

Wei then moved for summary judgment, arguing, among other things, that Plaintiffs' defamation claim against him was legally deficient. Wei argued that the defamatory statements Plaintiffs alleged Wei made – <u>that the Plaintiffs were liars, were seeking to scam Wei, and were sent by the CCP</u> – were not actionable for defamation, as they were not capable of being proven true or false but rather were Wei's alleged statements of his subjective opinions and theories relating to Plaintiffs' motivations for pursuing claims against him.

On July 2, 2024, after nearly *five years* of litigation, the D.C. Superior Court entered an Omnibus Order which granted Wei's Motion for Summary Judgment in full and entered judgment

4

in his favor on all of Plaintiffs' claims, including their defamation claim. **Exhibit E**, Summary Judgment Order.[3] In rejecting Plaintiffs' defamation claim, the court found that that "[Wei's] alleged statements are [nothing] more than his own subjective opinion." *Id.* at 25.  By ruling that Wei's allegedly defamatory statements about Plaintiffs motivations in pursuing their allegations against him were non-actionable statements of Wei's objective opinion, the D.C. Superior Court expressly <u>authorized</u> Wei to make such statements without fear of facing liability for defamation.

### D. Plaintiffs Refile Substantially Similar Claims Against Wei.

In the SAC, Plaintiffs have added Wei as a defendant and reasserted substantially the same claims for defamation against him for statements that Wei allegedly made asserting that Plaintiffs are liars, scammers, sent by the CCP, and denying that Charlotte is his illegitimate daughter. *See* SAC ¶ 85-86.

First, Plaintiffs' vaguely allege that in December 2023, while attending dinner with unidentified members of the Chinese dissident community to discuss Wei's work in promoting democracy in China, Wei allegedly denied Liu's rape and parentage allegations, called her a "liar," and that in making such allegations, Liu was "acting on behalf of the CCP." SAC ¶ 87.

Second, Plaintiffs identify a tweet sent in July 2024 where Wei described the CCP's history of spreading rumors to discredit its enemies, and accurately stating that "[r]ecently, the court ruled against them, and there is no such alleged illegitimate daughter at all." *Id*. ¶¶ 89–92.[4]

---

[3] The SAC suggests that Plaintiffs did not prevail in the First Wei Action because they were proceeding *pro se*, SAC ¶ 17, but this is misleading. Plaintiffs had three sets of attorneys in that litigation (including Plaintiffs initial counsel in this case), and on two occasions Plaintiffs then-current counsel moved the Court to withdraw from representation.

[4] Wei's alleged tweet from July 2024 characterizing the D.C. Court's ruling refers to the Court's ruling that under D.C. law, proceedings to rebut the parentage of a child where there is a "presumed parent" (such as the parents being married at the time of birth) must be commenced no later than two years after the birth of the child, or else the presumption becomes conclusive. *See* D.C. Code § 16-2342(c). *See* **Exs. D**, **E**. Notably, under Maryland law, a child born to parents in wedlock is presumed to be the legitimate child of those

5

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege sufficient facts to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plausible claim requires more than conclusory assertions or unwarranted inferences. *Id.*; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A court must assess whether the well-pleaded facts, taken as true, support a claim for relief. *Iqbal*, 556 U.S. at 679.

## ARGUMENT

### A. Plaintiffs' Claim Against Wei is an Attempt To Collaterally Attack a State Court Order in Prior Litigation and Thus Barred by Res Judicata.

Count I should be dismissed because it is a transparent attempt by Plaintiffs to relitigate the same claims asserted against Wei in the First Wei Action, which Wei received a final judgment in his favor. The doctrine of *res judicata* bars re-litigation of the same claims. "Under the doctrine of *res judicata*, or claim preclusion, '[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" *Pueschel*, 369 F.3d at 354 (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981)). For *res judicata* to bar a claim, three elements must be present: "(1) the present parties are the same or in privity with the parties in the earlier dispute; (2) the earlier dispute was based upon the same cause of action, and (3) there has been a final judgment on the merits." *Reid v. Ocwen Loan Servicing, LLC*, 2017 U.S. Dist. LEXIS 128301, at *4 (D. Md. Aug. 11, 2017) (citing *Ohio Valley Env't Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 210 (4th Cir.

---

parents, Md. Code Ann., Fam. Law § 5-1027(c), and any challenge to parentage where there is a presumed parent must also be brought within two years of the child's birth, Md. Code Ann., Fam. Law § 5-1038(a)(2). Plaintiffs admit that Liu and Meng Zhang were married at the time of Charlottes birth in December 2000. SAC ¶ 12. Thus, under both D.C. and Maryland law, the face of the Complaint reflects that the time to challenge paternity has long expired, and it is conclusive as a matter of law that Charlotte is the legitimate daughter of Meng Zhang, thus as a matter of law she cannot be the "illegitimate" daughter of Wei.

6

2009)). Here, the award of summary judgment in favor of Wei in the First Wei Action precludes the Plaintiffs' claims against him in the SAC.

Here, the first element of a *res judicata* analysis is met because both Plaintiffs were plaintiffs in the First Wei Action, and Wei was the defendant.

As to the second element, the same cause of action exists in both matters. Courts have explained that "[t]he determination of whether two suits arise out of the same cause of action, … **does not turn on whether the claims asserted are identical**." *Pueschel*, 369 F.3d at 354 (emphasis added). Rather, "[s]o long as the second suit arises out of the same transaction or series of transactions as the claim resolved by the prior judgment, the first suit will have preclusive effect." *Quarles v. Wells Fargo Bank, N.A.*, 2022 U.S. Dist. LEXIS 144408, *9-10, 2022 WL 3290722 (quoting *Reid*, 2017 U.S. Dist. LEXIS 128301, 2017 WL 3475676, at *4 (internal quotations and additional citations omitted).

Here, the "new" defamation claims brought by Plaintiffs against Wei in the SAC, although not identical to the statements alleged in the First Wei Action, arise out of the very same transaction or series of transactions as the First Wei Action – Plaintiffs public campaign alleging that Wei is a rapist, and Wei's denial of the same.

In the First Wei Action, Plaintiffs asserted that, while in the presence of members of the Chinese dissident community following an anti-CCP protest, Wei defamed them by claiming that they were lying about their allegations against him, were "cheats," and were sent by the CCP to interrupt his work. *See* **Exhibit E**, Summary Judgment Order.

Similarly, in the SAC, Plaintiffs allege that Wei, at a dinner with members of the Chinese dissidents to discuss anti-CCP activities, denied Plaintiffs' allegations of rape and parentage, called the allegations lies, and that in making the allegations Liu advancing the work of the CCP. SAC

7

¶¶ 86. Plaintiffs also allege that Wei sent a tweet *accurately* characterizing the D.C. Superior Court's ruling on summary judgment that Charlotte is not his "illegitimate daughter." *Id.* ¶ 90.

Put simply, the "new" allegations of defamation are the same claims that were previously litigated to a final judgment on the merits in the First Wei Action.  Plaintiffs are once again asserting that Wei raped Liu and that he is the father of Charlotte, and Wei is denying the same and expressing his opinions and theories concerning their motives in making such allegations. Although the "new" defamation concerns alleged statements made after the statements that were at issue in the First Wei Action, they are substantively the same and based on the same series of facts – Liu's public campaign to smear Wei as a rapist. It cannot be that every time Wei denies Liu's repeated public allegations of rape (which, inherently, implies the allegations are lies) he subjects himself to a new defamation lawsuit from Plaintiffs. As such, the "new" defamation claims in the SAC are the same as the defamation claims in the First Wei Action for *res judicata* purposes.

The third element, a final judgment on the merits, is also met. "[F]inal judgment includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect, based on factors such as whether the parties were heard in the issue and whether the decision was appealable." *Quarles*, 2022 U.S. Dist. LEXIS 144408 at *15-16 (quoting *Graves v. OneWest Bank, FSB*, 2015 U.S. Dist. LEXIS 65637, 2015 WL 2452418, at *5 (D. Md. May 20, 2015), *aff'd sub nom.*, *Graves v. Onewest Bank, FSB*, 653 F. App'x 788 (4th Cir. 2016) (internal quotations and citations omitted). Here, the First Wei Action was litigated to a final judgment on the merits when Wei was granted summary judgment in full on Plaintiffs' claims, including ruling that the alleged defamatory statements were non-actionable statements of "his

8

own subjective opinion." **Ex. E**, Summary Judgment Order at 25. Plaintiffs did not appeal that judgment or seek reconsideration; thus, the order is a final judgment on the merits.

Wei litigated Plaintiffs defamation claims for nearly five years. The Court should apply the principles of *res judicata* and prevent Plaintiffs from obtaining a second bite at the apple and prevent Wei from incurring substantial additional costs in defending against the same claims. *Madukwe v. Capital One Fin. Corp.*, 2017 U.S. Dist. LEXIS 43739, 2017 WL 1133276, at *8 (D. Md. Mar. 24, 2017) ("A review of the prior state court proceedings demonstrates that Plaintiff vigorously litigated her foreclosure for over two and half years."); *McKenzie v. M&T Bank*, 2018 U.S. Dist. LEXIS 156823, 2018 WL 4384164, at *4 (D. Md. Sept. 14, 2018) ("Ultimately, Plaintiff's federal suit is an attempt to re-litigate or collaterally attack a final order … in a state court [ ] proceeding."). As such, Count I is barred by *res judicata* and should be dismissed.

### B. Principles of Comity Require Deference to the Superior Court's Ruling Authorizing the Alleged Defamatory Statements.

To the extent the Court determines that the defamation claims in the SAC are not barred by *res judicata*, the Court should still dismiss Count I under principles of comity. "The doctrine of comity, which has long been a part of the common law of Maryland, counsels us to show 'deference and respect' to the courts of other jurisdictions." *Hanover Invs., Inc. v. Volkman*, 455 Md. 1, 26, 165 A.3d 497, 512 (2017) (citing *Holloway v. Safe Deposit & Trust Co. of Baltimore*, 151 Md. 321, 334, 134 A. 497 (1926); *Washington Suburban Sanitary Commission v. CAE-Link Co.*, 330 Md. 115, 140, 622 A.2d 745 (1993)).

When entering summary judgment in Wei's favor in the Firs Wei Action and finding that the alleged defamatory statements denying Plaintiffs claims about parentage over Charlotte and theorizing about their true motivations and political goals were non-actionable, the D.C. Superior Court expressly authorized Wei to continue making such statements. **Exhibit E**, Summary

9

Judgment Order.  As such, allowing Plaintiffs' claims to proceed in this matter would conflict with the D.C. Superior Court's judgment, and potentially create inconsistent rulings concerning what Wei is and is not allowed to say in defense against Plaintiffs' serious allegations against him. That court's ruling implicitly authorized Wei to make statements defending himself against Plaintiffs' allegations and expressing his theories and opinions concerning their motivations behind such claims. A contrary ruling here would create inconsistent obligations, undermining principles of comity and judicial efficiency. *See Hanover Invs.,* 165 A.3d at 512.

### C.  Count I Fails to State a Claim for Defamation.

The SAC fails to state a viable cause of action against Wei for defamation, as none of the alleged defamatory statements are actionable. Plaintiffs' defamation claim is premised on three categories of statements allegedly made by Wei: (1) his denial of rape allegations; (2) his denial of paternity over Charlotte as his illegitimate daughter; and (3) his accusations that Plaintiffs are affiliated with the CCP. SAC ¶¶ 87, 89-92. None of these statements meet the standard for actionable defamation.

To prevail on a claim for defamation, Plaintiffs must establish that "(1) the defendant made a defamatory statement to a third person (a requirement known as publication); (2) the statement was false; (3) the defendant was legally at fault in making the statement; and (4) the plaintiff thereby suffered harm." *Doe v. Johns Hopkins Health Sys. Corp.*, 274 F. Supp. 3d 355, 365 (D. Md. 2017).

Not all statements, even harmful ones, are actionable as defamation. Indeed, to be actionable, "a statement must provably false—it cannot be an opinion." *Harvey v. CNN, Inc.*, 520 F. Supp. 3d 693, 718-19 (D. Md. 2021), *aff'd in part, vacated in part*, 48 F.4th 257 (4th Cir. 2022) (citing *Gibson v. Boy Scouts of Am.*, 163 F. App'x 206, 212 (4th Cir. 2006) (per curiam) (citing

*Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18-20, 110 S. Ct. 2695, 111 L. Ed. 2d 1 (1990)));

*Lapkoff v. Wilks*, 1991 U.S. Dist. LEXIS 15130, *8-9, 1991 WL 214278 ("A statement must be

provable as false before liability for defamation can be imposed.") (citation omitted).

Statements of the defendant's "subjective view, an interpretation, a theory, conjecture or

surmise, rather than a claim to be in possession of objectively verifiable false fact," are not

actionable as a matter of law. *Harvey.*, 520 F. Supp. 3d at 719 (quoting *Biospherics, Inc. v. Forbes*,

*Inc.*, 151 F.3d 180, 186 (4th Cir. 1998) (alterations and citation omitted) (affirming dismissal of

complaint)).

Courts regularly reject defamation claims where the alleged statements are made with

subjective judgment of the speaker. *See id.* (finding that allegations that defendants accused the

plaintiff of engaging in a "smear campaign" were nonactionable protected statement of opinion)

(citing *Camassar v. Day Publ'g Co.*, 2015 Conn. Super. LEXIS 2581, 2015 WL 6761619, at *4

(Conn. Super. Ct. Oct. 9, 2015) ("Courts have held that stronger language than 'shakedown' and

'smear campaign' were not defamatory."); *Greenbelt Coop. Publ'g Ass'n v. Bresler*, 398 U.S. 6,

14, 90 S. Ct. 1537, 26 L. Ed. 2d 6 (1970) (holding that accusing plaintiff of "blackmail" was not

defamatory)); *Polanco v. Fager*, 886 F.2d 66, 69 (4th Cir. 1989) (statement that a doctor was

motivated by greed to perform an operation was protected opinion); *Underwager v. Channel 9

Austl.*, 69 F.3d 361, 367 (9th Cir. 1995) (statements concerning the plaintiff's "motivations and

personality" were opinion and not actionable); *Greenberg v. Western CPE*, 2013 U.S. Dist. LEXIS

56901, at *4 (C.D. Cal. Apr. 15, 2013) (speculation regarding the plaintiff's motivations behind

their actions was a non-actionable statement of opinion); *Spelson v. CBS, Inc.*, 581 F. Supp. 1195,

1203 (N.D. Ill. 1984) (finding statements that individuals were "'cancer con-artists' and

'practitioners of fraud'" non-actionable expressions of the "rational conclusion gleaned from defendant's opinion").

Here, each of the alleged defamatory statements made by Wei are nonactionable statements of opinion or subjective belief, thus Count I fails.

### 1. Denial of Rape Allegations.

Wei's denial of the rape allegations made against him by Liu is not defamatory. SAC ¶ 87 (alleging that while discussing strategies for advancing democracy in China, Wei said that Liu's allegations against him were false and were a lie). Denying heinous, criminal accusations made against him is a fundamental right and cannot form the basis of a defamation claim, even if the denial implicitly calls the accuser's credibility into question. *See Pecile v. Titan Capital Grp.*, LLC, 947 N.Y.S.2d 66, 67 (App. Div. 2012) (holding that statements "that plaintiffs' suit was without merit constituted mere opinion, and was therefore nonactionable."). To hold otherwise would create a chilling effect, penalizing individuals for defending their innocence. Indeed, when faced with accusations that he is a rapist, Wei would be forced to (1) say nothing, despite that silence could be taken as an admission in the court of public opinion; or (2) deny the allegations, subjecting himself to a civil lawsuit. Here, Wei's denials are consistent with his right to assert his innocence and defend his reputation against unsubstantiated accusations.

### 2. Denial of Paternity Allegations.

Wei's denial of Charlotte's paternity and claim that she is not his illegitimate daughter are similarly non-actionable, especially considering that it is not false as a matter of law. Under both Maryland and D.C. law, challenges to paternity are subject to strict statutory limitations. In both jurisdictions, a child has a presumed parent when born during wedlock. *See* Md. Code Ann., Fam. Law § 5-1027(c); D.C. Code § 16-909(a)(1). Further, when a presumed father exists, parentage

12

cannot be challenged more than two years after birth, after which time the presumption becomes conclusive. *See* Md. Code Ann., Fam. Law § 5-1038(a)(2); DC Code § 16–2342(c).

Here, the SAC admits that Liu was married to Meng Zhang at the time of Charlotte's birth in 2000, that Meng Zhang is identified on Charlotte's birth certificate as her father, and that Liu and Meng Zhang remained married for several years after Charlotte's birth. SAC ¶¶ 12, 71, 101. It is not disputed that no action to challenge Meng Zhang's paternity was filed within two years of Charlotte's birth, thus as a matter of law (whether D.C. or Maryland law applies), Meng Zhang is concluded to be Charlotte's presumptive, legitimate father, which cannot be challenged.

Wei's alleged statements in December 2023 denying Liu's allegations regarding parentage over Charlotte, as well as his tweet in July 2024 claiming there is no illegitimate daughter, are thus non-actionable statements. Not only is denying parentage not defamatory, but it is objectively true as a matter of law, as recognized by the Court in the First Wei Action. *See* **Exhibit E**, Summary Judgment Order. A Court of competent jurisdiction has found that Meng Zhang is charlotte's legal father, which cannot be challenged. Plaintiffs cannot circumvent these limitations by recasting Wei's lawful denial as defamation. *See McClure v. Lovelace*, 78 A.3d 934, 949 (Md. Ct. Spec. App. 2013). Wei's statements denying Charlotte's paternity are thus not actionable as defamation.

### 3. Allegations of CCP Affiliation

Wei's alleged statements accusing Plaintiffs of affiliation with the CCP are also non-actionable opinions and rhetorical hyperbole concerning his theories about their motivations in making their allegations in this case. SAC ¶ 87 (alleging Wei stated that in making the allegations against him, Liu is acting on behalf of the CCP). It is well accepted that "rhetorical hyperbole, a lusty and imaginative expression of the contempt felt by" Wei for Plaintiffs, is not actionable as defamation. *Vanderhoof-Forschner v. McSweegan*, 2000 U.S. App. LEXIS 10682, at \*7 (4th Cir.

13

May 16, 2000) (affirming dismissal of defamation claim) (quoting *Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers v. Austin*, 418 U.S. 264, 286, 41 L. Ed. 2d 745, 94 S. Ct. 2770 (1974)).

Courts have long held that hyperbolic or figurative language, particularly in the context of public discourse, is not defamatory. *Balt. Sports & Soc. Club, Inc. v. Sport & Soc., LLC*, 228 F. Supp. 3d 544, 550 (D. Md. 2017); *Letter Carriers v. Austin*, 418 U.S. 264, 286 (1974). Wei's comments about his theories behind Plaintiffs' motivations in making the allegations against him, including that such allegations benefit the CCP, fall squarely within this category. They reflect his opinion, theories, and interpretation of Plaintiffs' motives and conduct, which are inherently subjective and cannot be proven true or false.

Accordingly, none of the alleged defamatory statements made by Wei are actionable, thus Count I fails to state a claim as a matter of law.

### D. Plaintiffs Fail to Plausibly Allege Actual Malice.

To the extent that the alleged defamatory statements could be considered actionable, Count I still must be dismissed because Plaintiffs fail to establish actual malice on the part of Wei, as they must due to their status as a limited public figure. To prevail on a claim of defamation, a public figure must prove "by clear and convincing evidence, that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *Hosmane v. Seley-Radtke*, 227 Md. App. 11, 132 A.3d 348, 354 (Md. App.), aff'd, 450 Md. 468, 149 A.3d 573 ( Md. 2016) (internal citations omitted). "Whether a plaintiff is a public figure is solely an issue of law." *Waicker v. Scranton Times P'ship*, 113 Md. App. 621, 629, 688 A.2d 535, 539-40 (1997) (citations omitted).

There are two types of public figures for defamation purposes: (1) a general public figure (someone who achieves such pervasive fame or notoriety that they become public figures for all

14

purposes); or (2) a limited public figure (an individual who voluntarily injects themselves into a particular public controversy and thereby becomes a public figure for a limited range of issues). *Waicker*, 113 Md. App. At 629-30 (citing *Saint Luke Evangelical Church, Inc. v. Smith*, 74 Md. App. 353, 366-67, 537 A.2d 1196 (1988), *rev'd on other grounds*, 318 Md. 337, 568 A.2d 35 (1990) (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351, 41 L. Ed. 2d 789, 94 S. Ct. 2997 (1974)); *Jenoff v. Hearst Corp.*, 644 F.2d 1004 (4th Cir. 1981) (applying Maryland law)).

To determine whether a person is a limited public figure, a two-part inquiry is taken: (1) was there a particular public controversy that gave rise to the alleged defamation; and, if so, (2) was the nature and extent of the plaintiff's participation in that particular controversy sufficient to justify public figure status? *Id.* (citing *Clyburn v. News World Communications, Inc.*, 284 U.S. App. D.C. 212, 903 F.2d 29, 31 (D.C. Cir. 1990) (additional citation omitted).

"A public controversy is a dispute that attracts special attention because its ramifications will be felt by persons who are not direct participants." *Id. Foretich v. Capital Cities/ABC, Inc.*, 37 F.3d 1541, 1554 (4th Cir. 1994). Public controversies are disputes that have "foreseeable and substantial ramifications for non-participants." *Id.* (quoting *Waldbaum v. Fairchild Publications, Inc.*, 201 U.S. App. D.C. 301, 627 F.2d 1287, 1296-97 (D.C. Cir.), *cert. denied*, 449 U.S. 898, 66 L. Ed. 2d 128, 101 S. Ct. 266 (1980)).

Courts have analyzed the following factors when determining whether an individual is a public figure with respect to an identified public controversy: (1) whether the individual had access to channels of effective communication; (2) whether the individual voluntarily assumed a role of special prominence in public controversy; (3) whether the individual sought to influence resolution or outcome of controversy; (4) whether controversy existed prior to publication of defamatory statements; and (5) whether the individual retained public figure status at the time of alleged

15

defamation. *Waicker*, 113 Md. App. at 631 (citations omitted). These factors all weigh in favor of finding that Plaintiffs are limited public figures.

As reflected in the Complaint, Wei is a "a well-known and prominent Chinese dissident," SAC ¶ 9, who was "held as a political prisoner of the Chinese government for many years," *id.* at n.4, and is viewed as a leader in the pro-democracy movement in China, including through his activities in the Wei Jingsheng Foundation. *See id.* ¶¶ 19, 21.

For over five years, and as evidenced by Plaintiffs' GoFundMe Page, Plaintiffs have engaged in an extensive public campaign against Wei labeling him as a rapist, a deadbeat father, and otherwise accusing him of being a dishonorable person, tarnishing his reputation. *See* **Exhibit C**, GoFundMe Page. As Plaintiffs have publicly spread their allegations and attempted to garner public outcry, they clearly have access to channels off effective communication. Plaintiffs conduct has intentionally and voluntarily created a public controversy, garnering large amounts of attention in the Chinese dissident community, including public discussions on Twitter. *See generally,* SAC. Public attention from this controversy is also evidenced by the fact that Plaintiffs have crowdfunded over $22,000 toward their legal expenses to pursue the instant case against Wei. **Ex. C**. The alleged defamatory statements made by Wei, including the alleged December 2023 pro-democracy strategy dinner and July 2024 tweet concerning Wei's statements about the CCP, all directly relate to the public controversy created by Plaintiffs allegation of rape and other improprieties. In other words, the public controversy was created long *before* Wei's alleged statements, which are made in defense of Plaintiffs' public allegations. Plaintiffs' repeated accusations against Wei—including claims of rape and paternity—were made in highly public forums and were aimed at influencing public opinion against him, particularly within the Chinese community. As such, Plaintiffs' public accusations against Wei render them limited purpose public

16

figures. *Gertz*, 418 U.S. at 351.

Considering that Plaintiffs are limited purpose public figures, they are required to plead actual malice to state a defamation claim *Shapiro v. Massengill*, 105 Md. App. 743, 661 A.2d 202, 217 (Md. App. 1995) ("[A]ctual malice is established when the plaintiff shows, by clear and convincing evidence, that the defendant published the statement in issue either with reckless disregard for its truth or with actual knowledge of its falsity.").

Court regularly dismiss defamation claims where limited public figures fail to demonstrate actual malice. *See Reuber v. Food Chem. News, Inc.*, 925 F.2d 703, 706 (4th Cir. 1991) (action in publishing an employer's reprimand which stated that a scientist had engaged in unprofessional conduct was not made with actual malice, noting the public's right to learn both sides of a controversy); *Kim v. Solpietro*, No. 705, 2024 Md. App. LEXIS 260, at *3 (Spec. App. Apr. 3, 2024) (finding as a matter of law that "leading a public campaign to create a public referendum on an issue of public controversy is enough to make Plaintiff a public figure for that limited purpose" and holding that the plaintiff did not sufficiently allege malice to support a defamation claim).

There are simply no facts alleged in the Complaint to support a finding of actual malice on the part of Wei. Indeed, the context of the alleged defamatory statements are in *defense* of Plaintiffs' accusations of rape against him. Plaintiffs do not accuse Wei of exhibiting any malice in making claims against them. Rather, the record reflects that Wei simply wishes to defend his reputation and put these claims behind him. It is Plaintiffs, not Wei, who continue to make reckless allegations without regard for its truth. Wei should be able to present his side of this controversy to the public without exposing himself to civil liability.

Accordingly, the SAC provides no factual allegations suggesting that Wei harbored any subjective doubts about the truth of his statements. Instead, Plaintiffs rely on mere conclusory

17

assertions of malice, SAC ¶ 99, which are insufficient to state a claim.

## CONCLUSION

For the foregoing reasons, Defendant Jingsheng Wei respectfully requests that this Court

dismiss all claims against him with prejudice and award all such other relief the Court deems just.

January 16, 2025                                    Respectfully submitted,

<div align="right">

/s/ *David Barger*
David G. Barger (MD Bar# 14716)
Robert W. Angle (*pro hac vice* forthcoming)
Greenberg Traurig LLP
1750 Tysons Blvd.
Suite 1000
McLean, VA 22102
Tel:  (703) 749-1300
Email:  bargerd@gtlaw.com
           anglew@gtlaw.com

*Counsel for Defendant Wei*

</div>

18

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of January 2025, I caused a copy of the foregoing to be filed electronically with the Clerk of Court using the CM/ECF system, which then sent a notice of filing to all counsel of record.

/s/ *David Barger*
David G. Barge

Case 8:23-cv-02483-JMD   Document 1167-2   Filed 08/26/05   Page 113 of 273

# Exhibit A

Case 8:23-cv-02483-JMD   Document 1167-2   Filed 08/26/05   Page 113 of 273

```
                                    ┌─────────────────────┐
                                    │       FILED         │
                                    │ CIVIL ACTIONS BRANCH│
                                    │    OCT 2 9 2019      │
                                    │   Superior Court    │
                                    │ of the District of Columbia │
                                    │   Washington, D.C.  │
                                    └─────────────────────┘
```

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

LIU, Huaizhao et al.,

Plaintiffs

v.                                      Civil Action No. 2019 CA 005052 B
                                        Judge William M. Jackson

WEI, Jingsheng

Defendant

## AMENDED COMPLAINT

FIRST CAUSE OF ACTION

Jurisdiction of this court is founded on D.C. Code § 11-921.

1. Plaintiff Liu was born in China.
2. Plaintiff Liu had sexual intercourse with defendant in California in early 2000; as a result, she became pregnant; a child was born on December 8, 2000 in California. Defendant is the father of that child.
3. Said child is plaintiff Charlotte Zhang.
4. From the year 2000 through 2017, defendant paid nothing to plaintiffs.
5. In 2018, a DNA test established that defendant is the father of Charlotte.
6. Defendant said, "I am happy to have a daughter. She dropped from heaven."
7. In mid-2018, defendant promised: "I will sell my house; I will help you."
8. In October 2018, defendant promised to pay college tuition for plaintiff Zhang.
9. But, defendant has broken all of the above promises. Defendant paid nothing to plaintiffs.
10. Defendant has paid zero dollars to plaintiffs, from 2000 to the present.

SECOND CAUSE OF ACTION

11. Plaintiffs repeat, re-allege, and incorporate by reference all of the above allegations.

12. On September 30, 2019, defendant attended an anti-Chinese Communist Party (CPP) protest held at 3505 International Place NW, Washington DC 20008. After the protest ended, he went into a nearby apartment in Washington DC. Inside that apartment were numerous people, including Mr. Xiangyang Li. At that time, and in the presence of those people, defendant said many things about the plaintiffs, including but not limited to:

a] Plaintiffs are fakes; they have been cheating a lot of people in China;

b] This time they have been sent by CCP to come here, to interrupt my work;

c] after I said Liu should do a DNA test, she shut up.

13. All of the above statements are false and defamatory.

14. Defendant published the statements without privilege to a third party.

15. Defendant's fault in publishing the statements amounted to at least negligence.

16. The statements are actionable as a matter of law irrespective of special harm or that its publication caused the plaintiffs special harm.

17. Defendant acted intentionally, with malice, and with full knowledge that his statements were false.

18. Defendant's statements and acts are interfering and have interfered with prospective advantageous business opportunities for plaintiffs.

19. Defendant's statements and acts are slanderous, and tend to injure plaintiffs in their trade, profession or community standing, or lower them in the estimation of the community.

20. Plaintiff Ms. Liu is sure that people will begin to stay away from her; that people will think badly of her; and that she is being isolated from her pro-democracy colleagues. She fears she will suffer physical harm.

21. Plaintiff Charlotte is sure that people will begin to stay away from her; that people will think badly of her; that she will suffer physical harm; and that she will be insulted in the future.

Wherefore, Plaintiffs demand judgment against defendant in the sum of $500,000.

Plaintiffs pray that this Court:

A] declare that defendant is the father of Charlotte;

B] order defendant to pay college tuition for Charlotte;

C] order defendant to pay $500,000 to plaintiffs;

D] Award plaintiffs reasonable attorney fees and costs

E] Grant all other such relief to plaintiffs as the Court deems proper and equitable.


Respectfully submitted,


Attorney for Plaintiffs


David L. Cleveland

DC Bar # 424209

924 G Street, NW

Washington, DC 20001

[202] 772-4345 Fax: [202] 386-7032

1949.david@gmail.com

Case 8:23-cv-02841-MJM Document 167-3 Filed 08/26/25 Page 117 of 273

# Exhibit B

Case 8:23-cv-02841-MJM Document 167-3 Filed 08/26/25 Page 117 of 273

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA – FAMILY COURT
## NOTICE OF HEARING AND ORDER DIRECTING APPEARANCE

District of Columbia ex rel:

| | | |
|---|---|---|
| HUAIZHAO LIU | , Petitioner | Case No.   2020 PCS 000174 |
| v. | | Related Case Nos. |
| JINGSHENG WEI | , Respondent | IV-D No. |

To:  JINGSHENG WEI _____     Date Issued:  July 16, 2020

**YOU ARE ORDERED TO APPEAR** in _____ of the D.C. Superior Court, 500 Indiana Avenue, N.W., Washington, D.C. 20001, on _____ at _____

☒ A Petition to Establish Paternity and/or Provide Support has been filed against you. A copy is attached.

☐ A Motion to _____ has been filed against you. A copy is attached.

You have 20 days in which to file an answer to the Petition. You have 10 days in which to file an opposition to the motion. You may file at the Family Court Central Intake Center on the JM-Level of the D.C. Superior Court.

### PLEASE READ THE FOLLOWING IMPORTANT NOTICES

- **You are ordered to bring: (1) proof of your social security number; (2) your last two pay statements; (3) your income tax forms for the last two years, and; (4) your medical insurance information (policy number, insurance company, coverage details).**
- If you fail to appear at the hearing, a warrant may be issued for your arrest and/or an order may be entered finding you to be the parent of the minor child(ren) and setting an amount of support to be paid by you.
- You may have an attorney represent you at any time during the case, but the Court will not appoint one for you.
- If you request a continuance, the Court may still order you to pay child support or post collateral against child support until the next hearing date.

| INSTRUCTIONS TO PROCESS SERVER | Witness the Honorable Chief Judge of the Superior Court of the District of Columbia: |
|---|---|
| Sex:          DOB:          Height:     Weight:     lbs. | |
| Race:              SSN#:-- | Clerk of the Superior Court of the District of Columbia by: _____ |
| Home Address:  13423 QUEENS LANE  FORT WASHINGTON,  MD, 20744 | Deputy Clerk |
| Work Address: | Processed:     7/16/2020 |
| | Return: |

### RETURN OF SERVICE

I affirm that I am a competent person, that I am at least 18 years of age, that I am not a party to the case, and that: *[choose **one** of the following]*

☐ I personally served Petitioner/Respondent at (Address) _____ on (date) _____ at (time) _____ am/pm.

☐ At Petitioner's/Respondent's <u>home</u> (Address) _____ on (date) _____ at (time) _____ am/pm
I personally served (name) _____ , a person of suitable age and discretion who <u>lives</u> with Petitioner/Respondent.
Physical Description: (Age)  34  ☐ Male  ☐ Female; (Relationship to Petitioner/Respondent) _____

☐ At Petitioner's/Respondent's <u>work</u>  (Address) _____ on (date) _____ at (time) _____ am/pm
I personally served (name) _____ , a person of suitable age and discretion who <u>works</u> with Petitioner/Respondent.
Physical Description: (Age) _____ ☐ Male  ☐ Female; (Position Title) _____

☐ I served Petitioner/Respondent by certified mail (return receipt requested) and first class mail on (date) _____ , to
(Address) _____ , which is Petitioner's/Respondent's home.
The certified mail envelope was  ☐ signed for,  ☐ unclaimed,  ☐ refused. The first class mail envelope was <u>not</u> returned to the sender.

☐ I was unable to serve the Petitioner/Respondent because the address is  ☐ bad/nonexistent (relocate),  ☐ correct , but I was unable to effectuate service prior to the hearing date. (re-issue).

*I solemnly swear or affirm under criminal penalties for the making of a false statement that I have read the forgoing "Return of Service" and that the statements made in it are true to the best of my personal knowledge, information and belief.*

(Signature) _____     (Business Address) _____

Copies:     Court     File     –     Counsel     –     Service     –     File     –     Server

psnoho-res

RECEIVED
SUPERIOR COURT OF THE
DISTRICT OF COLUMBIA

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**FAMILY COURT**
**Parentage & Support Branch**

2020 JUL 10 PM 12: 30

Huaizhao Liu
_____
PRINT YOUR NAME
6218 Georgia Ave NW #5018
_____
STREET ADDRESS
Washington, DC 20011
_____
CITY, STATE AND ZIP CODE

☑ SUBSTITUTE ADDRESS: CHECK BOX IF YOU
HAVE WRITTEN SOMEONE ELSE'S ADDRESS BECAUSE
YOU FEAR HARASSMENT OR HARM.

Case No.: 2020 PCS 174

IV-D: _____

JUDGE: _____

PETITIONER,

v.

Jingsheng Wei
_____
PRINT THE OTHER PARENT'S NAME
13423 Queens Lane,
_____
STREET ADDRESS
Fort Washington, MA 20744
_____
CITY, STATE AND ZIP CODE

RESPONDENT.

### PETITION TO ESTABLISH PARENTAGE and/or FOR CHILD SUPPORT

Are You Asking the Court to Decide Parentage? ☑ yes ☐ no
Are You Asking the Court to Decide Child Support? ☑ yes ☐ no

I, Huaizhao (Heather) Liu , am the Petitioner in this case and I state that:
_____
PRINT YOUR NAME

**1. This Court is the proper place to decide my request for establishing parentage and/or child support.**

**2. I state the following about parentage:** [CHECK ALL THAT APPLY]

☐ The child(ren) were born during my marriage to the other party.

☐ The other parent is named on the child(ren)'s birth certificate(s).

☐ The other party and I have both signed a written statement under oath admitting parentage.

☐ The other parent has signed a written statement admitting parentage.

☐ Another state has decided parentage.

☑ There is a genetic test result and a certified affidavit from a laboratory indicating a 99% or greater probability of parentage.

☐ I may be a parent to the child.

☑ Other:  <u>Petitioner was raped by the defendant and child was born within her previous marriage. The rape resulted the petitioner's divorce. The petitioner has been raising the child all alone, without any child support. In 10/2018, a DNA test was conducted and the results proved the parentage but defendant chose to conceal the results.</u>

**3. I am asking to determine parentage for the following child(ren) that I may have with the other party (through birth or adoption):**

| Child's Name | Current Address | Date of Birth | Gender |
|---|---|---|---|
| Charlotte Zhang | 330 Anzac Parade, Kensington, Sydney NSW 2032 | Dec. 08, 2000 | F |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

**4. Each party has the legal duty to contribute to the support of our eligible child(ren), including any adult disabled children.**

**5. I state the following about Temporary Assistance to Needy Families (TANF):** [CHECK ONE]

☐ I am ☑ I am *not* currently receiving Temporary Assistance to Needy Families (TANF).

**6. I state the following about Medicaid and/or DC Healthy Families:** [CHECK ONE]

☐ I am ☑ I am *not* currently receiving Medicaid and/or DC Healthy Families.

7. I do ■ / do *not* ☐ know of any proceedings in the District of Columbia or in any state or territory involving the same claim or subject matter as this case. Please list state, court, and docket number for cases involving the same claim or subject matter.

| Court | Case Number | Case Type |
|---|---|---|
| U.S. District Court for D.C. | 1:19-cv-03344 | personal injury |
| | | |
| | | |
| | | |
| | | |
| | | |

## Request for Relief

**I RESPECTFULLY REQUEST that the Court:** [CHECK ALL THAT APPLY]

☑ Hold a hearing on this Petition within 45 days of filing and issue a Notice of Hearing and Order Directing Appearance ("NOHODA") to Respondent with the date and time of the hearing.

☑ Order genetic testing to determine parentage.

☑ Decide parentage for my child(ren) and order entry of the father's name on the child(ren)'s birth certificates.

☑ Award support according to the Child Support Guideline of the District of Columbia and other applicable laws, including:
    ☑ current child support (support starting today and continuing into the future)
    ☑ retroactive child support (support for time before today)
    ☑ medical support

☑ Order [PRINT ANYTHING ELSE YOU WANT THIS COURT TO DO.]
    I ALSO REQUEST that the Court award any other relief it considers fair and proper.

**I ALSO REQUEST that the Court award any other relief it considers fair and proper.**

I declare under penalty of perjury that the foregoing is true and correct.

*If this document is to be signed outside the geographic boundaries of the United States, Puerto Rico, the United States Virgin Islands, and any territory or insular possession subject to the jurisdiction of the United States, additional requirements must be met prior to signing. See Super. Ct. Dom. Rel. R. 2(c)(1)(B).*

_____          July 6, 2020
SIGN YOUR NAME                    DATE
Huaizhao Liu                      (202) 660 - 3235
PRINT YOUR NAME                   PHONE NUMBER
6218 Georgia Ave, NW #5018        huaizhao.liu@gmail.com
HOME ADDRESS 1                    EMAIL ADDRESS
Washington, DC 20011
HOME ADDRESS 2

[X] SUBSTITUTE ADDRESS: CHECK BOX IF YOU
HAVE WRITTEN SOMEONE ELSE'S ADDRESS
BECAUSE YOU FEAR HARASSMENT OR HARM.

Case 8:23-cv-02434-JWM Document 16-4    Filed 08/26/25    Page 123 of 273

# Exhibit C

Case 8:23-cv-02434-JWM Document 16-4    Filed 08/26/25    Page 123 of 273

🔍 Search    **gofundme**    ☰



# Help A #MeToo Survivor and Daughter Win Their Case

 Heather Liu is organizing this fundraiser.

---

🛡 Donation protected

---

**(中文版見後)**

**What I've experienced isn't what any woman should ever go through.** First there was the violence of non-consensual sex forced on me, followed by lies and denial. Then, rare moments of hope, followed by setbacks tinged with revenge from a father whose fear of revealing truth drives him to deny his child's existence. This child is my daughter. For 20 years I've hidden the nightmare involving her origin by my silence, partly due to the sense of shame and partly because the father of my child is a influential public figure. Till the rapist has pushed us to a corner by threatening our existence with vicious conspiracy theories.

（我經歷了任何一位女性都不該經歷的事情。先是遭遇性侵，接著還要面對謊言、抵賴和詆毀。過去20年來，間或閃現的希望，卻因我女兒的生父拒絕承認這孩子的存在，而淹沒在長久的幻滅中。過去20年來，我一直對女兒的身世三緘其口，讓一段揮之不去的夢魘深藏內心，一方面出於羞辱感，另一方面無法面對孩子的生父作為一個公眾人物給我心靈帶來的扭曲。）

**With your help, the truth of our experience will be told.** When it is, I hope justice will prevail. This is why I'm emerging from the shadows.

（因您伸出援手，我將得以說出這段真實的經歷。當真相大白的那一天到來，我希望正義能夠隨之彰顯。）

1/15/25, 6:16 PM                    Fundraiser by Heather Liu : Help A #MeToo Survivor and Daughter Win Their Case



(Charlotte and me in 2003)

**In 2000, I was a journalist working for a local Chinese newspaper in Los Angeles.** I was assigned to interview a famous Chinese dissident, a political refugee in America, who people called the "Godfather of the Democratic Movement in China." I wrote the story, but in doing so, my life was changed forever by his sexual assault of me.

（2000年，身為洛杉磯當地一家中文媒體記者的我，被派去採訪一位著名的中國異議人士，也是我本人非常敬仰的政治流亡者、一位被視為「中國民主運動之父」的風雲人物。我完成了採訪任務，然而我的個人生活卻因今生與他這唯一的遭逢而徹底脫軌。）

**Let's just say, nine months after I did that story, I gave birth to my daughter,** who bore no resemblance to my then-husband. My husband knew why since I'd told him about the sexual assault after it happened. My marriage ended, and my life as a single mom began. To protect my daughter and me from possible backlash about how she was conceived and her father's identity, I kept my ordeal quiet. The two of us moved to Hong Kong.

（在我做了那次採訪的9個月之後，我的女兒降生了。她跟我當時的丈夫長得一點也不像，而我丈夫也並不感到驚訝，因為我早跟他坦白了我遭遇性侵的事。我的婚姻其實從那時起已名存實亡，我作為一個單親母親的生涯也即將開始。為了遠離各種因孩子身世而產生的猜忌，讓我和孩子可以過安靜而屬於自己的生活，同時也為了可以就近得到父母家人的幫忙照顧，我帶著孩子離開了美國，赴香港尋找發展機會。）

Through the years I never **thought about contacting my daughter's biological father, whom I met only once.** I didn't consider doing this even after I lost my job as an editor in 2012. But then a former colleague, Beifeng, left Hong Kong for the United States. He'd criticized me for "depriving the child the right to be recognized by her father," and later persuaded me to let him bring a lock of my daughter's hair, wrapped it in tissue paper, that he took with him to the United States.

（多年來，我從未想過要聯絡孩子的生父，那個我只見過一面的人，哪怕是2012年我失業的時候也沒萌生這個打算。我根本已經忘記了這個人，要不是當時正要動身赴美的前同事北風（我告訴了他我的孩子生父是誰，但沒有讓他知道詳情，他也沒有探問）批評我「剝奪孩子認父的權利」。他太太當即揪了孩子幾根頭髮，用手紙包了起來。）

https://www.gofundme.com/f/help-a-metoo-victim-and-daughter-win-their-case?utm_source=twitter&utm_medium=social&utm_campaign=p_cp+shar…     2/20

(drawing by Charlotte)

**Months later, my heart sank when Beifeng reported back to me that this man had denied everything,** even the possibility of knowing me, let alone the possibility of having fathered a child. He'd committed this horrible crime against me, but he refused to acknowledge this truth. For to accept that he'd fathered a daughter, he'd have to admit how she came to existence. It appeared that he was refusing to allow his carefully crafted story about his "heroic" life to be marred by acknowledging his daughter's existence.

（幾個月之後，北風帶來消息並深表意外地說，孩子的生父得知自己可能有個孩子時的反應，竟是敷衍和閃躲，好像根本不可能有這回事一樣。他當然寧肯忘記自己做過的事，但真相怎麼能因你不想面對就可以不承認、孩子怎麼可以就這樣當她不存在呢？就像他後來在郵件裡提到的，他所關切的，是這事將來在他的回憶錄裡該怎麼寫，而不是他身為人父應該盡什麼責。他在意的只是他自己英雄般的人生，無論如何不能留下任何污點。）

**After this news reached me, I was diagnosed with clinical depression and started to see a doctor regularly.** Professionally, however, I had to appear calm and collected so I could earn a living that would support the two of us. I worked as a freelance writer and translator, while also raising my daughter on my own.

（我聞訊心裡沉了一下，不久開始意識恍惚，甚至試過下班下車記不起回家的方向。我遠在北京的母親聽說之後，在電話的另一頭啜泣得聲音哽咽。2013年2月，我被確診患上抑鬱症。失業更兼病倒，令我們母女的生計雪上加霜，這期間我成為自由撰稿人，還要硬撐著努力譯書維持生計。好在偶爾有父母幫手、妹妹接濟一下，才度過了一段危機。）



(drawing by Charlotte)

**Five years later, in 2018, in the midst of #MeToo movement, when sexual abuse and harassment were receiving public attention globally,** rumors spread online about this famous Chinese man having fathered an illegitimate child. At that point, I contacted him by phone from Hong Kong and boldly asked for child support.

（一晃又過了5年，時間到了2018年，在#MeToo（「我也是受害者」）運動的聲浪中，性侵和性騷擾現象的普遍存在引起了全球性輿論關注。在此期間，網上首次出現了對我女兒的生父「不認親」的議論。已變得反應遲緩的我這才開始應對，邁出了主動聯繫孩子生父這一步。）

**He agreed to a DNA test that was performed privately in Washington D.C..,** The DNA results proved that he was Charlotte's father. The person who shared the results with him said that he had responded positively to having a daughter. Accordingly, when I contacted him again, he promised to assist us by at least paying for her education. But later on, since I would not change my tone on the unhappy encounter with him in the past, he decided to deny being Charlotte's father and began to challenge the DNA results, shirked his responsibility as her biological father, and ignored that I was a victim of his violent sexual assault.

（他於是主動提出做個DNA鑑定，並指定了一位背景相當可靠的前白宮幕僚做中間人，在華盛頓特區進行了DNA樣本的收集與鑑定。結果出來後，中間人率先通知我，說結果證明魏先生是孩子的生父無疑，並告訴我，魏先生對鑑定結果表示認可並顯得「很開心」。據此，在我與孩子的生父再次聯繫時，他表示自己起碼會負擔孩子的大學學費。但真到了時候他又變卦了，甚至仗著沒有把DNA鑑定結果如約給我們，便想將已經做過DNA鑑定這事也想賴掉。）

1/15/25, 6:16 PM    Fundraiser by Heather Liu : Help A #MeToo Survivor and Daughter Win Their Case

(drawing by Charlotte)

**The rest of the story is detailed** in Huaizhao Liu v. Jingsheng Wei, case #1:19-cv-03344, which was heard in the Washington, D.C. federal court.  Charlotte's father managed to find the funds necessary to hire a high-powered defense attorney to help him to deny both our dignity and his  basic obligations of paternity.

（後來的事情見華盛頓特區聯邦法院卷宗（Case Number 1:19-cv-03344）。我女兒的生父大手筆聘請了專攻白領犯罪辯護的名牌大狀為自己的辯護律師，竭力搬弄法律條文進行技術性規避，想就此永遠掩蓋真相，踐踏我們母女的權益與尊嚴。）

**We believe that Charlotte's biological father should be forced to keep his promise** of supporting her education, and we are asking that he release the DNA test results to us. His 19-year old daughter deserves to know the truth.

（我們堅信，法庭應該為這位竭力否認已經做過親子鑑定的生父驗明正身，然後強制他履行他的諾言，承擔他女兒的學費。我們堅信，他19歲的女兒有權利知曉真相。）

**The weight of evidence is on our side,** but we risk losing the lawsuit that we are filing against him if we cannot  raise the money we need to hire an attorney who is as capable as his lawyer. What is at risk is Charlotte's right to a quality education, along with the legally binding acknowledgement of his paternity.

（儘管我們掌握活生生的證據，但如果籌不到聘請律師的費用，單憑我們自訴，將無法應對複雜的陪審團庭審程序。立案至今一年多來，被告採取躲和拖的戰術，先是躲傳票，然後提出「司法管轄權」爭議逼我們撤案，一計不成又援引「多國籍」條款，將案子從特區高等法院轉移到聯邦法院。）

https://www.gofundme.com/f/help-a-metoo-victim-and-daughter-win-their-case?utm_source=twitter&utm_medium=social&utm_campaign=p_cp+shar…    5/20



(Charlotte drawing)

**With your assistance – with your contributions – we intend to hire an attorney who is experienced in sexual assault and paternity cases.** We hope to win this #MeToo case and pursue respectful, equal and democratic human relationship in Chinese community.

（您的捐助將幫助我們聘請到專攻性侵案和親子案官司的律師，幫我們贏得這場事關尊嚴、平等、人權以及人性的人身傷害官司，並藉此推動美國的華人社區乃至全球華人的觀念進步與行為的現代化。）

Here are some **online stories and commentary about this, in Chinese:**
（以下是部分**有關此案的中文文章**：）

https://www.storm.mg/article/2891777?mode=whole
**廖亦武：《魏京生DNA認親案》**
(by Liao Yiwu, award winner of Human Rights Watch Hellman-Hammett Grant 2003, the German Geschwister-Scholl-Preis 2011 and the Peace Prize of the German Book Trade 2012.)
（作者/廖亦武，詩人、流亡作家與底層歷史記錄者。2012年德國書業和平獎得主，並曾獲美國《當代基督教》雜誌頒發的「最佳圖書獎」、德國書業協會頒發的「紹爾兄妹獎」、德國廣播協會頒發的「最佳廣播劇獎」及德國阿夏芬堡頒發的「公民勇氣獎」。2013年，法國政府頒發給廖亦武「法蘭西文學藝術軍官獎章」。2018年，廖亦武獲美國紐約瓦茨拉夫 哈維爾圖書基金會頒發「無懼危難作家獎」。）

http://minzhuzhongguo.org/MainArtShow.aspx?AID=105641
**齊家貞：《我認識的劉懷昭和魏京生》**
(by Qi JIazhen, writer in exile, author of autobiographical series: Tears of the Goddess of Liberty and Red Dog. Qi is the Chairwoman of the Women Writers committee, Independent Chinese PEN Center.)
（作者/齊家貞，流亡作家，著有系列傳記《自由神的眼泪──父女兩代囚徒的真實故事》（後改名《黑牆裡的倖存者》和《紅狗：一個被釋女囚的真實故事》在香港和台灣出版。齊家貞曾先後擔任國際筆會獨立中文筆會理事會理事、副會長、秘書長等職務，並在澳洲建立了"齊氏文化基金會"，每年頒發"推動中國進步獎"截至2019年已連續頒獎12屆。）

https://liuvswei.blogspot.com/2020/08/metoo.html
**劉家儀：夜深思考：社會民主運動中的Metoo - 淺談劉魏案**
(by Lau Kayee, Chairwoman of Network for Women In Politics, Hong Kong; Spokeswoman of Hong Kong Civil Human Rights Front.)
（作者/劉家儀，香港婦女參政網絡主席，六四新生代秘書長，支聯會常委，香港市民捍衛人權陣線發言人。）

**With your contributions, we will be able to set a positive example for #MeToo victims** by raising awareness about women's and children's rights, globally.

因您的資助，我們將能夠為#MeToo運動傷害者們建立一個積極的個案，為提高女性及孩童的權利意識而有所貢獻。



(drawing by Charlotte)

 Show your support for this GoFundMe

---

## Updates (7)

**July 13th, 2021**
by Heather Liu, Organizer

Help a Single Mother and Her Daughter Find Justice! (Endnote1)

Hi everyone, my name is Charlotte Zhang and I am 20 years old. I was born into a single-parent family. My mother raised me all alone in Hong Kong. We've had a lot of beautiful memories together but we also went through some really tough times. I remember when I was about 12, my mom lost her job as an editor. About the same time, she was diagnosed with depression. (Endnote 2) That was the time my world became shattered, and my mom struggled to put food on the table. I remember those moments when I returned home from the after-school tutoring center. I would enter my home in darkness, finding my mom absorbed in her work in front of her computer without remembering to turn the light on. Whenever I felt helpless, I would always imagine who my father was, with hopes that he would become our last resort to give us a helping hand in times of struggle. Little did I know that he would turn out to be our worst nightmare.

In 2018, a year before I graduated from high school, my mom reached out to my birth father. When I got home from school that day, I found my mom sobbing on the floor after hanging up a call. She said she had just got in touch with my father. She then told me that my father is Wei Jingsheng, a globally famous leader of Chinese human rights movements. From that point on, she gradually opened up to me about the terrible thing that happened to her 20 years ago.

My mom was a reporter for a Chinese newspaper in Los Angeles. One day in March 2000, she was assigned to conduct an interview with my birth father, Wei. After the interview, Wei suggested she go with him to a welcome banquet that was being held for him and to continue the interview. My mom went to the banquet with Wei and conducted additional interviews there. After that, she returned to her

Fundraiser by Heather Liu : Help A #MeToo Survivor and Daughter Win Their Case

office to write on the assigned interview story. Later that evening, Wei called my mom at her office and asked her to bring a copy of the interview story to his hotel room. Once she entered his room, Wei forcefully had sex with my mom without consent. My mom later found herself pregnant. Despite all the pressures she was facing, my mom gave birth to me.

It shocked me, even more, when I later learned that she was already married at the time when she conceived me, and my birth led to her divorce. As a young lady and career woman assaulted by a famous and powerful man, she kept it a private matter and raised me alone quietly. Meanwhile, as a socially conscious writer, no matter how hard the situation had become, she continued to participate in social issues she cared about.

When my mom reached out to Wei 18 years later, he demanded a private DNA test, which proved that I was his biological daughter. He accordingly contracted a promise to support my college tuition. However, he had never contacted us ever since. A year later, when the time came for him to fulfill his promise, for whatever the reasons, he changed his mind, and began to deny and lie. He repeatedly denied that he fathered a daughter and even denied that we had taken a DNA test.

In 2019, before I started college, my mom and I came back to my birth country with little money and much hope that we will find justice here. Shortly after we filed the case against my birth father, he and his secretary and the Executive of his foundation, Ciping Huang, started an unrelenting smear campaign to defame us, using every bit of his influence to spread conspiracy theories and vicious rumors about us, publicly framing us as "CCP agent". The secretary of Wei and the Executive of Wei Jingsheng Foundation, whom we have never ever met, has repeatedly exposed my birth certificate on her Twitter account, spread our very private personal information, and has been cyberbullying us with the most vicious and dirty language. "Porcelain-touching (i.e. blackmailing) mother and daughter", "Shameless sluts" and "bitches" are just a few of the most common terms we have been referred to. She posted photos of us and called me an "ugly big-mouthed Southeast Asian girl", and spread rumors that my mom is a sex worker. Beginning in 2019 and continuing to the present time, the unyielding attacks have brought us fear and caused injury to our standing in the community. Our emotional and mental health, as well as my mom's reputation and her pride as a writer and translator, is constantly being put at risk.

The lawsuit has been pending for two years. We have gone through different struggles over the past two years. We did not have money to hire an attorney. We heard things like "he is a powerful man, you can't fight him." We went "pro se" (without lawyers) several times while my birth father hired the most expensive lawyer against us. Before we found a capable lawyer, my mom would spend days and nights trying to fully comprehend a court document before starting to write a pleading on her own.

Thankfully, with the help of friends and supporters like you, we were able to raise some money and make it possible to look for a good lawyer. We had searched for long, been through a lot of frustrations and pains before having our new counsel, who won our hearts and even brought tears of appreciation to my mom's eyes with her first dedicated job. We are grateful for all the support we have received. Nevertheless, the legal process is still ongoing today. We need your support to continue the fight.

While the lawsuit is still pending, I am settling down and currently attending a community college here in my homeland as a straight-A student. Here I would like to share with you my study and my thoughts, for example, as reflected in one of my recent research papers: "The Fetishization of Asian Women in America". (Endnote 3)

I believe that life is full of opportunities, and God will make sure justice comes.

Truthfully yours,
Charlotte

"To do justice to the fatherless and the oppressed,

That the man of the earth may oppress no more".

(Psalm 10:18)

Endnote 1: The update is written and the title is given by Charlotte. All the endnotes are given by

USCA4 Appeal: 25-1914    Doc: 10-4    Filed: 08/21/2025    Pg: 43 of 106   Total Pages:(131 of 272)

Case 8:23-cv-01343-MM   Document 161-4   Filed 08/26/25   Page 132 of 273

Heather, Charlotte's mother.

Endnote 2: Obviously, Charlotte couldn't recall what happened a year earlier, when she was 11-year old when a lock of her hair was taken and brought to her father, Wei, by an ex-colleague of her mother. According to the ex-colleague who contacted Wei, Wei reacted to it with indifference when he was informed of his parentage of Charlotte.

Endnote 3: After careful consideration, I have decided not to publish Charlotte's academic paper here. Rather, I would like the attention to be focused on our ongoing legal pursuits. For the updated information of our new pleading, please visit Court's docket report on case number 1:21-cv-01553. https://www.pacermonitor.com/public/case/40546820/LIU_et_al_v_HUANG

See older updates

See older updates

<div style="text-align:center">Donate     Share</div>

## Donations (136)

⭐ See top

 Anonymous
**$50** · 1 yr

Anonymous
**$67** · 1 yr

Run Zan
**$100** · 1 yr

Sijie Fan
**$300** · 1 yr

Anonymous
**$600** · 1 yr

See all

## Organizer

**Heather Liu**
Organizer
Washington D.C., DC

Contact

## Words of support (6)

Please donate to share words of support.

 **Daniel Gong**
$300 · 3 yrs
I want a better world for my kids -- that's why I am supporting.

**Luanjiao Hu**

 $15 · 4 yrs

You are not alone. Sending hugs and power to you.

 **S D**
$10 · 4 yrs

Stay strong!

 **YH SU**
$300 · 4 yrs

Keep well. You are not alone

 **yingli wei**
$150 · 4 yrs

Be strong. Lots of love from Yingli xx

**Rong Zou**
$40 · 4 yrs

I trust you. So, you should imagine a world with love and courage, please. May you and your daughter have a beautiful future!

Created August 3rd, 2020 · Other

🏳 Report fundraiser

**$22,213 raised**
$100K goal · 136 donations

 22%

**Share**

**Donate now**

 Anonymous
**$50** · 1 yr

 Anonymous
**$67** · 1 yr

 Run Zan
**$100** · 1 yr

 Sijie Fan
**$300** · 1 yr

 Anonymous
**$600** · 1 yr

| See all | See top |

Fundraiser by Heather Liu : Help A #MeToo Survivor and Daughter Win Their Case

**Your easy, powerful, and trusted home for help**



**Easy**
Donate quickly and easily



**Powerful**
Send help right to the people and causes you care about



**Trusted**
Your donation is protected by the GoFundMe Giving Guarantee

# More ways to make a difference. Find fundraisers inspired by what you care about.

**Nearby** ⌄

# Exhibit D

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### CIVIL DIVISION

| | |
|---|---|
| **HUAIZHAO LIU,** | **Case No.**    **2019 CA 005052 B** |
| **Plaintiffs,** | |
| | **Judge Ebony M. Scott** |
| **v.** | |
| **JINGSHENG WEI,** | **Next Court Event:  Remote Status Hearing** |
| **Defendant.** | **March 8, 2024 at 10:00 a.m.** |

### OMNIBUS ORDER

This matter is before the Court on (1) Plaintiffs' Motion for Physical Examination, filed on January 4, 2023, Defendant's Opposition to Plaintiffs' Motion for Physical Examination, filed on March 3, 2023, and Plaintiffs' Reply in Support of Plaintiffs' Motion for Physical Examination, filed on April 3, 2023; (2) Defendant's Motion to Dismiss for Lack of Personal Jurisdiction, filed on July 31, 2023, Plaintiffs' Opposition to Defendant's Motion to Dismiss for Lack of Personal Jurisdiction, filed on August 31, 2023; and Defendant's Reply in Support of His Motion to Dismiss for Lack of Personal Jurisdiction, filed on September 7, 2023; and (3) Defendant's Motion for Voluntary Dismissal, filed on July 31, 2023, Plaintiffs' Opposition to Defendant's Motion for Voluntary Dismissal, filed on August 31, 2023, and Defendant's Reply in Support of His Motion for Voluntary Dismissal.

### I.    PROCEDURAL HISTORY

On July 31, 2019, Plaintiffs filed their Complaint, alleging that Defendant broke his promises to financially assist Plaintiff Liu and pay for Plaintiff Zhang's college tuition.  *See* Compl. ¶¶ 7-9.  Plaintiffs demand judgment against Defendant in the sum of $500,000 and request

that this Court: (1) declare that Defendant is the father of Plaintiff Zhang; (2) order Defendant to pay Plaintiff Zhang's college tuition; (3) award reasonable attorney fees and costs; and (4) grant all other such relief to Plaintiffs as the Court deems proper and equitable. *See generally id.* On October 23, 2019, Plaintiff filed an Amended Complaint. In the Amended Complaint, Plaintiffs allege that Defendant is the father of Plaintiff Charlotte Zang and Defendant broke all promises to provide financial assistance to Plaintiffs, as Defendant paid zero dollars to Plaintiffs from 2000 to present. *See* Am, Compl. ¶¶ 2, 4. Plaintiffs also allege that Defendant went to a party and made false and defamatory statements about Plaintiffs. *See id.* ¶ 12.

On November 6, 2019, Defendant Wei filed a Notice of Removal to the United States District Court for the District of Columbia. In the Notice, Defendant Wei alleges that removal was appropriate as the parties are not residents in the same state and the amount in controversy exceeds $75,000. While the case was at the District Court, on September 21, 2020, Defendant filed a Counterclaim seeking monetary and injunctive relief from Plaintiff Liu for defaming him by "falsely and publicly alleging that he raped her and for fraudulent inducement by tricking [Defendant] into sending her money" under false pretenses. Def.'s Countercl. Plaintiffs filed an Answer to the Counterclaim on October 12, 2020. *See* Pls.' Answer.

On October 3, 2022, the District Court remanded the case to the Superior Court. This Court held a Status Hearing on December 9, 2022. At the Status Hearing, the Plaintiffs sought a DNA Sample from Defendant. *See* Dec. 14, 2022 Order. The Court set a deadline for briefing on the paternity issue and required: (1) Plaintiffs to submit a Motion related to paternity testing on or before February 3, 2023; (2) Defendant to file a responsive brief on or before March 3, 2023; and (3) Plaintiffs to file a Reply on or before April 3, 2023. *Id.* At the next hearing, on June 30, 2023, the Court ordered the parties to brief the issues of: (1) whether D.C. Code §16-2342(c) is exclusive

to paternity proceedings; and (2) whether this Court has jurisdiction to hear this matter. *See* July 6, 2023 Order at 1. On July 31, 2023, Plaintiffs submitted a Supplemental Brief in Support of Plaintiffs' Motion for Physical Examination. Defendant submitted his Reply to Plaintiffs' Supplemental Briefing on August 31, 2023, one day late. On July 31, 2023, Defendant submitted a Motion to Dismiss for Lack of Personal Jurisdiction and Motion for Voluntary Dismissal. On August 31, 2023, a day after the Court required, Plaintiffs submitted Plaintiffs' Opposition to Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and Plaintiffs' Opposition to Defendant's Motion for Voluntary Dismissal. Defendant filed a Reply in Support of His Motion to Dismiss for Lack of Personal Jurisdiction and Reply In Support of His Motion for Voluntary Dismissal on September 7, 2023.

## II.    FACTUAL HISTORY

Plaintiff Liu was born in China. *See* Am. Compl, ¶ 1. Liu and Defendant Jingsheng Wei engaged in sexual intercourse in early 2000. *Id.* at ¶ 2. In Plaintiffs' Opposition to Defendant's Motion to Dismiss for Lack of Personal Jurisdiction, Plaintiff Liu alleges that the sexual encounter with Defendant was not consensual and in fact a sexual assault. *See* Pls.' Opp'n to Def.'s Mot. to Dismiss at 2. Around July 15, 2020, during the height of the "Me Too" movement, an article was widely published across China in which Plaintiff Liu alleged that Defendant raped her in 2000. *See* Def.'s Opp. to Pls.' Mot. for Physical Examination at 4-5.

As a result of the sexual encounter with Defendant, Plaintiff Liu became pregnant and in 2000 gave birth Plaintiff Zhang in California. *See* Am. Compl, ¶ 2. Plaintiffs allege that Defendant is Plaintiff Zhang's father and in 2018, a DNA test confirmed that Defendant is Plaintiff Zhang's father. *Id.* at ¶¶ 3, 5. Before 2018, Defendant did not speak with Plaintiffs, but Plaintiffs assert that in 2018, Defendant said "I am happy to have a daughter. She dropped from heaven" and

promised, "I will sell my house, I will help you." *Id.* at ¶¶ 6-7. Plaintiffs claim that Defendant promised to pay college tuition for Zhang in October 2018, but paid zero dollars to Plaintiffs, from 2000 to the present. *Id.* at ¶ 8-10.

Despite Plaintiffs' contention that Defendant is Plaintiff Zhang's father, Defendant claims that around May 2019, Defendant discovered that Plaintiff Liu was married to Meng Zhang when Plaintiff Zhang was born. *See* Def.'s Opp. to Pls.' Mot. for Physical Examination 4; Ex. B. Meng Zhang is listed on Plaintiff Zhang's birth certificate as her father. *Id.*

Separately, Defendant alleges that Plaintiffs are not residents of the District of Columbia. *See* Def.'s Answer 2. Defendant claims that Plaintiff Liu is a resident of Maryland and Plaintiff Zhang lived outside the country when Plaintiffs filed the initial Complaint. *See* Def.'s Opp, to Pls.' Mot. for Physical Examination at 2. Defendant contends that the address Plaintiffs identified in the Complaint is a P.O. Box in D.C. *Id.* at 5. Defendant asserts that he is a resident of Maryland and the address Plaintiffs listed on the Complaint is a business address that has not been a place of business for Defendant for approximately ten years. *See* Def.'s Answer 2.

In Plaintiffs' Amended Complaint, Plaintiffs allege a second cause of action, that Defendant made false and defamatory statements against Plaintiffs. *See* Am. Compl. ¶ 13. Plaintiffs describe Defendant as a regular participant in rallies and functions in the District of Columbia related to Defendant's work as an advocate for free China regarding the Chinese Community Party's human rights violations. *See* Pls.' Opp. to Def.'s Mot. to Dismiss for Lack of Pers. Jurisdiction at 2. Plaintiffs claim that Defendant plays an active role in the All-China Federation and Aesthetics and is the head of his own foundation, the Wei Jingsheng Foundation, which is located in the District of Columbia. *Id.* Plaintiffs claim that on September 30, 2019, Defendant attended an anti-Chinese Community protest in the District of Columbia and went to a

nearby apartment after the protest. *See* Am. Compl. ¶ 12. Plaintiffs assert that Xiangyang Li attended the meeting and reported on the event in a travelogue. *See* Pls.' Opp. to Def.'s Mot. to Dismiss for Lack of Pers. Jurisdiction at 2. Inside the apartment, upon being asked about "the illegitimate daughter," Plaintiffs allege that Defendant spoke about Plaintiffs to others and said things, including but not limited to: "Plaintiffs are fakes; they have been cheating a lot of people in China; this time they have been sent by CCP to come here, to interrupt my work; after I said Liu should do a DNA test, she shut up." *See* Pls.' Am. Compl. ¶ 12.

## III. DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

### A. Summary

#### i. *Defendant's Motion to Dismiss*

In Defendant's Motion to Dismiss, Defendant moves the Court to Dismiss the Amended Complaint and Petition filed by Plaintiffs for lack of personal jurisdiction. *See generally* Def.'s Mot. to Dismiss for Lack of Pers. Jurisdiction at 2. Defendant broadly asserts that this Court lacks personal jurisdiction over Defendant because none of Plaintiffs' claims arise from Defendant's business in the District, no tortious action occurred in the District, and none of the parties reside in the District. S*ee* Def.'s Memo. P. & A. in Supp. of Mot. to Dismiss for Lack of Pers. Jurisdiction at 1.

Citing *Harris v. Omelon*, Defendant asserts that Plaintiffs bear the burden of proving that the Court may establish personal jurisdiction over the Defendant. *See id.* at 5 (citing 985 A.2d 1103, 1105 (D.C. 2009). However, according to Defendant, Plaintiffs fail to establish general or specific jurisdiction. *Id.* Defendant first states that Defendant is not domiciled in the District nor does he maintain his principal place of business here, and therefore the Court lacks general jurisdiction. *Id. (*relying on D.C. Code § 13-422; *Islamic Am. Relief Agency v. Unidentified FBI*

*Agents,* 394 F. Supp. 2d 34, 56-57 (D.D.C. 2005)).  Second, Defendant alleges that the Court does

not have specific jurisdiction.  *Id.*  Defendant cites D.C. Code § 13-423(a), which states, in

pertinent part, that:

> A District of Columbia Court may exercise personal jurisdiction over a person, who
> acts directly or by an agent, as to a claim for relief arising from the person's – (1)
> transacting any business in the District of Columbia; . . . (3) causing tortious injury
> in the District of Columbia by an act or omission in the District of Columbia [.]

D.C. Code § 13-423(a)(1), (3).  Defendant also references D.C. Code § 13-422 by explaining that

personal jurisdiction based on "transacting any business" in the District corresponds with the

Constitution's due process limit.  *See* Def.'s Memo. P. & A. in Supp. of Mot. to Dismiss for Lack

of Pers. Jurisdiction at 6 (citing *Dickson v. United States,* 831 F. Supp. 893, 897 (D.D.C. 1993)

(quoting *First Chicago Int'l v. United Exch. Co., Ltd.,* 267 U.S. App. D.C. 27, 836 F.2d 1375,

1377 (D.C. Cir. 1988)).

Noting that Courts generally apply a two-step analysis based on the long-arm statute and

due process to determine whether they have jurisdiction over non-residents, Defendant outlines

why this Court does not have specific jurisdiction over Plaintiffs' claims against him.  *Id.*

Defendant asserts: (1) the Court lacks personal jurisdiction over Plaintiffs' breach of contract claim

because the alleged contract has no connection to the District; and (2) the Court lacks personal

jurisdiction over Plaintiffs' defamation claim because no damage occurred in the District.  *Id.* at

7-9.

First, Defendant asserts that Plaintiffs failed to show that the contract between the parties

was connected to the District.  *Id.* at 7.  Defendant notes that the alleged contract was not formed,

performed, or breached in the District.  *Id.*  Defendant cites *Geier v. Conway, Homer & Chin-

Caplan, P.C.,* 983 F. Supp. 2d 22, 33 (D.D.C. 2013), and avows that the case supports Defendant's

point that specific personal jurisdiction cannot be exercised in the District of Columbia on a claim

arising from a contract that was not "negotiated, entered into, performed, or breached in the District of Columbia." *Id.* According to Defendant, as the alleged contract—which was in fact an alleged gratuitous promise to sell Defendant's home and pay for Plaintiff Zhang's college—has no substantial connection to the District because it was not negotiated, formed, nor would any performance have occurred in the District, the Court lacks specific jurisdiction over Plaintiffs' breach of contract claim. *Id.*

Second, Defendant argues that the Court lacks jurisdiction because Plaintiffs' defamation claim, which stems from alleged comments that Defendant made while on a business trip to the District, did not arise from a business transaction in the District, nor did the claim cause tortious injury in the District. *See* Def.'s Memo. P. & A. in Supp. of Mot. to Dismiss for Lack of Pers. Jurisdiction at 7. Defendant continues that "purposeful, affirmative activit[ies]" directed at District residents must be conducted for a party to have "transacted any business" in the District. *Id.* (citing *Harris*, 985 A.2d at 1106). Defendant contends that although Plaintiffs allege that Defendant made defamatory statements about Plaintiffs at an event that took place in the District, none of the parties in this case lived or worked in the District at the time. *Id.* at 1 ("Plaintiffs have admitted in discovery they did not reside in this District at the time the litigation was filed"). Defendant substantiates its point by stating that in matters involving defamation, the associated injury occurs where the allegedly defamed person was located at the time the statement was made, as illustrated by *Etchebarne-Bourdin v. Radice,* 982 A.2d 752, 763 n.9 (D.C. 2009). *Id.* at 8. Defendant states that Plaintiffs' defamation claim is based on statements allegedly made by Defendant after a protest at the Embassy of the People's Republic of China, and the only reason the statements are connected to the District is because the Embassy is located in the nation's capital. *Id.* According to Defendant, this Court has cautioned against this kind of overly broad interpretation of D.C.'s

long-arm statute, where the claim's only connection to the District is directly related to Washington D.C.'s status as the nation's capital. *Id.* (citing *Lewy v. Southern Poverty Law Center*, 723 F.Supp.2d 116 (D.D.C. 2010).

Third, Defendant argues that the District does not have a significant interest in adjudicating the dispute. *See* Def.'s Memo. P. & A. in Supp. of Mot. to Dismiss for Lack of Pers. Jurisdiction at 9. Defendant asserts that none of the events alleged by Plaintiffs occurred in the District as none of the parties resided in the District before the institution of this litigation, Defendant has never lived in the District, and the sole alleged interaction between Defendant and Plaintiff Liu occurred over two decades ago in California. *Id.* Ultimately, Defendant requests that the Court grant its Motion and dismiss the matter with prejudice. *Id.*

### ii. Plaintiffs' Opposition

In Opposition, Plaintiffs note that they are both residents of the District of Columbia and that the District has general and specific personal jurisdiction over Defendant. *See* Pls.' Opp'n to Def.'s Mot. to Dismiss at 3.

First, Plaintiffs argue that D.C. Code § 13-423(a), which is the District's long-arm statute, establishes personal jurisdiction over Defendant because at the time of the September 2019 event that gives rise to the Plaintiffs' defamation claim, Defendant was President of the Wei Jingsheng Foundation, with its principal place of business located at 415 E. Capitol Street SE, Unit 2, which is in the District of Columbia. *Id.* at 3. Plaintiffs assert that Defendant made the defamatory statement while "personally in attendance at the September 30, 2019 meeting in the District." *Id.* Plaintiffs continue that the meeting was in connection with Defendant's attendance at a series of protests where he appeared and spoke on behalf of the Foundation, and as such, the act that caused the defamation arose from Defendant's transacting business in the District as President of the

Foundation. *Id.* at 4. Plaintiffs also argue that the Court may further exercise general personal jurisdiction over Defendant due to his "continuous and systematic" contacts with the District. *Id.* In support of this point, Plaintiffs cite *Helicopteros Nacionales Columbia, S.A. v. Hall*, 466 U.S. 408, 415 (1984) and *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). *Id.* Plaintiffs contend that because Defendant is President of the Foundation, which maintains its principal office in the District, and regularly conducts business within the District on behalf of said Foundation, the Court has general jurisdiction over Defendant. *See* Pls.' Opp'n to Def.'s Mot. to Dismiss at 4.

Second, Plaintiffs contend that this Court has specific jurisdiction over their breach of contract claim. *Id.* at 4 (citing *Geier*, 983 F. Supp. at 33). Plaintiffs assert that although all parties were non-residents of the District during contractual negotiations, by utilizing the services of Mr. Robert Suettinger to assist with the contract negotiations, who lived in the District at the time of the contract negotiations and contract performance, Defendant's actions are sufficient for specific jurisdiction purposes. *Id*. at 5. According to Plaintiff, the District Court's holding in *Geier,* 983 F. Supp. at 33*,* does not require each element of the formation of the contract, the performance, and the subsequent breach to take place in the District. *Id.* Instead, "as long as one of those aspects of the contract formation, performance, and breach took place in the District, that would be sufficient." *Id.*

Third, Plaintiffs argue that the Court has specific jurisdiction over the defamation claim due to Defendant's business relations in the District. *Id.* Plaintiffs contend that because they "definitely established that Defendant regularly conducts business in the District and that the defamation claim arose from [Defendant's] statements" that were made in connection with his business transactions in the District, this Court can exercise specific personal jurisdiction. *Id.* at

6.     According to Plaintiffs, there is "no doubt that Defendant's actions were 'purposeful, affirmative activities directed at D.C. residents.'" *Id.* (quoting *Harris,* 985 A.2d at 1106).

### iii. Defendant's Reply

In Defendant's Reply, Defendant requests that the Court dismiss the case without prejudice. *See generally* Def.'s Reply in Support of Mot. to Dismiss at 3.  Defendant argues that Plaintiffs failed to establish a connection between the District of Columbia and the breach of contract claim. *See id.* at 5.  Defendant rejects Plaintiffs' contention that Bob Suttinger, facilitator of the alleged talks between Defendant and Liu, can establish personal jurisdiction simply because Suttinger lived in the District during such communications. *Id*. at 5.  Defendant relies on *Geier,* 983 F. Supp. 2d at33 (D.D.C. 2013), to argue that the alleged contract is tenuous at best. *Id.* at 7.

Additionally, Defendant rejects Plaintiffs' argument that the Court has general jurisdiction over Defendant based on him regularly conducting business in the District of Columbia on behalf of the Foundation. *See id.* at 4.  Rather, Defendant claims that he and the Foundation are distinct from each other and there is no authority to support the argument that Defendant's role as the President of the Foundation grants the Court authority to exercise jurisdiction over Defendant in his personal capacity. *Id.*  Even if the Court found personal jurisdiction over the Foundation, Defendant argues this has no impact on the jurisdiction over Defendant. *See* Def.'s Reply in Support of Mot. to Dismiss at 4.  Defendant explains that in *Hourani v. Psybersolutions LLC*, 164 F.Supp.3d 128, 136 (D.D.C. 2016), the Court dismissed plaintiff's defamation and related claims because it could not exercise jurisdiction over non-resident defendants. *Id.*  Further, Defendant argues that in *Hourani,* the Court analyzed jurisdiction over each defendant and the defendant business separately, which serves as clear precedent and an on-point case. *Id.* at 4-5.

Next, Defendant argues that Plaintiffs failed to establish specific jurisdiction over the defamation claim. *See id.* According to Defendant, Plaintiffs attempt to connect Defendant's employment as the President of the Wei Jingsheng Foundation, Inc. to the case is an improper conflation, as the Foundation is a non-party with no claims against it and Defendant is a private individual who resides in Maryland. *See id.* Although Plaintiffs argue that their claims arise out of business transactions in the District of Columbia when Defendant made the alleged defamatory statements "as President of the Foundation" on behalf of the Foundation in front of the Chinese Embassy in the District, Defendant counters that the substance of Plaintiffs' claims do not relate to the Foundation's charitable or business operations. *Id.* at 8. Defendant asserts that he did not make the alleged statements in any connection to the Foundation's official business records, nor were they directed at any District residents. Def.'s Reply in Support of Mot. to Dismiss at 8.

Defendant also argues that despite Plaintiffs' attempt to connect Defendant with various political events, Courts have "held that a Defendant's contacts with the United States government do not factor into the personal jurisdiction analysis," as illustrated by the government contacts exception to the District's long-arm statute. *Id.* at 9 (citing *Lewy,* 723 F.Supp.2d at 116). Further, Defendant cites to authority which establishes that the "government contacts" exception "(1) protect[s] the right of citizens to freely access and petition the government and (2) prevent[s] the District of Columbia from becoming a national judicial center based solely upon parties' contacts with the federal government." *Id.* (citing *Lewy*, 723 F.Supp.2d at 125-26). Under this standard, Defendant argues that his professional activities with the Foundation within the District do not establish jurisdiction over him. *Id.* Instead, according to Plaintiff, these are the exact type of activities that *Levy* protects against. *Id.*

### B. Legal Standard

Two criteria must be met before a District of Columbia Court may exercise personal jurisdiction over a nonresident defendant. *See Companhia Brasileira Carbureto De Calcio v. Applied Indus. Materials Corp.*, 35 A.3d 1127, 1130 (D.C. 2012). First, the exercise of personal jurisdiction must be authorized by the District's long-arm statute. *Id.* The District of Columbia's long-arm statute is codified in D.C. Code § 13-423, and states:

> A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim or relief arising from the person's—
>
> (1) transacting any business in the District of Columbia;
> (2) contracting to supply services in the District of Columbia;
> (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;
> (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia;
> (5) having an interest in, using, or possessing real property in the District of Columbia;
> (6) contracting to insure or act as surety for or on any person, property, or risk, contract, obligation, or agreement located, executed, or to be performed within the District of Columbia at the time of contracting, unless the parties otherwise provide in writing; or
> (7) marital or parent and child relationship in the District of Columbia[.]

 When applying the long-arm statute to a nonresident defendant, the Court of Appeals has stated that the statute allows for "the exercise of personal jurisdiction over nonresident defendants to the fullest extent permissible under the Due Process Clause of the United States Constitution." *Companhia Brasileira De Brasileira*, 35 A.3d at 1130-31 (citing *Envtl. Research Int'l Inc. v. Lockwood Greene Eng'rs, Inc.*, 355 A.2d 808, 810-811 (D.C. 1976) (en banc)).

Second, in order to satisfy the requirements of due process, "the nonresident defendant must have had sufficient 'minimum contacts' with the forum . . . to justify subjecting him to the exercise of personal jurisdiction by its courts." *Envtl. Research*, 355 A.2d at 811. In determining whether there are sufficient minimum contacts, "'the most critical inquiry is not whether the nonresident defendant is physically present in the forum, but whether the defendant's contacts with the forum are of such a quality and nature that they manifest a deliberate and voluntary association with the forum' and are not 'fortuitous or accidental.'" *Harris*, 985 A.2d at 1105 (quoting *Mouzavires v. Baxter*, 434 A.2d 988, 995, 997 (D.C. 1981)). In making this determination, there must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum[.]" *Id.* at 1105-6 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). If the defendant purposefully avails itself of the District's benefits and protections, then "it is fair and reasonable to expect it to anticipate being sued in [the District.]" *Shoppers Food Warehouse*, 746 A.2d at 320 (2000).

### C. Analysis

The Court finds that Plaintiffs have pled sufficient facts to support this Court's exercise of personal jurisdiction over Defendant. Pursuant to D.C. Code § 13-423(3), Defendant's alleged defamation caused tortious injury in the District of Columbia, and therefore, asserting personal jurisdiction over the Defendant is consistent with both the long-arm statute and requirements of due process. Further, as the breach of contract claim is related to the defamation claim through a common nucleus of operative facts, the Court finds that it also has jurisdiction over Plaintiffs' breach of contract claim. Thus, for the reasons that follow, the Court denies Defendant's Motion to Dismiss.

It is well settled that in defamation actions, the injury is deemed to occur where the Plaintiff resides. *See Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 780 (1984); *see also Etchebarne-*

*Bourdin,* 982 A.2d at 763.   Therefore, it is proper for this Court to exercise personal jurisdiction over nonresidents that make defamatory statements about residents in the District.  Here, Defendant argues that the Court does not possess personal jurisdiction because neither party lives in the District.  *See generally* Def.'s Mot. to Dismiss for Lack of Pers. Jurisdiction.   Defendant's allegation that Plaintiffs do not live in the District rest on: (1) Plaintiffs' testimony where they admit they lived in Maryland for a period; and (2) the fact that Plaintiff Liu attached a P.O. Box and the address to a "Mail Ship & Print" shop to the Complaint instead of her residence.  *See* Def.'s Memo. P. & A. in Supp. of Mot. to Dismiss for Lack of Pers. Jurisdiction at 4.   However, at the Motion to Dismiss stage, the Court must view the facts in the light most favorable to the non-moving party.  *See Jordan Keys & Jessamy, LLP v. St. Paul Fire and Marine Ins. Co.*, 870 A.2d 58, 62 (D.C. 2005) ("In deciding a motion to dismiss, the [c]ourt accepts as true all allegations in the Complaint and views them in a light most favorable to the nonmoving party.").   Here, Plaintiff Liu declares that she and Plaintiff Zhang were never residents of Maryland and instead had a physical presence in the District when the case was originally filed in July 2019.  *See* Decl. of Huaizhao Liu in Opp. to Def.'s Mot. to Dismiss 2; *see also Thomas v. DAV Ass'n*, 930 A.2d 997, 1002 (2007) (authorizing the Court to rely upon "affidavits and other written materials" used by Plaintiffs to satisfy their burden of making a *prima facie* showing that the Court has personal jurisdiction over the defendant when no evidentiary hearing on personal jurisdiction is conducted)   Relatedly, Plaintiffs also avow that they provided substitute addresses out of fear of harassment.  *Id.*  Based on the aforementioned proclamations, the Court finds that a reasonable juror could find that Plaintiffs are residents of the District, which, warrants the Court's jurisdiction over Defendant based on the alleged defamation.

Furthermore, the Court notes the District of Columbia Court of Appeals' adoption of "pendent personal jurisdiction," which explains that:

a court may assert personal jurisdiction over a defendant with respect to a claim for which there is no independent basis of personal jurisdiction so long as it arises out of a common nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction.

*Oetiker v. Jurid Werke GmbH*, 556 F.2d 1, 5, 181 U.S. App. D.C. 124 (D.C. Cir. 1977); *Sissoo v. Islamic Republic of Iran*, 448 F. Supp. 2d 76, 90-91 (D.D.C. 2006).  In applying pendent personal jurisdiction, the Court finds that both of the Plaintiffs' claims arise from a common nucleus of operative facts.  Specifically, both Plaintiffs' defamation claim and breach of contract claim are related to issues based on paternity, whether Defendant upheld his alleged promise to offer financial support, and the veracity of Plaintiff Liu's allegations against Liu.  As the Court has jurisdiction over Plaintiffs' defamation claim for the reasons stated above, the Court also has jurisdiction over Plaintiffs' breach of contract claim.  Accordingly, the Court denies Defendant's Motion to Dismiss.

## IV.    DEFENDANT'S MOTION FOR VOLUNTARY DISMISSAL

### A.  Summary

#### i.    *Defendant's Motion for Voluntary Dismissal*

In Defendant's Motion for Voluntary Dismissal, Defendant moves the Court to permit Defendant to voluntarily dismiss without prejudice all claims in his Counterclaim against Plaintiff/Counter-Defendant Liu.  *See generally* Def.'s Mot. for Voluntary Dismissal.  Defendant asserts that if he knew at the time of filing that Plaintiffs did not properly bring the matter in the District, Defendant would not have filed the Counterclaim in the District of Columbia, and, pursuant to Super. Ct. Civ. R.  41(a)(2), the Court can dismiss Defendant's Motion on terms that it considers proper.  *See id.* at 1, 4.  In support of his claim, Defendant cites to *Musgrove v. Brookings Inst.*, which states, "[a] court applying Rule 41(a)(2) must consider (1) whether the [claimant] seeks the motion for voluntary dismissal in good faith, and (2) whether the dismissal

would cause the [opposing party] 'legal prejudice.'" *Id.* at 2. (citing Civil Action No. 13-1794 (ABJ), 2015 U.S. Dist. LEXIS 52309, at *2 (D.D.C. Apr. 14, 2015) (quoting *Mittakarin v. InfoTran Sys., Inc.,* 279 F.R.D. 38, 41 (D.D.C. 2012))).  As to the first consideration, Defendant claims that the request is made in good faith.  *Id.*  Defendant states that he filed the Counterclaim after the case was removed to federal court and discovery later revealed that none of the claims were properly brought in the District as none of the parties lived in the District at the time the suit commenced, and therefore, this Court lacks jurisdiction.  *Id.*  Defendant asserts that he filed the Counterclaim on the basic assumption that federal courts could exercise subject matter jurisdiction.  *Id.*  Defendant argues that he acted diligently by moving for a dismissal or transfer to the United States District Court of Maryland (where Defendant lives) and then objected to the personal jurisdiction of the Superior Court.  *Id.* at 2-3.

Defendant further claims that Plaintiffs will not suffer any legal prejudice as a result of dismissal.  *See* Memo. P. & A. in Supp. of Mot. for Voluntary Dismissal at 3.  Defendant cites *Guevara v. Onyewu* to claim that courts consider the following factors when considering whether the dismissal would cause the opposing party legal prejudice: "(1) the opposing party's trial preparation efforts; (2) any excessive delay or lack of diligence by the moving party in prosecuting the action; (3) the adequacy of the moving party's explanation of the need for dismissal, and (4) the stage of litigation, especially whether a motion for summary judgment by the opposing party is pending." 2012 U.S. Dist. LEXIS 206055, at *3 (D.D.C. Mar. 23, 2012).   Defendant argues that: (1) the parties only conducted partial discovery, no trial date is set, and neither party engaged in extensive trial preparation; (2) Defendant diligently pursued personal jurisdiction issues; and (3) Plaintiffs did not file a motion for summary judgment and Defendant is not facing a dispositive motion from Plaintiffs.  *See* Memo. P. & A. in Supp. of Mot. for Voluntary Dismissal at 5-6.

In conclusion, Defendant argues that all factors under *Guevara* weigh in favor of Defendant's Motion and dismissal without prejudice is appropriate under Rule 41(a)(2).

### ii.      *Plaintiffs' Opposition*

In Plaintiffs' Opposition, Plaintiffs request that the Court dismiss Defendant's Counterclaim with prejudice and in the alternative, requests that the Court condition a dismissal without prejudice if Defendant pays Plaintiffs' attorneys' fees and costs, or that the Court deny Defendant's Motion.  *See* Pls.' Opp. to Def.'s Mot. for Voluntary Dismissal at 1.

Plaintiffs first assert that the District of Columbia possesses specific and general personal jurisdiction over Defendant.  *Id.* at 2.  Plaintiffs claim that the defamatory statements said by Defendant occurred at an event in the District of Columbia, which Defendant attended on behalf of the Wei Jingsheng Foundation.  *Id.* at 2-3.  Additionally, Plaintiffs emphasize that the District has always had jurisdiction over Defendant "due to his "continuous and systematic" contacts that "give rise to general jurisdiction."  *Id.* at 3 (citing *Hourani,* 164 F.Supp.3d at 136; *see Helicopteros Nacionales De Columbia, S.A.* 466 U.S. at 415; *see also World-Wide Volkswagen Corp.*, 444 U.S. at 297.

Plaintiffs next assert that Super. Ct. Civ. R. 41(a)(2), which is substantially identical to the federal rule, supports awarding costs and attorneys' fees as part of a voluntary dismissal.  *Id.* at 4 (citing *Thoubboron v. Ford Motor Co*., 809 A.2d 1204, 1210 n.6 (D.C. 2002); *see also Cauley v. Wilson*, 754 F.2d 769, 772 (7th Cir. 1985)).  Plaintiffs cite Court of Appeals precedent to assert that "[t]he Court of Appeals has held that granting costs and attorneys' fees as part of a voluntary dismissal is customary."  *Id.* at 5 (citing *In re Caolmiris*, 3 A.3d 308, 313 (D.C. 2010)).

Plaintiffs claim that they would be significantly prejudiced if the Court dismissed the Counterclaim without prejudice.  *See* Pls.' Opp. to Def.'s Mot. for Voluntary Dismissal at 5.

Plaintiffs represent that they incurred $48,277.50 in attorneys' fees and $38.00 in costs with this matter and the bulk of time concerned Defendant's Counterclaim. *See* Pls.' Opp. to Def.'s Mot. for Voluntary Dismissal at 6; *see also* Declaration of Katrina A. Nguyen.

According to Plaintiffs, Defendant is attempting to avoid any unfavorable outcome from the Rule 35 Motion by dismissing the Counterclaim. *See* Pls.' Opp. to Def.'s Mot. for Voluntary Dismissal at 5-6. Plaintiffs note that at the Court's Status Hearing on June 30, 2023, Defendant represented that if the Court was inclined to grant the Rule 35 Motion, then the Defendant would choose to dismiss the Counterclaim in lieu of having the Rule 35 Motion granted. *Id.* at 5. Plaintiffs claim that the results of the Rule 35 Motion would rest on the main factual issue in dispute: "whether Defendant and Plaintiff Liu had a sexual encounter that led to the birth of Plaintiff Zhang." *Id.* at 5-6. If the results established Defendant as Plaintiff Zhang's father, then Plaintiffs would file for summary judgment to dismiss Defendant's Counterclaim with prejudice. *Id.* at 6. Plaintiffs argue that by filing for voluntary dismissal, Defendant is attempting to avoid this outcome. *Id.* Therefore, if the Court dismisses the Counterclaim without prejudice before the Court decides the Rule 35 Motion, Plaintiffs assert they will face a real and substantial detriment. *Id.*

Additionally, Plaintiffs attached the Declaration of Katarina A. Nguyen to support Plaintiffs' Opposition to Defendant's Motion for Voluntary Dismissal. Ms. Nguyen is an associate of Steven Krieger Law, PLLC ("SKL") and counsel for Plaintiffs. *See* Dec. of Katarina A. Nguyen ¶ 1. Ms. Nguyen urges the Court to award attorneys' fees and costs. *Id.* at ¶ 5. Nguyen represents that her hourly rate is $400, but as part of SKL's work representing "modest means" clients, SKL agrees to charge rates on a sliding scale based on the client's income. *Id.* at ¶¶ 6-7. Plaintiffs agreed to pay $350 an hour for Ms. Nguyen, Ms. Nordvik, and Ms. Murphy, $375 per hour for Mr.

Krieger, and $125 per hour for Ms. Thode, Ms. O'Leary, and Ms. Patino.  *Id.* at ¶ 11.  Ms. Nguyen states that SKL performed a total of 135.3 attorney hours and 7.1 administrative and paralegal hours, which totals to $48,277.59 in fees and $38.00 in costs.  *See* Dec. of Katarina A. Nguyen ¶ 12.  Ms. Nguyen also attaches a record of the breakdown of the fees and expenses SKL performed.  *Id.* at ¶ 13.

Further, Ms. Nguyen explains that this case involves complex civil procedural and Constitutional matters.  *See id.* at ¶ 15.  Ms. Nguyen points out that cases as such are usually more challenging and create a higher stake for the client.  *Id.*  Ms. Nguyen also notes the skill requisite to perform the legal service properly as a baseline of knowledge in civil procedure, evidence, contracts, defamation, and constitutional analysis of First Amendment issues.  *Id.* at ¶ 16.

Moreover, Ms. Nguyen claims that as a solo-practitioner and Executive Director for Access to Justice Lawyer Referral Service, her resources and time are limited and her ability to take on cases is highly dependent on her current case load.  *Id.*  Additionally, Ms. Nguyen identifies Court of Appeals and federal cases that awarded attorneys' fees in connection with a Rule 41(a) voluntary dismissal.  *Id.* at ¶ 18 (*See e.g.*, *McLaughlin v. Cheshire*, 676 F.2d 855, 856 (D.C. Cir. 1982); *Beard v. Sheet Metal Workers Union, Local 150*, 908 F.2d 474, 475 (9th Cir. 1990); *Cauley*, 754 F.2d at 770.

Ms. Nguyen continues her request for attorneys' fees and costs by explaining to the Court that each attorney on the case has eight or more years of experience in civil litigation.  Additionally, one of the attorneys on the case, Mr. Krieger, published five law review articles on issues related to access to justice.  *Id.* at ¶ 23.

### iii.    Defendant's Reply

In Defendant's Reply, Defendant requests the Court dismiss Defendant's Counterclaim without prejudice. *See generally* Def.'s Reply in Support of his Mot. for Voluntary Dismissal.

Defendant asserts that Plaintiffs' request for attorneys' fees in response to Defendant's request to voluntary dismissal without prejudice of the Counterclaim is based on "revisionist history." *See id.* at 1. Defendant highlights that Plaintiffs do not argue that Defendant acted in bad faith Under Rule 41(a)(2). *See id.*

Defendant contends that Plaintiffs improperly rely on *Thoubboron v. Ford Motor Co.*, 809 A.2d 1204, 1210 (D.C. 2002), and *In re Caolmiris*, 3 A.3d 308, 313 (D.C. 2010), to argue that the Court should award Plaintiff attorneys' fees from the voluntary dismissal of Defendant's Counterclaim. *See id.* at 3-4. Defendant claims that *Thoubboron* is inopposite because it did not involve a counterclaim and the reasons for dismissal did not involve a party's misrepresentation and concealment of facts. *See id.* at 4; *Thoubboron*, A.2d at 1211. Furthermore, Defendant argues that *In re Caolmiris* is distinguishable, because fees and costs were not awarded in that case. *See* Def.'s Reply in Support of his Mot. For Voluntary Dismissal at 4; *In re Caolmiris*, 3 A.3d at 313.

Defendant asserts that even if the Court determined fees to be appropriate, the fees Plaintiffs demand are not limited to the Counterclaim, rather they also include claims in the Amended Complaint and Petition. *See* Def.'s Reply at 5. Specifically, Defendant alleges that Plaintiffs' request for attorney's fees consist of work outside the Counterclaim, including work on discovery, depositions, response to the Motion to Dismiss, and Rule 35 motion. *Id.* at 5-6. Moreover, Defendant claims that Plaintiffs do not explain how their request for attorney's fees could not be applied to any future litigation. *Id.* at 6. Thus, Defendant argues that the Court should

not award Plaintiffs attorney's fees, because Defendant acted promptly and in good faith and

Plaintiffs' misrepresentations about their domiciles are to blame for the jurisdictional issues. *Id.*

### B. Legal Standard and Analysis

Pursuant to Super. Ct. Civ. R. 41(a)(2):

> an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper. If a defendant has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, the action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication. Unless the order states otherwise, a dismissal under Rule 41(a)(2) is without prejudice.

As illustrated by the rule, the trial court has broad "discretion to condition a voluntary dismissal

without prejudice 'upon such terms and conditions as the Court deems proper.'" *Thoubboron,* 809

A.2d at 1211.

At the outset, the Court notes that Defendant's Motion for Voluntary Dismissal is premised

on the assumption that the Court would grant Defendant's Motion to Dismiss for Lack of Personal

Jurisdiction. Given that this assumption did not materialize, and Defendant did not include an

alternate request to account for the current posture (i.e., the denial of Defendant's Motion), the

Court is left to determine solely whether dismissal is proper under Rule 41(a)(2). The Court finds

that it is, and will dismiss the Counterclaim with prejudice. However, the Court uses its discretion

to decline Plaintiffs' request for attorney's fees as the record does not demonstrate that Defendant

acted in bad faith. The Court also notes that Plaintiffs' request for attorney's fees are not limited

to Defendant's Counterclaim. Surely the Court must refrain from granting Plaintiffs attorney's

fees for all litigation efforts in the case.

## V. PLAINTIFFS' MOTION FOR PHYSICAL EXAMINATION

### A. Summary

#### i.      *Plaintiffs' Motion for Physical Examination*

In Plaintiffs' Motion for Physical Examination, Plaintiffs request that the Court order the sampling and testing of Defendant's DNA pursuant to Super. Ct. Civ. R. 35. *See* Pls.' Mot. for Physical Examination at 1. Plaintiffs assert that that paternity would address the following: (1) the agreement between Plaintiffs and Defendant that Defendant would pay for Plaintiff Zhang's college; and (2) the defamatory statements Defendant made about Plaintiffs being "fakes" and that they "shut up" when asked to perform a paternity test. *See* Pls.' Mot. for Physical Examination at 1. Noting that "this action is a complex confluence of claims that all turn on a single primary issue: the parentage of Plaintiff Zhang," Plaintiffs argue that good cause exists to test Defendant's DNA. *See* Pls.' Memo. P. & A. in Supp. of Mot. for Physical Examination at 2. Specifically, Plaintiffs state that D.C. Superior Court Rule 35(a) permits the Court to "order a party whose mental or physical condition—including blood group—is in controversy to submit to physical or mental examination by a suitably licensed or certified examiner." *Id*. However, as Plaintiffs assert, Super. Ct. Civ. R. 35 "requires the court to make an initial determination regarding 'good cause' before the parties are allowed to proceed." *Id*. at 2-3; *Neuman v. Neuman*, 377 A.2d 393, 398 (D.C. 1977). Under this requirement, Plaintiffs argue that good cause exists to test Defendant's DNA, as it would resolve outstanding issues in the case, specifically:

> whether Plaintiff Liu was "falsely" claiming Defendant was Plaintiff Zhang's father in order to get "money" from him, as argued in the Counterclaim; whether Plaintiffs are "fakes," by asserting that Defendant is Plaintiff Zhang's father; and, whether the condition precedent of parentage in the asserted contract between Plaintiffs and Defendant (that Defendant would pay for his daughter's educational expenses) has been met.

*See* Pls.' Memo. P. & A. in Supp. of Mot. for Physical Examination at 2.  Plaintiffs contend that the

results of the DNA test largely determine the outcome of this case and the claims.

Next, Plaintiffs argue that the proposed testing service is reliable.  *See id.* at 3.  In Defendant's

deposition, Defendant took issue with the reliability of many commercial testing services.  *Id.*

Plaintiffs acknowledge this and avow that they have selected a service that "utilizes approximately

46 genetic markers, and is accredited by the AABB."  *Id.* at 4.  Therefore, Plaintiff requests the Court

grant the motion and order Defendant to submit DNA sampling through buccal swab at the

DDC/DNA Diagnostics Center in Maryland to resolve the outstanding issues.  *Id.*

> ii.    *Defendant's Opposition to Plaintiffs' Motion for Physical Examination*

In Opposition,  Defendant first asserts that Plaintiffs' Motion for Physical Examination should

be denied because the Court lacks personal jurisdiction over Defendant.  *See* Def.'s Opp. to Pls.' Mot.

for Physical Examination at 7.  Defendant next requests that the Court deny Plaintiffs' Rule 35(a)

request to force Defendant to submit a paternity test, because paternity is not in controversy and

good cause does not exist.  Defendant states that paternity tests have only been awarded in the

District under Super. Ct. Civ. R. 35 in divorce cases or in suits to establish child support and with

respect to a minor child, which is not the case here.  *Id.* at 3.  Defendant contends that paternity is

not in controversy because Plaintiff Zhang has a presumed father and Plaintiffs' challenge to

paternity is untimely.   *See id.* at 13.  Defendant cites D.C. Code § 16-2342(c) to argue that "a

proceeding to rebut the parentage of a child where there is a presumed parent under § 16-909(a)(1)

must be commenced not later than 2 years after the birth of the child, after which time the

presumption becomes conclusive."  *Id.*; *see also* D.C. Code § 16–2342(c).  Specifically § 16-

909(a)(1) provides that "a presumed father exists where 'he and the child's mother are or have

been married . . . at the time of either conception or birth, or between conception and birth, and the

child is born during the marriage[.]'" *See id.* at 13; *see also* D.C. Code § 16-909(a)(1). Defendant argues that Meng Zhang is Plaintiff Zhang's presumptive father under the law. *See id.* at 14. Defendant notes that Plaintiff Liu admits that her and Meng Zhang were married when Plaintiff Zhang was conceived and born and Meng Zhang is listed as Plaintiff Zhang's father on her birth certificate, which Plaintiff Liu signed. *See* Def.'s Opp. to Pls.' Mot. for Physical Examination; *see also* Def.'s Ex. B. Moreover, Defendant asserts that Plaintiffs were required to challenge Plaintiff Zhang's parentage within two years of her birth. *Id.*; *see also DeHart v. Ruffin*, 2015 D.C. Super. LEXIS 13, *49 (D.C. Super. Ct. 2015) ("the Court may not order genetic testing… [where] 'the child has a presumed parent under 16-909(a)(1) or 16-909(a-1)(2) and no proceeding to rebut the presumption was filed within the time provided in 16-2342(c) or (d)."). However, according to Defendant, Plaintiffs did not bring litigation to rebut the presumption that Meng Zhang is Charlotte's father until more than eighteen years after Plaintiff Zhang's birth. *Id.* at 14. Therefore, Defendant argues that the Court no longer has authority to adjudicate Plaintiff Zhang's parentage. *Id.*

Defendant further argues that the requested DNA evidence is not relevant or determinative of Plaintiffs' claims. *See* Def.'s Opp. to Pls.' Mot. for Physical Examination at 14. Defendant claims that the issue of paternity has no bearing on whether a contract existed between the parties and if it was breached. *Id.* Plaintiffs contend that Plaintiff Zhang's parentage is a condition precedent to the alleged contract, but Defendant asserts that there are no allegations in the Amended Complaint that suggest a condition precedent to the alleged contract. *Id.*; *See also* Am. Compl. Rather, Defendant contends that his alleged promises to sell his house and pay for Plaintiff Zhang's college lacks sufficient consideration. See *id.* Defendant argues that the paternity test has no bearing on Plaintiffs' defamation claim. *Id.* Even if Defendant's alleged statements were

actionable, Defendant asserts that none of the statements will be proven true or false based on the paternity test, nor will it have any bearing on Defendant's intent when making the claims. *Id.* at 15.

Additionally, Defendant rejects Plaintiffs' argument of good cause to support the Rule 35(a) request. Defendant argues that Plaintiffs improperly rely on *Neuman v. Neuman*, 377 A.2d 393, 399 (D.C. 1977) and *Beckwith v. Beckwith*, 355 A.2d 537, 544 (D.C. 1976) in Plaintiffs' argument that Defendant must submit a DNA test under Rule 35(a). *See* Def.'s Opp. to Pls.' Mot. for Physical Examination at 16. Defendant explains that *Neuman* is not on point, because it involved a divorce case and the Court denied a Rule 35(a) motion. *Id.* According to Defendant, *Beckwith* is not on point either, as the Court based its ruling on D.C. Code § 16-2343, not on Rule 35. *Id.* D.C. Code § 16-2343 follows a different analysis than Rule 35(a), and Defendant contends that Section 16-2343 precludes Plaintiffs' request. *Id.* at 17. Defendant then reiterates that in this jurisdiction, courts only order paternity tests under Super. Ct. Civ. R. 35 in divorce cases or to establish child support for a child under two years old. *Id.* Therefore, Defendant claims that Plaintiffs failed to establish good cause necessary for the paternity test under Rule 35(a). Accordingly, Defendant requests that the Court deny Plaintiffs' Motion for Physical Examination. *Id.* at 22.

### iii.    *Plaintiffs' Reply in Support of Plaintiffs' Motion for Physical Examination*

In Plaintiffs' Reply, Plaintiffs assert that it is unfair and prejudicial for Defendant to raise two principal arguments that are not pertinent to a Rule 35 motion. *See* Pls.' Reply in Support of Pls.' Mot. For Physical Examination at 1. Defendant raised a personal jurisdiction argument and the issue of whether Plaintiffs' claims are viable. *See generally* Def.'s Opp. to Pls.' Mot. for Physical Examination. Plaintiffs argue that these arguments are not pertinent a Rule 35 motion and that

Defendant should be required to present these matters as a separate motion.  *See* Pls.' Reply in Support of Pls.' Mot. For Physical Examination at 1.

In response to Defendant's contentions, Plaintiffs argue that Defendant placed the paternity of Plaintiff in controversy.  *See id.* at 1-2.  Plaintiffs dispute Defendant's assertion that the factual question of who Plaintiff Zhang's biological father actually has been determined by the birth certificate.  *Id.* at 2.  Plaintiffs further contest Defendant's argument that D.C. Code § 16-2342(c) is the applicable statute.  *Id.*  Plaintiffs assert that section 16-2342© would operate if Plaintiffs were seeking statutory child support payments, but that is not the case.  *Id.*  Rather, Plaintiffs brought suit for defamation, which Plaintiffs argue has nothing to do with a statutory presumption.  *Id.*  Plaintiffs contend that paternity is at issue, because establishing that Defendant is Plaintiff Zhang's biological father would demonstrate that Defendant's statements about Plaintiffs as "fakes" attempting to "trick" Defendant to "get money" were false.  *Id.*  Similarly, Plaintiffs argue that proof of paternity would exhibit that Defendant's statement that Plaintiff Liu "shut up" at the request of a DNA test was said with malice.  *Id.*

Plaintiffs further argue that Defendant's own pleading and Counterclaim establish that Plaintiff Zhang's parentage is a matter in controversy.  *See* Pls.' Reply in Support of Pls.' Mot. For Physical Examination at 3.  Moreover, Plaintiffs assert that the cases Defendant cites, such as *DeHart v. Ruffin*, 2015 D.C. Super. LEXIS 13, *49 (D.C. Super. Ct. 2015), are not on point.  *Id.* at 4. Plaintiffs argue that *Dehart* pertained to the Court's power to order genetic testing under D.C. Code § 16-3443(a) and does not pertain to the Court's powers to order physical examinations under Rule 35.  *Id.*

Plaintiffs next assert that they established good cause in the Rule 35 Motion.  *See* Pls.' Reply in Support of Pls.' Mot. For Physical Examination at 4.  Plaintiffs contend that Defendant improperly

rely on child support cases, but a paternity test is not the basis for this case. *Id.* Rather, Plaintiffs argue that a positive result from a DNA test would establish whether there was a "sexual encounter" between Defendant and Plaintiff Liu and if Plaintiff Zhang is Defendant's biological child, which would address the allegations of misrepresentation in the Counterclaim. *Id.* Plaintiffs assert that there is good cause for the Rule 35 Motion and that case law supports that pleadings alone establish the necessary criteria for a Rule 35 examination request. *Id.* at 4-5*; see also Shepard v. American Broadcasting Companies, Inc.*, 151 F.R.D. 194, 212-213 (D.D.C. 1993); *Gattegno v. Price Waterhouse Coopers, LLP*, 204 F.R.D. 228 (D. Conn. 2001). Thus, Plaintiffs request that the Court order the Super. Ct. Civ. R. 35 motion.

####    iv.    Plaintiffs' Supplemental Brief in Support of Plaintiffs' Motion for Physical Examination

In Plaintiffs' Supplemental Brief in Support of Plaintiffs' Motion for Physical Examination, Plaintiffs request that the Court grant their Motion. *See* Pls.' Supp. Brief in Supp. of Pls.' Mot. for Physical Examination.

Plaintiffs originally filed the paternity case in the Family Court, Parentage and Support Branch, where Plaintiff Liu, as a *pro se* litigant, filed a Petition to Establish Parentage and/or for Child Support. *See id.* at 2. Plaintiffs filed the action approximately one year after the original breach of contract and defamation Complaint. *Id.* Defendant removed both cases to federal court. *Id.* at 3. The parties stipulated that the defamation and paternity cases should be consolidated if the defamation case was remanded to this Court. *Id.* Judge Jia M. Cobb ordered that the defamation and paternity cases would be consolidated for trial and remanded the case to this Court. *Id.* However, Plaintiffs assert that based on the records transmitted by the District Court and the dockets, the District Court failed to transmit the records of the paternity case with the records of the defamation action. *Id.* Plaintiffs argue that these means the paternity case remains open and remanded to this Court. *Id.*

Plaintiffs also argue that D.C. Code § 16-2342 should not have bearing on the outcome of the defamation case. *See* Pls.' Supp. Brief in Supp. of Pls.' Mot. For Physical Examination at 4. Plaintiffs claim that Section 16-2342's references to "proceedings" apply only to cases that were commenced specifically as parentage determinations, as opposed to any other hearing where determining paternity is incidental to a non-parentage case." *Id.* at 5. Although the Complaint and Counterclaim for defamation may touch on issues of paternity, Plaintiffs assert that neither seek to determine Plaintiff Zhang's parentage. *Id.*

Plaintiffs cite *Felder v. Allsopp*, 391 A.2d 243, 245 (D.C. 1978) to further argue that D.C. Code § 16-2342 does not apply to any matter that does not seek to establish paternity to enforce a support obligation. *See* Pls.' Supp. Brief in Supp. of Pls.' Mot. for Physical Examination at 5-6. If D.C. Code § 16-2342 did apply, Plaintiffs argue that it would bar any claims that had not yet occurred or become ripe by the time under D.C. Code § 16-2342. *Id.* at 6. Therefore, if section 16-2342 limited a defamation action to one year of Plaintiff Zhang's birth, Plaintiffs claim that it would have required a filing long before any words spoken by the Defendant on the matter. *Id.* Plaintiffs contend that Plaintiff Zhang's existence is incidental to the case and the purpose of the DNA sample is to determine whether the statements by the Defendant (that the Plaintiffs are "fakes") are false. *Id.* at 7.

Plaintiffs assert that the consolidation of the two cases does not demand a different conclusion because consolidated cases retain their "separate and distinct status." *See* Pls.' Supp. Brief in Supp. of Pls.' Mot. for Physical Examination at 7; *see also Bowles v. Marsh*, 82 A.2d 135, 137-38 (D.C. 1951); *Gibson v. Industrial Bank of Washington*, 36 A.2d 62, 63, 65 (D.C. 1944). Plaintiffs also assert that the two cases represent different issues and are easily distinguishable. *See id.* at 8-9. Although both claims involve the same parties, Plaintiffs contend that the two claims are different. *Id.* at 8. The facts in the defamation case occurred nearly twenty years after Plaintiff Liu conceived and gave birth

to Plaintiff Zhang. *Id.* Plaintiffs assert that the only connection between the two is the historical background between Plaintiff Liu and Defendant. *Id.* at 9.

Plaintiffs emphasize that the defamatory and paternity claims are different, based on different events, and different relief is sought for them. *See* Pls.' Supp. Brief in Supp. of Pls.' Mot. for Physical Examination at 9. Plaintiffs request that the Court grant the Rule 35 motion and not deny it because of the difference in the claims. *Id.*

> v.    *Defendant's Reply to Plaintiffs' Supplemental Briefing*

In reply, Defendant notes that despite conceding that their request is time-barred by D.C. Code § 16-2342, Plaintiffs urge the Court to allow them to seek a determination of parentage, which would require the Court to disregard the plain language of the code. Defendant attacks Plaintiffs' assertion that D.C. Code § 16-2342 applies exclusively to actions within the Family Division of the Superior Court by noting that this is refuted by the plain text of the statute and established legal precedent.

Defendant notes that pursuant to D.C. Code § 16-2342(c), where there is a presumed parent under § 16-909(a)(1), any proceeding to rebut the presumption of parentage and establish a different parentage must "be commenced not later than 2 years after the birth of the child." D.C. Code § 16-2342(c). Defendant cites to *DeHart v. Ruffin*, 2015 D.C. Super. LEXIS 13, *49 to support its point, quoting "the Court may not order genetic testing…[where] 'the child has a presumed parent under 16-909(a)(1) or 16-909(a-1) (2) and no proceeding to rebut the presumption was filed within" the allotted time period. According to Defendant, as far more than two years have passed since Charlotte's birth, the D.C. Code makes clear that Meng Zhang is conclusively determined to be her father.

Defendant also claims that the District of Columbia Court of Appeals has rejected arguments akin to Plaintiffs' argument that D.C. Code § 16-2342(c) is limited to paternity and support cases pending before the Family Division of the Superior Court. As noted in *Clay v. Faison*:

> D.C. Code § 11-921(a) provides that the Superior Court has 'jurisdiction of any civil action or other matter at law or in equity brought in the District of Columbia. While the Superior Court is separated into a number of divisions, 'these functional divisions do not delimit their power as tribunals of the Superior Court with general jurisdiction to adjudicate civil claims and disputes.' *Andre v. Jackson*, 401 A.2d 990, 993 (D.C. 1979). This court has long held that there is no jurisdictional bar to one division of the Superior Court entertaining an action more appropriately considered in another division, so long as doing so does not violate the statute or rules of the court and the claim has a rational nexus to a subject matter within the responsibility of that division.

583 A.2d 1388, 1389-90 (D.C. 1990). Defendant continues that if the legislature intended for said section to be exclusive to paternity proceedings, it would have said so. Ultimately, Defendant argues that the Court should not follow Plaintiffs' interpretation of D.C. Code § 16-2342 that the statute only applies to paternity actions in Family Court.

### B. Analysis

Although Super. Ct. Civ. R. 35(a)(1) allows the Court to order a party whose mental or physical condition is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner, the Court notes that Plaintiffs fail to provide any caselaw directly on point where a District of Columbia Court has ordered a DNA test in a civil non-parentage case pursuant to Super. Ct. Civ. R. 35. For example, although Plaintiffs cite *Beckwith v. Beckwith,* 355 A.2d 537, 544 (D.C. 1976), the Court notes that in that case, the Court analyzed its ability to direct that the mother, child, and respondent submit one or more blood tests to determine whether or not the respondent could be excluded as the father of the child not under Super. Ct. Civ. R. 35, but under D.C. Code § 16-2343. Here, as the Court finds no evidence that D.C. Code § 16-2342(c) is limited to paternity and support cases pending before the Family Division of the Superior Court, the

Court applies said rule in its analysis and ultimately finds that Plaintiffs' Motion for Physical Examination must be denied.

Pursuant to D.C. Code § 16-2342(c), proceedings to rebut the parentage of a child where there is a 'presumed parent' must be commenced no later than two years after the birth of the child. After the two-year deadline, "the presumption of paternity becomes conclusive and can be challenged only on" narrow grounds. *Prince George's* Cty. *Office of Child Support Enf't v. Lovick*, 238 Md. App. 476, 481. In fact, District of Columbia Courts have even held that a putative father may not seek a court-ordered genetic test in order to determine whether he is the child's biological father after the two-year deadline, even when said father was excluded by prior genetic tests. *See Dehart*, 2015 D.C. Super. LEXIS at 13. In this case, Plaintiff Zhang has a presumed father. Plaintiff Liu admits that she and Meng Zhang were married at the time Plaintiff Zhang was conceived. In fact, Meng Zhang signed Plaintiff Zhang's birth certificate. *See* Def.'s Ex. B. As Plaintiff Zhang has a presumptive father, the time to rebut this presumption expired on Plaintiff Zhang's second birthday. *See Dehart,* 2015 D.C. Super. LEXIS at 27 ("The Court may not order genetic testing under five circumstances, one of which is where 'the parties have signed a voluntary acknowledgement of paternity pursuant to Section 16-909.01(a)' or 'the child has a presumed parent under § 16-909(a)(1) or § 16-909(a-1)(2) and no proceeding to rebut the presumption was filed within the time provided in § 16-2342(c) or (d).'").

Accordingly, on this **11th day of January, 2024**, it is hereby:

**ORDERED** that Defendant's Motion to Dismiss is **DENIED;** it is further

**ORDERED** that Defendant's Motion for Voluntary Dismissal is **GRANTED and DEFENDANT'S COUNTERCLAIM IS DISMISSED WITH PREJUDICE;** it is further

**ORDERED** that Plaintiffs' Motion for Physical Examination is **DENIED**; and it is further

**ORDERED** that the parties **SHALL APPEAR** for a Remote Status hearing on **March 8, 2024, at 10:00 a.m.,** in Courtroom 219.  Instructions for participation in the Hearing are attached.

        **SO ORDERED.**

<div align="right">

**Associate Judge Ebony M. Scott**
*(Signed in Chambers)*

</div>

**Copies Sent via Odyssey to:**

David Cleveland, Esq.
1949.david@gmail.com
*Counsel for Plaintiff*

Steven Krieger, Esq
steven@stevenkriegerlaw.com
*Counsel for Plaintiff*

Katarina Nguyen, Esq.
katarina@stevenkriegerlaw.com
*Counsel for Plaintiff*

David G. Barger, Esq.
bargerd@gtlaw.com
*Counsel for Defendant*

Michael A. Hass, Esq.
hassm@gtlaw.com
*Counsel for Defendant*

Case 8:23-cv-02434-JWM Document 116    Filed 08/26/25    Page 168 of 273

# Exhibit E

<div align="center">

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

</div>

| | |
|---|---|
| **HUAIZHAO LIU**, *et al.*, <br><br> **Plaintiff,** <br><br> v. <br><br> **JINGSHENG WEI,** <br><br> **Defendant.** | **Case No.    2019 CA 005052 B** <br><br><br> **Judge Ebony M. Scott** |

<div align="center">

**<u>OMNIBUS ORDER</u>**

</div>

This matter is before the Court on: (1) Plaintiffs' Motion for Reconsideration, filed on February 8, 2024; Defendant's Opposition to Plaintiffs' Motion for Reconsideration, filed on February 22, 2024; and Plaintiffs' Reply in Support of Plaintiffs' Motion for Reconsideration, filed on March 18, 2024; (2) Plaintiffs' Motion for Leave to File Amended Complaint, filed on April 3, 2024; Defendant's Opposition to Plaintiffs' Motion for Leave to File Second Amended Complaint, filed on April 17, 2024; and Plaintiffs' Reply in Support of Motion for Leave to File Second Amended Complaint, filed on April 23, 2024; (3) Defendant's Motion for Summary Judgment, filed on May 10, 2024; Plaintiffs' Opposition to Defendant's Motion for Summary Judgment, filed on May 24, 2024; and Defendant's Reply Memorandum of Points and Authorities in Support of its Motion for Summary Judgment, filed on May 31, 2024; and (4) Plaintiff's Motion to Disqualify Ciping Huang as Defendant's Interpreter, filed on June 28, 2024.

<div align="center">

Page **1** of **27**

</div>

## I.    FACTUAL AND PROCEDURAL HISTORY[1]

On July 31, 2019, Plaintiffs filed a Complaint against Defendant, alleging that Defendant failed to adhere to his promises to assist Plaintiffs financially.  *See* Compl.  Plaintiffs filed an Amended Complaint on October 29, 2019, bring the following claims against Defendant: Breach of Contract (Count I) and Defamation (Count II).  *See generally* Am. Compl.  Plaintiff Liu also filed a Petition to Establish Parentage and/or for Child Support on July 16, 2020.  *See Liu v. Wei*, 2020 PCS 000174 (D.C. Super. Ct.), July 16, 2020 Pet.

On November 6, 2019, the instant matter was removed to the United States District Court for the District of Columbia based on diversity of citizenship.  Likewise, the Family Court case was removed to the District Court on September 18, 2020.  On August 30, 2022, the parties filed a Joint Stipulation Regarding Reply Briefing in the District Court, wherein the parties "agreed that should Case No. 1:19-cv-3344 be remanded for lack of subject matter jurisdiction, the Petition for Parentage and Child Support, Case No. 1:20-cv-02625, should remain together and consolidated and should also be remanded."  *See id.*, Aug. 30, 2022 Joint Stipulation at ¶ 4.  On August 31, 2022, the District Court consolidated the two matters.  *See Liu et al. v. Wei*, No. 1:19-CV-03344 (D.D.C.) (Aug. 31, 2022 docket entry consolidating *Liu et al. v. Wei*, No. 1:19-CV-03344 (D.D.C.) and 1:20-CV-02625, *Liu v. Wei*, No. 1:20-CV-02625 (D.D.C)).

On October 3, 2022, the case was remanded to the Superior Court.  *See* Oct. 3, 2022 Remand Mandate.  However, notwithstanding the parties' agreement contained in their Stipulation filed in District Court, the matters were not consolidated in the Superior Court upon

---

[1] A more in-depth history of both the facts and procedural history in this matter is detailed in the Court's January 11, 2024 Omnibus Order.  *See* Jan. 11, 2024 Order.

remand.[2]  The Court held a Status Hearing on December 9, 2022, where Plaintiffs sought a DNA

sample from Defendant.  *See* Dec. 14, 2022 Order.  The Court set a briefing schedule for the

parties to submit arguments on whether this Court can order a DNA sample.  On July 31, 2023,

Defendant filed a Motion to Dismiss.  *See* July 11, 2023 Mot. to Dismiss.  On January 11, 2024,

this Court issued an Omnibus Order denying Plaintiffs' Motion for Physical Examination

requesting a DNA sample and denying Defendant's Motion to Dismiss.  *See* Jan. 11, 2024 Order.

## II.    MOTION FOR RECONSIDERATION

### a.  Summary of the Filings

#### i.  *Plaintiffs' Motion for Reconsideration of the Court's January 11, 2024 Omnibus Order*

In their Motion for Reconsideration, Plaintiffs argue that the Court erred in

misinterpreting both Rule 35 and *Beckwith v. Beckwith*, 355 A.2d 544 (D.C. 1976) in its January

---

[2] The Court notes that a Motion to Consolidate was not filed upon remand, and the Court does not have to acquiesce to the agreement of the parties, rather, it must undertake an analysis pursuant to Super. Ct. Civ. R. 42.  Nonetheless, the Civil Division does not have jurisdiction to hear matters under the exclusive jurisdiction of the Family Court.  Moreover, confidentiality alone is a reason not to consolidate.  D.C. Code § 16-2348 provides: "(a) Except on order of the Family Division, no records in a case over which the Division has jurisdiction under DC Code 11-1101(11) shall be open to inspection by anyone other than the plaintiff, respondent, their attorneys of record, the IV-D agency, or authorized professional staff of the Superior Court."  On the other hand, cases in the Civil Division are presumptively public, absent an order to seal under Super. Ct. Civ. R. 5-III.

Additionally, the Court notes that pursuant to D.C. Code § 16-909.02, the District of Columbia "shall give full faith and credit to the determinations of parentage made by other states, whether established through voluntary acknowledgment or through an administrative or judicial process."  Further, D.C. Code § 16-2343(a)(2) provides, where paternity is at issue, a genetic test shall be required unless "[a] legal finding of paternity has been made pursuant to the laws and procedures of another state."  Here, while Plaintiffs have placed the validity of the birth certificate at issue, Max Meng Zhang is listed as the father of Plaintiff Charlotte Zang on the birth certificate contained in the record – a birth certificate issued by the County of Los Angeles, CA.  There is no dispute in the record that Plaintiff Liu was married to Max Meng Zhang at the time of Plaintiff Zhang's birth.  Thus, should Plaintiffs file a Motion to Reinstate the Petition in the Family Division (as the Petition was dismissed without prejudice on January 8, 2021), that Division may find it appropriate to consider the above-mentioned provisions.

11, 2024 Omnibus Order; relied on factual errors and/or excusable neglect taken from Defendant's arguments; and is now presented with newly discovered evidence to support Plaintiffs' Motion that could not have been discovered with reasonable diligence prior to the Court's Order. *See* Pl.'s Mot. for Recons. at 1.

Plaintiffs argue that the Court should grant their request for DNA testing under Rule 35 because parentage is a condition precedent to the alleged contract for the defendant, and because the "good cause" and notice requirements of Rule 35 have been satisfied. *See* Pl.'s Mem. Of P. & A. in Supp. of Pl.'s Mot. for Recons. at 6 ("Pl.'s Mem. of P. & A."). Plaintiffs argue that Defendant is incorrect in his interpretation of Rule 35 as providing for paternity tests exclusively in divorce cases or suits to establish child support with respect to a minor child. *Id*. at 5. Under Plaintiffs' interpretation, Rule 35 allows the Court to order a physical examination (blood test) to ascertain Defendant's blood group or DNA sequence as those are forms of physical condition. *See id*. at 5-6. Plaintiffs contend that if the legislature wanted to limit DNA testing under Rule 35 to divorce and child support lawsuits, "it [could have] explicitly state[d] so in the Rule or in the comments to the Rule." *Id.* at 6. Plaintiffs argue that because this is a civil non-parentage case, restrictions on ordering DNA testing outside of the divorce or establishment of child support context do not apply. *See id*. Referencing Super. Ct. Dom. Rel. R. 35, Super Ct. Dom. Rel. R. 405(f), and D.C. Code § 16-2343, Plaintiffs argue that "two rules and one code…working in family law and other related special proceedings" to provide for DNA testing in divorce and child support actions leave no room for "Civil Rule 35 to play the role of authorizing [blood testing] exclusively for divorce and child care cases." *Id*. at 5-6. Plaintiffs contend that because Rule 35 is "exactly the same as Federal Rule 35," case law analyzing the federal rule is relevant to the Court's analysis here. *Id*. at 9. Plaintiffs cites to *Smith v. Servicemen's Grp. Life Ins.*, 124

F.R.D. 195, 196 (N.D. Ind. 1989) as an example. *Id*. at 9-10. Plaintiffs characterize *Smith* as "[making] it clear that the 1970 amendment to [Federal] Rule 35(a) specifically added [a] provision permitting blood tests without any string attached…" *Id*. Plaintiffs also argue that "the wording of [Federal] Rule 35(a) is clear on the matter, and thus not many cases discussing it [have] ensued." *Id*. at 10 (citing *Fong Sik Leung v. Dulles*, 226 F.2d 74, 75 (9th Cir. 1955) (holding that Fed. R. Civ. Proc. 35 should be construed strictly and finding that the district court lacked jurisdiction to order a guardian ad litem to submit to a blood test).

Plaintiffs also challenge Defendant's assertion that paternity is not in controversy based on Defendant's interpretation of D.C. Code § 16-2343. *Id*. at 12.[3] Plaintiffs contend that D.C. Code § 16-2343 plays no role in this civil case and does not preclude paternity testing under their interpretation of Superior Court Civil Rule 35. *See id*. at 12-18. According to Plaintiffs, "the reading of DC Code § 16-2343 strongly suggests that it is reserved exclusively [for] "Parentage Proceedings…." *Id*. at 12

Plaintiffs also assert that the Court's Omnibus Order contained two factual errors, but that those errors did not necessarily impact this Court's judgment. *Id*. at 20. Plaintiffs identify the errors as follows: (1) the Court's Order states that Meng Zheng signed Plaintiff Zhang's birth certificate, though Plaintiffs assert that Max Meng Zhang did ***not*** sign the birth certificate; and (2) the Court's Order states that an article was published throughout China in which Plaintiff Liu alleged that Defendant raped her, though Plaintiffs assert there is no article that was circulated, but rather an article by Dr. Jinyan Zeng posted on her personal account that was not authored by Plaintiffs. *Id.* at 21–22.

---

[3] The Court notes that while Plaintiff challenges the applicability of D.C. Code § 16-2343, both Defendant and the Court rely on D.C. Code § 16-2342, and the Court did not make any analysis of D.C. Code § 16-2343 in reaching its conclusion.

Lastly, Plaintiffs attempt to raise additional claims of Defamation, Slander, and Tortious Interference with a Business Relationship. *Id.* at 22-24. Plaintiffs allege that on December 9, 2023, Defendant referred to Plaintiffs as "fakes," stated that "Charlotte is not his biological daughter," and that "Plaintiffs are enemies of the democratic camp." *Id*. at 22-23. Plaintiffs allege that on January 28, 2024, Defendant "publicly disseminated a message posted by his personal assistant and Director of [his] foundation" which refers to Plaintiffs as a "fake-and-scam mother and daughter." *Id*. at 23.

### ii.  *Defendant's Opposition to Plaintiffs' Motion for Reconsideration*

In Opposition, Defendant posits that Plaintiffs have failed to argue that the necessary circumstances exist to warrant reversal of the Court's Omnibus Order. *See* Def.'s Opp'n to Pls.' Mot. for Recons.  At the outset, Defendant contends that Plaintiffs' Motion should be summarily denied as Plaintiffs move under Rule 7(j) of the Domestic Violence Branch, which has no applicability here. *Id.* at 1 n. 1.  Defendant also contends that Plaintiffs "rely on the identical novel and unsupported legal arguments it did in its Rule 35 Motion and its reply in support," and acknowledges that any factual errors "stated by the Court in its Order are immaterial and have no bearing on the analysis of the issues, and do not point to additional 'evidence' which would be relevant to the Court's consideration of the Rule 35 Motion." *Id*. at 2.  Defendant argues that Plaintiffs' Motion provides no proper justification for reconsideration pursuant to Rule 59(e). *Id.* at 3.  Defendant also asserts that Plaintiffs present no authority to support their argument that compelling a DNA sample under Rule 35 is appropriate in this civil case. *Id.* at 4.  Defendant contends that Plaintiffs' reliance on *Beckwith* remains misplaced, and any new cases Plaintiffs cite are irrelevant or inapplicable to the instant case. *Id.* at 4–5.

Page **6** of **27**

Moreover, Defendant argues that Plaintiffs' repeated argument about D.C. Code § 16-2342 remains limited to cases before the Family Division of the Superior Court, which Plaintiffs have been unable to show otherwise. *Id.* at 6–7. Specifically, Defendant argues that the Superior Court is a court of general jurisdiction, and contends that the fact that Title 16, Chapter 23 of the D.C. Code refers to the Family Division does not limit the statute's application to all actions in the Superior Court. *Id.* at 7–8. Defendant contends that if the legislature intended for D.C. Code § 16-2342 to apply only to proceedings in the Family Court, the statute would have made such limitations clear in the text of the statute. *Id.* at 8. Defendant also asserts that Plaintiff's reference to D.C. Code § 11-1101(11) is misplaced, given Plaintiffs' concession that Plaintiff Liu was married to Meng Zhang at the time of Plaintiff Zhang's birth. *Id.*

Lastly, Defendant asserts that the "new 'evidence'" that Plaintiffs point to does not justify reconsideration of the Court's Order, as Defendant asserts the new evidence of Defendant's alleged defamatory statements is irrelevant to the Court's analysis regarding the DNA test. *Id.* at 10–11. Defendant argues that, having "present[ed] no intervening change of controlling law, need to prevent clear error or prevent manifest injustice, or new relevant evidence," Plaintiffs' Motion should be denied." *Id.* at 12.

### iii. Plaintiffs' Reply in Support of Plaintiffs' Motion for Reconsideration

In Reply, Plaintiffs argue that their Motion meets the legal standard for reconsideration. *See* Pl.'s Reply in Supp. of Pl.'s Mot. for Recons at 3 ("Pl.'s Reply). Plaintiffs allege that Defendant has misrepresented facts in the case, and that these alleged misrepresentations constitute "substantial grounds for reconsideration." *Id.* at 4–5. Plaintiffs argue that the federal case law interpreting Federal Rule 35, as well as Plaintiffs' new insights and arguments regarding D.C. Code § 16-2342, includes new and persuasive precedents of controlling law. *See*

*id.* at 5. Specifically, Plaintiffs argues that Defendant's critique of the cases Plaintiffs cite do not diminish the legal reasoning contained therein, and fails to address new points raised in Plaintiffs' Motion. *Id.* at 5. Plaintiffs also challenge what they characterize as Defendant's minimization of the factual errors referenced in Plaintiffs' Motion, and, contrary to their position in their original Motion for Reconsideration, argue that these errors may have been material to the Court's ruling. *See id.* at 8–9. Lastly, Plaintiffs further elaborate on their new factual allegations and "new evidence," and argue that they have provided new or relevant evidence sufficient to warrant reconsideration, due to new alleged defamatory statements by Defendant. *See id.* at 10–14.

### b. Legal Standard

Parties may seek reconsideration under Super. Ct. Civ. R. 54(b), Super. Ct. Civ. R. 59(e), or Super. Ct. Civ. R. 60(b). The standard for reconsideration of interlocutory orders under D.C. Super. Ct. Civ. R. 54(b) is whether reconsideration is consonant with justice. *See Marshall v. United States,* 145 A.3d 1014, 1019 (D.C. 2016). Reconsideration is warranted if, for example, moving parties "present newly discovered evidence, show that there has been an intervening change in the law, or demonstrate that the original decision was based on a manifest error of law or was clearly unjust." *Bernal v. United States*, 162 A.3d 128, 133 (D.C. 2017). "The burden is on the moving party to show that reconsideration is appropriate and that harm or injustice would result if reconsideration were denied." *United States ex rel. Westrick v. Second Chance Body Armor, Inc.*, F.Supp. 2d 258, 268 (D.D.C. 2012).

Super. Ct. Civ. R. 59(e) states, "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of judgment." Super. Ct. Civ. R. 60(b) allows for relief under the following circumstances: "(1) mistake, inadvertence, surprise, or excusable neglect; (2)

newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief." *See* Super. Ct. Civ. R. 60(b).  It is well settled that Motions under Super. Ct. Civ. Rs. 54(b), 59 (e), or 60 (b) are committed to the broad discretion of the trial judge. *See Dist. No. 1 — Pac. Coast Dist. v. Travelers Cas. & Sur. Co.*, 782 A.2d 269, 278 (D.C. 2001) (citations omitted); *see also Merrell Dow Pharmaceuticals v. Oxendine*, 649 A.2d 825 (D.C. 1994).

### c.  Analysis

In this Court's Omnibus Order, the Court found that Plaintiffs were unable to provide justification to meet the high standard required for a Court to order a physical or mental examination. *See generally* Jan. 11, 2024 Order.  Upon review of Plaintiffs' instant Motion for Reconsideration, the Court finds that reconsideration is consonant with justice with respect to the Court's analysis of D.C. Code § 16-2342(c) as the Court's original decision was erroneous.  In the Order, the Court opined that it "finds no evidence that D.C. Code § 16-2342(c) is limited to paternity and support cases pending before the Family Division of the Superior Court," and determined that  Plaintiffs' Motion for Physical Examination should be denied pursuant to the statute. *See id.* at 30–31.  However, upon reconsideration, the Court concludes that D.C. Code § 16-2342 applies exclusively to actions within the Family Division of the Superior Court. Section 16-2342 falls under Title 16, Chapter 23, the title of which is "Family Division [Family Court] Proceedings" and subchapter II, titled "Parental Proceeding."  There is no dispute in this

Page **9** of 27

record, or amongst the parties, that the instant civil matter is not a parental proceeding, thus analysis under section 2342 was in error. *See* Pl.'s Mem. of P. & A. at 5; *see also* Opp'n to Mot. for Reconsideration at 4.

With respect to Rule 35, the Court finds that reconsideration is not warranted. At the outset, the Court notes that in their Motion, Plaintiffs cite to Super. Ct. Dom. Rel. R. 7(j) in support of their request for reconsideration, but in Reply, contend that they meet the requirements for relief under Super. Ct. Civ. R. 59(e). *See* Mot. for Reconsideration at 1; *see also* Reply in Support of Mot. for Reconsideration at 3. Nonetheless, the Court will analyze the Motion under Rule 59(e), and notes that the Motion is timely under the rule. *See* Super. Ct. Civ. R. 59(e) ("A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."). To begin, as Defendant points out, the *Beckwith* court does not rest their reasoning on Rule 35, which is the vehicle by which Plaintiffs assert this Court has authority to order a paternity test. *See* Opp'n to Mot. for Reconsideration at 4 (citing *Beckwith v. Beckwith*, 355 A.2d 537 (D.C. 1976)). The *Beckwith* court explicitly stated that the court "need not reach the question of whether Rule 35 provides a basis for the court's order, as urged by appellee, nor need we consider appellant's numerous objections to the application of Rule 35 to this case" given the court's finding that D.C. Code § 16-2343 provided authority for the court to order blood tests. *See Beckwith*, 355 A.2d at 544. Moreover, while Plaintiffs cite to some additional cases to support their assertions, none of these cases reflect any change in controlling law that would provide for reconsideration under Rule 59(e). *See generally* Pl.'s Mem. of P. & A. at 9 (citing *Beach v. Beach*, 114 F.2d 479, 780 (D.C. Cir. 1940); *Yee Szet Foo v. Dulles*, 18 F.R.D. 237, 239 (S.D.N.Y. 1955); *Smith v. Servicemen's Grp. Life Ins.*, 124 F.R.D. 195, 196 (N.D. Ind. 1989)). Thus, the Court still finds that Rule 35 should not be applied in this broad

manner, and perhaps more importantly, should not be used in place of a properly laid out statutory process for establishing paternity.

Additionally, the Court acknowledges the factual errors Plaintiffs point to in their Motion, but as Plaintiffs themselves note, the factual errors did not have a bearing on the Court's judgment, and thus, do not warrant reconsideration of the Court's Order. *See id.* at 20–21. As noted *supra*, Plaintiffs contend that the Court's Order contained the following factual errors: (1) the Court's Order states that Meng Zheng signed Plaintiff Zhang's birth certificate, though Plaintiffs assert that Max Meng Zhang did not sign the birth certificate; and (2) the Court's Order states that an article was published throughout China in which Plaintiff Liu alleged that Defendant raped her, though Plaintiffs assert there is no article that was circulated, but rather an article by Dr. Jinyan Zeng posted on her personal account that was not authored by Plaintiffs. *Id.* at 21–22. However, as to number one, the Court relied on the birth certificate attached as an exhibit to Defendant's Opposition to Plaintiff's Motion for Physical Examination, which does indeed show Max Meng Zhang listed as the father. *See* Def.'s Opp'n to Pls.' Mot. for Physical Exam, Ex. B. While Plaintiffs are correct that Max Meng Zhang's signature does not appear on the birth certificate, this did not impact the Court's reasoning. As to the second stated error, the Court shall accept Plaintiffs' assertion that they did not author the article, though the Court will note that this "error" was not instrumental in the Court's analysis.

Lastly, Plaintiffs "newly discovered evidence" that Defendant made further allegedly defamatory statements is not relevant to the Court's analysis in denying Plaintiffs' request for a DNA test. Defendant's alleged defamatory statements were not considered when the Court analyzed whether or not Rule 35 or D.C. Code § 16-2342 were applicable in this matter and thus, does not justify reconsideration of the Court's Order. *See* Pl.'s Mem. of P. & A. at 22.

### III.    MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

#### a.    Summary of the Filings

##### i.    *Plaintiffs' Motion for Leave to File Amended Complaint*

In Plaintiffs' Motion for Leave, Plaintiffs assert that after the Amended Complaint in this case was filed, Defendant "engaged in further actions, giving rise to a new cause of action for Plaintiffs." Mot. for Leave at 1. Plaintiffs cite to Rule 15(a)(3), which provides that a court "should freely give leave when justice so requires." *Id.* at 3 (citing Super. Ct. Civ. R 15(a)(3)). Plaintiffs contend that resolution of claims on their merits is favored in this jurisdiction, and that there "is a virtual presumption that [the] court should grant leave to amend where no good reason appears to the contrary." *Id.* (citing *Bennett v. Fun & Fitness, Inc.*, 434 A.2d 476, 478–79 (D.C. 1981)).

##### ii.    *Defendant's Opposition to Plaintiff Motion for Leave*

In Opposition, Defendant contends that Plaintiffs' untimely Motion for Leave is "nothing more than a late attempt to grossly expand the scope of their claims and add new attacks toward [Defendant] after nearly 5 years of litigation[.]" Opp'n to Mot. for Leave at 1. Defendant asserts that Plaintiffs' identify no good cause to justify amending the Complaint at this late of a stage. *Id.* at 4. Defendant notes that discovery has been closed for at least 28 months, and allowing Plaintiffs to file a Second Amended Complaint would require the reopening of discovery and would further the delay the case. *Id.* at 4–5. Defendant also notes that the Second Amended Complaint would prejudice Defendant as the proposed amendments "drastically alter Plaintiffs' allegations and theory" and would add new causes of action. *Id.* at 7. Further, Defendant posits that Plaintiffs seek to alter the type of relief they are seeking, as Plaintiffs seek leave to add punitive damages for the first time. *Id.* at 8.

Page **12** of **27**

### iii.   Plaintiffs' Reply in Support of Motion for Leave

In Reply, Plaintiffs contend that Defendant's argument in opposition to Plaintiff's Motion includes irrelevant assertions. *See* Reply in Support of Mot. for Leave at 1. Plaintiffs argue that Defendant's argument focuses on a draft version of the Second Amended Complaint that was emailed to counsel, rather than the actual proposed Second Amended Complaint, which Plaintiffs assert included edits that responded to some of Defendant's initial objections. *Id.* Plaintiffs note that Defendant has consistently made "baseless" and "false" allegations against Plaintiffs that cannot be proven. *Id.* at 3. Plaintiffs also contend that discovery is not completely closed, as discovery requests remain overdue. *Id.* at 4. Plaintiffs also assert that this case has not been delayed by Plaintiffs' actions. *Id.* at 6. Moreover, Plaintiffs contend that the proposed amendments "were made promptly in response to Defendant's escalating defamatory actions and false light violations[,]" and thus are timely amendments. *Id.* at 9. Lastly, Plaintiffs argue that the proposed amendments are focused on incidents and evidence that have arisen since the filing of the First Amendment Complaint and would not cause undue prejudice to Defendant, as it would only serve to ensure justice for Plaintiffs. *Id.* at 9–10.

#### b.  Legal Standard

"Rule 15(a)(3) of the Superior Court Rules of Civil Procedure provides that a trial judge 'should freely give leave [to amend] when justice so requires.'" *U.S. Bank Tr., N.A. v. Omid Land Grp., LLC*, 279 A.3d 374, 380 (D.C. 2022) (quoting Super. Ct. Civ. R. 15(a)(3)). The Court of Appeals has emphasized that "Rule 15(a)(3) must be applied liberally to ensure that cases are 'decided upon the merits rather than upon technical pleading rules.'" *Id.* at 381 (citing *Killingham v. Wilshire Invs. Corp.*, 739 A.2d 804, 807 (D.C. 1999)). However, "leave to amend is not automatic, and several factors must be considered in the exercise of the Court's

discretion." *Id*. The Court will consider "(1) the number of previous requests to amend, (2) the length of time the case has been pending, (3) the existence of bad faith or dilatory reasons for the request, (4) the merit of the proffered amended pleading, and (5) any prejudice to the non-moving party." *Id*. (citing *Nat'l Ass'n of Postmasters of the U.S. v. Hyatt Regency Washington*, 894 A.2d 471, 477 (D.C. 2006)).

### c. Analysis

#### i. *Previous Requests to Amend and Length of Pendency*

Considering the first two factors in tandem, the Court notes that the instant case has been pending for over five years. While the Court acknowledges that some of this time may have been delayed due to the case's transfer to federal court, the case was remanded back in October 2022. Also, the First Amended Complaint was filed on October 23, 2019, and has been operative for close to five years. Thus, the instant Motion comes five years after the start of the case, and only one month prior to the Dispositive Motions Deadline. *See* Mar. 19, 2024 Order.

While the Court weighs the collective impact of all factors, "[t]he lateness of a motion for leave to amend…may justify its denial if the moving party fails to state satisfactory reasons for the tardy filing and if the granting of the motion would require new or additional discovery." *Pannell v. D.C.*, 829 A.2d 474, 477 (D.C. 2003) (citing *Eagle Wine & Liquor Co. v. Silverberg Electric Co.,* 402 A.2d 31, 35 (D.C.1979)); *see also Mudd v. Occasions Caterers, Inc.*, 264 A.3d 1191, 1200 (D.C. 2021) ("we have upheld delay-based denials [of motions for leave to amend] where the moving party fails to state satisfactory reasons for the tardy filing and if the granting of the motion would require new or additional discovery"). Here, as Defendant has noted, the Second Amended Complaint would require the reopening of discovery and would require additional dispositive Motions practice. *See generally* Def.'s Opp'n to Mot. for Leave. Given

Plaintiffs' multiple opportunities to amend, the lateness of the instant Motion, and the necessity of reopening discovery and setting a new scheduling order if leave were granted, these factors weigh against granting Plaintiffs leave.

### ii.  Dilatory Intentions

In addition to the passage of time and close of discovery, the Court also looks to the proffered reason for the delay to assess the presence of an "unacceptable dilatory approach." *See Sherman v. Adoption Center of Washington, Inc.*, 741 A.2d 1031, 1038 (D.C. 1999).  Further, "[t]he filing of a motion [for leave to amend] when defeat seems imminent is 'suggestive of an unacceptable dilatory approach.'" *Choharis v. State Farm Fire & Gas. Go.*, 961 A.2d 1080, 1091 (D.C. 2008) (quoting *Sherman*, 741 A.2d at 1039).  The tardy filing of a motion to amend when the close of discovery is imminent is likewise suggestive of an unacceptable dilatory approach.  *See id*.  Here, despite Plaintiffs' assertions that the actions that give rise to the new claims that Plaintiffs seek to add have occurred throughout the pendency of the current litigation, the timing of the Motion for Leave is suggestive of a dilatory approach.  The close of discovery has long passed, and the dispositive motions deadline was fast approaching when Plaintiffs filed the instant Motion for Leave, further evincing a dilatory motive.  Thus, this factor weighs against granting Plaintiffs' request for leave.

### iii.  Merit of the Proffered Amended Pleading

To justify their request to amend the Complaint, Plaintiffs contend that leave should be granted to include additional claims against Defendant, including altering the current Defamation claim to Defamation Per Se, and adding a False Light claim.  *See* Mot. for Leave, Ex. A1. Furthermore, Plaintiffs seek to add additional damages, including punitive damages and a request for an injunction.  *See id.* at 10.  Plaintiffs contend that the new claims arise out of conduct that

occurred only since the last Amended Complaint was filed. *See id.* at 3. Thus, as these claims add new factual contentions, this factor weighs in favor of granting leave.

### iv. *Prejudice to the Non-Moving Parties*

Prejudice can rest in part "on findings that the moving part has not put forth any satisfactory reason for the delay." *Sherman*, 741 A.2d at 1039 (quoting *Eagle Wine & Liquor Co. v. Silverberg Elec. Co.*, 402 A.2d 31, 35 (D.C. 1979)). Prejudice can also be found in "disruption of the previously [set] schedule and [the need for] additional discovery time—and the expense that entails." *Id.* (quoting *Howard University v. Good Food Services, Inc.*, 608 A.2d 116, 121 (D.C. 1992)).

Here, as the case has been pending for five years, and given the fact that discovery would have to reopened, amending the Complaint at this stage would severely prejudice Defendant. Moreover, despite Plaintiffs' assertion that the new claims arose since the filing of the First Amended Complaint, some of the factual allegations include reference to statements that were made in 2021 and 2022, though Plaintiffs fail to provide any reason for why they did not bring these claims at an earlier point. *See* Mot. for Leave, Ex. A1 at ¶¶ 25–27. Moreover, as Plaintiffs seek new types of relief, namely the addition of punitive damages and the request for an injunction, the scope of the case would drastically change from the instant posture, if leave were to be granted. Thus, as granting leave would subject Defendant to significant prejudice, this factor weighs heavily against granting leave.

In sum, when considering all the five factors, the Court finds that these factors largely weigh against granting Plaintiffs leave, given the amount of time this case has been pending, the need to reopen discovery, and the prejudice to the Defendant. Thus, the Court does not find

satisfactory justification for amending the pleadings as this stage, and the Court shall deny Plaintiffs' Motion for Leave.

### IV.    MOTION FOR SUMMARY JUDGMENT

#### a.    Summary of the Filings

##### i.    *Defendant's Motion for Summary Judgment*

In Defendant's Motion for Summary Judgment, Defendant asserts that Plaintiffs "cannot prevail on any of their legally deficient claims" and asks the Court to dismiss Plaintiffs' Petition for Parentage and Amended Complaint in their entirety. *See* Mot. for Summ. J. at 1. Defendant argues that Plaintiffs fail to provide sufficient evidence to support their claims and that the case should be brought to a close after five years of litigation. *Id.* at 3. First, Defendant argues that the Petition for Paternity must fail, as Plaintiffs cannot challenge paternity. *Id.* at 5. Defendant cites to this Court's January 11, 2024 Omnibus Order, which held that the Court cannot order a DNA sample as Plaintiffs have passed the time to challenge the paternity, given that Plaintiff Zhang has a presumptive father. *Id.* at 5–6. Second, Defendant contends that the breach of contract count fails "because there is no evidence of an agreement of material terms and for lack of consideration." *Id.* at 6. Defendant argues that Plaintiffs cannot provide evidence to show the material terms of the alleged agreement, nor can Plaintiffs show that consideration existed to create an enforceable contract. *Id.* Specifically, Defendant asserts that Plaintiffs fail to present evidence of the material terms, including the specific property Defendant was to sell, how quickly Defendant was to sell the property, the amount of proceeds Defendant would give to Plaintiffs, the amount Defendant would pay for Defendant Zhang's tuition, and any conditions about what type of education Defendant would provide for. *Id.* at 8–9. As to consideration, Defendant argues that Plaintiffs have not "alleged nor presented evidence that they tendered

anything to Defendant in return" for his alleged promises, and thus, Defendant's alleged promises were at best "gratuitous promises to make a gift, which lack consideration and are not enforceable." *Id.* at 9. Furthermore, Defendant assets that Plaintiffs' defamation claim fails as there is no evidence to support a defamation claim. *Id.* at 9–10. Defendant asserts that statements of opinion are non-actionable and cannot support a claim of defamation. *Id.* at 10–11 (citing *Montgomery v. Risen*, 197 F. Supp. 3d 219, 247-48 (D.D.C. 2016)). Defendant contends that Plaintiffs have not provided evidence that Defendant made the alleged statements, as the only evidence Plaintiffs provide comes from Plaintiff Liu's "self-serving deposition testimony that a third-party individual told her about comments that Defendant supposedly made at a private event." *Id.* at 12. Even if there was sufficient evidence, Defendant argues the statements are not actionable as the statements would be Defendant's "own subjective opinion, theory, or rhetorical hyperbole relating to their motivations in pursuing litigation against Defendant." *Id.* Defendant asks the Court to grant summary judgment as to the Amended Complaint and Petition in their entirety. *Id.* at 13.

### ii. Plaintiff's Opposition to Defendant's Motion for Summary Judgment

In Opposition, Plaintiffs argue that Defendant's Motion for Summary Judgment "is merely another attempt by Defendant to grossly dismiss the instant breach of contract and defamation case." Opp'n to Mot. for Summ. J. at 1. Plaintiffs contend that summary judgment is welcomed "only if discovery is complete and/or the central discovery is complied with to establish an undisputed material fact." *Id.* at 2. Plaintiffs argue they would be prejudiced by a "premature summary judgment" when discovery is incomplete and when the Motion for Reconsideration and Motion for Second Amended Complaint are pending. *Id.* Plaintiffs also contend that, despite the dismissal of Defendant's Counterclaim, that Defendant's alleged

Page **18** of **27**

continuous defamatory statements "effectively keeps Defendant's counterclaims alive," prejudicing Plaintiffs. *Id.* at 3–4. First, Plaintiffs contend that material facts remain in dispute, and assert that summary judgment is not appropriate. *Id.* at 4. Specifically, Plaintiffs dispute Defendant's facts, including the timeliness of the paternity claims, the enforceability of the agreement as the Plaintiffs assert that promissory estoppel supports their argument, evidence supporting the defamation claims, disputes regarding key facts, and the completeness of Plaintiffs' argument that Defendant has not complied with subpoenas for DNA testing. *Id.* at 7. Plaintiffs also argue that summary judgment is inappropriate given the pending Motion for Reconsideration and Motion for Leave to File Second Amended Complaint, which Plaintiffs argue introduces new facts that could invalidate the grounds for summary judgment. *Id.* at 7–8. Moreover, Plaintiff argues that Defendant provides inconsistencies in his deposition and declaration that undermine his credibility. *Id.* at 8–9. Furthermore, Plaintiffs argue that Defendant's legal arguments are based on "misrepresentations of the case" and that Defendant's legal citations do not support Defendant's legal position. *Id.* at 10. Plaintiffs again contend that summary judgment should be deferred until all the evidence is obtained, and that Defendant has not complied with a legally issued subpoena for a DNA test, thus, granting summary judgment without completing discovery would be an error. *Id.* at 11. Plaintiffs conclude by including a chart of legal authorities related to promissory estoppel. *Id.* at 12–13.

### iii. *Defendant's Reply in Support of its Motion for Summary Judgment*

In Reply, Defendant argues that Plaintiffs have failed to "respond meaningfully to the legal arguments in Defendant's Motion, effectively conceding them[.]" Reply in Support of Mot. for Summ. J. at 1. Defendant asserts that discovery has long been completed, and Plaintiffs' argument of prematurity is without merit. *Id.* First, Defendant argues that Plaintiffs

concede Defendant's legal arguments by failing to respond to them in their Opposition. *Id.* at 2. As to the Petition for Parentage, Plaintiffs do not mention the Petition in their Opposition, and merely assert that whether Plaintiff Zhang has a presumed legal father is irrelevant to the claims, and thus, Defendant argues that Plaintiffs have abandoned the claims in the Petition. *Id.* at 3. Moreover, Defendant argues that Plaintiffs fail to demonstrate the material terms of the contract and cannot show that the alleged promises were more than a gratuitous promise, and thus, cannot establish the elements of a breach of contract claim. *Id.* Defendant asserts that Plaintiffs instead attempt to mischaracterize what is required to create an enforceable contract, and "attempt to transform their claim for the first time into one of promissory estoppel." *Id.* at 4. Defendants argue that Plaintiffs do not mention promissory estoppel in their Amended Complaint, and cannot bring it as a claim now, but even if it were proper, their claim would fail as there is no evidence the Plaintiffs relied on the alleged promises to their detriment. *Id.* at 5. As to the defamation claims, Defendant again notes that Plaintiffs do not make any argument in their Opposition to the defamation argument, and thus, concede that the statements are not actionable. *Id.* at 6. Rather than respond to the legal arguments, Defendants argues that Plaintiffs attempt to create a dispute of material fact by pointing to a tweet and a declaration from Plaintiff Liu, but Defendant contends that Plaintiffs have not provided sufficient admissible evidence to establish these statements. *Id.* at 6–7. As Plaintiffs have not attached this alleged tweet to their Opposition, the Court cannot consider it on summary judgment. *Id.* Lastly, Defendant argues that discovery closed long ago, and that a briefings schedule was set when the case returned to the Superior Court for the sole outstanding discovery issue of a paternity test. *Id.* at 8. However, Defendant argues that this issue was resolved with the Court's January 11, 2024 Omnibus Order

Page **20** of **27**

denying the request for a DNA sample, and thus, summary judgment is not premature as discovery has indeed resolved.

### b. Legal Standard

Pursuant to Super. Ct. Civ. R. 56(c), summary judgment is granted where the record shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See Osbourne v. Capital City Mortgage Corp.*, 667 A.2d 1321, 1324 (D.C. 1995); *Smith v. Washington Metropolitan Area Transit Authority*, 631 A.2d 387, 390 (D.C. 1993). "A genuine issue of material fact exists if the record contains 'some significant probative evidence … so that a reasonable factfinder would return a verdict for the non-moving party.'" *Brown v. 1301 K Street Limited P'ship*, 31 A.3d 902, 908 (D.C. 2011) (citing *1836 S Street Tenants Ass'n v. Estate of Battle*, 965 A.2d 832, 836 (D.C. 2009) (footnote omitted)). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party has the burden to establish that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Osbourne*, 667 A.2d at 1324. If the moving party carries this burden, the burden shifts to the non-moving party to show the existence of an issue of material fact. *See Bruno v. Western Union Financial Services, Inc.*, 973 A.2d 713, 716 (D.C. 2009) (quotations and citations omitted); *see also Osbourne*, 667 A.2d at 1324. The non-moving party may not carry this burden merely with conclusory allegations, *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999); rather, he or she "must produce at least enough evidence to make out a prima facie case in support of his [or her] position." *Bruno*, 973 A.2d at 717. "A motion for summary judgment should be granted if (1) taking all reasonable inferences in the light most favorable to the nonmoving party, (2) a reasonable juror, acting reasonably, could not find for the

Page **21** of **27**

nonmoving party, (3) under the appropriate burden of proof." *Nader v. de Toledano*, 408 A.2d 31, 42 (D.C. 1979), *cert. denied*, 444 U.S. 1078 (1980).

### c.  Analysis

At the outset, as noted *supra*, the Petition was dismissed on January 8, 2021, and has not been reinstated, so the Court need not reach the merits of Defendant's request to dismiss the Petition.

### i.  *Breach of Contract (Count I)*

In order to succeed on a claim of breach of contract, a party must show: "(1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach." *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009) (internal citations omitted).  Further, consideration is required to establish an enforceable contract or promise, as "[a] mere promise to pay unsupported by consideration is an unenforceable gratuitous promise under District of Columbia law." *Haney v. Marriott Int'l, Inc.*, 2007 U.S. Dist. LEXIS 74872, at *26 (D.D.C. 2007) (citing *Zoob v. Jordan*, 841 A.2d 761, 765 (D.C. 2004) ("[A] mere promise to make a gift is unenforceable.")).  Moreover, to be enforceable, "a contract must be sufficiently definite as to its material terms (which include, e.g., subject matter, price, payment terms, quantity, and duration) that the promises and performance to be rendered by each party are reasonably certain." *Rosenthal v. National Produce Co.,* 573 A.2d 365, 370 (D.C. 1990).

Here, Defendant argues that Plaintiffs are unable to meet the elements of a breach of contract claim, as Plaintiffs cannot establish the material terms of the contract, nor can Plaintiffs show that consideration existed in order to create an enforceable promise. *See* Reply to Mot. for Summ. J. at 4.  The Court agrees with Defendant, as Plaintiffs do not explain in their Amended

Complaint, nor do they attempt to provide in their Opposition, any evidence to support the material terms of an enforceable agreement between the parties. Rather, in their Complaint, Plaintiffs only state that Defendant "promised" to sell his house to help Plaintiff Liu and that he promised he would pay college tuition for Plaintiff Zhang. *See* Am. Compl. ¶¶ 7, 8. However, Plaintiffs do not provide any additional material terms of the alleged promises, nor do Plaintiffs provide any evidence of consideration to support an enforceable contract, which at this juncture, the Court can consider. *See Aziken v. District of Columbia*, 70 A.3d 213, 219 (D.C. 2013) ("Nevertheless, '. . . summary judgment can be granted if the non-moving party fails to point to any relevant extrinsic evidence supporting that party's interpretation of the language.'") (citing *Fed. Ins. Co. v. Am. Home Assurance Co.*, 639 F.3d 557, 567 (2d Cir. 2011)). Additionally, Plaintiff does not allege or show any harm that was suffered as a result of Defendant allegedly failing to adhere to these promises, as Plaintiffs simply state that Defendant paid zero dollars to the Plaintiffs. *Id.* ¶ 10. These allegations are insufficient to show that a contract existed, or that an oral, enforceable agreement was created, as Plaintiffs fail to demonstrate significant probative evidence such that a reasonable factfinder would return a verdict in favor of the Plaintiffs.

Plaintiffs' sole support for consideration rests on their contention that "consideration existed in the form of reliance and forbearance in legal action, supported by the legal doctrine of promissory estoppel." Opp'n to Mot. for Summ. J. at 5. Plaintiffs have not pled, nor mentioned, promissory estoppel in their Amended Complaint, nor have Plaintiffs provided any further details, evidence, or support for this promissory estoppel claim in the Opposition. To successfully claim promissory estoppel, a party must prove the following questions in the affirmative: "First, was there a promise? Second, should the promisor have expected the promisee to rely on the promise? And did the promisee so rely to his detriment? Finally, would

injustice result from a failure to enforce the promise?" *Bender v. Design Store Corp*., 404 A.2d 194, 196 (D.C. 1979). Plaintiffs have not provided sufficient facts or evidence for a fact finder to finds for the Plaintiffs on these questions, and simply relying on the doctrine of promissory estoppel is insufficient to defeat summary judgment. Thus, Defendant has shown that he is entitled to judgment as a matter of law on this claim.

### ii. Defamation (Count II)

To succeed on a claim of defamation, a plaintiff must prove: "(1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm." *Oparaugo v. Watts*, 884 A.2d 63, 76 (D.C. 2005) (internal citations omitted). However, a statement of pure opinion cannot be the basis for a defamation claim, as a "statement of opinion is actionable if—but only if—it has an explicit or implicit factual foundation and is therefore objectively verifiable." *Armstrong v. Thompson*, 80 A.3d 177, 184 (D.C. 2013).

Here, Plaintiffs claim that Defendant made defamatory remarks about the Plaintiffs to a third-party individual. *See* Am. Compl. ¶ 12. However, Defendant argues that Plaintiffs fail to produce any evidence, other than Plaintiff Liu's own testimony, that the statements were made. *See* Mot. for Summ. J. at 12. Additionally, Defendant argues that the alleged statements, if made, are not actionable, as the statements are Defendant's subjective opinion and cannot serve as the basis of a defamation claim. *Id.* The Court agrees that Plaintiffs fail to provide sufficient evidence to support their claims. In Opposition, Plaintiffs cite to Plaintiff Liu's declaration, as well as Plaintiffs' Answers to Defendant's Interrogatories, discussing an alleged tweet written by

Defendant containing defamatory language. *See* Opp'n to Mot. for Summ. J. at 5. However, there is no link to or photo of this alleged tweet, and thus, the Court is presented with no evidence for this alleged written statement, except the Plaintiff's self-serving statements. Furthermore, the Court agrees with Defendant that Plaintiffs are unable to show, nor do they attempt to argue or dispute in their Opposition, that Defendant's alleged statements are more than his own subjective opinion. Plaintiffs' conclusory allegations, supported only by Plaintiffs' own deposition testimony, are insufficient to defeat a motion for summary judgment. *See Furline v. Morrison*, 953 A.2d 344 (D.C. 2008) ("conclusory allegations by the nonmoving party are insufficient to establish a genuine issue of material fact or to defeat the entry of summary judgment").

### iii. Outstanding Discovery

The Court shall also address Plaintiffs' main argument that summary judgment would be premature, as Plaintiffs contend that discovery is not closed as there is an outstanding subpoena for a DNA test. *See* Opp'n to Mot. for Summ. J. at 3, 11. Despite Plaintiffs' argument, Plaintiffs provide no proof of this subpoena.[4] Further, this Court has denied Plaintiffs' request to require a DNA test, and again denies it in this instant Order. Moreover, as Defendant points out, fact discovery closed in this case on December 31, 2021, and the Court set a briefing schedule on the

---

[4] The Court notes that the United States District Court for the District of Columbia docket sheet references a subpoena. *See Liu et al. v. Wei*, No. 1:19-CV-03344 (D.D.C.) (February 17, 2022 docket entry reflecting a Minute Order extending discovery to allow Plaintiffs to seek information responsive to Plaintiffs' subpoena for Defendant's DNA, and allowing Defendant to object to Plaintiffs' subpoena); *see also id.* (March 22, 2022 docket entry reflecting a Minute Order requiring the parties to submit briefing on whether the pending Motion to Dismiss impacts Plaintiffs' subpoena, as well as briefing on Defendant's Motion to Quash Plaintiffs' subpoena for DNA testing). The Court notes that the Motion to Dismiss and Motion to Quash were both denied as moot given the parties' Joint Stipulation to remand the case to the Superior Court, and thus, challenges to the subpoena were seemingly not resolved in the District Court. *See id.* (Aug. 31, 2022 docket entry reflecting a Minute Order denying as moot Motion to Quash).

issue of a DNA sample on December 12, 2022.  As the Court denied Plaintiffs' request for a

paternity test, and this Order so too denies Plaintiffs' request, discovery is indeed closed.  This,

along with the fact that the Court has denied Plaintiffs' Motion to Amend, contravenes Plaintiff's

argument that an order of summary judgment would be premature at this juncture.

Accordingly, it is this **2nd day of July, 2024**, hereby:

**ORDERED** that Plaintiffs' Motion for Reconsideration is **GRANTED IN PART AND DENIED IN PART**; it is further

**ORDERED** that Plaintiffs' Motion for Leave to File Amended Complaint is **DENIED**; it is further

**ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED**; it is further

**ORDERED** that judgment is **ENTERED IN FAVOR OF DEFENDANT**; it is further

**ORDERED** that Plaintiff's Motion to Disqualify Ciping Huang as Defendant's Interpreter is **DENIED AS MOOT**; it is further

**ORDERED** that the September 10, 2024 Pretrial Conference is **VACATED**; and it is further

**ORDERED** that the above-captioned case is **CLOSED**.

**SO ORDERED.**

_____

**Associate Judge Ebony M. Scott**
*(Signed in Chambers)*

**Copies via Odyssey to:**

Huaizhao Liu
Heather01.liu@gmail.com
*Plaintiff*

Charlotte Zhang
Charlottec322556@gmail.com
*Plaintiff*

David G. Barger, Esq.
bargerd@gtlaw.com
*Counsel for Defendant*

Michael A. Hass, Esq.
hassm@gtlaw.com
*Counsel for Defendant*

# Exhibit D

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

HUAIZHAO LIU and CHARLOTTE ZHANG,

      Plaintiffs,

          v.

CIPING HUANG,

      Defendant.

Case No. 23-cv-2134-DLB

Judge Matthew J. Maddox

**DEFENDANT WEI'S OPPOSITION TO PLAINTIFFS' MOTION TO**
**MOTION TO COMPEL THE RULE 35 EXAMINATION**

Defendant Jingsheng Wei ("Wei"), by and through undersigned counsel, respectfully submits this Opposition to Plaintiffs' Motion to Compel DNA/Paternity Testing under Federal Rule of Civil Procedure 35, stating as follows:

**INTRODUCTION[1]**

This is not a paternity, sexual assault, or custody case. It is a defamation case brought by two adult Plaintiffs based on a handful of statements allegedly made by Wei in 2023 and 2024—decades after an alleged sexual encounter with Plaintiff Huaizhao Liu ("Liu"). Plaintiffs seek to compel Wei to undergo DNA testing under Rule 35 to determine whether he is the biological father of Plaintiff Charlotte Zhang ("Charlotte"). But Rule 35 permits such testing only upon a clear showing that the condition is "in controversy" and that "good cause" exists. Plaintiffs have not met either requirement.

This is not Plaintiffs first attempt. In nearly identical D.C. Superior Court proceedings on nearly identical claims, Plaintiffs twice sought and were denied the same relief. The court held that

---

[1] Wei incorporates by reference the procedural history set forth in his Motion to Dismiss, Dkt. 67-1 at 2-5. which remains pending before the Court and if granted would moot Plaintiffs' instant motion.

Rule 35 did not authorize compelled paternity testing on these facts. Dkts. 67-5, 67-6. Collateral estoppel thus bars Plaintiffs from relitigating that issue here.

Even setting estoppel aside, Plaintiffs' request fails. Paternity is not "in controversy" in this defamation case. Whether Wei is Charlotte's father does not prove or disprove the truth of the alleged statements—statements that, at most, reflect subjective opinions or rhetorical denials. Nor would DNA evidence shed light on Wei's intent, a required element of their claim. Plaintiffs' reliance on cases involving sexual assault, civil rights, and physician misconduct—where DNA was directly probative of liability—is misplaced. This case turns on Wei's state of mind and the content of his speech, not on biological paternity. The Motion should be denied.

<div align="center">**ARGUMENT**</div>

**A. The Doctrine of Collateral Estoppel Bars Plaintiffs' Renewed Request for a Paternity Test Under Rule 35.**

Plaintiffs' motion should be denied because the issue they now seek to relitigate—whether Wei can be compelled to undergo a paternity test over Charlotte in connection with Plaintiffs' defamation claim under Rule 35—was already fully and finally adjudicated in prior proceedings between the same parties. The doctrine of collateral estoppel squarely forecloses their request.

Under Maryland law, which governs the application of collateral estoppel in this Court, the doctrine precludes relitigation of an issue when: "(i) the issue decided in the prior adjudication is identical with the one presented in the action in question; (ii) there was a final judgment on the merits; (iii) the party against whom the plea is asserted is a party or in privity with a party to the prior adjudication; and (iv) the party against whom the plea is asserted was given a fair opportunity to be heard on the issue." *Washington v. Pellegrini*, 125 F.4th 118, 127 (4th Cir. 2025) (citation omitted). Each of these elements is met here:

<div align="center">2</div>

**Identical Issue**: The D.C. Superior Court previously adjudicated the very same Rule 35 issue presented in Plaintiffs' current motion—whether Wei can be compelled to submit to a paternity test in connection with Plaintiffs' defamation claim. After full briefing and supplemental submissions, the court unequivocally rejected Plaintiffs' request. See Dkt. 67-5, Jan. 11, 2024 Order. The D.C. Court ruled on the issue a second time, when it denied Plaintiffs' Motion for Reconsideration of the denial its Rule 35 request. Dkt. 67-6 at 10 ("the Court still finds that Rule 35 should not be applied in this broad manner[.]").[2] As such, the issue before this Court is identical to the one previously litigated. **Final Judgment on the Merits**: After the D.C. denied Plaintiffs' Rule 35 motion and denied Plaintiffs' motion for reconsideration, it granted summary judgment in Wei's favor on all claims. *See* Dkt. 67-6. That judgment is final and, on the merits, and Plaintiffs did not pursue any appeal of the prior litigation.  **Same Parties**: Plaintiffs and Wei were all parties to the prior action. **Full and Fair Opportunity**: Plaintiffs were given a full and fair opportunity to litigate the Rule 35 issue in the D.C. proceeding, including the chance to supplement their briefing to their initial motion and pursuing a Motion to Reconsider. *See* Dkt. 67-5 and 67-6. Their disagreement with the court's ruling does not entitle them to a second (or third) bite at the apple.

Collateral estoppel exists precisely to prevent this kind of duplicative litigation over the same issues. *See In re Varat Enters., Inc.*, 81 F.3d 1310, 1315 (4th Cir. 1996) (Issue preclusion "operates to bar subsequent litigation of those legal and factual issues common to both actions that were actually and necessarily determined by a court of competent jurisdiction in the first

---

[2] D.C. Super. Ct. Civ. R. 35 and Fed. R. Civ. P. 35 are identical. By statute, the D.C. courts are required to "conduct its business according to the Federal Rules of Civil Procedure[.]" D.C. Code § 11-946. Thus, when the D.C. Court ruled on Plaintiffs' motion under D.C. Super. Ct. Civ. R. 35, it did so applying the law consistent with Fed. R. Civ. P. 35. *See Clement v. Department of Human Servs.*, 629 A.2d 1215, 1219 n.8 (D.C. 1993) ("When a local rule and a federal rule are identical, we may look to federal court decisions in interpreting the federal rule as persuasive authority in interpreting the local rule.") (internal quotation omitted). Indeed, when denying Plaintiffs' Motion for Consideration, the court expressly considered Plaintiffs' arguments and federal caselaw under Rule 35. *See* Dkts. 67-5, 67-6.

litigation.") (internal quotation omitted). Plaintiffs are barred from relitigating a Rule 35 motion that has already been denied—twice—by a court of competent jurisdiction. Thus, the doctrine of collateral estoppel precludes Plaintiffs' renewed motion under Rule 35.

**B. Plaintiffs' Request to Force Wei to Submit to a Paternity Test Should be Denied Because Paternity is Not In Controversy and Good Cause Does Not Exist.**

Plaintiffs' Motion is under Rule 35(a)(1), which provides that the court may "order a party whose mental or physical condition… is in controversy" to submit to a physical or mental examination. Fed. R. Civ. P. 35(a)(1).

The Supreme Court has long-established that that in addition to being limited by the relevancy requirement of Rule 26, requests for examination under Rule 35(a) requires a showing that matter requested be "in controversy" and that the moving party demonstrate "good cause." *Schlagenhauf v. Holder*, 379 U.S. 104, 117 (1964). The Court explained that these two requirements establish a heightened standard that could not be met merely showing that the request is relevant, and the express limitations of Rule 35(a) are designed to protect against "sweeping examinations of a party who **has not affirmatively put into issue his own mental or physical condition**," and "to hold otherwise would mean that such examinations could be ordered routinely." *Id.* at 121-122 (emphasis added).

When considering a Motion for physical examination under Rule 35(a), the Court has such broad discretion that "even upon a showing that the condition is in controversy and that good cause exists for the examination, the trial judge may still refuse to issue the order." *Neuman v. Neuman*, 377 A.2d 393, 398 (D.C. 1977) (collecting cases); *Hardy v. Riser*, 309 F. Supp. 1234, 1241 (N. D. Miss.1970) ("Even when the 'good cause' and 'in controversy' requirements are met, it is still in the sound discretion of the trial court whether to order the examination"). Plaintiffs fail to establish either requirement to support their Rule 35 request.

**1. Paternity is Not "In Controversy" In This Defamation Action.**

The requested DNA evidence would not be relevant or determinative of Plaintiffs' claims. The outcome of the paternity test will have no bearing on Plaintiffs' defamation claim. Plaintiffs' claim is based on Defendant's alleged opinionated comments that Plaintiffs are liars, scammers, sent by the CCP, and denying that Charlotte is his "illegitimate" daughter. *See* SAC ¶¶ 85-86, 90.

Under Maryland law, elements of a defamation claim include that (i) the alleged statement was false and (ii) the defendant was legally at fault in making the statement. *Piscatelli v. Van Smith*, 424 Md. 294, 35 A.3d 1140, 1147 (Md. 2012). As explained in Wei's Motion to Dismiss, the alleged defamatory statements are at best unactionable statements of Defendant's subjective view of Plaintiffs' motivation or character, theories, or conjecture. *See* Dkt. 67-1. Even if these statements were actionable, whether Wei is or is not Charlotte's biological father does not establish the truth or falsity of the alleged defamatory statements as required to prove Plaintiffs' claim. A DNA result would not prove or disprove whether Liu's rape allegation is true, whether Plaintiffs are affiliated with the CCP, or whether Wei genuinely believed that Plaintiffs were acting dishonestly or with ulterior motives. If a paternity test showed that Wei was Charlottes father, it would only establish that the parties had sexual intercourse 25 years ago. Yet it would not resolve any material fact at issue in this litigation, and permitting such invasive discovery in a defamation case would improperly broaden Rule 35 beyond its legal limits.

As to the element that a defendant was "legally at fault" when making the allegedly defamatory statements, a paternity test would shed no light on Wei's state of mind at the moment of publication. This element "requires a showing that, at a minimum, the party making the false statement acted negligently." *Doe v. Johns Hopkins Health Sys. Corp.*, 274 F. Supp. 3d 355, 366

5

(D. Md. 2017) (citation omitted). Defamation liability turns on what the speaker knew or should have known at the time the words were uttered, not on facts discovered months or years later. *Hawks v. Ruby*, 2019 Md. App. LEXIS 850, at *9 (Md. Ct. Spec. App. Oct. 1, 2019) (element of defamation requires showing that the defendant "failed to act as a reasonable person under like circumstances' **in making** the false and defamatory statements.") (emphasis added) (internal quotation omitted). A laboratory result obtained in 2025 cannot retroactively demonstrate that Wei knowingly lied—or even acted negligently—when he denied paternity years earlier. At best, such a result would supply new information that was unavailable to him when he spoke; it says nothing about whether he subjectively believed his denials were true or had any reason to doubt them then. Accordingly, compelling Wei to undergo DNA testing would not advance Plaintiffs' burden on the "fault" element and would inject an intrusive, irrelevant inquiry into this defamation case.

Plaintiffs rely on *Carroll v. Trump* to suggest that the trial in this defamation case must be centered on whether Wei raped Liu and fathered Charlotte. Mot. at 2. (citing 690 F. Supp. 3d 396, 406 (S.D.N.Y. 2023)). *Carroll* has no application to this case as it did not involve a request for physical examination under Rule 35, nor did it involve any issues concerning paternity.

In that case, while the plaintiffs' defamation claim relating to an alleged sexual assault was pending, the State of New York passed a new law, the Adult Survivors Act (the "ASA"). *Id.* Under the ASA, persons who allegedly were abused sexually were given a new, one-year limitations period within which to sue their alleged abusers for civil liability. *Id.* The plaintiff filed a second lawsuit under the ASA based on her sexual assault allegations. *Id.* The second suit went to trial while the first suit remained pending, and the jury found that the defendant was liable for sexual abuse under the ASA. *Id.* That verdict, in turn, established the falsity of the defendants accusations that the plaintiff was lying in the first defamation suit. *Id.* It was the unique mechanism under the

6

ASA which allowed the issue of sexual assault to be tried in fact, not common law defamation principles. *See id.* Thus, *Carrol* does not support Plaintiffs contention that in this defamation lawsuit they should be permitted to try the issue of whether a rape occurred in 2000 or whether Wei is Charlotte's father.

Further, the caselaw which Plaintiffs rely on to argue that compelling a paternity test under Rule 35 is appropriate here are easily distinguishable. Plaintiffs first cite *Strong v. Wisconsin* to suggest that a DNA test is appropriate so long as it is relevant to the plaintiffs claim, even if the result is not dispositive. 2007 U.S. Dist. LEXIS 38626, at *1 (W.D. Wis. May 25, 2007). The plaintiff in *Strong* was a maximum-security psychiatric patient who alleged he was sexually assaulted by a state employee. *Id.* The court ordered DNA testing only after the plaintiff demonstrated he had preserved physical evidence—namely, a pubic hair—linking the alleged perpetrator to the sexual assault. *Id.* The existence of sexual contact was a central, disputed factual issue, and the requested DNA test went directly to proving (or disproving) the core of the plaintiff's claims, including sexual battery and violations of plaintiff's rights under Wisconsin's patients' rights law, Wis. Stat. § 51.61. *See id.*

Plaintiffs also rely on *Ray v. Park*, where a plaintiff-inmate alleged he was sexually assaulted by the defendant, a prison guard where the plaintiff was held. 2021 U.S. Dist. LEXIS 182967, at *6-7 (W.D. Mo. Sep. 24, 2021). The defendant became pregnant and gave birth to a child. *Id.* The court found that the paternity of the defendant's child was "in controversy" under Rule 35 because, if the plaintiff was the father, it would prove that, under Missouri law, the defendant sexually assaulted the plaintiff. *Id.* (citing RSMo § 566.145 (making it a class E felony for a prison employee to have sexual contact with a prisoner)).

*Strong* and *Ray* have no application here. Both cases involved circumstances where the plaintiff was an inmate or patient in a maximum-security facility, alleged sexual assault by their handlers, and involved civil rights and sexual assault claims where DNA evidence was essential to determine whether a sexual encounter had occurred. *See Strong*, 2007 U.S. Dist. LEXIS 38626, at *1; *Ray*, 2021 U.S. Dist. LEXIS 182967, at *6.  Here, Plaintiffs' claim is not for sexual assault, battery, or similar tort. Plaintiffs assert a single claim against Wei for defamation, which does not turn on whether Wei is Charlotte's biological father or even if any sexual contact occurred.

Plaintiffs also cite *D'Angelo v. Potter*, where the plaintiff was an employee of the defendant supervisor and sued for sexual assault alleging that she was sexually assaulted while at work. 224 F.R.D. 300 (D. Mass. 2004).  The plaintiff corroborated her claim because a semen specimen was found where the employee claimed that the alleged assault occurred. *Id.*  Thus, evidence as to whether or not the supervisor's DNA matched the semen specimen went directly to the question of liability on her assault claim, and the court ordered a DNA test. *Id.*

Again, unlike in *Potter*, this is not a sexual assault case. It is a defamation case where sexual contact is not directly relevant to the question of liability, and there is no contemporaneous physical evidence of Liu's rape allegation. *Potter* is not applicable to the facts and claims here.

Plaintiffs next cite *Ashby v. Mortimer* and *Rousseau v. Coates,* two cases where a paternity test was ordered under Rule 35 under near-identical fact patterns which are easily contrasted to this case. Mot. at 6. Both cases involved defendant-doctors who were alleged to have wrongfully impregnated the plaintiff-patient with their own semen instead of using donor sperm as required. *See Ashby*, 329 F.R.D. 650, 654 (D. Idaho 2019), *reconsideration denied*, 2019 U.S. Dist. LEXIS 62709 (D. Idaho Apr. 9, 2019) (ordering doctor to submit to paternity test because, if defendant

8

were the father of plaintiff's child, defendant was liable for inseminating plaintiffs with his own sperm); *Rousseau*, 2019 U.S. Dist. LEXIS 118726, at *1 (D. Vt. July 17, 2019) (same).

*Ashby* and *Rousseau* underscore why a paternity test is inappropriate in this case. In both cases, the defendants were doctors accused of professional misconduct. The requested paternity testing in those actions was not only relevant but dispositive: if the defendants were proven to be the biological fathers, they were liable for negligence, fraud, or battery. By contrast, here, the outcome of any paternity test is not dispositive of Plaintiffs' defamation claim against Wei.

No matter how Plaintiffs attempt to frame their claim, this is not a sexual assault case, a civil rights case, or a case where paternity is dispositive of any issue of liability. Plaintiffs' request to expand Rule 35 and compel a paternity test under the present circumstances must be denied.

**2.  Plaintiffs Fail to Establish Good Cause to Support Their Rule 35 Request.**

Good cause does not exist to force Wei to submit to a paternity test here. Plaintiffs cite no authority – and Wei has found none – where a Court required an individual to submit to a paternity test under Rule 35 in the context of a defamation claim or where there was an unrebutted legal father who was not the defendant. Plaintiffs have failed to establish the good cause necessary to justify their request for a paternity test under Rule 35 and the Court should thus deny the same.

Plaintiffs argue good cause exists because they have struggled to obtain reliable evidence supporting their allegations that Wei raped Liu or is Charlotte's father. They cite subpoena responses from Robert Suettinger, who denied having relevant documents or "23andMe" results, and note that 23andMe objected to their subpoena. Mot. at 2–3. But Plaintiffs have not moved to compel or otherwise sought to enforce the 23andMe subpoena, nor have they explained how any such records would support their demand for a paternity test.

9

In fact, Plaintiffs admit that even if they had those results, 23andMe is not reliable evidence of biological paternity. *Id*. at 3. Their admission underscores the absence of any corroborating evidence that Wei is Charlotte's father. This sharply contrasts with the cases Plaintiffs cite, where DNA testing was directly relevant to claims of sexual assault or misconduct and was supported by corroborating physical evidence. *See supra*, *Strong*, 2007 U.S. Dist. LEXIS 38626, at *1; *Potter*, 224 F.R.D. 300. Plaintiffs have no such evidence here, and thus cannot show good cause for compelled testing.

Moreover, none of the authorities cited by Plaintiffs—and none that Defendants have found—involve a situation where the "child" already has a legally established father whose paternity has not been rebutted. Under Maryland law, a man is deemed a child's legal father if he was married to the mother at the time of conception or birth or is listed on the birth certificate and has not signed a denial of paternity. *See* Md. Code, Fam. Law § 5–3A–06(a).

Here, it is undisputed that Meng Zhang was married to Liu at the time of Charlotte's conception and birth, and he is listed on her birth certificate. *See* Dkt. 67-5. He has never signed a denial of paternity, disclaimed paternity, or been excluded by court order. As a matter of law, he is Charlotte's father. At a minimum, Plaintiffs must first exclude Meng Zhang as Charlotte's legal father before compelling Wei to submit to DNA testing. Their failure to do so defeats any claim of "good cause" under Rule 35, and the Motion should be denied.

## CONCLUSION

For the foregoing reasons, Defendant Jingsheng Wei respectfully requests that this Court deny Plaintiffs' Motion and award all such other relief the Court deems just.

10

June 10, 2025

Respectfully submitted,

/s/ *David Barger*
David G. Barger (MD Bar# 14716)
Robert W. Angle (*pro hac vice*)
Greenberg Traurig LLP
1750 Tysons Blvd.
Suite 1000
McLean, VA 22102
Tel:  (703) 749-1300
Email:  bargerd@gtlaw.com
        anglew@gtlaw.com

*Counsel for Defendant Wei*

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of June 2025, I caused a copy of the foregoing to be filed electronically with the Clerk of Court using the CM/ECF system, which then sent a notice of filing to all counsel of record.

/s/ *David Barger*
David G. Barge

12

# Exhibit E

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HUAIZHAO LIU
And
CHARLOTTE ZHANG
6218 Georgia Avenue NW
#5018
Washington DC 20011

    *Plaintiffs*,

v.              Civil Action Number:

CIPING HUANG
13423 Queens Lane
Fort Washington, MD 20744

    *Defendant*.

## COMPLAINT

The Plaintiffs, Huaizhao Liu and Charlotte Zhang (individually, "Liu" and "Zhang" or, collectively, "Plaintiffs")], by counsel, hereby file this Complaint against Defendant Ciping Huang ("Huang") and the following in support thereof:

## Nature of the Action

1. The Plaintiffs seek monetary and injunctive relief against Ms. Huang for defaming Liu and Zhang by asserting that Liu and Zhang are attempting to conduct a conspiracy to blackmail and/or destroy Jingsheng Wei ("Wei") at the behest of the Chinese government, and in coordination with a fraudulent gang, by seeking to establish the parentage of Zhang. Huang has conducted a public and ongoing campaign impugning the character and honesty of both Liu and Zhang on social media, specifically on the social media platform Twitter.

### The Parties

2. Huaizhao Liu (also known colloquially as Heather Liu) is an individual residing in the District of Columbia.

3. Charlotte Zhang is an individual residing in the District of Columbia.

4. Ciping Huang is an individual residing in Maryland and is the Executive Director of the Wei Jingsheng Foundation. Ciping Huang is the titled owner of 13423 Queens Lane, Fort Washington, MD with a mailing address of 709 58th Avenue, Fairmont Heights, MD.

### Jurisdiction

5. This Court has subject matter jurisdiction over this Complaint pursuant to 28 USC §1332 as there is complete diversity between the parties and the Complaint at bar seeks damages in excess of $75,000.00.

### Factual Background

6. In March 2000, Ms. Liu was employed in Los Angeles, CA as a reporter for the Sing Tao Daily News.

7. As part of her assignment, Ms. Liu was dispatched to meet with and interview Jingsheng Wei. Wei was at the time, and remains, a well-known and prominent Chinese dissident. Ms. Liu completed her interview and accepted Mr. Wei's invitation to attend a welcome banquet being held in his honor by the local Chinese community leaders. Due to her impending deadline, Ms. Liu, after engaging in numerous conversations with other attendees, left the event and returned to her office in Alhambra.

8. In the hour before her deadline to file her story containing the interview of Mr. Wei, Ms. Liu received an unexpected phone call from Mr. Wei. Mr. Wei asked Ms. Liu to bring her

a copy of the article. As the hotel was on the route of her commute home, Ms. Liu obliged Mr. Wei's request to deliver a copy of the article to his hotel.

9. Ms. Liu drove to the hotel where she interviewed Mr. Wei to deliver the hard copy of the article. When she arrived, Mr. Wei invited her into his hotel room. Without warning or consent, Mr. Wei forcefully engaged in sexual intercourse with Ms. Liu.

10. Ms. Liu, in shock and embarrassed by the incident, managed to extricate herself from the circumstances and returned home. At the time, Ms. Liu was married to Meng Zhang. Within days of the incident, Ms. Liu informed Mr. Zhang that she had been accosted by Mr. Wei in Mr. Wei's hotel room.

11. Ms. Liu soon found herself to be pregnant. Ms. Liu gave birth to her daughter, Charlotte, in December of 2020. The pregnancy that resulted from the encounter with Mr. Wei was a central cause of the end of Ms. Liu and Mr. Zhang's marriage, which was finalized several years later.

12. As Ms. Liu was raising her daughter alone, she left the United States and relocated to Hong Kong. While living in Hong Kong, Ms. Liu disclosed to a colleague, Wen Yunchao that her daughter was fathered by Mr. Wei. In the 2012-2013 timeframe, Wen Yunchao contacted Mr. Wei and informed him of his parentage of Charlotte. According to Wen Yunchao, Mr. Wei reacted to the news that he parented a child with indifference.

13. Ms. Liu was devasted by Mr. Wei's reaction to learning he fathered a child with Ms. Liu. This compounded the trauma of being an assault survivor and Ms. Liu was diagnosed with clinical depression and engaged psychiatric treatment in Hong Kong.

14. In 2018, accounts of Mr. Wei's parentage of Charlotte began to circulate online in social media. Ms. Liu did not authorize or consent to the social media exposure regarding Ms. Zhang's parentage.

15. Soon thereafter Ms. Liu received requests from an associate of Mr. Wei, a Robert Suettinger, asking Ms. Liu to provide DNA samples for the purposes of establishing paternity. This request was represented as a request directly from, and on behalf of, Mr. Wei. A commercial DNA kit was mailed directly to Ms. Liu with instructions as to how to collect the required samples and return the same to Mr. Suettinger.  Ms. Liu was later informed in an email from Mr. Suettinger that Mr. Wei's paternity of Ms. Zhang was affirmatively established.

16. After paternity was established, communications continued with Mr. Wei through his associates, wherein Mr. Wei made numerous commitments and promises that are the basis of the action pending in this Court in Civil Action No. 19-CV-3344-KBJ.

17. Shortly after the aforementioned civil action was filed, the Defendant, Ciping Huang, began an unrelenting social media campaign against Ms. Liu and Ms. Zhang.

18. The Defendant Ciping Huang is a close confidant of Mr. Wei and serves as the Executive Director of the Wei Jingsheng Foundation. She maintains an active and public presence on the social media platform Twitter and posts using the handle "@huang_ciping"[1].

19. On September 13, 2019, the Defendant posted several Tweets in which she asserted that Ms. Liu was attempting to "blackmail" Mr. Wei. In another Tweet on the same date, the Defendant accused Ms. Liu of attempting to "destroy Lao Wei's reputation" and further accusing Ms. Liu of seeking to undermine Mr. Wei's democracy movement. The

---

[1] The vast majority of the posts regarding the Plaintiffs on the Defendant's Twitter account are in her native language, Mandarin Chinese, and both the native language post and an accompanying translation are provided.

Defendant went on to insinuate, via assertions posed in the form of a question, that Ms. Liu had a "malicious motive." Also on September 13, 2019, the Defendant posted a Tweet which advances to the notion that the CCP, the ruling authority in China, is in possession of Mr. Wei's DNA and, accordingly, is able to make clones of Mr. Wei[2]. The only available interpretation, within the context of the Defendant's expansive postings on the topic of Ms. Liu and Ms. Zhang, is that the Defendant is asserting the unfounded and false notion that Ms. Liu is acting in concert with the CCP against Wei. *See Exhibit A*

20. These statements by the Defendant are false as Ms. Liu is not blackmailing Mr. Wei in any manner. Further, Ms. Liu is a fellow supporter of the Chinese democracy movement and, at the time she met Mr. Wei in March 2000, Ms. Lui considered herself a great admirer of his work and efforts on behalf of Chinese democracy.

21. On subsequent occasions, in various posts, the Defendant persists in pressing the false narrative that Ms. Liu is working in some capacity as an operative of the CCP against Mr. Wei and his pro-Democracy efforts.  *See Exhibits B & D*

22. Again, the Defendant's statements, assertions, and implications are false as Ms. Liu is not now, and never has been, an agent or operative of the CCP.  Other than seeking redress in the court system, Ms. Liu has not contacted any organizations, institutions, or government officials regarding Mr. Wei and the issue of their daughter's paternity.

23. The Defendant, beginning in 2019 and continuing to the present time, repeatedly posts Tweets in which she accused Ms. Liu of conducting a "team operation" against Mr. Wei "using high technology and even fraud." *See Exhibit C*

---

[2] Mr. Wei was held as a political prisoner of the Chinese government for many years.

24. These statements by the Defendant are false as Ms. Liu is not conducting an operation, as a team or otherwise, against Mr. Wei. While Ms. Liu has availed herself of the court system to seek certain redress and remedies, she is not engaged with vague technologies nor is she committing a fraud.

25. In other posts on Twitter, on July 15, 2020, and on March 28, 2021, and as part of the larger ongoing campaign against the Plaintiffs, the Defendant referred directly to Ms. Liu as a "slutty girl." The Defendant also attacks the Plaintiffs together, such as on May 2, 2021, when the Defendant referred to the Plaintiffs as "shameless bitches." *See Exhibit D.*

26. Since 2019 and continuing to the present time, the Defendant has conducted an ongoing dialogue with numerous other Twitter users regarding the paternity and obligations of Mr. Wei to Ms. Liu's daughter.

27. On July 12, 2020, the Defendant, in response to another Twitter user, again impugned the veracity of Ms. Liu's daughter Charlotte and characterized the use of the legal system to seek redress of her cause as "shameless and extortion!" *See Exhibit D*

28. Charlotte Zhang categorically denies she is engaged in any sort of illegal or immoral behaviors such as extortion.

29. Throughout her voluminous online conversations and commentary regarding the Plaintiffs, the Defendant consistently refers to the Plaintiffs as "Pengci" which translates as "touching porcelain," an idiom from Chinese. Pengci, or touching porcelain, is a cultural reference to the practice by merchants of placing expensive, fragile items where it can easily be knocked over, allowing the merchant to collect monies for the damaged item. The term has come to represent fraudulent activity for purposes of ill-gotten gain.

The Defendant refers to the Plaintiffs explicitly and repeatedly as pengci, or the as "the porcelain mother-daughter gang," in a clear cultural assertion of fraud.

30. On July 15, 2020 in a post on Twitter, again discussing Ms. Liu and the paternity of Charlotte, the Defendant referred to Ms. Liu as "a prostitute." Ms. Liu is a writer and translator by trade. She has never solicited sex for money, or vice versa, and categorically denies she is a sex worker. *See Exhibit D.*

31. The Defendant has steadily published voluminous Tweets into 2021, referencing Ms. Liu and Ms. Zhang, continually accusing them of fraud, of acting as agents of the CCP, of conspiring with the CCP to damage Mr. Wei, seriously impugning their character and reputation as well as the mental and emotional wellbeing of both Plaintiffs.

32. As recently as May 2021, in a post highlighting a disturbing video, involving a child being coaxed into confrontation with soldiers in the recent escalations of the Israeli-Palestinian conflict, the Defendant compared the Plaintiffs to perpetrators of violence against children in a war theater. *See Exhibit E.*

33. The Defendant, in addition to the specific aforementioned statements, has, since at least September 2019, conducted an aggressive disinformation campaign against Ms. Liu. The Defendant has repeatedly insinuated that Ms. Liu and her ex-husband concocted a conspiracy theory to defraud Mr. Wei; that Ms. Liu is an agent of the CCP and is acting on its behalf to undermine Mr. Wei's democracy movement. Furthermore, the Defendant has posted to her Twitter account quotations that purport to be excerpts of love letters from Ms. Liu to Mr. Wei, letters that Ms. Liu adamantly states are fraudulent and never existed. Moreover, the Defendant has manipulated and misrepresented certain actual statements of Ms. Liu, taken from communications and court hearings to which the

Defendant was not a party, and used said communications, devoid of proper context, in a manner intended to reflect poorly upon Ms. Liu and Ms. Zhang.

34. Ms. Liu and her daughter Charlotte have both incurred substantial mental and emotional anguish and reputational harm at the hands, or, more appropriately, at the fingertips of the Defendant due to her relentless social media crusade against the Plaintiffs.

## COUNT ONE – Defamation Per Se

35. The Plaintiffs reallege and incorporate by reference herein the facts and allegations set forth in paragraphs 1 – 34.

36. The Defendant published written statements asserting that Ms. Liu is a liar; is of an unchaste nature; is seeking to harm Mr. Wei and his lifelong democracy pursuits; that she is acting as an agent of the CCP to undermine Mr. Wei; that the Plaintiffs are using advanced technologies against Mr. Wei; that the Plaintiffs, in conjunction with unknown other actors, are conducting an elaborate fraud upon Mr. Wei by seeking to establish paternity of their daughter; and, that such fraud is being conducted as a conspiracy, using blackmail and extortion, at the behest of the CCP.

37. All of these statements were posted to the public social media platform Twitter, using the account of the Defendant, without the consent and to the detriment of Ms. Liu and Ms. Zhang.

38. The Defendant's statements are defamatory *per se* as the Defendant repeatedly made statements to the public accusing one or both of the Plaintiffs of numerous felonies as well as asserting that Ms. Liu is of an unchaste nature and is committing acts involving moral turpitude.

39. The multiple years of false statements published in a public forum have caused injury to the Plaintiffs' reputation and standing in the community as the unyielding attacks on Ms. Liu and Ms. Zhang have caused fear, embarrassment, humiliation, anxiety, emotional anguish, and financial harm. The Defendant's defamatory statement also castigated the veracity, honor, morality, and reputation of the Plaintiffs.

40. As a direct and proximate result of the Defendant's defamatory public shaming campaign against the Plaintiffs, Ms. Liu and Ms. Zhang have incurred economic and non-economic damages in excess of $75,000.00 and will continue to incur such damages including but not limited to:

   a. Reputational Harm

   b. Emotional, mental, and physical injury due to the sustained intensity of the false statements published by the Defendant;

   c. The expense of attorney's fees due to the need to seek redress in the courts;

   d. Other monetary losses and expenses caused by the Defendant's false statements, characterizations, and implications.

41. The Defendant is conducting an intentional and pervasive social media campaign against the Plaintiffs with knowledge of their falsity, and with reckless disregard for the truth or falsity of the statements, characterizations, and implications. The Defendant acted with malice against the Plaintiffs and with the specific intent to discredit and harm both Ms. Liu and Ms. Zhang. For these reasons, an award of punitive damages is appropriate in this matter to deter the type of cyber bullying, intimidation, and reputational attacks in which the Defendant has, and continues to, engage.

WHEREFORE, the Plaintiffs respectfully request this Honorable Court enter judgement against the Defendant and prays as follows:

A.  Actual damages in an amount to be proved at trial;

B.  Punitive damages due to the insidious conduct of the Defendant;

C.  An injunction constraining the Defendant from continuing to make false statements, false characterizations, and derogatory implications about the Plaintiffs;

D.  That the Defendant be ordered to remove all posts from her Twitter account and newsfeed pertaining to the Plaintiffs;

E.  Such other relief as the Court deems just and proper.

F.  Plaintiff demands trial by Jury.

<div style="margin-left:45%">

Respectfully Submitted,
HUAIZHAO LIU
And
CHARLOTTE ZHANG
By Counsel

</div>

June 4, 2021

**STEVEN KRIEGER LAW, PLLC**
*Attorney for the Plaintiffs*
2200 Wilson Blvd.
Suite 102
Arlington, VA 22201
Phone:          703/831 7707
Facsimile:    571/521 5814
Email:          donna@stevenkriegerlaw.com

By: _____
   Donna MCL Murphy
   DC Bar No. 1004967

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of June, 2021, I electronically filed the foregoing document, and associated new case forms, with the Clerk of Court using the CM/ECF system.

**STEVEN KRIEGER LAW, PLLC**
*Attorney for the Plaintiffs*
2200 Wilson Blvd.
Suite 102
Arlington, VA 22201
Phone:            703/831 7707
Facsimile:      571/521 5814
Email:            donna@stevenkriegerlaw.com

By: _____

Donna MCL Murphy
DC Bar No. 1004967

Case 8:23-cv-02434-WJM    Document 11-1    Filed 06/30/25    Page 122 of 273

*Exhibit A*

Case 8:23-cv-02434-WJM    Document 11-1    Filed 06/30/25    Page 122 of 273

Case 8:23-cv-03143-MJM Document 11   Filed 06/28/25   Page 222 of 273

**Thread**



### Ciping Huang 黄慈萍
@huang_ciping

中秋本是阖家团圆之时.多年来,老魏也一直希望有家庭和孩子.近期却碰到一个离奇碰瓷事件.一个他没听说过的女人声称与他有个女儿,姓刘,为此她一直单身.后经我了解,她的女儿其实姓张,她的丈夫也姓张.现女方来敲诈,要老魏负担女儿和她的各种费用,还要打官司.我已为老魏多次申请各种隔离令.但此次非同寻常.

Translated from Chinese by Google

The Mid-Autumn Festival was originally the time for family reunion. For many years, Lao Wei also wanted to have a family and children. Recently, he encountered a bizarre encounter with porcelain. A woman he had never heard of claimed to have a daughter with him, surnamed Liu, For this reason, she has been single. I learned later that her daughter was actually surnamed Zhang, and her husband was also surnamed Zhang. The current woman came to blackmail and asked Wei to pay for her daughter and her various expenses, and also to go to court. I have already done so. Old Wei has applied for various quarantine orders many times, but this time is extraordinary.

11:13 AM · Sep 13, 2019 · Twitter Web App

7 Retweets   6 Quote Tweets   33 Likes

← **Tweet**                                                                    ...

 **Ciping Huang 黄慈萍**
@huang_ciping

Replying to @luo_yu_feng

谢谢你花时间写出有理有据的这么多条.这也是我所了解
的(英文),却不曾见过中文的.可惜,不管这已成年的孩子是
否与老魏有关,其母亲对老魏从头就是欺骗.现在更为恶
意,要绑架与老魏有关的组织,来达到其目的,让人无法容
忍.母女的目的不是为了人们以为的老魏荣誉,正是为了毁
其名誉及其它目的.
是的,他立了遗嘱

Translated from Chinese by Google

Thank you for taking the time to write so many articles
that are justified and well-founded. This is what I know
(in English), but I have never seen Chinese. It is a pity
that regardless of whether this adult child is related to
Lao Wei, his mother treats Lao Wei. Deception from the
beginning. Now it is even more malicious. It is
intolerable to kidnap organizations related to Wei to
achieve its purpose. The purpose of mother and
daughter is not for the honor of Wei, but it is to destroy
his reputation and other purposes. .
 Yes, he made a will

9:25 AM · Sep 15, 2019 · Twitter Web App

Case 8:23-cv-02413-JMD Document 11-1    Filed 06/08/25    Page 224 of 273

**Tweet**

 **Ciping Huang 黄慈萍**
@huang_ciping                                                            • • •

既非同事，也非雇员，是朋友，
打抱不平的朋友，
不想让朋友落入中共陷阱的朋友，
爱护民运不想让一些人得逞的朋友，
在技术上比老魏懂一些，
最近还很有研究心得的中科大高材生！
你为什么要问这些呢？

Translated from Chinese by Google

Neither a colleague, nor an employee, but a friend,
 Friends who are injustice,
 Friends who don't want their friends to fall into the
trap of the CCP,
 Cherish the pro-democracy movement's friends who
don't want some people to succeed,
 Technically knows better than Wei Wei,
 High-achieving students of the University of Science
and Technology of China who have had a lot of
research experience recently!
 Why are you asking this?

>  **Wen** ✔ @wenyunchao · Sep 13, 2019
> Replying to @huang_ciping
> 请问你以何身份代表魏先生发言？是朋友，同事还是雇员？

9:53 PM · Sep 13, 2019 · Twitter Web App

← **Tweet**



**Ciping Huang 黄慈萍**
@huang_ciping                                      •••

我现在还不想拿出更多证据.但你说"当事人没就此事对外说半个字",你是怎么知道的?万延海是怎么知道的?我还能列出更多人的名单,但我不想这样做,因为都还算朋友.我为什么现在出来说,是因为太多的人已经从她那听了一面之词,而且要把与老魏有关的民运机构组织都牵涉进来,以此毁坏民运的名声.不正是中共要的?

Translated from Chinese by Google

I don't want to produce more evidence yet. But you said, "The person concerned didn't say a word to the outside world on this matter." How did you know? How did Wan Yanhai know? I can list more people, but I don't want to do this, because I'm still a friend. Why do I come out now because too many people have heard from her, and they want to involve all the democratic organizations related to Wei in order to destroy the democratic movement. Isn't that what the CCP wants?

>  **Wen** ✓ @wenyunchao · Sep 13, 2019
> 如果连DNA鉴定结果都不承认的话，一切阴谋论就好解释了。当事人没就此事对外言说半个字，事情还是由黄女士首先对外界揭露，并提出"碰瓷"一说及指控当事人试图以此伤害魏京生先生和民运声誉。 twitter.com/huang_ciping/s...

8:52 PM · Sep 13, 2019 · Twitter Web App

← **Tweet**



**Ciping Huang 黄慈萍**
@huang_ciping                                    ...

Replying to @7000christian @wenyunchao and 3 others

谢谢关注。老魏的弟弟临终前专门嘱咐我要记住公安局里有老魏的所有资料，clone出一个老魏都有可能。（其实就在2天前，还报道了在中国只要几万美元就可以制造出一个一样的猫。）最近已50岁的魏则西的父母给死去的他生了一个弟弟。老魏在狱中得了肝炎，都没有告诉他。这就是中共的伦理道德。

Translated from Chinese by Google

Thank you for your attention. Before the death of Wei's brother, he specifically asked me to remember all the information about Wei in the Public Security Bureau. It is possible to clone a Wei. (In fact, just 2 days ago, it was reported that the same cat can be made in China for tens of thousands of dollars.) Recently, 50-year-old Wei Zexi's parents gave birth to a brother who died. Old Wei had hepatitis in prison, but he didn't tell him. This is the ethics of the CCP.

6:06 PM · Sep 13, 2019 · Twitter Web App

← **Tweet**



Ciping Huang 黄慈萍
@huang_ciping                                    ...

Replying to @heanquan

你谈责任,没听说过如何负责?18岁成年,来要钱.老魏曾希望能见面并做实验.可听说她与女儿不久前到华盛顿.但却没通知老魏,更没说要见面.不仅没见面,还威胁老魏,以女儿与她的名义来告老魏.她不仅要破坏老魏的名誉.更威胁要把与老魏有关的组织都牵进来,来搞臭民运.这种恶意的动机背后是什么原因?请深思.

Translated from Chinese by Google

You talked about responsibilities. Haven't heard of how to be responsible? When you are an adult at the age of 18, you come to ask for money. Old Wei once hoped to meet and do experiments. But I heard that she and her daughter went to Washington not long ago. But he didn't notify Wei, let alone say To meet. Not only did she not meet, she threatened Lao Wei to sue Lao Wei in the name of her daughter and her. She not only wanted to destroy Lao Wei's reputation, but also threatened to bring in organizations related to Lao Wei to stigmatize the pro-democracy movement. What is the reason behind this malicious motive? Please think carefully.

4:25 PM · Sep 13, 2019 · Twitter Web App

← **Tweet**



**Ciping Huang 黄慈萍**
@huang_ciping

...

Replying to @wutingzy @wenyunchao and 2 others

小孩长到18岁,来讨抚养费,是不是太晚了?为什么?这类事情过去老魏不是没碰到过,没一个是真的,光我就为他申请过多次的隔离令.有时属于别人痴情的好意,甚至有寻死觅活的,也就留着面子,过去就算了.这次绝不简单,相必是一系列的官司便于中共垂死挣扎呢。

Translated from Chinese by **G**oogle

The child has grown to 18 years old, is it too late to ask for alimony? Why? Didn't Wei never encounter such things in the past, and none of them are true. I have applied for multiple quarantine orders for him. Sometimes it belongs to the infatuated kindness of others, and even those who are looking for life and death will save face, and forget it in the past. This time it is by no means simple, it must be a series of lawsuits to facilitate the CCP's dying struggle.

3:38 PM · Sep 13, 2019 · Twitter Web App

← **Tweet**



Ciping Huang 黄慧萍
@huang_ciping

···

始终有爹有妈的孩子,长到18岁,来碰瓷,这也够奇葩的.到底是什么目的?何况老魏刚听说这事,看了她当年的照片,还根本就记不得她!这18年来,老魏根本就没听说过她的女儿,又谈何责任?如何付责任?有人提DNA实验.靠几根头发就能鉴定?如果她一直知道并认定老魏是父亲,她以前为什么不告诉,以此剥夺亲情?还是其它?

Translated from Chinese by **G**oogle

There is always a child with a father and a mother. It is strange enough to come to touch porcelain when they are 18 years old. What is the purpose? Not to mention the old Wei just heard about this and saw her photos of the year, but he couldn't remember her at all. In the past 18 years, Lao Wei has never heard of her daughter, so what responsibility? How to pay the responsibility? Some people mentioned DNA experiments. It can be identified by a few hairs? If she always knew and believed that Lao Wei was the father, Why didn't she tell before, so as to deprive the family of affection? Or something else?

2:15 PM · Sep 13, 2019 · Twitter Web App

Case 8:23-cv-02408-MJM    Document 111    Filed 06/28/25    Page 23 of 73

*Exhibit B*

← **Tweet**



**Ciping Huang 黄慈萍**
@huang_ciping

···

我们发现，该"碰瓷母女"在美国的活动不仅仅针对老魏个人，还写信给各个机构组织及重要的政治家等，诬陷老魏及其工作与有关的组织，而且还传讯我们，要求交出魏京生基金会等的档案，并且还给好几个宣传民主自由的组织机构送了传票，其目的与意图，请大家深思。

Translated from Chinese by **Google**

We found that the activities of the "Mother and Daughter Touching Porcelain" in the United States not only targeted Old Wei individuals, but also wrote to various organizations and important politicians, framed him and his work and related organizations, and also sent us , Demanded to hand over the files of the Wei Jingsheng Foundation and others, and also sent subpoenas to several organizations that promote democracy and freedom. Please think deeply about its purpose and intention.

4:20 PM · Oct 30, 2019 · Twitter Web App

July [DATE], 2020



October 5, 2019



Case 8:23-cv-02434-MJM Document 11    Filed 06/08/25    Page 233 of 273

*Exhibit C*

← **Tweet**

 

@huang_ciping

在魏京生基金会忙于举办一系列国殇70周年之际，她们又与其他人物合作，给许多美国政治家等写诬告信，要他们不参加魏京生组织的抗议与示威活动。这已不是简单的碰瓷。希望那些与这2个老魏从没见过也不曾听过的女人见过面的人都想想，也请大家集思广议，这2个女人及其背后的团队到底是想达到什么目的？

Translated from Chinese by **G**oogle

On the occasion of the 70th anniversary of the Wei Jingsheng Foundation, which was busy holding a series of national deaths, they cooperated with other figures and wrote false accusations to many American politicians, asking them not to participate in the protests and demonstrations organized by Wei Jingsheng. This is no longer a simple touch of porcelain. I hope that those who have met with these two women whom Wei has never seen or heard of will think about it, and I would like to ask everyone to brainstorm about what the two women and the team behind them are really trying to achieve. ?

9:53 PM · Oct 3, 2019 · Twitter Web App

# Tweet



**Ciping Huang** 黄慈萍
@huang_ciping

Replying to @UDvUxHiwkCKOnFR and @chenbing171819

2个魏从没见过也不曾听过的女人及其团队别有用心地给许多美国政治家等写诬告信，要他们不参加魏京生组织的抗议与示威活动，目的阴险。鉴定完毕。

Translated from Chinese by Google

Two women whom Wei had never seen or heard of, and their team used ulterior motives to write false accusations to many American politicians and others, asking them not to participate in the protests and demonstrations organized by Wei Jingsheng for insidious purposes. Identification is completed.

11:33 PM · Oct 3, 2019 · Twitter Web App

USCA4 Appeal: 25-1914   Doc: 10-6   Filed: 08/21/2025   Pg: 27 of 48   Total Pages:(234 of 272)

Case 3:23-cv-01304-MJD Document 111   Filed 08/26/25   Page 235 of 273



**Ciping Huang 黄慈萍**
@huang_ciping

Replying to @FDCSoCalLA

你若知道北京的民运圈，你可能认识她们。因为她们在那里已经骗过一圈的钱。

Translated from Chinese by Google

If you know the pro-democracy circle in Beijing, you may know them. Because they have cheated a circle of money there.

2:41 PM · Oct 4, 2019 · Twitter Web App

USCA4 Appeal: 25-1914   Doc: 10-6   Filed: 08/21/2025   Pg: 28 of 48   Total Pages:(235 of 272)

Case 2:23-cv-01241-WJM-JMD Document 111   Filed 06/30/25   Page 27 of 273

← **Tweet**

 **Ciping Huang 黄慈萍** ...
@huang_ciping

抱歉刚看到您适当准确的评语.以前已有足够写书的资料,但这次的手段与方法更为卑鄙.也许能解释刘女士及其团队从头就不择手段的欺骗行为.我以后会透露更多.中共本就是没有底线的,所以这一切并不奇怪.无法理喻的是一些人为了钱财或便利以及见不得人的目的,不仅仅能够出卖良心,甚至能兜售自己的亲生骨肉.

Translated from Chinese by Google

Sorry to just see your appropriate and accurate comment. There was enough information to write a book before, but this time the methods and methods are more despicable. Maybe it can explain the deceitful behavior of Ms. Liu and her team from the beginning. I will reveal more later. Many. The CCP has no bottom line, so this is not surprising. What is unreasonable is that some people can not only sell their conscience, but even sell their own flesh and blood for money or convenience and shameful purposes.

11:30 PM · Oct 4, 2019 · Twitter Web App

## ← Tweet

 **Ciping Huang 黄慈萍**
@huang_ciping

···

后来才发现,这刘女士有关声称如孩子没爹她一直单身等说法压根就是谎言.尤其可怕之事乃整个过程是团队操作,采用高技术乃至造假.再后来得知她俩来华盛顿一个多月,找了许多人,却独独绕过老魏,她们的团队更是写信给美国国会等多处诬告陷害老魏,要求不参加他组织的抗议中共的活动.这是来认亲吗?望大家深思.

Translated from Chinese by Google

Later, it was discovered that Ms. Liu's claim that she had been single if the child did not have a father was a lie at all. The most terrible thing was that the whole process was a team operation, using high technology and even fraud. Later, I learned that the two of them came to Washington for more than a month. , I found many people, but they bypassed Wei alone. Their team even wrote to the U.S. Congress and many other false accusations to frame Wei, asking not to participate in the protests against the CCP organized by him. Is this coming to confess his relatives? Everyone thinks deeply.

7:47 AM · Oct 5, 2019 · Twitter Web App

1 Retweet · 10 Likes

## ← **Tweet**



**Ciping Huang 黄慈萍**
@huang_ciping

···

我们发现，该"碰瓷母女"在美国的活动不仅仅针对老魏个人，还写信给各个机构组织及重要的政治家等，诬陷老魏及其工作与有关的组织，而且还传讯我们，要求交出魏京生基金会等的档案，并且还给好几个宣传民主自由的组织机构送了传票，其目的与意图，请大家深思。

Translated from Chinese by **Google**

We found that the activities of the "Mother and Daughter Touching Porcelain" in the United States not only targeted Old Wei individuals, but also wrote to various organizations and important politicians, framed him and his work and related organizations, and also sent us , Demanded to hand over the files of the Wei Jingsheng Foundation and others, and also sent subpoenas to several organizations that promote democracy and freedom. Please think deeply about its purpose and intention.

4:20 PM · Oct 30, 2019 · Twitter Web App



← **Tweet**

**Ciping Huang 黄慈萍**
@huang_ciping

Replying to @chixua2019

中共这方面的造假水平可是世界一流的，无赖水平也是一流的。。。就像那对碰瓷母女的撒谎水平也是一流的。。。

Translated from Chinese by Google

The CCP's level of fraud in this area is world-class, and the level of rogues is also first-class. . . Just like the level of lying to the mother and daughter of Touch Porcelain is also top-notch. . .

10:13 PM · Jul 4, 2020 · Twitter Web App

1 Like

Tweet your reply                    Reply

**Ciping Huang** 黄慈萍
@huang_ciping

我当然要提这件事,要大大地揭露这件事.何况支持民运的大家都很关心.
这并不是魏京生的丑事,而是不要脸的无耻之徒不择手段的杰作.但随着时间的推移,更多真相也露出水面,也给我们机会看清这个碰瓷母女集团以及其他帮佣,了解和揭露中共更多的阴谋诡计.耐心看吧,比两个男人生出一个像他们的儿子还戏剧性呢.

Translated from Chinese by Google

Of course I have to mention this matter and expose it to a great extent. Besides, everyone who supports the democracy movement is very concerned.
 This is not a scandal of Wei Jingsheng, but a masterpiece of the shameless shameless unscrupulous. But as time goes by, more truths have been revealed, and it also gives us a chance to see this Porcelain mother and daughter group and other helpers clearly. And exposing more conspiracies and tricks of the CCP. Be patient, it's more dramatic than two men giving birth to a son like them.

> 瀛洲客 @dingxueying03 · Jan 16
> Replying to @huang_ciping
> 我还是希望你不提这事，对魏老先生而言，不提这事是最好的选择，你怎么一直在故意招围观呢？你如此聪明之人，对此我表示不解。

9:23 PM · Jan 16, 2021 · Twitter Web App

**1** Quote Tweet    **4** Likes

   

Case 8:23-cv-02104-MJM    Document 111    Filed 06/30/25    Page 324 of 273

*Exhibit D*

← **Tweet**



**Ciping Huang 黄慈萍**
@huang_ciping                                                    ⋯

事实已证明碰瓷母女从头就撒谎.如随意迁就一从头就设
计撒谎的骗子,老魏还就跟别人忙乎这些,不做它事了?不
尊重老魏的本意和事实,也算支持老魏,是为老魏着想?
且不说中共用高科技作假能力是世界一流的.难道大家还
没被中共病毒害惨? 我们向各界警告多年,现在还不清
楚?
被中共的阴谋牵着走,难道可喜可贺?

Translated from Chinese by **G**oogle

Facts have proved that mothers and daughters lied
from the beginning. If they arbitrarily accommodated
the liar who designed to lie from the beginning, Old
Wei would still be busy with others and stop doing
other things? He did not respect the original intentions
and facts of Old Wei, and he was considered to support
him. Wei, is it for the sake of old Wei?
 Not to mention that China's high-tech fraud
capabilities are world-class. Haven't everyone been
badly affected by the CCP virus? We have warned all
walks of life for many years, but it is still not clear?
 Is it gratifying to be led by the CCP's conspiracy?

 丢馨 @XinpingDabendan · Jul 3, 2020
Replying to @chenbing171819
没人会介意魏先生是否有几个女友，有人欣赏魏先生是好事，要点是测一下
DNA，如果真是魏先生的后人，不仅对魏先生本人，对所有支持魏先生的人来说



## Tweet



**Ciping Huang 黄慈萍**
@huang_ciping

Replying to @tFDcuUM5l2Lvnqy

是。
是否很奇怪：十多年魏先生从未听说过这么个碰瓷女？
魏先生一直告诉那碰瓷母不记得见过她，至今该碰瓷母
也没向法庭回答结着婚的她声称与魏先生一夜情的时间
和地点。
说什么检测就可以了。但如果随了一个已知从头就撒谎
骗人的人，魏先生还不该忙死了。这不正是中共想做
的，尤其是现在这个紧要关头？

Translated from Chinese by Google

Yes.
 Is it strange: Mr. Wei has never heard of such a
porcelain girl in more than ten years? Mr. Wei kept
telling her mother that she didn't remember seeing her,
and so far she has not answered the court when she
claimed to have one night stand with Mr. Wei when she
was married.
 Just say what you want to test. But if you follow
someone who is known to lie and deceive people from
scratch, Mr. Wei shouldn't be too busy. Isn't this exactly
what the CCP wants to do, especially at this critical
juncture?

11:20 AM · Jul 3, 2020 · Twitter Web App



← **Tweet**



**Ciping Huang 黄慈萍**
@huang_ciping                                    •••

我还知道近15年前，日本驻沪领馆的外交人员上吊自杀了，因为中共以极其完美的美人计逼他一点一点地上钩。好在该人还有些廉耻心，自杀前将细节写出，保住了最后一点为人之尊严。
theguardian.com/world/2005/dec...
现在中共给老魏派的是不知廉耻之徒。只能慢慢揭露了。。。

Translated from Chinese by **Google**

I also know that nearly 15 years ago, the diplomatic staff of the Japanese consulate in Shanghai committed suicide by hanging himself, because the CCP used an extremely perfect beauty scheme to force him to get the bait bit by bit. Fortunately, the person still has a bit of shame, and writes out the details before committing suicide, preserving the last point of human dignity.
theguardian.com/world/2005/dec...
 The CCP now gives the old Wei school a shameless person. It can only be revealed slowly. . .

> 🔘 和子 @tFDcuUM5l2Lvnqy · Jul 4, 2020
> Replying to @huang_ciping
> 中共对日本的超限战也令人叹为观止。1996年当选日本首相的桥本隆太郎，据说早在1970年代末就中了中共的美人计。在东京的高级酒店New Otani的大堂里，一位美女在桥本面前故意掉落白色手提包，让桥本对突如其来的美女想入非非，这个女人就是驻日中国大使馆的女翻译，2006年12月3日，该女子坦白自己是间谍



← **Thread**

   Ciping Huang 黄慈萍
@huang_ciping                                    ...

谢谢真相先生.请大家看看张先生抚养多年的女儿，并有
许多"民运人士"见过的真正照片,再对比这张已有多人指
出的"照片裡的人根本就不像真人 感覺是PS合成的"照
片twitter.com/wutingzy/statu...。
当时就有明眼人指出,但现在我才看到并证实.
这张PS照源出何处,大家能想到吗?
只有我们想不到的,没有中共做不出的!

Translated from Chinese by Google

Thank you Mr. Truth. Please take a look at Mr. Zhang's
daughter who has been raised for many years, and
there are many real photos that "democracy activists"
have seen, and then compare this picture that has been
pointed out by many people. "The person in the photo
is not like a real person at all. PS synthesized" photos
twitter.com/wutingzy/statu... .

 At that time, someone with a discerning eye pointed it
out, but now I see it and confirm it.
 Can you think of where this PS photo came from?
 There are only things we can't think of, nothing the
CCP can't do!



← **Tweet**



**Ciping Huang 黄慈萍**
@huang_ciping

请大家围观造谣推！
自称魏京生女儿的碰瓷女，请不要再隐瞒抚养你多年的张姓父亲（刘女士的丈夫），出示是魏京生私生女的法律证明！那几个高喊魏京生有私生女的人物，也可以出示这样的证明，或者就承认是别有用心！

Translated from Chinese by **Google**

Everyone, please watch and spread rumors!
 The girl who claims to be Wei Jingsheng's daughter, please stop concealing your father (Ms. Liu's husband) who has been raising you for many years, and present a legal certificate that she is Wei Jingsheng's illegitimate daughter! Those who clamored that Wei Jingsheng had an illegitimate daughter could also show this proof, or admit that they had ulterior motives!

>  **Wen** ✔ @wenyunchao · Jul 6, 2020
> 魏京生私生女案件进展。 twitter.com/huaizhao/statu…

9:54 AM · Jul 6, 2020 · Twitter Web App

1 Quote Tweet    3 Likes

            



← **Tweet**

> This Tweet was deleted by the Tweet author. Learn more

 **Ciping Huang 黄慈萍**
@huang_ciping                                                    ...

Replying to @stkic410

没什么无辜可言。这个已经成年的恶女抛弃抚养她多年的父亲张猛，起诉从未见过的另一个男人，索要更多的抚养费，是无耻，是敲诈！

Translated from Chinese by Google

There is nothing innocent to speak of. This adult wicked woman abandoned her father Zhang Meng, who had raised her for many years, and sued another man she had never seen before, asking for more support. It was shameless and extortion!

12:51 PM · Jul 12, 2020 · Twitter Web App

                    



USCA4 Appeal: 25-1914   Doc: 10-6   Filed: 08/21/2025   Pg: 42 of 48   Total Pages:(249 of 272)

Case 8:23-cv-02134-MJM   Document 1111   Filed 06/08/25   Page 250 of 273

← **Tweet**



**Ciping Huang 黄慈萍**
@huang_ciping

···

Replying to @DanHongTang

有些人很有意思。一个结婚多年的女人，公然声称结婚期间与另一个男人生了孩子，这样的人还令人尊敬？当然，文艺界的文青也许并不在乎这些，但是以此来敲诈，并与有爹的女儿一起从头就撒谎，声称自己未婚，孩子没爹，不肯拿出有法律效果的出生证，这样的骗子还有人尊敬？！

Translated from Chinese by **Google**

Some people are very interesting. A woman who has been married for many years has openly claimed to have a child with another man during her marriage. Is such a person respectable?
 Of course, the literary and artistic circles may not care about this, but they use this to blackmail and lie from the beginning together with the daughter who has a father, claiming that they are unmarried, the child has no father, and they refuse to produce a legally effective birth certificate. Liars are still respected? !

5:28 PM · Jul 12, 2020 · Twitter Web App

···

1 Quote Tweet     3 Likes

USCA4 Appeal: 25-1914    Doc: 10-6    Filed: 08/21/2025    Pg: 43 of 48    Total Pages:(250 of 272)

Case 3:23-cv-01043-MJ-DMDoc Document 111   Filed 06/26/25   Page 425 of 273

**Ciping Huang 黄慈萍**
@huang_ciping

Replying to @puff1984

走着瞧。到时候不光是碰瓷母女名誉扫地，中共一起。

Translated from Chinese by Google

Just wait and see. When the time comes, it will not only be the disgrace of the mother and daughter of Porcelain, but the CCP will be together.

12:25 PM · Jul 15, 2020 · Twitter Web App

← **Tweet**



**Ciping Huang 黄慈萍**
@huang_ciping

Replying to @huang_ciping and @zengjinyan

在国内异议人士被"嫖娼"，在国外异议人士被"强奸"，美国总统竞选就有绯闻，老魏还没出来竞选呢，为何就有绯闻了？
声称未婚,孩子没爹的碰瓷母兼浪荡女刘怀昭与老魏联络要钱,详述她去魏的旅馆过了一整夜.后发现刘言的破绽.又发现刘怀昭与张猛结婚多年,并找到了碰瓷女的出生证,其上明确写明其爹为张猛...

Translated from Chinese by Google

Dissidents in the country are "prostitution" and dissidents abroad are "raped". There is a scandal in the US presidential campaign. Why did Wei have a scandal before he came out to campaign?

Liu Huaizhao, a mother and a prostitute who claimed to be unmarried and her child had no father, contacted Lao Wei for money, and detailed that she went to Wei's hotel all night. Later, Liu Yan's flaws were discovered. Liu Huaizhao and Zhang Meng were married for many years. And found the birth certificate of the Pengci girl, which clearly stated that her father was Zhang Meng...

10:02 AM · Jul 15, 2020 · Twitter Web App

**2** Retweets　**3** Quote Tweets　**4** Likes

← **Tweet**

**Ciping Huang 黄慈萍**
@huang_ciping

Replying to @DeniseW003 and @Rabbitlili

我看你去做最合适。刘怀昭你这个不要脸的浪荡女！

Translated from Chinese by Google

I think it's most suitable for you to do it. Liu Huaizhao, you shameless slutty girl!

7:39 PM · Mar 28, 2021 · Twitter Web App

USCA4 Appeal: 25-1914    Doc: 10-6    Filed: 08/21/2025    Pg: 45 of 48    Total Pages:(252 of 272)

← **Tweet**



**Ciping Huang 黄慈萍**
@huang_ciping

不是在痛打落水狗,是一群居心叵测之人与无耻母狗一起正在诉讼老魏,虽说连连挫折,却依然纠缠不休.
一夜情刘怀昭的女儿是否张猛的,需看证据.就像她声称女儿是别人的,为什么别人给她5000美元当面来做法定亲子鉴定,她却躲着呢?难道她说女儿是Bill Gates的,大家也相信?后来干脆走得更远,高喊强奸,你相信吗?

twitter.com/LiuFang96/stat...

Translated from Chinese by Google

It's not that I'm beating the water dog, it's a group of unpredictable people and shameless bitches who are suing Old Wei. Although they have been frustrated, they are still entangled.
 Whether the one-night stand Liu Huaizhao's daughter is Zhang Meng's, you need to see evidence. Just like she claimed that her daughter is someone else's, why did someone give her $5,000 to do a paternity test in person, but she hides it? Did she say that her daughter belongs to Bill Gates, everyone? Believe it? Later, you just went further and shouted rape. Do you believe it?

twitter.com/LiuFang96/stat...

This Tweet is unavailable.

10:16 AM · May 2, 2021 · Twitter Web App

*Exhibit E*

**Tweet**

**Ciping Huang 黄慈萍**
@huang_ciping
· · ·

看到这视频，很寒心。这样的孩子最后会变成什么样呢？其实连棋子都算不上，最多是成为大人出卖的牺牲品。当然不同的人解读不同。
像碰瓷母刘怀昭这样的文青女，就教育出碰瓷女Charlotte Zhang这样的女儿。不仅敢无耻地裸奔，还声称自己担心被一没见过的男人强奸了，这是何等的文青？还不过是无耻之尤？

Translated from Chinese by **G**oogle

Seeing this video, I feel very chilling. What will become of such a child in the end? In fact, even chess pieces are not counted, at most they become victims of adult betrayal. Of course, different people interpret it differently.
 Literary youth like Liu Huaizhao, mother of Porcelain, educated daughters like Charlotte Zhang, Porcelain. Not only did he dare to run naked, but he also claimed that he was worried about being raped by a man he had never seen before. What kind of literary youth is this? Is it just shameless you?



邱岳首 @7k_QYS · May 14
挥舞巴勒斯坦国旗帜的男子把孩子赶向以色列士兵，高喊: 这是个男孩，杀死他，杀他...
这个视频告诉你中共党国为什么灌输"童心向党"红色教育。

Show this thread

Raise the flag, let them shoot you... Raise it. Raise it.

0:10    26.9K views

2:20 PM · May 15, 2021 · Twitter Web App

**1** Retweet    **6** Likes

# Exhibit F

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **HUAIZHAO LIU**, *et al.*, | * | |
| **Plaintiffs,** | * | |
| **v.** | * | **Civ. No. MJM-23-2134** |
| **CIPING HUANG**, *et al.*, | * | |
| **Defendants.** | * | |

\* \* \* \* \* \* \* \* \* \*

## ORDER

For the reasons stated on the record during the motions hearing, it is this  21st  day of July, 2025, by the United States District Court for the District of Maryland, hereby ORDERED that:

1. Defendant Ciping Huang's Motion to Dismiss (ECF Nos. 68 & 69) and Defendant Jingsheng Wei's Motion to Dismiss (ECF No. 67) are DENIED;

2. Plaintiffs' Motion to Compel the Rule 35 Examination of Defendant Jingsheng Wei (ECF No. 84) is GRANTED;

3. The parties are directed to confer and to submit a proposed order to the Court by July 25, 2025, "specify[ing] the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it[;]" Fed. R. Civ. P. 35(a)(2); and

4. The parties are directed to confer and to submit a proposed amended scheduling order to the Court by July 25, 2025.

_____
/S/
Matthew J. Maddox
United States District Judge

# Exhibit G

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |
|---|---|
| HUAIZHAO LIU and CHARLOTTE ZHANG, <br><br> Plaintiffs, <br><br> v. <br><br> CIPING HUANG, et al. <br><br> Defendants. | Case No. 23-cv-2134-DLB <br><br> Judge Matthew J. Maddox |

**DEFENDANT WEI'S MEMORANDUM IN SUPPORT OF MOTION TO STAY ORDER
GRANTING RULE 35 EXAMINATION PENDING
RESOLUTION OF PETITION FOR WRIT OF MANDAMUS**

Defendant Jingsheng Wei ("Wei"), by and through undersigned counsel, respectfully moves the Court to stay its July 21, 2025 Order (ECF No. 96) (the "Order") granting Plaintiffs' Motion to Compel a Rule 35 examination, pending the resolution of a forthcoming Petition for Writ of Mandamus that Wei will timely file with the United States Court of Appeals for the Fourth Circuit. In support of this motion, Wei states as follows:

**INTRODUCTION**

The Court's Order possess significant questions of a violation of bodily autonomy and harassment for what would be, at best, minimally relevant and arguably inadmissible evidence. As such, Wei will be seeking mandamus relief. Wei respectfully seeks a stay of enforcement of the Order so as not to moot his petition for writ of mandamus, which would functionally deprive Wei of a meaningful opportunity for review.

This Court has ordered that Wei undergo genetic testing at the demand of an individual Wei genuinely and reasonably believes is furthering the interests of the Chinese Communist Party ("CCP"). Wei languished in a Chinese prison for 20 years for his pro-democracy advocacy. After

obtaining refuge in the United States, he has been harassed and victimized. This victimization included a five-year court battle with the same Plaintiffs in which he prevailed on this identical issue and on the merits of virtually identical claims.[1]

But Plaintiffs will not stop.[2] And Wei's lived experience is that the CCP will not stop. This context is central to what seems to be a straightforward discovery issue under Federal Rules of Civil Procedure 35: is Wei's genetic information discoverable through a forced medical test where the potential relevance to the case is minimal, but the emotional burden is significant? Particularly when this same invasive request has already been denied by a sister court? It is for these very reasons that Wei will pursue a petition for a writ of mandamus at the Court of Appeals and why he now seeks a modest stay to allow him to pursue these efforts.

Here, a stay is not only appropriate, but necessary under controlling Fourth Circuit law. First, although this court has ruled against Wei on the Rule 35 medical testing and, therefore, has an opinion on the merits of this case, Wei has a "substantial case" on the merits and raised serious legal questions suitable for mandamus review. Namely, another court of competent jurisdiction, the D.C. Superior Court, denied the exact same request by the same person in a similar case. Second, Wei will suffer irreparable harm absent a stay. Once a DNA sample is taken, the intrusion

---

[1] Mr. Wei's situation is unfortunately not unique. It is a well-documented phenomenon that the CCP uses a variety of methods, from social media to the U.S. court system to target and harass Chinese dissidents. *See, e.g.* Foreign Abuse of U.S. Courts: Hearing Before the H. Comm. On the Judiciary, 119th Cong. (July 22, 2025), *available at* https://judiciary.house.gov/committee-activity/hearings/foreign-abuse-us-courts-0 (last visted July 25, 2025) (summary states "The hearing . . . , will explore how the [CCP] currently utilizes U.S. courts to silence critics . . . .".); Tsai, M., "He escaped China. Harassment followed him to a New York courtroom", RADIO FREE ASIA (Mar. 19, 2025) *available at* https://www.rfa.org/english/special-reports/china-lawfare-transnational-repression/ (last visited July 25, 2025); A. Martinez, "Chinese hacking scheme focused on harassing dissidents, leaked documents show" National Publc Radio (Feb. 23, 2024), *available at* https://www.npr.org/2024/02/23/1233355132/chinese-hacking-scheme-focused-on-harassing-dissidents-leaked-documents-shows (last visited July 25, 2025).

[2] Since the Court's Order, Plaintiff Liu has continued her public online campaign of calling Wei a "rapist." **Ex. A**, July 18 Tweet.

into Wei's bodily autonomy and private genetic information is irreversible, mooting his right to appellate review. Third, Plaintiffs will not be prejudiced by a temporary stay. There is no trial date, discovery deadlines are being reset, and the DNA evidence Plaintiffs seek is barely relevant, and arguably will never be admissible, to their defamation claim. Fourth, the public interest favors a stay to ensure that serious legal and privacy concerns are not prematurely foreclosed and that appellate courts have an opportunity to consider whether compelled DNA testing is appropriate under Rule 35 in a civil defamation action.

Wei will file his Petition for Writ of Mandamus within 14 days of July 25, 2025, or as soon as practicable following receipt of the transcript from the July 18 hearing, which the will not be available until at least July 30. To preserve the status quo and avoid irreparable harm while mandamus relief is pursued, a temporary stay is necessary. In the alternative, Wei respectfully requests that the Court extend his compliance deadline with the Rule 35 order until at least September 15, 2025, to allow sufficient time to prepare and file and emergency mandamus petition with the Court of Appeals.

### BACKGROUND

Plaintiffs' Second Amended Complaint pleads a single claim of defamation against Wei. (ECF No. 63 para 94-99.) Plaintiff Huaizhao Liu previously sued Wei for parentage, breach of contract, and defamation claiming that Wei raped her, fathered her child, and made defamatory statements that Liu was a liar and working on behalf of the CCP. Wei prevailed on summary judgment after five years of litigation. *See Liu et al. v. Wei, No. 2019 CA 005052 B*, Omnibus Order (D.C. Super. Ct. Jan. 11, 2024); *id.*, Order Granting Mot. for Summ. J. (July 2, 2024).

Following that litigation, Wei allegedly repeated that Liu's allegations against him were false and she was advancing the interests of the CCP. Liu's present defamation claim arises out of those comments.

As in the previous action, Plaintiffs filed a motion under Rule 35(a) seeking to compel Wei to submit to a DNA test to determine whether he is Plaintiff Charlotte Zhang's biological father. (ECF No. 84). Wei opposed the motion because Plaintiffs failed to meet Rule 35's threshold requirements and that compelling such a test in this context would constitute an extraordinary and unwarranted invasion of privacy. (ECF No. 93). Plaintiffs filed a reply on June 27, 2025. (ECF No. 94).

The Court held oral argument on Plaintiffs' motion on July 18, 2025, during which the Court delivered its ruling from the bench and granted the motion. On July 21, 2025, the Court entered a written Order memorializing its ruling and directing the parties to submit by July 25, 2025, a proposed order addressing the time, place, manner, and scope of the DNA test, as well as a proposed amended scheduling order. (ECF No. 96).

Wei is preparing a Petition for a Writ of Mandamus for the Court of Appeals for the Fourth Circuit directing this Court to deny the Rule 35 medical examination. Wei timely ordered expedited transcripts of the July 18 hearing; however, the Clerk's Office has advised that the transcript will not be available before Wednesday, July 30, 2025. Wei anticipates filing his Petition for Writ of Mandamus no later than 14 days from the instant filing. In the interim, in order not to moot Wei's petition for writ of mandamus, Wei respectfully requests a stay of the Court's Order, or, in the alternative, provide the parties up to and including September 15, 2025, to comply with the Order, to avoid irreparable harm and permit appellate review of this novel and burdensome discovery ruling.

4

## LEGAL STANDARD

"The grant or denial of a request to stay proceedings calls for an exercise of the district court's judgment 'to balance the various factors relevant to the expeditious and comprehensive disposition of the causes of action on the court's docket.'" *Maryland v. Universal Elections, Inc.*, 729 F.3d 370, 375 (4th Cir. 2013) (quoting *United States v. Ga. Pac. Corp.*, 562 F.2d 294, 296 (4th Cir. 1977)). The decision to issue a stay is "an exercise of judicial discretion," and the party seeking a stay "bears the burden of showing that the circumstances justify an exercise of that discretion." *Nken v. Holder*, 556 U.S. 418, 433-34. "The propriety of [a stay's] issue is dependent upon the circumstances of the particular case." *Id.* (quoting *Virginian Ry. Co. v. United States*, 272 U.S. 658, 652-73 (1926)).

In exercising the Court's discretion, the Court considers the following factors: "(1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 434 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

## ARGUMENT

### A. Wei Has Raised Serious Legal Questions That Warrant Mandamus and Has Made a Substantial Case that He will Prevail on Appeal.

To establish a likelihood of success, Wei need not demonstrate a certainty of success on his petition, but rather this factor "requires more than a mere possibility that relief will be granted." *Nken*, 556 U.S. at 420. This Court has explained that "even where a district court believes that a defendant is unlikely to prevail on appeal, it may still determine a stay is appropriate where the defendant can make a 'substantial case' that it will succeed on the merits[.]" *Krell v. Queen Anne's Cty.*, 2020 U.S. Dist. LEXIS 13921, at *5 (D. Md. Jan. 27, 2020) (quoting *Par Pharm., Inc. v. TWI*

5

*Pharm., Inc.*, 2014 U.S. Dist. LEXIS 110963 at *2 (D. Md. Aug. 12, 2014)). A stay may also be appropriate if the appeal raises "serious questions of law." *Id.* (quoting *US. Home Corp. v. Settlers Crossing, LLC*, 2015 U.S. Dist. LEXIS 83903 at *6 (D. Md. June 29, 2015)). Where, as in this case, the appeal raises issues that will be reviewed *de novo*, a stay is more likely to be appropriate. *Id.* (citing *Par Pharm*, 2014 U.S. Dist. LEXIS 110963, at *2) (additional citation omitted).

While this Court has ruled against Wei on the Rule 35 motion, it does not follow that there is no "substantial case" for appellate relief. Wei has demonstrated that he has made a substantial case that he will prevail on this issue. Indeed, Wei already prevailed on this exact legal issue in the prior litigation between these same parties, where the D.C. Superior Court denied an identical request under Rule 35 seeking compelled DNA testing. That court found, consistent with Wei's arguments, that Rule 35 could not be used as a vehicle to compel paternity discovery in a defamation action. The fact that Wei has already successfully litigated and won this issue underscores that he has presented a "substantial case" on the merits that warrants appellate review.

Here, the benefits of a paternity test are minimal at best, but the burden is great. *Nicholson v. Balitmore Police Dep't*, 2022 WL 1104575, at *2 (D. Md. Apr. 13, 2022) ("At bottom, analysis of both aims to balance the need for an examination against the burdens it imposes.") This is not a paternity case. The claim against Wei is limited only to the truth of his statements (that Liu's allegations of rape were false and Liu was advancing the CCP's interests) and whether those statements were made with actual malice. A positive paternity test would demonstrate that Liu and Wei had intercourse; it does not indicate whether it was consensual or whether Liu's conduct is in furtherance of the CCP's interests. An after-the-fact test certainly has no bearing on Liu's mental state when he made his statements in 2023 and 2024. Further, this evidence may never even be admissible under Federal Rule of Civil Procedure 403.

6

But a paternity test is highly invasive. *Tate v. Doe*, 2025 U.S. Dist. LEXIS 41331, at *17-18 (W.D. Wis. Mar. 6, 2025) ("Although a buccal swab is not very physically invasive, the DNA testing that ensues is certainly personally intrusive.") In addition to collecting, analyzing, and logging Wei's very genetic code, the emotional implications are staggering. Wei was held in a Chinese prison for nearly 20 years and has been the subject of extensive harassment in the United States for 20 more years for the crime of advocating for democracy. He genuinely believes that China has found a way to subject him to one more invasion of privacy; a reminder that they wish to take everything from him. As to Liu, he has had to spend considerable time and money to defend himself from a very serious allegation of rape for five years. Although he prevailed, his reputation still suffers damage to this day. This case itself is a reminder that she will always try to control what he says and will never leave him alone. The burden is on Plaintiffs, not Wei, to show that either that the emotional toll on Wei is not so significant or that her request justifies this burden. She has done neither.

Finally, this case raises a serious legal question that goes to the permissible limits of discovery under Rule 35 and the constitutional implications of compelled DNA testing. Plaintiffs seek to compel an invasive DNA examination from Wei, the first time such an examination has been ordered in a defamation case. If permitted, this Court's Order would set a significant and unprecedented expansion of Rule 35, with wide-reaching implications beyond this case. That alone justifies a stay to permit appellate scrutiny. And because the issue on appeal is a pure question of law—whether Rule 35 authorizes the requested relief under these circumstances—it will be reviewed *de novo*, making this case particularly appropriate for a stay while review is pursued.

**B.    Absent a Stay, Wei Will Suffer Irreparable Harm**

Compelled physical examinations—particularly those involving forced DNA testing—

implicate serious privacy and bodily autonomy interests. *United States v. Davis*, 690 F.3d 226, 239 (4th Cir. 2012) (noting that one always has a privacy interest in their DNA which is implicated when extracted from the individual for testing). Once Wei is compelled to undergo DNA testing, the harm cannot be undone. The results, once revealed, will irrevocably intrude into his private life and moots his right to seek relief from the Fourth Circuit. And, as already described, the emotional toll of this test is highly significant to this political dissident. He fled his home country to escape oppression and he has a genuine belief that his home country is coopting the tools of American Due Process to exert control over him from abroad.

Moreover, Wei's intended mandamus petition challenges not only the underlying application of Rule 35 but the broader legal precedent that would be set by allowing compelled parentage discovery in cases unrelated to custody or support. Without a stay, the petition will be rendered moot, and the harm to Wei will be complete before he can be heard on appeal.

C.      **Plaintiffs Will Not Be Prejudiced by a Temporary Stay**

Plaintiffs will suffer no prejudice from a temporary stay of the Court's Rule 35 Order. The only consequence of a stay is a modest delay in the administration of a DNA test—an issue that is not dispositive of any claim in this case. There is no prejudice to Plaintiffs if this test happens in September, given no trial date has been set, and discovery deadlines are in the process of being reestablished pursuant to the Court's directive. Should the test procced, there will be ample time for any follow up discovery. The parties have not commenced depositions in this litigation, exchanged expert reports, or taken other steps in discovery that would be impacted by a short pause to permit appellate review. Wei has not even filed a responsive pleading in this case following the denial of his motion to dismiss. Plaintiffs will remain free to pursue all other aspects of discovery in the meantime and will retain the full ability to prepare their case.

<p style="text-align:center">8</p>

Moreover, Plaintiffs only claim that the DNA evidence Plaintiffs seek is corroborative—not dispositive —to their defamation claim. To be certain, Defendants do not believe it is corroborative of any relevant fact, but even Plaintiffs' position concedes that this discovery is not significant to the case before this court. As such, Plaintiffs cannot credibly claim that a short delay in obtaining DNA evidence will prejudice their ability to prosecute this action. By contrast, if a stay is denied and Wei is forced to submit to DNA testing before the Fourth Circuit can weigh in, the harm to Wei will be immediate and irreversible. His bodily autonomy will be permanently invaded, and any resulting prejudice cannot be undone if the Order is later overturned on appeal. A temporary stay would preserve the status quo while ensuring that a first-of-its-kind ruling receives appropriate appellate scrutiny.

### D. The Public Interest Favors a Stay

The public interest weighs heavily in favor of a stay because of the important privacy and bodily autonomy rights at stake. As a threshold matter, "there is a strong public interest in maintaining the confidentiality of PII, such as medical records [.]" *Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Soc. Sec. Admin.*, 2025 WL 1206246, at *71 (D. Md. Apr. 17, 2025). Likewise, courts have long recognized that compelled medical examinations intrude on fundamental personal interests, and the judiciary has a special responsibility to ensure that such intrusions are not permitted absent clear legal authority and demonstrated necessity. *E.g.*, *Schultz v. GEICO Cas. Co.*, 2018 CO 87, 429 P.3d 844, 847 (Colo. 2018) ("a medical examination against [one's] will ... implicates [their] privacy interests in [their] body and [their] health."). The public interest is served when courts act cautiously in authorizing such measures, particularly where the legal foundation for the intrusion is contested and novel.

This case involves a compelled DNA test—an especially invasive form of discovery that

implicates sensitive genetic information and core privacy concerns. The Court has a strong interest in ensuring that such extraordinary relief is not imposed prematurely or irreversibly before appellate review can occur. A stay would honor that interest by preventing the permanent invasion of privacy while allowing higher courts the opportunity to evaluate whether the discovery ordered is legally and constitutionally permissible. In short, the public's interest in safeguarding individual rights weighs decisively in favor of a temporary stay.

### CONCLUSION[3]

For the foregoing reasons, Wei respectfully requests that the Court stay enforcement of its July 21, 2025 Order (ECF No. 96) pending resolution of Wei's forthcoming Petition for Writ of Mandamus to the U.S. Court of Appeals for the Fourth Circuit. Wei intends to file the Petition within 14 days of filing the instant motion.

In the alternative, should the Court decline to enter a stay pending mandamus, Wei respectfully requests that the Court extend the deadline for compliance with its Order to no earlier than September 15, 2025, to allow adequate time for appellate review. Wei further requests any such other relief as the Court deems just and proper.

---

[3] Counsel for Wei conferred with counsel for Plaintiffs regarding the relief requested herein. As of the time of filing, Plaintiffs have not consented to the requested stay.

10

July 25, 2025                                    Respectfully submitted,

                                                /s/ *David Barger*
                                                David G. Barger (MD Bar# 14716)
                                                Robert W. Angle (admitted *pro hac vice*)
                                                Greenberg Traurig LLP
                                                1750 Tysons Blvd.
                                                Suite 1000
                                                McLean, VA 22102
                                                Tel:  (703) 749-1300
                                                Email:  bargerd@gtlaw.com
                                                        anglew@gtlaw.com

                                                Camille Papini-Chapla (*pro hac vice to be filed* )
                                                1144 15th Street, Suite 3300
                                                Denver, Colorado 80202
                                                Tel: (303) 685-7422
                                                Email: papinichaplac@gtlaw.com

                                                *Counsel for Defendant Wei*

11

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 25th day of July 2025, I caused a copy of the foregoing to be filed electronically with the Clerk of Court using the CM/ECF system, which then sent a notice of filing to all counsel of record.

<u>/s/ *David Barger*</u>
David G. Barge

# Exhibit A

← **Post**



**Huaizhao 懷昭** ✔
@huaizhao

感謝@timeswang，我相信今天訴魏京生的呈堂答辯創造了歷史。你，王炳章博士之子，以你敬業而超群的法律文本讓這一天值得雙倍銘記。Thank you, Times, for making today truly unforgettable with your courageous and inspiring legal presentation in my case against rapist Wei Jingsheng. As Dr. Wang Bingzhang's son, you have made history in court today through your remarkable efforts, ensuring that both you and your father are remembered for your courage and dedication to justice and righteousness.

